# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| MEMORYLINK CORPORATION, | ) | |
| | ) | Case No. 08-cv-3301 |
| Plaintiff, | ) | |
| | ) | The Honorable William J. Hibbler |
| v. | ) | United States District Judge |
| | ) | |
| MOTOROLA, INC., | ) | The Honorable Nan R. Nolan |
| | ) | United States Magistrate Judge |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF MOTOROLA, INC.'S MOTION TO DISMISS

Anne M. Sidrys, P.C. (6209457)
Mark J. Nomellini (6243579)
Nyika O. Strickland (6275717)
Jess M. Krannich (6286635)
KIRKLAND & ELLIS LLP
(Firm No. 90443)
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000

August 1, 2008

*Attorneys for Defendant Motorola, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

BACKGROUND .................................................................................................................3

ARGUMENT .....................................................................................................................6

I.    MEMORYLINK HAS FAILED TO STATE A FRAUD OR NEGLIGENT
MISREPRESENTATION CLAIM...................................................................................6

    A.    Memorylink Has Not Pled Fraud With Particularity. ...............................6

        1.    Memorylink has not pled common law fraud with specificity. ..................7

        2.    Memorylink has not pled promissory fraud with specificity. ....................7

    B.    Memorylink Has Not Pled The Elements Of Fraud....................................9

        1.    The misrepresentations Memorylink pleads in its common law
fraud claims are undermined by its own allegations and Complaint
exhibits.......................................................................................................9

        2.    Representations of law do not give rise to fraud claims. ..........................10

        3.    As a matter of law, Memorylink cannot establish justifiable
reliance.....................................................................................................10

    C.    Memorylink Has Not Stated A Negligent Misrepresentation Claim. ....................12

    D.    Memorylink's Count II Is Not A Valid Claim.........................................13

    E.    Memorylink's Fraud And Misrepresentation Claims Are Time Barred...............13

        1.    Memorylink's common law fraud and misrepresentation claims
are time-barred.........................................................................................13

        2.    Memorylink's promissory fraud claim is time-barred. ............................15

II.    MEMORYLINK'S CONTRACT CLAIMS SHOULD BE DISMISSED. .......................15

    A.    Memorylink's Claim That The Assignment Is Void Should Be Dismissed..........15

    B.    Memorylink Fails To State A Breach Of Contract Claim. ....................................16

**Page**

III.  MEMORYLINK'S OTHER TORT CLAIMS MUST BE DISMISSED. .........................18

A.  Memorylink Fails To State A Claim For Breach Of Fiduciary Duty. ...................18

B.  Memorylink's Claim For Tortious Interference Should Be Dismissed. ................19

C.  Memorylink Cannot Maintain Its Unjust Enrichment Claim. ..............................20

D.  Memorylink's Other Tort Claims Are Time-Barred. ..............................................21

1.  Memorylink's fiduciary duty & tortious interference claims
   are barred. ....................................................................................................21

2.  Memorylink's unjust enrichment claim is barred. .....................................21

IV.  MEMORYLINK'S INTELLECTUAL PROPERTY CLAIMS FAIL. ............................21

A.  Memorylink Cannot Establish Patent Infringement. ...............................................21

B.  Memorylink's Claim To Correct The Inventorship Of The '352 Patent
   Fails. ..................................................................................................................22

C.  Memorylink Cannot Sue For Correction Of Inventorship
   Of The '938 Patent. ..............................................................................................23

D.  Memorylink's Remaining Claims For Correction Of Inventorship
   Are Not Legally Cognizable. ...............................................................................23

E.  Memorylink Fails To State Claims For Conversion. ..............................................24

CONCLUSION ..........................................................................................................................25

Page(s)

# **TABLE OF AUTHORITIES**

**Cases**

*188 LLC v. Trinity Indus., Inc.*,
    300 F.3d 730 (7th Cir. 2002) ......................................................................... 2

*Ahmed v. Quinn*,
    1996 WL 388418 (N.D. Ill. Jul. 9, 1996) ...................................................... 14

*Armstrong v. Guigler*,
    174 Ill. 2d 281, 673 N.E.2d 290 (1996) ................................................... 16, 17

*Bellehumeur v. Bonnett*,
    127 Fed. Appx. 480 (Fed. Cir. 2005) ............................................................ 23

*Borsellino v. Goldman Sachs Group, Inc.*,
    477 F.3d 502 (7th Cir. 2007) ......................................................................... 20

*Bower v. Jones*,
    978 F.2d 1004 (7th Cir. 1992) ......................................................................... 7

*Brown v. New York Life Ins. Co.*,
    2008 WL 151390 (N.D. Ill. Jan. 15, 2008) ................................................... 13

*Brusilovsky v. Figgie Int'l*,
    1995 WL 330809 (N.D. Ill. May 30, 1995) ..................................................... 8

*Burke v. Lakin Law Firm, PC*,
    2008 WL 64521 (S.D. Ill. Jan. 3, 2008) ........................................................ 17

*Burns Philp Food, Inc. v. Cavalea Cont'l Freight, Inc.*,
    135 F.3d 526 (7th Cir. 1998) ......................................................................... 21

*Centers v. Centennial Mortgage, Inc.*,
    398 F.3d 930 (7th Cir. 2005) ................................................................ 2, 3, 18

*Cirrincione v. Johnson*,
    184 Ill. 2d 109, 703 N.E.2d 67 (1998) .......................................................... 25

*Clark v. Robert W. Baird Co., Inc.*,
    142 F. Supp. 2d 1065 (N.D. Ill. 2001) ...................................................... 8, 13

*Cohabaco Cigar Co. v. U.S. Tobacco Co.*,
    1999 WL 988805 (N.D. Ill. Oct. 22, 1999) ................................................... 20

**Page(s)**

*Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*,
    250 F.3d 570 (7th Cir. 2001) ........................................................................ 10, 13

*Davis v. G.N. Mortgage Corp.*,
    396 F.3d 869 (7th Cir. 2005) ........................................................................ 10, 11

*Desnick v. Am. Broadcasting Cos., Inc.*,
    44 F.3d 1345 (7th Cir. 1995) ............................................................................. 7

*DiLeo v. Ernst & Young,*
    901 F.2d 624 (7th Cir. 1990) ............................................................................. 6

*DirectTV, Inc. v. Vanderploeg,*
    2005 WL 497797 (N.D. Ill. Mar. 2, 2005) ...................................................... 24

*Draper v. Pickus,*
    2007 WL 809679 (N.D. Ill. Mar. 15, 2007) .................................................... 21

*E & J Gallo Winery v. Morand Bros. Beverage Co.*,
    247 F. Supp. 2d 979 (N.D. Ill. 2003) .............................................................. 21

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004) ................................................................. 23, 24

*Ellis v. Allstate Ins. Co.*,
    479 F. Supp. 2d 782 (N.D. Ill. 2006) ................................................................ 7

*Enzo APA & Son, Inc. v. Geapag A.G.*,
    134 F.3d 1090 (Fed. Cir. 1998) ...................................................................... 22

*Equity Capital Corp. v. Kreider Transp. Service, Inc.*,
    967 F.2d 249 (7th Cir. 1992) ........................................................................... 13

*Film & Tape Works, Inc. v. Junetwenty Films, Inc.*,
    368 Ill. App. 3d 462, 856 N.E.2d 612 (2006) ................................................. 25

*First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*,
    218 Ill. 2d 326, 843 N.E.2d 327 (2006) .......................................................... 12

*Heartland Fin. USA, Inc. v. Fin. Insts. Cap. Appreciation Partners, I, L.P.*,
    2002 WL 31819008 (N.D. Ill. Dec. 12, 2002) ................................................ 11

*Hollymatic Corp. v. Holly Sys., Inc.*,
    620 F. Supp. 1366 (N.D. Ill. 1985) ................................................................... 8

**Page(s)**

*Horbach v. Kaczmarek,*
    934 F. Supp. 981 (N.D. Ill. 1996) .............................................................. 13, 14

*Hoseman v. Weinschneider,*
    322 F.3d 468 (7th Cir. 2003) ...................................................................... 10

*Houben v. Telular Corp.,*
    231 F.3d 1066 (7th Cir. 2000) ...................................................................... 7

*In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.,*
    2008 WL 630883 (N.D. Ill. Mar. 5, 2008)...................................................... 10

*In re Apex Auto. Warehouse L.P.,*
    2000 WL 220497 (N.D. Ill. Feb. 18, 2000) .................................................... 19

*In re McDonald's French Fries Litig.,*
    503 F. Supp. 2d 953 (N.D. Ill. 2007) .............................................................. 7

*Int'l Star Registry of Ill. v. ABC Radio Network, Inc.,*
    451 F. Supp. 2d 982 (N.D. Ill. 2006)................................................... 6, 7, 8, 9

*Kalis v. Colgate-Palmolive Co.,*
    337 Ill. App. 3d 898, 787 N.E.2d 182 (2003) ................................................ 16

*Kalis v. Colgate-Palmolive Co.,*
    357 Ill. App. 3d 172, 827 N.E.2d 1098 (2005) .............................................. 16

*Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.,*
    517 F.3d 476 (7th Cir. 2008) ...................................................................... 20

*Lillien v. Peak6 Invs., L.P.,*
    417 F.3d 667 (7th Cir. 2005) ........................................................................ 7

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)...................................................................................... 23

*Malik v. Lynk, Inc.,*
    1999 WL 760217 (D. Kan. Aug. 18, 1999) .................................................... 24

*Muniz v. Rexnord Corp.,*
    2006 WL 1519571 (N.D. Ill. May 26, 2006).................................................. 14

*N. Trust Co. v. MS Sec. Servs., Inc.,*
    2006 WL 695668 (N.D. Ill. Mar. 15, 2006).................................................... 19

**Page(s)**

*N. Trust Co. v. VIII S. Mich. Assocs.*,
    276 Ill. App. 3d 355, 657 N.E. 2d 1095 (1995) ............................................................... 11

*Nelson v. Sotheby's Inc.*,
    115 F. Supp. 2d 925 (N.D. Ill. 2000) ............................................................................. 24

*Nilsson v. NBD Bank of Ill.*,
    313 Ill. App. 3d 757, 731 N.E. 2d 774 (1999) ............................................................... 10

*Nuveen Invs. v. Hogan*,
    2001 WL 881363 (N.D. Ill. Aug. 2, 2001) ..................................................................... 12

*Owens v. Boyd,*
    235 F.3d 356 (7th Cir. 2000) ........................................................................................... 13

*Palmer v. Neal*,
    602 F. Supp. 882 (N.D. Ga. 1984) .................................................................................. 24

*Pavlik v. Kornhaber*,
    326 Ill. App. 3d 731, 761 N.E.2d 175 (2001) ................................................................ 16

*Pentech Pharm., Inc. v. Par Pharm., Inc.*,
    2007 WL 3223696 (N.D. Ill. Oct. 25, 2007).................................................................. 18

*Pierce v. Atchison, Topeka and Santa Fe Ry. Co.*,
    65 F.3d 562 (7th Cir. 1995) ............................................................................................. 10

*Proin S.A. v. LaSalle Bank, N.A.*,
    223 F. Supp. 2d 960 (N.D. Ill. 2002) .............................................................................. 11

*Props. Unlimited, Inc. Realtors v. Cendant Mobility Servs.*,
    2002 WL 1147460 (N.D. Ill. May 28, 2002) ................................................................. 12

*Reis Robotics USA, Inc. v. Concept Indus., Inc.*,
    462 F. Supp. 2d 897 (N.D. Ill. 2006) .............................................................................. 12

*Richmond v. Nat'l Inst. of Certified Estate Planners*,
    2006 WL 2375454 (N.D. Ill. Aug. 15, 2006) ................................................................. 25

*Rissman v. Rissman*,
    213 F.3d 381 (7th Cir. 2000) ........................................................................................... 12

*Rosenblum v. Travelbyus.com Ltd.*,
    299 F.3d 657 (7th Cir. 2002) ....................................................................................... 2, 18

**Page(s)**

*Russell v. Jim Russell Supply, Inc.*,
    200 Ill. App. 3d 855, 558 N.E.2d 115 (1990) ................................................................. 16

*Sound of Music Co. v. Minn. Mining & Mfg. Co.*,
    477 F.3d 910 (7th Cir. 2007) ....................................................................................... 14

*Tierney v. Vahle*,
    304 F.3d 734 (7th Cir. 2002) ......................................................................................... 3

*United States v. Stump Home Specialties Mfg., Inc.*,
    905 F.2d 1117 (7th Cir. 1990) ..................................................................................... 11

*Vill. of S. Elgin v. Waste Mgmt. of Ill., Inc.*,
    348 Ill. App. 3d 929, 810 N.E.2d 658 (2004) ............................................................. 15

*Ward Enters., Inc. v. Bang & Olufsen America*,
    2003 WL 22859793 (N.D. Ill. Dec. 2, 2003) ............................................................... 19

*Wooley v. Jackson Hewitt, Inc.*,
    540 F. Supp. 2d 964 (N.D. Ill. 2008) .......................................................................... 20

*Zurich Capital Mkts., Inc. v. Coglianese*,
    332 F. Supp. 2d 1087 (N.D. Ill. 2004) ........................................................................ 19

**Statutes**

35 U.S.C. § 116 ........................................................................................................................ 23

35 U.S.C. § 256 ........................................................................................................................ 23

35 U.S.C. § 261 ........................................................................................................................ 23

35 U.S.C. § 262 ........................................................................................................................ 21

35 U.S.C. § 281 ........................................................................................................................ 22

735 ILCS 5/13-205 ................................................................................................................... 24

**Rules**

Fed. R. Civ. P. 10(c) .................................................................................................................. 3

Fed. R. Civ. P. 9(b) ....................................................................................................... 1, 6, 8, 20

Beginning in late 1997, Memorylink's CEO, Peter Strandwitz, and its President, Robert Kniskern, worked with Motorola's Gary Schultz and Jan Wyckoff to design and patent technology that would provide high speed, digitally formatted data transmission. A series of agreements, including various Memoranda of Understanding (MOUs), established and defined the parties' rights and relationships, and also assigned the individuals' rights in the technology to their employers – Memorylink and Motorola. Ten years later, Memorylink has decided it no longer wants to share the rights to the technology with Motorola. To renege on the deals it struck, Memorylink now claims its technologists were somehow duped by Motorola.

Memorylink has filed a 47-page Complaint with 19 counts,[1] basically throwing mud at the wall in hopes some of it might stick. But despite its length, Memorylink's Complaint is really very simple: nearly every claim rises or falls based on Memorylink's allegations of fraud. And, as set forth in detail below, each and every claim suffers from fatal deficiencies, including:

- Memorylink fails to plead fraud with specificity under Rule 9(b).

- The vast majority of Memorylink's claims arose in 1998 and are barred by the statute of limitations.

- Memorylink's allegations of fraud are based on statements of law which, as matter of law, do not give rise to a fraud claim.

- As a matter of law, Memorylink cannot establish fraud when it contributed to, negotiated, and had an opportunity to review (for months) the contractual terms it now claims are fraudulent.

Furthermore, Memorylink's claims are wholly contradicted by numerous allegations and by the agreements and other documents Memorylink attached to its Complaint. Memorylink's attempt to artfully plead around the attached documents is futile: when a plaintiff tries such

---

[1] Though Memorylink's Complaint contains twenty counts, there is no Count XVI, so there are nineteen claims rather than twenty. (Compl. ¶¶ 264-69)

a tactic, the language in the documents trumps contrary allegations.[2]  Memorylink's Complaint

exhibits show that Memorylink's claims are frivolous because, *inter alia*:

- Memorylink itself drafted a Technology Overview proposing patent opportunities based on **both** parties' technologies.  (Compl. Ex. 4 at 1)  This document formed the basis for the patent application Memorylink now claims it was fraudulently induced to sign.  (Compl. ¶¶ 56, 78-79)

- The parties negotiated numerous MOUs and a Patent Agreement in which they agreed they were independent contractors working at arms length on concepts that combined both their technologies.  In these documents, the parties agreed that they would both get rights in any resulting technology.  (Compl. Exs. 3, 6, 13, 14, 16)

- Memorylink was aware that Schulz and Wyckoff would be listed as inventors on the patent application for at least two months before the application was finalized, but did not object and in fact signed other documents listing Schulz and Wyckoff as inventors.  (Compl. Exs. 5, 7, 8, 9)

- By its own admission, Memorylink has long had the advice of counsel on the very issues it now seeks to bring in this lawsuit, ten years after the relevant deals were struck.  (Compl. ¶ 119, Compl. Ex. 17)

Motorola recognizes that the arguments set forth herein are long and detailed, but it

respectfully asks this Court to bear with it and review each of the bases for dismissal.  Motorola

is confident that when the Court examines Memorylink's nineteen counts, it will find that none

of them withstand scrutiny, and will therefore dismiss this case with prejudice.  (For the Court's

convenience, attached as Appendix A to the back of this Memorandum is a chart that

summarizes the Basis for Dismissal of Claims)

---

[2]  *See, e.g.*, *Centers v. Centennial Mortgage, Inc.,* 398 F.3d 930, 933 (7th Cir. 2005) (language in documents attached to a complaint supersedes any contrary allegations); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (same); *see also Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) (a plaintiff who attaches documents to his complaint that undermine his claims will thus plead himself out of court). Motorola has provided this Court with an Appendix including all cases and authorities cited in this Memorandum.

## BACKGROUND[3]

In late 1997, Peter Strandwitz, then CEO of Plexus Corp., approached Motorola about a possible business relationship.  (Compl. ¶¶ 11-17; Compl. Ex. 3)  Strandwitz proposed to combine video compression technology being developed by himself and Robert Kniskern (then President of Adaptive Micro-Ware) with 5GHz radio technology being developed by Motorola, the goal being to create technology capable of wirelessly transmitting real-time video.  (*Id.*)  After multiple discussions, those parties negotiated a MOU in January of 1998 to set forth the terms of their relationship.[4]  (Compl. ¶¶ 15-18; Compl. Ex. 3 at 1)  The MOU provided that the parties to the agreement would develop a jointly owned "preliminary specification" regarding the possibilities of combining their technologies.  (Compl. Ex. 3 at 1)  The parties agreed that if their efforts were fruitful, both sides would get "some rights pertaining to the manufacture and distribution of the Device."  (*Id.*)  The parties also agreed that they were "independent contractors in all aspects" and that "[n]othing in this MOU will be interpreted to constitute or create a joint venture, partnership, teaming arrangement or other formal business entity or fiduciary relationship."  (*Id.* at 2)

In February of 1998, Memorylink prepared a lengthy document entitled "Wireless Multimedia Core Technology Overview" (Technology Overview), allegedly "without any assistance or input from Motorola . . . in anticipation of filing one or more patent applications." (Compl. ¶ 27)  The Technology Overview "describe[d] the development path for a core

---

[3]  The Background facts set forth herein are drawn entirely from Memorylink's Complaint and the Exhibits attached thereto, which are incorporated into the Complaint for all purposes.  *See* Fed. R. Civ. P. 10(c); *Centers*, 398 F.3d at 933; *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).  Motorola has provided this Court with a copy of Memorylink's Complaint and its supporting Complaint exhibits.

[4]  Memorylink alleges that the first MOU was later assigned to Memorylink.  (Compl. ¶ 26; Compl. Ex. 3 at 2)  Memorylink was incorporated on January 28, 1998, almost immediately after the first MOU was entered.  (Compl. ¶¶ 24-25, Compl. Ex. 3 at 2)  Strandwitz became Memorylink's CEO, and Kniskern became its President and Director, and they continued through Memorylink the development efforts they had begun in their roles at Plexus and Adaptive.  (*Id.* at ¶¶ 24-25; Compl. Ex. 16 at 2)

[wireless] technology" and set forth "resultant patent opportunities." (Compl. Ex. 4 at 1)

Notably, the Technology Overview explicitly stated that the proposed concepts were based on

both parties' technologies. (*See id.* (stating that the proposed technology and patents were based

on "[t]he creation by Motorola, Inc. of the first commercially viable integrated circuitry to

provide high speed, digitally formatted data transmission [in the 5GHz] frequency")))

Memorylink sent the Technology Overview to Motorola for review. (Compl. ¶ 28)

On April 13, 1998, Motorola's Hugh Dunlop sent Memorylink a letter stating that

Motorola had reviewed the Technology Overview "from the point of view of identifying a basis

for patent applications that might be filed as a result of the design effort between Motorola and

MemoryLink." (Compl. ¶¶ 44-45; Compl. Ex. 5 at 1) Dunlop proposed that the parties file "one

or more joint patent applications." (*Id.* at ¶ 45; Compl. Ex. 5 at 1) He volunteered Motorola's

patent department to file the applications, but stated that "Motorola is open to alternative

proposals if this is not to your satisfaction." (Compl. Ex. 5 at 2) Dunlop also included a Joint

Patent Filing Agreement (the Patent Agreement) for Memorylink to review. (Compl. ¶ 61)

Finally, Dunlop stated that he understood Memorylink's Strandwitz and Kniskern had jointly

developed the ideas to be patented with Motorola's Gary Schulz and Jan Wyckoff, and asked

Memorylink to "[p]lease let me know if you or [Kniskern] disagree with this determination of

inventorship." (Compl. ¶ 46; Compl. Ex. 5 at 1)

On April 21, 1998, the parties met to discuss potential patent applications. (Compl. ¶ 62)

At that meeting, Strandwitz and Kniskern signed an invention disclosure form listing themselves,

Schulz and Wyckoff as joint inventors of the ideas to be patented. (Compl. ¶63; Compl. Ex. 7)

On May 1, 1998, the parties finalized the Patent Agreement. (Compl. ¶ 61; Compl. Ex. 6 at 1)

In the Patent Agreement, the parties again agreed that the concepts to be patented were based on

both their technologies and stated that the Technology Overview set forth the "state of progress" of their efforts.  (Compl. Ex. 6 at 1)  The parties agreed to "protect inventions jointly devised," and that all such inventions would be jointly owned.  (*Id.*)  As in the first MOU, the parties agreed they were independent contractors.  (*Id.*)

In June of 1998, Kniskern, Schulz, Strandwitz and Wyckoff executed an Assignment to transfer their rights to Memorylink and Motorola.  (Compl. ¶ 69; Compl. Ex. 8)  As contemplated by the prior agreements, the Assignment provided that Memorylink and Motorola would hold "jointly and equally, the entire right, title and interest in" any resulting patents.  (Compl. Ex. 8 at 1)  On June 22, 1998, Motorola filed a patent application for concepts jointly developed pursuant to the MOU and outlined in the Technology Overview.  (Compl. ¶ 75; Compl. Ex. 9)  As with all previous documents, the application listed Kniskern, Schulz, Strandwitz and Wyckoff as inventors.  (Compl. ¶ 76)  The application was granted as U.S. Patent No. 6,522,352 (the '352 Patent) on February 18, 2003.  (Compl. ¶¶ 5, 75; Compl. Ex. 1)

On August 27, 2001, and again on January 24, 2003, Memorylink and Motorola executed three additional MOUs that discussed possible future development efforts between the parties.  (Compl. ¶¶ 105, 117; Compl. Exs. 13-14, 16)  As with the first MOU, these MOUs specified that the parties were independent contractors and would pay their own costs for evaluating business opportunities.  (Compl. Ex. 13 at 1-2; Compl. Ex. 14 at 1-2; Compl. Ex. 16 at 1-2)  The MOUs likewise provided that either party could discontinue its efforts at any time and for any reason.  (Compl. Ex. 13 at 2; Compl. Ex. 14 at 2; Compl. Ex. 16 at 2)

On January 27, 2003, Memorylink's lawyers, Banner & Witcoff, Ltd., filed with the Patent Office a divisional application for claims "not elected in the originally-filed patent application."  (Compl. Ex. 17)  In that application, Banner listed the same inventors as were

listed in the original application, including Motorola's Schulz and Wyckoff.[5]  (Compl. ¶¶ 118-19)  Memorylink and Banner thereafter tried to renegotiate the parties' contractual relationship, including the Assignment.  Seeking to become the sole owner of the '352 Patent, Memorylink asked Motorola to "transfer the title [of the '352 Patent] rights to MemoryLink." (Compl. Ex. 18; *see also* Compl. Exs. 17, 21)  Motorola repeatedly declined to relinquish its rights.  (Compl. Ex. 19; Compl. ¶ 144)  Unable for the last four years to convince Motorola to give up its contractual right to joint ownership, Memorylink now brings this suit to void its contracts with Motorola.

## ARGUMENT

For purposes of this Motion to Dismiss, we divided Memorylink's nineteen claims into four categories:  (1) Fraud/Negligence; (2) Contract; (3) Other Tort; and (4) Intellectual Property.

## I.    MEMORYLINK HAS FAILED TO STATE A FRAUD OR NEGLIGENT MISREPRESENTATION CLAIM.

Memorylink alleges that Motorola committed common law fraud (Counts VIII, XVIII and XX) and promissory fraud (Count IX), and that Motorola made negligent misrepresentations (Count X).  In Count II Memorylink also seeks to invalidate the Assignment based on allegations of fraud.  (Compl. ¶ 158)  These counts fail to state a claim and are time-barred.

### A.    Memorylink Has Not Pled Fraud With Particularity.

To survive a motion to dismiss, a plaintiff must plead the circumstances of the alleged fraud with particularity by setting forth specific, factual details – "the who, what, when, where, and how: the first paragraph of any newspaper story."  *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990); *see also Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 987-88 (N.D. Ill. 2006) (conclusory assertions and generalized statements do not satisfy Rule 9(b)).  Memorylink has not met this strict pleading requirement.

---

[5]  Banner also filed a continuation application from the original application on October 25, 2007, again including Motorola's Schulz and Wyckoff as inventors.  (Compl. ¶¶ 146-47)

1.    **<u>Memorylink has not pled common law fraud with specificity.</u>**

With respect to its common law fraud claims, Memorylink alleges that "Motorola made false statements and omissions of material fact," but provides no details or specificity regarding the alleged fraudulent conduct.  (Compl. ¶¶ 209, 278, 298)  Memorylink does not identify who made the alleged false statements, what each of the specific statements were, when they occurred, where they were made, or how they were communicated.  This failure alone defeats Memorylink's fraud claims.  *See In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007) (dismissing fraud claim for failure to "specify the time frame or method through which any other alleged misrepresentations were made"); *Ellis v. Allstate Ins. Co.*, 479 F. Supp. 2d 782, 790 (N.D. Ill. 2006) (dismissing fraud claim for failure to specify alleged misstatements).

2.    **<u>Memorylink has not pled promissory fraud with specificity.</u>**

Memorylink's promissory fraud claim is the flip-side of its common-law fraud claims. While Memorylink claims fraud to get out of agreements it no longer sees as advantageous, it also alleges that Motorola promised to enter into other agreements with Memorylink, but never actually did so.[6]  (Compl. ¶ 219)  Promissory fraud is a heavily disfavored cause of action, reflecting the policy that a plaintiff should not be able to seek tort damages for a claim based on mere broken promises.  *See Desnick v. Am. Broadcasting Cos., Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995); *Int'l Star Registry*, 451 F. Supp. 2d at 988 (citing *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992)).  Accordingly, the pleading bar for promissory fraud is deliberately high, and broken promises are actionable only if they are "particularly egregious or . . . embedded in a larger pattern of deceptions or enticements that reasonably induces reliance and against which the law ought to provide a remedy."  *Desnick*, 44 F.3d at 1354.

---

[6]  Promissory fraud involves the same general elements as common law fraud, but is based on false promises of future conduct rather than false statements of past or current fact.  *See Lillien v. Peak6 Invs., L.P.*, 417 F.3d 667, 671 (7th Cir. 2005); *Houben v. Telular Corp.*, 231 F.3d 1066, 1074 (7th Cir. 2000).

In order to survive a motion to dismiss, Memorylink must not only satisfy the strict pleading requirements of Rule 9(b), but must also plead specific facts establishing Motorola's objective manifestations of fraudulent intent. *Int'l Star Registry*, 451 F. Supp. 2d at 988; *Clark v. Robert W. Baird Co., Inc.*, 142 F. Supp. 2d 1065, 1073-74 (N.D. Ill. 2001) ("In order to survive the pleading stage, a claimant must be able to point to *specific, objective manifestations of fraudulent intent* – a scheme or device." (internal quotation and citation omitted)); *Hollymatic Corp. v. Holly Sys., Inc.*, 620 F. Supp. 1366, 1369 (N.D. Ill. 1985) (same).

As an initial matter, Count IX does not satisfy Rule 9(b) since Memorylink only generally alleges that "Motorola made false promises" to enter into definitive agreements. (Compl. ¶ 219)  Memorylink does not identify who made the alleged promises, what was communicated, when and where the alleged promises were made, or how they were conveyed. *See*, *e.g., Int'l Star Registry*, 451 F. Supp. 2d at 989 (dismissing promissory fraud claim for failure to plead with the specificity required by Rule 9(b)).  In addition, Memorylink fails to identify any specific, objective facts that show Motorola made promises it did not intend to keep. (*See* Compl. ¶¶ 219-22)  Memorylink's conclusory assertion that Motorola promised definitive agreements to induce Memorylink to share information is legally insufficient. *See, e.g.*, *Int'l Star Registry*, 451 F. Supp. 2d at 989 (plaintiff's general assertion of defendant's false promise failed to state a claim); *Brusilovsky v. Figgie Int'l*, No. 94 C 1506, 1995 WL 330809, at *6 (N.D. Ill. May 30, 1995) ("One must point to specific, objective manifestations of intent and specifically outline the scheme to defraud." (citation omitted)), Tab 8.

Furthermore, Memorylink's own allegations and Complaint exhibits directly contradict its claim.  For instance, Memorylink alleges that the parties entered four MOUs to define their joint development efforts.  (Compl. ¶¶ 18, 105-07, 117)  But each MOU explicitly stated that the

parties did **not** have a definitive relationship, were **not** legally obligated to enter into one, and that either party could terminate its development activities unilaterally at any time without liability.  (Compl. Exs. 3, 13, 14, 16)  Count IX is also undermined by Memorylink's allegations that it sought definitive agreements – and Motorola declined to enter into them – on several occasions.  (Compl. ¶¶ 116, 124-26, 135-36, 142-43)  In short, Memorylink's claim is a baseless attempt to plead around its own exhibits, precisely what the "deliberately high" bar of promissory fraud is meant to prevent.[7]  *Int'l Star Registry*, 451 F. Supp. 2d at 988.

   **B.**     **Memorylink Has Not Pled The Elements Of Fraud.**

      **1.**     **The misrepresentations Memorylink pleads in its common law fraud claims are undermined by its own allegations and Complaint exhibits.**

Memorylink's actions, knowledge, and course of conduct – as alleged in the Complaint and reflected in the attached Complaint exhibits – contradict any claim that Motorola made false misrepresentations.  For instance, the first MOU, entered shortly after Strandwitz initially approached Motorola, set forth the parties' understanding that the now-disputed technology would be jointly owned – squarely contradicting Memorylink's allegation that Motorola tricked it into giving up rights.[8]  (Compl. ¶ 18; Compl. Ex. 3 at 1)  And the Technology Overview, for which Memorylink claims sole authorship, explicitly stated that the proposed concepts and patent opportunities were based on **both parties**' technologies.  (Compl. ¶ 27, Compl. Ex. 4 at 1)  Memorylink even alleges that the original patent application was based on the Technology Overview, yet at the same time claims the application was fraudulent.  (Compl. ¶¶ 56, 78-79)  Memorylink can't have it both ways: the documents Memorylink negotiated and drafted defeat its common law fraud claims.

---

[7]  *See supra* note 2 (discussing well-established rule that a plaintiff will plead himself out of court by attaching documents to his complaint that contradict his allegations).

[8]  Notably, the first MOU predates Memorylink's allegations of fraudulent conduct.  (*See* Compl. ¶¶ 18, 39)

9

### 2. Representations of law do not give rise to fraud claims.

Memorylink alleges that Motorola committed common law fraud by "failing to **explain the legal standard** of who qualifies as an inventor" or "**the legal consequences**" of the Assignment. (Compl. ¶¶ 211-213, 217, 279, 281, 298, 301 (emphasis added)) But these allegations are not misrepresentations of material fact, but of law, and cannot form the basis of a fraud claim.[9] *See Hoseman v. Weinschneider*, 322 F.3d 468, 476 n.2 (7th Cir. 2003) (misrepresentations or conclusions of law do not generally give rise to fraud claims in Illinois); *Pierce v. Atchison, Topeka and Santa Fe Ry. Co.*, 65 F.3d 562, 569 (7th Cir. 1995) (a business party is not justified in relying on another's representation of law, as both parties are presumed capable of determining the law); *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, No. 05-7097, 2008 WL 630883, at *8 (N.D. Ill. Mar. 5, 2008) (same), Tab 33.

### 3. As a matter of law, Memorylink cannot establish justifiable reliance.

**Common Law Fraud Claims:**

"[A] party who signs a written agreement and has had an opportunity to review it may not subsequently claim that he was fraudulently induced to enter into the agreement based on misrepresentations as to its terms." *Nilsson v. NBD Bank of Ill.*, 313 Ill. App. 3d 757, 762, 731 N.E. 2d 774, 783 (1999) (citation omitted); *see also Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 882 (7th Cir. 2005) ("[A] party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts." (internal quotation and citation omitted)); *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (a party may not enter a contract with its eyes closed to available information and then claim it did not understand the agreement); *Proin S.A. v.*

---

[9] In any event, assuming *arguendo* that an affirmative misstatement of law were actionable, a "failure to explain" the law is certainly not.

*LaSalle Bank, N.A.*, 223 F. Supp. 2d 960, 965 (N.D. Ill. 2002) ("[A] party who agrees to terms in writing without understanding or investigation them does so at his own peril.").[10]

There can be no dispute that Memorylink was aware of the terms in the original patent application and the Assignment for months before those documents were finalized in June of 1998. As noted above, the first MOU and the Technology Overview (prepared in January and February of 1998, respectively) were consistent with the original application and Assignment. Dunlop's letter of April 13, 1998 invited Memorylink to clarify any concerns regarding inventorship, and the Patent Agreement specified that patents resulting from the ideas set forth in the Technology Overview would be jointly owned. (Compl. ¶¶ 46, 61; Compl. Ex. 5 at 1; Compl. Ex. 6 at 1) Thus, even if Memorylink was somehow "confused" about the inventors listed in the patent application or the effect of the Assignment, as a matter of law Memorylink cannot show that its reliance on any purported misrepresentations Motorola made about those documents was justifiable. *See, e.g.*, *Davis*, 396 F.3d at 883 (mortgagee who had three days to review contract and could have retained an attorney to review and explain the documents could not establish reliance); *United States v. Stump Home Specialties Mfg., Inc.*, 905 F.2d 1117, 1120 (7th Cir. 1990) (a party cannot claim fraud where he signs an agreement without understanding it or consulting a lawyer).

**Promissory Fraud Claim:**

Memorylink's Complaint exhibits also doom the justifiable reliance element of its promissory fraud claim. Each of the MOUs attached to the Complaint states that the parties were engaged in development efforts as independent contractors and were ***not*** obligated to enter into

---

[10] This rule applies with particular force where, as here, the parties to an agreement are sophisticated businesses, and the negotiating individuals sophisticated businessmen. *See Heartland Fin. USA, Inc. v. Fin. Insts. Cap. Appreciation Partners, I, L.P.*, No. 02 CV 3982, 2002 WL 31819008, at *4-5 (N.D. Ill. Dec. 12, 2002), Tab 28; *N. Trust Co. v. VIII S. Mich. Assocs.*, 276 Ill. App. 3d 355, 366, 657 N.E. 2d 1095, 1103 (1995).

the definitive agreements Memorylink now claims Motorola promised. (Compl. Exs. 3, 13, 14, 16) Memorylink also alleges that it sought to negotiate a definitive agreement with Motorola on several occasions, but Motorola declined. (Compl. ¶¶ 116, 121, 124-26, 135-36, 142-43) In light of the MOUs and Motorola's alleged reluctance to enter into a definitive written agreement, it would have been utterly unreasonable for Memorylink to rely on oral promises to the contrary. Memorylink's promissory fraud claim thus fails as a matter of law. *See, e.g.*, *Rissman v. Rissman*, 213 F.3d 381, 383-84 (7th Cir. 2000) (it is not justifiable for a party to rely on promises that are contradicted by contractual terms); *Props. Unlimited, Inc. Realtors v. Cendant Mobility Servs.*, No. 01 C 8375, 2002 WL 1147460, at *3 (N.D. Ill. May 28, 2002) (plaintiff's reliance on alleged oral promises that were contrary to written contracts was not justifiable), Tab 55; *Nuveen Invs. v. Hogan*, No. 00 C 7489, 2001 WL 881363, at *6 (N.D. Ill. Aug. 2, 2001) (dismissing promissory fraud claim because alleged misrepresentation was contrary to terms in executed agreement), Tab 48.

### C.    Memorylink Has Not Stated A Negligent Misrepresentation Claim.

To establish a negligent misrepresentation claim, a plaintiff must show that the defendant had a duty to communicate accurate information. *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 218 Ill. 2d 326, 334-35, 843 N.E.2d 327, 334-35 (2006). But such a duty exists only if the defendant is a commercial information supplier, one who is in the business of supplying information for others to use in business transactions. *See id.* at 334-36; *see also Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 912 (N.D. Ill. 2006) (when information supplied by defendant is ancillary to sale of product or service, defendant is not in the business of supplying information). Motorola is a technology company, not a commercial information supplier, so Count X must be dismissed.

D.     **Memorylink's Count II Is Not A Valid Claim**.

In Count II, Memorylink asks the Court to invalidate the Assignment because it "was executed under conditions of fraud." (Compl. ¶ 158)  Count II thus alleges fraudulent inducement, just like the common law fraud claims (*compare* Compl. ¶¶ 158-64 with Compl. ¶¶ 211-17), and suffers from the same deficiencies discussed herein regarding those claims.  Furthermore, the invalidation Memorylink seeks in Count II is not a stand-alone claim, but potential relief if Memorylink could prevail on its fraud claims.[11]  *See Cozzi*, 250 F.3d at 574 (an agreement may be invalidated on the basis of fraud); *Equity Capital Corp. v. Kreider Transp. Service, Inc.*, 967 F.2d 249, 253 (7th Cir. 1992) (same).  Count II should therefore be dismissed.

E.     **Memorylink's Fraud And Misrepresentation Claims Are Time Barred**.

The statute of limitations for fraud and negligent misrepresentation is five years, and begins to run when the plaintiff knew or should have known of the facts material to its claim. *See Brown v. New York Life Ins. Co.,* No. 06 C 3339, 2008 WL 151390, at *2 (N.D. Ill. Jan. 15, 2008), Tab 7; *Clark,* 142 F. Supp. 2d at 1074-75; *Horbach v. Kaczmarek,* 934 F. Supp. 981, 985-86 (N.D. Ill. 1996).

1.     **Memorylink's common law fraud and misrepresentation claims are time-barred**.

Memorylink's common law fraud, negligent misrepresentation, and invalidation claims all arise from the original patent application and the Assignment.  (*See* Compl. ¶¶ 158-64, 211-13, 229-36, 279-82, 298-301)  Memorylink was aware of the facts material to its claims – that Schulz and Wyckoff were listed on the original patent application and that the Assignment provided for joint ownership of any resulting patents – when those agreements were executed in June of 1998.  *See Owens v. Boyd,* 235 F.3d 356, 359 (7th Cir. 2000) (knowledge of facts, not

---

[11] Indeed, Memorylink twice asks for the Assignment to be held invalid in its Prayer for Relief.  (Compl. 45 ¶ C, 46 ¶ L)

13

their legal significance, triggers statute of limitations); *see also Horbach,* 934 F. Supp. at 985-86

(dismissing fraud claim on statute of limitations grounds because plaintiff was aware of facts

suggesting that equipment sold to him by defendant might be deficient, and therefore should

have inquired further).  If Memorylink did not think Schulz and Wyckoff had contributed to the

ideas being patented, or did not understand its rights under the Assignment, it was on inquiry

notice at that point, and the statute therefore expired in June of 2003.

In any event, the Complaint exhibits show that Banner was advising Memorylink on the

same issues that are the subject of Memorylink's fraud and misrepresentation claims by no later

than January of 2003.  Specifically, Banner filed the divisional patent application on January 27,

2003, listing the same inventors that Memorylink now claims were deceptively included by

Motorola.[12]  (Compl ¶¶ 118-119; Compl. Ex 17)  And Banner's January 29, 2003 letter shows

that Banner was aware of and negotiating the parties' rights under the Assignment.  ( Compl. Ex.

17)  Banner's involvement most certainly began the statute running.  *See, e.g.*, *Sound of Music*

*Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 919-20 (7th Cir. 2007) (when plaintiff is aware

of facts that may give rise to a claim and consults an attorney, the statute begins to run even if

the attorney does not recognize the claim); *Muniz v. Rexnord Corp.*, No. 04 C 2405,

2006 WL 1519571, at *4 (N.D. Ill. May 26, 2006) (same), Tab 43; *Ahmed v. Quinn*,

No. 95 C 6673, 1996 WL 388418, at *5-7 (N.D. Ill. Jul. 9, 1996) ("Although Ahmed's attorney

had Quinn's letters, Ahmed's attorney failed to recognize or file a claim in federal court.

Allowing that failure to insulate Ahmed fom [sic] the statutes of limitation would emasculate the

statutes."), Tab 2.  The common law fraud claims thus expired no later than January 2008.

---

[12] Notably, one who files a divisional patent application is required to make an independent assessment of inventorship for the claims it is filing.  *See* Manual for Patent Examining Procedure § 201.03(E), available at http://www.uspto.gov/web/offices/pac/mpep/documents/0200_201_03.htm#sect201.03 (attached as Tab 74 to Appendix of Authorities).

### 2.    Memorylink's promissory fraud claim is time-barred.

In Count IX, Memorylink claims that Motorola promised a definitive business relationship, but does not allege when the promises were made.  (Compl. ¶ 219)  The lack of specificity does not matter, for Memorylink also alleges that on April 30, 2003, Motorola informed Memorylink that it was no longer interested in Memorylink's wireless video technology and was ceasing its development efforts.  (*Id.* ¶ 125)  Thus, if Motorola promised a future relationship, Memorylink knew that Motorola did not intend to keep its promise as of that date, and Memorylink's promissory fraud claim expired before this lawsuit was filed.

## II.    MEMORYLINK'S CONTRACT CLAIMS SHOULD BE DISMISSED.

### A.    Memorylink's Claim That The Assignment Is Void Should Be Dismissed.

In Count III, Memorylink claims that the Assignment transferring ownership of the '352 Patent from Strandwitz, Kniskern, Schulz and Wyckoff to Memorylink and Motorola should be declared void for lack of consideration.  (Compl. ¶ 170)  As an initial matter, Memorylink cannot challenge the consideration *Strandwitz* and *Kniskern* (the signators to the Assignment) received, since those individuals are not parties to this lawsuit.  And Memorylink certainly cannot claim that it did not receive consideration, since it is by virtue of that agreement that Memorylink obtained rights to the invention.[13] (Compl. ¶ 69; Compl. Ex. 8 at 1)  The rights Memorylink received are more than adequate consideration to render the Assignment valid.[14]  *See Vill. of S. Elgin v. Waste Mgmt. of Ill., Inc.*, 348 Ill. App. 3d 929, 940, 810 N.E.2d 658, 669 (2004) (consideration is construed broadly as any act or promise that benefits one party or is a detriment to the other); *see also Kalis v. Colgate-Palmolive Co.,* 337 Ill. App. 3d 898, 900,

---

[13] Moreover, if the Assignment is invalid as Memorylink claims, it is invalid to both Memorylink and Motorola.  If that is the case, Memorylink does not have standing to bring its infringement claim (Count IV) or conversion claims (Counts XI, XVII, XIX).  (*See infra* at 21-22)

[14] This fact is further evidenced by Memorylink's subsequent filing of divisional and continuation patent applications, which it could not have done without the Assignment.  (Compl. ¶¶ 118, 146)

787 N.E.2d 182, 183 (2003) ("Any act or promise that benefits one party or disadvantages the other is sufficient consideration . . . ."). That Memorylink now second-guesses the value of its rights does not render the Assignment void. *See Kalis v. Colgate-Palmolive Co.*, 357 Ill. App. 3d 172, 175, 827 N.E.2d 1098, 1101 (2005) ("[O]ur research has revealed no precedent from Illinois or a sister state in which a contract was held to be invalid because the consideration offered by a party has declined in perceived value to the other party."); *Russell v. Jim Russell Supply, Inc.*, 200 Ill. App. 3d 855, 860, 558 N.E.2d 115, 120 (1990) (the adequacy of consideration is determined as of the time the contract was entered).

Count III is also barred by the statute of limitations. Though couched as a contract claim, Count III is just another version of the common law fraud claims; Memorylink again alleges that it was duped into agreeing to the Assignment but did not receive a benefit from it. (Compl. ¶¶ 72-73, 170) The claim is thus governed by the five-year fraud statute of limitations. *See, e.g.*, *Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 747-48, 761 N.E.2d 175, 189 (2001) (the applicable statute of limitations is determined by the alleged injury, not plaintiff's designation of the claim); *Armstrong v. Guigler*, 174 Ill. 2d 281, 286-87, 673 N.E.2d 290, 293-94 (1996) (holding that statute of limitations for fraud, not contract, governed plaintiff's claim). Count III is thus time-barred for the same reasons Memorylink's common law fraud claims are. (*See supra* at 13-15)

**B.**     **<u>Memorylink Fails To State A Breach Of Contract Claim.</u>**

Although Memorylink attached twenty-one exhibits to its Complaint, it did not attach the non-disclosure contracts it claims were breached. Memorylink does not even allege a specific breach, but simply states that Motorola breached the agreements by "disclosing . . . confidential and proprietary information to third parties." (Compl. ¶ 188) Memorylink does not describe the parties' obligations under the contracts, the contracts' effect or scope, how Motorola supposedly breached them, who Motorola allegedly disclosed information to, or how the alleged breach

caused Memorylink harm.  (*Id.* at ¶¶ 187-96)  Memorylink's failure to so much as plead the legal

effect of the contracts it claims were breached dooms Count VI.[15]  *See*, *e.g.*, *Burke v. Lakin Law*

*Firm, PC*, No. 07-cv-0076, 2008 WL 64521, *2 (S.D. Ill. Jan. 3, 2008) (dismissing claim

because plaintiff "should have attached the exhibit . . . or else pled the terms of the contract"),

Tab 9.

Count VI is also barred by the statute of limitations.  In Count VI, Memorylink claims

that Motorola used the non-disclosure agreements to obtain confidential information, then used

that information to its own advantage.  (Compl. ¶¶ 188-90, 217)  This claim is thus part and

parcel of Memorylink's allegations of fraud, so the five-year statute of limitations for fraud

actions applies.  *See*, *e.g.*, *Armstrong*, 174 Ill. 2d at 286-87, 673 N.E.2d at 293 (statute of

limitations for contract applies only where alleged injury arises solely from defendant's breach

of contractual terms).  The only conduct pled in the Complaint that is even arguably a breach

occurred in June of 1998, when Motorola allegedly demonstrated the parties' technology to Sony

Corporation without Memorylink present.[16]  (Compl. ¶ 88)  Any claim based on that disclosure is

barred.

---

[15] Memorylink also fails to plead an essential element of its cause of action – its own performance.  *Burke v. Lakin Law Firm, PC*, No. 07-cv-0076, 2008 WL 64521, *2 (S.D. Ill. Jan. 3, 2008) (plaintiff's failure to allege its own performance is likewise grounds for dismissal), Tab 9.

[16] Notably, Memorylink acknowledges that it learned about the demonstration almost immediately after it occurred.  (Compl. ¶ 89)

III.    **MEMORYLINK'S OTHER TORT CLAIMS MUST BE DISMISSED.**

Consistent with its strategy of claiming anything and everything in its Complaint,

Memorylink brings three other miscellaneous tort claims:  (A) breach of fiduciary duty;

(B) tortious interference; and (C) unjust enrichment.  Those claims are legally deficient.

A.    **Memorylink Fails To State A Claim For Breach Of Fiduciary Duty.**

Once again, the agreements attached to the Complaint contradict Memorylink's

allegation that Motorola was Memorylink's fiduciary.  The January 1998 MOU, attached as

Exhibit 3 to the Complaint, states that:

> Each of the parties will act as, and will be, ***independent contractors in all aspects***
> of this MOU.  ***No party will act or have authority to act as an agent for any***
> ***other party for any purpose.***   Nothing in this MOU will be interpreted to
> constitute or create a joint venture, partnership, teaming arrangement or other
> formal business entity ***or fiduciary relationship between the parties hereto***. . . .
> (Compl. Ex. 3 ¶ 7 (emphasis added))

Each and every other agreement attached to the Complaint includes similar clauses stating that

the parties were independent contractors with limited obligations to one another.  (Compl. Ex. 6

at 3; Compl. Ex 13 at 1-2; Compl. Ex. 14 at 1-2; Compl. Ex. 16 at 1-2)  The language in these

documents override Memorylink's contrary allegations as a matter of law.  *See Centers*, 398 F.3d

at 933; *Rosenblum*, 299 F.3d at 661; *see also Pentech Pharm., Inc. v. Par Pharm., Inc.*,

No. 04 C 3149, 2007 WL 3223696, at *7-8 (N.D. Ill. Oct. 25, 2007) (finding that sophisticated

companies in arms-length commercial transaction were not fiduciaries where agreements stated

the parties were independent contractors), Tab 52.

Memorylink's claim is even more incredible in light of the fact that Memorylink is

a sophisticated technology company and the individuals that were dealing with Motorola

(Strandwitz and Kniskern) were educated, seasoned businessmen.[17]  (Compl. ¶¶ 11-17, 24)

Courts will not recognize a fiduciary relationship at the pleading stage absent a "significant

degree of dominance and superiority of one party over the other."  *See N. Trust Co. v. MS Sec.

Servs., Inc.*, Nos. 05 C 3370, 2006 WL 695668, at *11-12 (N.D. Ill. Mar. 15, 2006) (a fiduciary

duty exists only where "the more powerful entity has substantial control over the affairs of its

counterpart"), Tab 44; *Zurich Capital Mkts., Inc. v. Coglianese,* 332 F. Supp. 2d 1087, 1121

(N.D. Ill. 2004) (requiring "significant degree of dominance and superiority of one party over

another") (internal quotation and citation omitted)); *Ward Enters., Inc. v. Bang & Olufsen*

*America*, No. 02 C 7640, 2003 WL 22859793, at *2 (N.D. Ill. Dec. 2, 2003) (plaintiff's claim

that it relied on defendant's "superior knowledge and bargaining power" in executing agreement

did not show fiduciary relationship absent significant dominance by defendant), Tab 65;

*In re Apex Auto. Warehouse L.P.,*  Nos. 96 B 04594, 2000 WL 220497, at *10 (N.D. Ill. Feb. 18,

2000) (existence of "trust and confidence" alone – or even a slightly dominant business position

– is insufficient to give rise to a fiduciary relationship), Tab 34.  Memorylink does not even

allege that Motorola exercised any dominance and superiority over it, so its fiduciary duty claim

fails as a matter of law.

### B.    Memorylink's Claim For Tortious Interference Should Be Dismissed.

Memorylink's tortious interference claim fails for several reasons.  *First,* Memorylink

expressly premises its tortious interference claim on allegations of fraud,[18] but Memorylink again

fails to plead the alleged fraud with the requisite specificity.  *See Borsellino v. Goldman Sachs*

---

[17] Indeed, from no later than January 2003 on, Strandwitz, Kniskern and Memorylink were represented by counsel. (Compl. ¶ 120; Compl. Ex. 17)

[18] Compl. ¶ 248 ("Motorola intentionally and unjustifiably disrupted Memorylink's relationship by exploiting Memorylink's confidential and proprietary information, fraudulently inducing Memorylink to assign rights to the Known Patent . . . .")

*Group, Inc.*, 477 F.3d 502, 508 (7th Cir. 2007) (tortious interference claim premised on fraud must meet the strict pleading requirements of Rule 9(b)).

*Second*, tortious interference must be based on a defendant's actions toward third parties – the defendant must have intentionally and unjustifiably interfered with a third-party business relationship the plaintiff reasonably expected to enter. *See Cohabaco Cigar Co. v. U.S. Tobacco Co.*, No. 98 C 1580, 1999 WL 988805, at *13 (N.D. Ill. Oct. 22, 1999), Tab 14.  Nowhere in its Complaint does Memorylink identify a third party that it had a business expectancy with, much less allege that Motorola interfered with such a relationship.  Rather, Count XII alleges that Memorylink forsook other opportunities by doing business with Motorola.  (*See* Compl. ¶ 246 ("Memorylink's exclusive rights to the Invention had a high probability of future economic benefit to Memorylink by [sic] entering into valid business relationships such as by licensing the Invention to third parties."))  Such allegations are legally insufficient to state a claim for tortious interference.  *Cohabaco*, 1999 WL 988805, at *13 ("[D]efendants' actions must be directed toward a third party and purposely cause that third party to not enter into a prospective contractual relationship with plaintiff."), Tab 14.

### C.    Memorylink Cannot Maintain Its Unjust Enrichment Claim.

In Count XV, Memorylink claims that Motorola has been unjustly enriched by retaining Memorylink's "intellectual property and confidential and proprietary information." (Compl. ¶ 266)  Unjust enrichment is a quasi-contract theory that permits courts to imply a contract where none exists to prevent unfairness.  *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 978 (N.D. Ill. 2008).  But the theory is not available to one with a contractual relationship.  *Id.*; *see also Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008) ("Illinois law does not permit a party to recover on a theory of quasi-contract when an actual contract governs the parties' relations on that issue.")  Here, Memorylink's

20

relationship with Motorola was governed not only by the Assignment, but also by the four

MOUs attached to the Complaint (Comp. Exs. 3, 13, 14, 16), so Count XV fails as a matter of

law.

       **D.**      **Memorylink's Other Tort Claims Are Time-Barred.**

            **1.**      **Memorylink's fiduciary duty & tortious interference claims are barred.**

The statutes of limitation for breach of fiduciary duty and for tortious interference are

five years. *See Draper v. Pickus*, No. 04 V 8150, 2007 WL 809679, at *4 (N.D. Ill. Mar. 15,

2007) (fiduciary duty), Tab 20; *E & J Gallo Winery v. Morand Bros. Beverage Co.*,

247 F. Supp. 2d 979, 987 (N.D. Ill. 2003) (tortious interference).  Counts VII and XII rely on the

same allegations as the fraud claims, and are thus time-barred for the same reasons.  (*See supra*

at 13-15)

            **2.**      **Memorylink's unjust enrichment claim is barred.**

Unjust enrichment claims are governed by a five-year statute of limitations.

*Burns Philp Food, Inc. v. Cavalea Cont'l Freight, Inc.*, 135 F.3d 526, 527 (7th Cir. 1998).  By its

own admission, Memorylink was informed on April 30, 2003 that Motorola did not intend to

continue its relationship with Memorylink.  (Compl. ¶ 125)  If Motorola was unjustly enriched

by its relationship with Memorylink, Memorylink was on notice of its claim that day.  Count XV

thus became time-barred on April 30, 2008, before this case was filed.

**IV.**      **MEMORYLINK'S INTELLECTUAL PROPERTY CLAIMS FAIL.**

       **A.**      **Memorylink Cannot Establish Patent Infringement.**

Memorylink fails to state a claim for infringement of the '352 Patent (Count IV) because

(1) Motorola is a joint owner of the '352 Patent under the Assignment and thus cannot be liable

for infringement, *see* 35 U.S.C. § 262 (authorizing each joint owner to practice the patented

invention "without the consent of . . . the other owners"); and (2) if the Assignment is invalid, as

Memorylink claims in Counts II and III, then Memorylink's ownership interest will likewise be terminated and Memorylink will lack standing to claim infringement. *See* 35 U.S.C. § 281 ("A *patentee* shall have remedy by civil action for infringement of his patent.") (emphasis added); *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) ("[P]arties should possess rights before seeking to have them vindicated in court.").

### B.    Memorylink's Claim To Correct The Inventorship Of The '352 Patent Fails.

In Count I, Memorylink seeks to "correct" the inventors of the '352 Patent, alleging that only Strandwitz and Kniskern contributed to the invention. Again, Memorylink's Complaint exhibits prove this was not the case:

- Memorylink's Technology Overview describes the development path for a core wireless technology as including "[t]he creation by Motorola, Inc. of the first commercially viable integrated circuitry to provide high speed, digitally formatted data transmission at this new frequency." (Compl. Ex. 4 at 1)

- In an April 1998 letter, Motorola's Hugh Dunlop stated that he understood Strandwitz and Kniskern had jointly developed the now-disputed technology with Motorola employees Gary Schulz and Jan Wyckoff, and asked Strandwitz to "[p]lease let me know if you or [Kniskern] disagree with this determination of inventorship." (Compl. ¶ 46; Compl. Ex. 5 at 1) Memorylink did not disagree.

- In May 1998, the parties finalized the Patent Agreement, which explained that the parties were in "the process of defining a specification . . . in which a MOTOROLA design of a 5GHz radio will be incorporated." (Compl. Ex. 6 at 1)

- On June 22, 1998, Motorola filed the patent application corresponding to the '352 Patent, listing Kniskern, Schulz, Strandwitz, and Wyckoff as inventors. (Compl. ¶ 75; Compl. Ex. 9)

- On January 27, 2003 and October 25, 2007, Memorylink's counsel, Banner, filed divisional and continuation applications from the '352 Patent listing Kniskern, Schulz, Strandwitz, and Wyckoff as the inventors.[19] (Compl. ¶¶ 118-19, 146-47)

Thus, Memorylink's claim that it was defrauded into believing that Schulz and Wyckoff were inventors is contradicted by its own Complaint and fails as a matter of law.[20]

---

[19] *See supra* note 12 and accompanying text (an independent assessment of inventorship is required).

**C.      Memorylink Cannot Sue For Correction Of Inventorship Of The '938 Patent.**

In Count V, Memorylink seeks to "correct" the inventorship of U.S. Patent No. 6,573,938 (the '938 Patent), a patent which Motorola applied for in June of 1998 which includes only Schulz and Wyckoff as inventors and Motorola as the sole assignee.  (Compl. ¶¶ 5, 80-81)  Memorylink claims that Strandwitz and Kniskern should be named as inventors of the '938 patent.  But Memorylink does not have standing to correct inventorship of the '938 Patent because a decision in its favor will not redress its alleged injury.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (in order for a plaintiff to establish standing it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (internal quotations and citation omitted).  An order that Strandwitz and Kniskern are inventors of the '938 Patent will vest ownership of the patent in Strandwitz and Kniskern – not in Memorylink.  *See Bellehumeur v. Bonnett*, 127 Fed. Appx. 480, 483-85 (Fed. Cir. 2005) (stating that "unless assigned under 35 U.S.C. § 261, the initial ownership of a patent vests in the inventor by operation of law" (internal quotations and citation omitted)).

**D.      Memorylink's Remaining Claims For Correction Of Inventorship Are Not Legally Cognizable.**

In Counts XIII and XIV, Memorylink seeks to correct the inventors listed on the pending divisional and continuation applications filed by Banner.  (Compl. ¶¶ 253, 259)  But the statute that governs the correction of inventorship applies to only *issued* patents, so this claim cannot stand.[21]

---

[20] *See supra* note 2 (plaintiff can plead himself out of court by attaching documents to complaint that contradict allegations).

[21] 35 U.S.C. § 256 ("Whenever through error a person is named in an *issued* patent as the inventor, or through error an inventor is not named in an *issued* patent . . . ." (emphasis added)); *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1357 n.1 (Fed. Cir. 2004) (§ 256 does not create a cause of action when a patent has not issued at the time a complaint is filed).  Furthermore, 35 U.S.C. § 116 does not create a cause of action in district court for correction

### E.    Memorylink Fails To State Claims For Conversion.

Memorylink's conversion claims are barred by the five-year statute of limitations.  735

ILCS 5/13-205; *see also Palmer v. Neal*, 602 F. Supp. 882, 885 (N.D. Ga. 1984) (finding claim

for conversion of property interest in patent barred by the statute of limitations).  The statute

began to run when the patents-in-suit were filed.  *See Nelson v. Sotheby's Inc.*, 115 F.

Supp. 2d 925, 929 (N.D. Ill. 2000) (statute runs on date of alleged conversion).  The '352 Patent

was filed on June 22, 1998 and issued on February 18, 2003.  The '938 Patent was filed on

June 24, 1998 and issued on June 3, 2003.  Thus, Memorylink's conversion claims based on

these patents became time-barred in June 2003.  Notably, the statute of limitations would bar

these claims even if counted from the date the patents issued or from the date Banner filed

Memorylink's divisional application (January 27, 2003).

In addition, Memorylink cannot claim that it has been "***entirely deprived*** of the ability to

benefit from the property of the alleged conversions."  *See DirectTV, Inc. v. Vanderploeg*, No. 04

CV 3883, 2005 WL 497797, at *3 (N.D. Ill. Mar. 2, 2005) (emphasis added), Tab 19; *Malik v.

Lynk, Inc.*, No. Civ. A. 99-2015-KHV, 1999 WL 760217, at *1, 2-4 (D. Kan. Aug. 18, 1999)

(no conversion claim based on patent where "defendant has not taken plaintiff's property to the

exclusion of plaintiff"), Tab 42.  To the contrary, Memorylink has continued to benefit from the

'352 Patent as a joint assignee.  (Compl. Ex. 8 at 1)

Finally, Illinois law does not recognize conversion claims relating to intangible property

like a patent, unless that intangible property is "merged into a tangible document" that is "easily

---

of inventorship of a pending application.  *Eli Lilly*, 376 F.3d at 1357 n.1 ("The text of section 116, however,
only grants the Director of the Patent and Trademark Office the authority to take certain actions and plainly does not
create a cause of action in the district courts to modify inventorship on pending patent applications.").

convertible into tangible assets, not dissimilar to currency."[22] *Film & Tape Works, Inc. v. Junetwenty Films, Inc.*, 368 Ill. App. 3d 462, 475-76, 856 N.E.2d 612, 624 (2006); *see also Richmond v. Nat'l Inst. of Certified Estate Planners*, No. 06 C 1032, 2006 WL 2375454, at *6–7 (N.D. Ill. Aug. 15, 2006) (trademark registration not tangible), Tab 57.

## CONCLUSION

For the foregoing reasons, Motorola respectfully requests that the Court dismiss plaintiff's claims with prejudice.

Dated:  August 1, 2008                    Respectfully submitted,

                                          /s/ Anne M. Sidrys, P.C.
                                          Anne M. Sidrys, P.C. (6209457)
                                          Mark J. Nomellini (6243579)
                                          Nyika O. Strickland (6275717)
                                          Jess M. Krannich (6286635)
                                          KIRKLAND & ELLIS LLP (Firm No. 90443)
                                          200 East Randolph Drive
                                          Chicago, IL 60601
                                          (312) 861-2000

                                          *Attorneys for Defendant Motorola, Inc.*

---

[22] Memorylink's conversion claims (Counts XI, XVII, and XIX) also fail based on plaintiff's claim that the assignment is invalid (Counts II and III), since Memorylink's ownership interest would likewise be terminated. *See Cirrincione v. Johnson*, 184 Ill. 2d 109, 114, 703 N.E.2d 67, 70 (1998) (to establish conversion, a plaintiff must show (1) *a right to the property*; (2) a right to the absolute and immediate possession of the property; (3) a deprivation of the right by *defendant's unauthorized and wrongful assumption of control*; and (4) a demand for possession) (emphasis added)).

Appendix A

**Basis For Dismissal Of Claims**

| Count | Plaintiff's Label | Type of Claim | Reasons for Dismissal | Pps of Brief |
|-------|-------------------|---------------|------------------------|--------------|
| Count I | Correction of Inventorship of the '352 Patent | IP | • Memorylink's own Complaint exhibits, including documents Memorylink drafted, contradict Memorylink's claim that its employees were the sole inventors of the patented technology | Page 22 |
| Count II | Invalidation of the Assignment of the '352 Patent | Fraud | • Not a valid legal claim<br><br>• Not pled with specificity<br><br>• Memorylink's Complaint exhibits contradict the allegation that Motorola made misrepresentations<br><br>• Statements of law do not give rise to fraud claims<br><br>• Memorylink's alleged reliance fails because as a matter of law it could not have been justified in relying on representations of law about the terms of a written instrument<br><br>• Barred by the statute of limitations | Pages 6-14 |
| Count III | Declaratory Judgment that the Assignment is Void *Ab Initio* | Contract | • Memorylink's own allegations and Complaint exhibits show that it received consideration<br><br>• Barred by statute of limitations | Pages 15-16 |
| Count IV | Infringement of the '352 Patent | IP | • Motorola is a joint owner, and therefore cannot infringe<br><br>• If the Assignment is invalid, | Pages 21-22 |

Appendix A

| Count | Plaintiff's Label | Type of Claim | Reasons for Dismissal | Pps of Brief |
|-------|-------------------|---------------|------------------------|--------------|
| | | | Memorylink lacks standing to bring this claim | |
| Count V | Correction of Inventorship of the '938 Patent | IP | • Memorylink lacks standing | Page 23 |
| Count VI | Breach of Non-Disclosure Agreements | Contract | • Memorylink fails to plead even the legal effect of the contracts it alleges were breached<br><br>• Memorylink fails to plead its own performance<br><br>• Barred by the statute of limitations | Pages 16-17 |
| Count VII | Breach of Fiduciary Duty | Tort | • The parties' agreements, which are attached to the Complaint, specifically disclaimed a fiduciary relationship<br><br>• Memorylink's allegations fail as a matter of law<br><br>• Barred by the statute of limitations | Pages 18-19 |
| Counts VIII, XVIII, XX | Common Law Fraud | Fraud | • Not pled with specificity<br><br>• Memorylink's Complaint exhibits contradict the allegation that Motorola made misrepresentations<br><br>• Statements of law do not give rise to fraud claims<br><br>• Memorylink's alleged reliance fails because as a matter of law it could not have been justified in relying on representations of law about the terms of a written instrument<br><br>• Barred by the statute of | Pages 6-14 |

Appendix A

| Count | Plaintiff's Label | Type of Claim | Reasons for Dismissal | Pps of Brief |
|-------|-------------------|---------------|------------------------|--------------|
| | | | limitations | |
| Count IX | Promissory Fraud | Fraud | • Not pled with specificity<br><br>• Memorylink fails to plead objective facts pled regarding fraudulent intent<br><br>• Memorylink's alleged reliance is contradicted by the documents attached to the Complaint, and fails as a matter of law in any event<br><br>• Barred by statute of limitations | Pages 7-15 |
| Count X | Negligent Misrepresentation | Fraud | • The duty element of this claim fails as a matter of law<br><br>• Barred by statute of limitations | Pages 12-14 |
| Count XI, XVII, XIX | Conversion | Tort | • If the Assignment is invalid, Memorylink lacks standing to bring this claim<br><br>• Barred by statute of limitations<br><br>• Memorylink has not been deprived of the property<br><br>• Conversion does not apply to claims for intangible property | Pages 24-25 |
| Count XII | Tortious Interference with Prospective Economic Advantage | Tort | • Not pled with specificity<br><br>• Memorylink's allegations fail as a matter of law | Pages 19- 21 |
| Count XIII | Correction of Inventorship of U.S. Patent Application No. 10/351,906 | IP | • Cannot correct inventorship of pending divisional application | Page 23 |
| Count XIV | Correction of Inventorship of U.S. Patent Application No. | IP | • Cannot correct inventorship of pending continuation | Page 23 |

Appendix A

| Count | Plaintiff's Label | Type of Claim | Reasons for Dismissal | Pps of Brief |
|---|---|---|---|---|
| | 11/977,687 | | application | |
| Count XV | Unjust Enrichment | Equitable/Quasi-Contract | • Quasi-contractual relief not available because Memorylink and Motorola had a contractual relationship<br><br>• Barred by the statute of limitations | Pages 20-21 |