**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MEMORYLINK CORPORATION, | ) | |
| | ) | Case No. 08-cv-3301 |
| Plaintiff, | ) | |
| | ) | The Honorable William J. Hibbler |
| v. | ) | United States District Judge |
| | ) | |
| MOTOROLA, INC., | ) | The Honorable Nan R. Nolan |
| | ) | United States Magistrate Judge |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF
MOTOROLA, INC.'S MOTION TO DISMISS**

Anne McClain Sidrys
Mark J. Nomellini
Nyika O. Strickland
KIRKLAND & ELLIS LLP
(Firm No. 90443)
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

October 27, 2008

*Attorneys for Defendant Motorola, Inc.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

I. MEMORYLINK'S FRAUD CLAIMS SHOULD BE DISMISSED. ................2

    A. Memorylink Failed To Allege Actionable Misrepresentations. ............................2

        1. Misrepresentations of law cannot form the basis of a fraud claim. .............2

        2. Memorylink failed to plead factual misrepresentations with specificity. ...........................................................................................4

    B. Memorylink Failed To Allege A Factual Misrepresentation On Which It Justifiably Relied. ................................................................................5

    C. Memorylink's Fraud Claims Are Barred By The Statute Of Limitations. ..............7

        1. Memorylink's common law fraud claims are time-barred. ........................8

        2. Memorylink's promissory fraud claim is also time-barred.......................10

II. MEMORYLINK'S OTHER TORT CLAIMS FAIL AS A MATTER OF LAW. ............11

    A. Memorylink's Other Tort Claims Are Time-Barred................................................11

    B. Memorylink Has Not Alleged A Breach of Fiduciary Duty Claim. ......................12

    C. Memorylink Has Not Stated A Negligent Misrepresentation Claim. ...................13

    D. Memorylink Has Not Pled A Tortious Interference Claim....................................14

    E. Memorylink Has Not Stated An Unjust Enrichment Claim. ................................15

III. MEMORYLINK'S CLAIM THAT MOTOROLA BREACHED NDAS IS LEGALLY FLAWED. ....................................................................................15

    A. Memorylink's Claim That Motorola Breached The NDAs Is Time-Barred..........15

    B. Memorylink Has Not Pled Its NDA Claim Properly. .............................................16

IV. MEMORYLINK'S ASSIGNMENT AND PATENT INFRINGEMENT  CLAIMS ARE LEGALLY INSUFFICIENT. ..................................................................16

    A. Memorylink's Assignment Claims Should Be Dismissed....................................16

        1. There was consideration for the Assignment............................................16

        2. Memorylink has not pled that it was fraudulently induced into signing the Assignment...........................................................................17

    B. Memorylink's Patent Infringement Claim Must Be Dismissed............................17

i

V.      MEMORYLINK HAS FAILED TO STATE CORRECTION OF INVENTORSHIP AND CONVERSION CLAIMS...........................................................18

    A.    Memorylink's Claim To Correct The Inventorship Of The '352 Patent Fails.....................................................................................................................18

    B.    Memorylink's Claim To Correct The Inventorship Of The '938 Patent Fails.....................................................................................................................20

    C.    Memorylink's Claims To Correct The Inventorship Of The Pending Patent Applications Are Not Legally Cognizable............................................................20

    D.    Memorylink's Conversion Claims Should Be Dismissed. ...................................21

        1.    Memorylink's conversion claims are time-barred. ...................................21

        2.    Memorylink has not stated a conversion claim.........................................21

CONCLUSION.........................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*188 LLC v. Trinity Indus., Inc.*,
   300 F.3d 730 (7th Cir. 2002) ........................................................................... 7

*Arachnid, Inc. v. Merit Indus., Inc.*,
   939 F.2d 1574 (Fed. Cir. 1991)....................................................................... 18

*Armstrong v. Guigler*,
   174 Ill. 2d 281, 673 N.E.2d 290 (1996) ..................................................... 15, 17

*Borsellino v. Goldman Sachs Group, Inc.*,
   477 F.3d 502 (7th Cir. 2007) ................................................................ 4, 14, 17

*Burke v. Lakin Law Firm, PC*,
   2008 WL 64521 (S.D. Ill. Jan. 3, 2008).......................................................... 16

*Centers v. Centennial Mortgage, Inc.*,
   398 F.3d 930 (7th Cir. 2005) ..................................................................... 7, 13

*Cirrincione v. Johnson*,
   184 Ill. 2d 109, 703 N.E.2d 67 (1998) ............................................................ 21

*Cohabaco Cigar Co. v. U.S. Tobacco Co.*,
   1999 WL 988805 (N.D. Ill. Oct. 22, 1999)...................................................... 14

*Davis v. G.N. Mortgage Corp.*,
   396 F.3d 869 (7th Cir. 2005) ........................................................................... 6

*Desnick v. Am. Broadcasting Cos., Inc.*,
   44 F.3d 1345 (7th Cir. 1995) ......................................................................... 10

*Display Research Labs., Inc. v. Telegen Corp.*,
   133 F. Supp. 2d 1170 (N.D. Cal. 2001) .......................................................... 20

*Eli Lilly & Co. v. Aradigm Corp.*,
   376 F.3d 1352 (Fed. Cir. 2004)....................................................................... 20

*Elipas Enters., Inc. v. Silverstein*,
   243 Ill. App. 3d 230, 612 N.E.2d 9 (1993) ....................................................... 6

*Film & Tape Works, Inc. v. Junetwenty Films, Inc.*,
   368 Ill. App. 3d 462, 856 N.E.2d 612 (2006) .................................................. 21

*First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*,
    218 Ill. 2d 326, 843 N.E.2d 327 (2006) ............................................................. 13

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*,
    128 F.3d 1074 (7th Cir. 1997) ...................................................................... 4

*Greer v. Bank One*,
    2002 WL 1732366 (N.D. Ill. Jul. 25, 2002) ................................................... 11

*Greycas, Inc. v. Proud*,
    826 F.2d 1560 (7th Cir. 1987) .................................................................... 13

*Horbach v. Kaczmarek*,
    288 F.3d 969 (7th Cir. 2002) ....................................................................... 8

*Int'l Bus. Machs. Corp. v. Zachariades*,
    70 F.3d 1278 (9th Cir. 1995) ....................................................................... 9

*Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*,
    451 F. Supp. 2d 982 (N.D. Ill. 2006) ........................................................... 14

*J & J Mfg. Inc. v. Logan*,
    24 F. Supp. 2d 692 (E.D. Tex. 1998) ........................................................... 18

*Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.*,
    517 F.3d 476 (7th Cir. 2008) ...................................................................... 15

*Medigene AG v. Loyola Univ. of Chicago*,
    2001 WL 1636425 (N.D. Ill. Dec. 19, 2001) ................................................. 20

*Miller v. Gain Financial, Inc.*,
    995 F.2d 706 (7th Cir. 1993) ...................................................................... 11

*N. Trust Co. v. MS Sec. Servs., Inc.*,
    2006 WL 695668 (N.D. Ill. Mar. 15, 2006) .................................................. 12

*Owens v. Boyd*,
    235 F.3d 356 (7th Cir. 2000) ....................................................................... 8

*Pain Prevention Lab, Inc. v. Elec. Waveform Labs, Inc.*,
    657 F. Supp. 1486 (N.D. Ill. 1987) ............................................................... 3

*Parkway Bank & Trust Co. v. City of Darien*,
    43 Ill. App. 3d 400, 357 N.E.2d 211 (1976) ................................................. 14

*Pentech Pharm., Inc. v. Par Pharm., Inc.*,
    2007 WL 3223696 (N.D. Ill. Oct. 25, 2007) ................................................. 13

*Reis Robotics USA, Inc. v. Concept Indus., Inc.*,
    462 F. Supp. 2d 897 (N.D. Ill. 2006) ............................................................. 13

*Richmond v. Nat'l Inst. of Certified Estate Planners*,
    2006 WL 2375454 (N.D. Ill. Aug. 15, 2006) ................................................. 22

*Rissman v. Rissman*,
    213 F.3d 381 (7th Cir. 2000) ........................................................................... 7

*Schering Corp. v. Zeneca, Inc.*,
    104 F.3d 341 (Fed. Cir. 1997) ................................................................. 16, 18

*Solaia Tech., LLC v. Specialty Publ'g. Co.*,
    357 Ill. App. 3d 1, 826 N.E.2d 1208 (2005), *rev'd in part on other grounds*,
    221 Ill. 2d 558, 852 N.E.2d 825 (2006) ........................................................ 14

*Sontag Chain Stores Co. v. Nat'l Nut Co. of Cal.*,
    310 U.S. 281 (1940) ......................................................................................... 9

*Sound of Music Co. v. Minn. Mining & Mfg. Co.*,
    477 F.3d 910 (7th Cir. 2007) ........................................................................... 9

*Stern v. Trs. of Columbia Univ.*,
    434 F.3d 1375 (Fed. Cir. 2006) ..................................................................... 18

*Tammerello v. Ameriquest Mortgage, Co.*,
    2006 WL 2860936 (N.D. Ill. Sept. 29, 2006) ................................................. 9

*The Cancer Found., Inc. v. Cerberus Capital Mgmt., L.P.*,
    2008 WL 927989 (N.D. Ill. Apr. 4, 2008) ............................................ 8, 9, 11

*The Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc.*,
    119 F.3d 55 (1st Cir. 1997) ............................................................................ 10

*United States v. Stump Home Specialties Mfg., Inc.*,
    905 F.2d 1117 (7th Cir. 1990) ......................................................................... 6

*Univ. of W. Va. Bd. of Trustees v. Vanvoorhies*,
    278 F.3d 1288 (Fed. Cir. 2002) ....................................................................... 3

*Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*,
    297 U.S. 387 (1936) ......................................................................................... 9

*Wise v. Hubbard*,
    769 F.2d 1 (1st Cir. 1985) ................................................................................ 9

**Other Authorities**

35 U.S.C. § 116.................................................................................................................... 20

35 U.S.C. § 256.................................................................................................................... 20

35 U.S.C. § 262.................................................................................................................... 17

37 C.F.R. § 1.63(d) ............................................................................................................. 19

MPEP § 201.06(c)............................................................................................................... 19

## <u>INTRODUCTION</u>

Memorylink's defense of its nineteen-count Complaint against Motorola's motion is strategically akin to its initial drafting approach – make the thing sufficiently complicated that a busy Court will be tempted to overlook the legal deficiencies and allow the case to move forward. Motorola appreciates the opportunity to cut through the complexity.

As shown by the following chart, all of plaintiff's asserted claims are legally deficient, and most of the nineteen are multiply so:

| Count | Claim | Failure to State Claim/ Satisfy 9(b) | Compl. Allegations/ Exs. Prove Claim False | Memorylink Lacks Standing | Barred by Statute of Limitations | Barred by Federal Statute |
|---|---|---|---|---|---|---|
| I | Correction of Inventorship of '352 Patent | | ✓ | | | |
| II | Invalidation of the Assignment of '352 Patent | ✓(9(b)) | ✓ | | ✓ | |
| III | Assignment is Void | ✓ | ✓ | ✓ | ✓ | |
| IV | Infringement of '352 Patent | | | ✓ | | |
| V | Correction of Inventorship of '938 Patent | | | ✓ | | |
| VI | Breach of Non-Disclosure Agreements | ✓ | | | ✓ | |
| VII | Breach of Fiduciary Duty | ✓ | ✓ | | ✓ | |
| VIII | Common Law Fraud – Relating to '352 Patent | ✓(9(b)) | ✓ | | ✓ | |
| IX | Promissory Fraud | ✓(9(b)) | ✓ | | ✓ | |
| X | Negligent Misrepresentation | ✓ | | | ✓ | |
| XI | Conversion | ✓ | | ✓ | ✓ | |
| XII | Tortious Interference | ✓ | | | ✓ | |
| XIII | Correction of Inventorship – Pending Patent | | | | | ✓ |
| XIV | Correction of Inventorship – Pending Patent | | | | | ✓ |
| XV | Unjust Enrichment | ✓ | ✓ | | ✓ | |
| XVII | Conversion (Alternatively) | ✓ | | ✓ | ✓ | |
| XVIII | Common Law Fraud – Relating to Both Patents (Alternatively) | ✓(9(b)) | ✓ | | ✓ | |
| XIX | Conversion (Alternatively) | ✓ | | ✓ | ✓ | |
| XX | Common Law Fraud – Relating to Both Patents (Alternatively) | ✓(9(b)) | ✓ | | ✓ | |

Fourteen of Memorylink's counts state no legally cognizable claim; five of them fail the specificity requirement of Rule 9(b).  Memorylink as an entity has no standing to assert six of the claims.  Fourteen counts are time-barred.  Two counts are defeated by federal statute.  And plaintiff's own Complaint allegations, together with documents plaintiff chose to incorporate into the Complaint, disprove nine of the asserted counts.

The last is a particularly interesting feature of this case.  To give one example, while Memorylink argues that its principals were the sole inventors of the disputed technology and that Motorola contributed only a generic radio (Memorylink Response ("Resp.") at 4), Memorylink chose to attach as Exhibit 4 to its Complaint the Technology Overview that those same principals prepared when they were pursuing Motorola in 1998.  In its Executive Summary, the Technology Overview described Motorola's contribution in terms that directly refute Memorylink's 2008 argument – the "creation . . . of the first commercially viable integrated circuitry to provide high speed, digitally formatted data transmission at this new frequency."  (Compl. Ex. 4 at 1)

## I.     MEMORYLINK'S FRAUD CLAIMS SHOULD BE DISMISSED.

Memorylink asserts three common law fraud claims and a promissory fraud claim.  These claims must be dismissed for four independent reasons: (i) misrepresentations of law do not give rise to fraud claims; (ii) Memorylink has not alleged any misrepresentations of fact with specificity; (iii) Memorylink has not alleged that it justifiably relied on any purported misrepresentations; and (iv) the claims are time-barred.

### A.     Memorylink Failed To Allege Actionable Misrepresentations.

#### 1.     Misrepresentations of law cannot form the basis of a fraud claim.

Memorylink alleged that Motorola committed common law fraud by "failing to ***explain the legal standard*** of who qualifies as an inventor" and by failing to explain "***the legal consequences***" of the Assignment.  (Compl. Counts VIII, XVIII and XX; Compl. ¶¶ 211-213,

279-282, 298-301 (emphasis added))  Such representations and/or omissions of law cannot form the basis of a fraud claim.  (*See* Motorola Opening Mem. ("Op. Mem.") at 10 (citing cases))

Memorylink acknowledges that misrepresentations of law are not actionable but asks for an exception if there is an attorney-client relationship.  (Resp. at 7, 17)  Memorylink's fact allegations do not merit such an exception even if one existed in law.  Indeed, Memorylink's only allegation of an attorney-client relationship is in Paragraph 71 of the Complaint, where Memorylink alleged that sometime after June 12, 1998 it "appointed Motorola's in-house patent attorneys as their attorneys to ***prosecute*** the Known Patent application." (Compl. ¶ 71 (emphasis added); *see also* Compl. ¶ 69)  But an attorney's prosecution of a joint patent does not give rise to an attorney-client relationship between the prosecution attorney and his client's co-owner, let alone the all-encompassing attorney-client relationship Memorylink seeks to impose.[1]  *See Univ. of W. Va. Bd. of Trustees v. Vanvoorhies*, 278 F.3d 1288, 1303-04 (Fed. Cir. 2002) ; *see also Pain Prevention Lab, Inc. v. Elec. Waveform Labs, Inc.*, 657 F. Supp. 1486, 1497 (N.D. Ill. 1987) (finding it "unreasonable" for joint owner to think that another joint owner's attorney became his attorney by preparing patent application).  In any event, Memorylink alleged that it appointed Motorola as its attorney "subsequent" to June 12, 1998, that is, after the execution of the Assignment and after the fraud allegedly occurred  (Compl. ¶ 71; *see also* Compl. ¶¶ 46, 48-49, 63, 66, 69)

---

[1]  Memorylink's own counsel – Banner & Witcoff, Ltd. – also made patent filings on behalf of both Motorola and Memorylink. (*See* Compl. ¶¶ 118, 121; Compl. Ex. 17)  But it would be equally absurd to argue that Banner's filings created a general attorney-client relationship between Banner and Motorola.

## 2. **Memorylink failed to plead factual misrepresentations with specificity.**

**Common law fraud**

Memorylink must have alleged specific, factual misrepresentations for its fraud claims to survive. That is, Memorylink must have pled "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997) (internal quotation and citation omitted).

Memorylink acknowledges its pleading burden but claims it alleged a "plethora of factual misrepresentations" (Resp. at 17) and gave "specific examples of misrepresentations or omissions, the dates such misrepresentations were made, who made those misrepresentations, and to whom they were made." (*Id.* at 14) No such specifics are found within the 27 Complaint paragraphs that Memorylink cites to support this assertion. Those relied-on paragraphs – highlighted in blue in the Complaint attached as Exhibit A hereto – fail to include the required specific details of who, what, when, where or how. In fact, 22 of the 27 cited paragraphs do not even identify the name of the Motorola employee who purportedly made the misrepresentation, let alone the other requisite specifics. *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507-09 (7th Cir. 2007) (fraud claims properly dismissed when plaintiff failed to plead specific content of alleged misrepresentations or which specific employees of defendant made the alleged misstatements). In the few where a person is named, the person is a Motorola lawyer and the alleged misrepresentation is a non-actionable representation of law, not fact. Notably, many of the paragraphs Memorylink cites have nothing to do with its fraud claims.

**Promissory fraud**

The Seventh Circuit disfavors promissory fraud and imposes a high pleading standard.
(*See* Op. Mem. at 7-8)  Indeed, Memorylink does not dispute that for its promissory fraud claim
to survive, it must plead specific facts under 9(b) **and** specific facts showing Motorola's
objective manifestations of fraudulent intent.  (*See id.*; Resp. at 14-15)  Review of the allegations
Memorylink relies on – flagged in yellow in the Complaint attached as Exhibit A hereto – shows
they fail both of these pleading requirements.  (Resp. at 14-16)  In fact, most of the cited
allegations are irrelevant to Memorylink's promissory fraud claim.  For example, Memorylink
cites allegations regarding:  (i) Motorola's alleged failure to disclose the so-called "Secret
Patent"; and (ii) the "disclosure of Memorylink technology to a third-party (Sony)."  (Resp. at
14)  These allegations have nothing to do with Memorylink's promissory fraud claim, which
asserts that the promissory fraud occurred when Motorola made unspecified promises to enter
definitive agreements relating to the Invention.  (Compl. Count IX; Compl. ¶ 219)

      **B.**      **Memorylink Failed To Allege A Factual Misrepresentation On Which It
Justifiably Relied.**

**Common law fraud**

Memorylink's claim that it justifiably relied on Motorola about "facts regarding the
proper inventors" is baseless. (Resp. at 17)  Memorylink's Complaint Exhibits show that on no
less than four separate occasions, Memorylink was provided with and had the opportunity to
review documents and agreements that described the ideas to be patented, the inventors of those
ideas, and the co-ownership of any resulting patents.  (*See* Compl. ¶¶ 44-46, 56-57, 61-63, 69,
75; Compl. Exs. 5-9)  One such document, attached to and made part of the Complaint, is an
April 13, 1998 letter from Motorola's Hugh Dunlop to Memorylink's Peter Strandwitz which
states:

> **It is my understanding from Gary Schultz and Jan Wyckoff that the inventors for these ideas are yourself, Gary, Jan, and Bob Kniskern. Please let me know if you or Bob disagree with this determination of inventorship.**
>
> . . .
>
> I enclose a draft agreement setting out proposed terms under which such an application or patent will be filed, prosecuted and owned. The above referenced document is appended to the agreement, with certain deletions. . . .
>
> The proposed agreement **contemplates** taking advantage of this department for **preparation and filing of patent applications. Motorola is open to alternative proposals if this is not to your satisfaction.** . . . (Compl. Ex. 5 (emphasis added))

Memorylink's only response to this and the other documents to which it acquiesced is that it did not understand what it was signing on to, but was relying on Dunlop as its attorney. (Resp. at 2, 7, 17)  That argument fails for several reasons.  *First*, as a matter of law, Memorylink cannot now claim that it was misled into believing that Schulz and Wyckoff were co-inventors when Memorylink had ample opportunity to review multiple documents stating as much.[2]  *See United States v. Stump Home Specialties Mfg., Inc.,* 905 F.2d 1117, 1120 (7th Cir. 1990) (if parties sign an agreement they don't understand, "that is their tough luck"); *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 882 (7th Cir. 2005) ("[A] party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts.") (internal citations omitted); *see also* Op. Mem. at 10-11 (citing cases).

*Second*, as discussed above, Memorylink has not alleged an attorney-client relationship with Motorola.  And, even if it could establish such a relationship, Memorylink's own

---

[2]    Indeed, if the invention was complete and Memorylink only entered a relationship with Motorola to obtain a generic radio, as Memorylink now argues (Resp. at 1-2), Memorylink had an even greater duty to speak up in response to Dunlop's letter.  *Elipas Enters., Inc. v. Silverstein*, 243 Ill. App. 3d 230, 236-38, 612 N.E.2d 9, 13-14 (1993) (plaintiffs who are aware of facts that give them "reason to investigate further" cannot thereafter claim fraud when they failed to do so).

allegations and Complaint Exhibits show that Dunlop was not acting as its attorney in the Spring of 1998 when the fraud supposedly occurred. (*See e.g.,* Compl. ¶¶ 46, 48-49, 63, 66 (fraud claims); Compl. ¶¶ 69, 71 (noting that "subsequent[]" to June 12, 1998, Memorylink appointed Motorola to prosecute patent); *Centers v. Centennial Mortgage, Inc.,* 398 F.3d 930, 933 (7th Cir. 2005) (language in documents attached to complaint supersedes contrary allegations); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (same)) Notably, it was in the April 1998 quoted above that Dunlop first suggested that Motorola file the patent application and noted that Motorola was open to other proposals. (Compl. Ex. 5 at 2) In any event, Memorylink's claim that it justifiably relied on Motorola to *explain the legal standard* of inventorship and/or the Assignment is non-actionable. *See supra* at 3.

**Promissory fraud**

As for the reliance element of its promissory fraud claim, Memorylink does not dispute that the four MOUs it signed (and attached to its Complaint) state that the parties did not have a definitive relationship and were not obligated to enter into one. (Resp. at 19-20) Memorylink tries to side-step the MOUs by arguing that Motorola made promises "outside of the MOUs about future dealings." (*Id.* at 19) But only one page earlier, Memorylink concedes that "a party cannot claim fraud based on misrepresentations contradicted by terms in written agreements." (*Id.* at 18) This is precisely the point: given the terms in the MOUs, it could not have been reasonable for Memorylink to rely on oral promises of a definitive agreement. *See, e.g.*, *Rissman v. Rissman*, 213 F.3d 381, 384 (7th Cir. 2000) (a party cannot establish promissory fraud when alleged oral promises are contradicted by written terms); Op. Mem. at 12.

### C.    Memorylink's Fraud Claims Are Barred By The Statute Of Limitations.

Memorylink does not dispute that a five-year statute of limitations applies to its fraud claims, or that the statute began to run when Memorylink knew or should have known the facts

material to its claims.  *See Horbach v. Kaczmarek*, 288 F.3d 969, 977 (7th Cir. 2002); *see also*

*The Cancer Found., Inc. v. Cerberus Capital Mgmt., L.P.*, No. 07-cv-4120, 2008 WL 927989, at

*5 (N.D. Ill. Apr. 4, 2008).  Indeed, Memorylink does not deny that it is the *facts, not their legal*

*significance*, that triggers the statute.  *See Owens v. Boyd,* 235 F.3d 356, 359 (7th Cir. 2000).

Rather, Memorylink simplistically states that it "did not discover the fraud until 2007."  (Resp. at

21)  Memorylink's Complaint proves otherwise:

| DATE | KNOWLEDGE OF MATERIAL FACT |
|---|---|
| 4/13/98 | Motorola's Dunlop sends Memorylink's Strandwitz a letter proposing to jointly file and jointly own the '352 Patent and **asking Memorylink to let him know if it disagrees that Motorola's Schulz and Wyckoff are co-inventors of the ideas to be patented**.  (Compl. ¶ 44-46; Compl. Exs. 5-6) |
| 4/21/98 | Memorylink's **Strandwitz and Kniskern sign an invention disclosure form** listing themselves and **Motorola's Schulz and Wyckoff as joint inventors** of the ideas to be patented.  (Compl. ¶ 63; Compl. Ex. 7) |
| 6/12/98 | Strandwitz, Kniskern, Schulz, and Wyckoff execute an Assignment of rights which **lists Strandwitz, Kniskern, Schulz, and Wyckoff as co-inventors and assigns their rights equally to Memorylink and Motorola**.  (Compl. ¶ 69; Compl. Ex. 8) |
| 6/22/98 | The '352 Patent application, signed by Strandwitz and Kniskern, is filed **listing all four individuals as inventors**.  (Compl. ¶ 75; Compl. Ex. 9) |
| By at least 1/03 | **Banner & Witcoff**, Memorylink's outside counsel, advises it on the '352 Patent.  (Compl. ¶ 118; Compl. Ex. 17) |
| 1/27/03 | **Banner & Witcoff (Memorylink's counsel)** files a divisional patent application from the '352 Patent, again **including Motorola's Schulz and Wyckoff as co-inventors**.  (Compl. ¶ 121; Compl. Ex. 17) |
| Around 1/27/03 | **Banner & Witcoff (Memorylink's counsel)** initiates discussions with Motorola regarding the ownership of the '352 Patent under the Assignment.  (Compl. ¶¶ 120-21; Compl. Ex. 17) |
| 4/30/03 | Memorylink alleged that **Motorola informed Memorylink** that it was **no longer interested** in pursuing the invention and was **ceasing its development efforts.** (Compl. ¶ 125) |
| 6/3/03 | The **'938 Patent (the so-called "Secret Patent")** issues and **becomes public**, including the inventors, assignee and prosecution history.  (Compl. ¶ 127) |
| **6/9/03** | **Cut-off Date for 5-Year Statute of Limitations** |
| **6/9/08** | **Memorylink files its Complaint** |

### 1.   <u>Memorylink's common law fraud claims are time-barred.</u>

As shown above, there is no question that by the Spring of 1998, Memorylink was aware

of facts material to its fraud claim – that Schultz and Wyckoff were to be identified as co-

inventors on the '352 Patent that Motorola would co-own.  *See, e.g.*, *Horbach*, 288 F.3d at 977

(dismissing fraud claim because plaintiff's allegations proved he was aware of facts that would

have alerted him to his claim had he exercised proper diligence); *Cancer Found.*, 2008 WL

927989, at *7 (same); *Tammerello v. Ameriquest Mortgage, Co.*, No. 05-CV-0466, 2006 WL

2860936, at *6 (N.D. Ill. Sept. 29, 2006) (same).  Memorylink ***did not allege a single material***

***fact*** about the '352 Patent that it supposedly "discovered" ***after June 2003***.  (Resp. at 21)

Even if that were somehow not enough to trigger the statute, the statute of limitations

most certainly began running in January 2003 when Banner, Memorylink's outside patent

counsel, filed the divisional application on Memorylink's behalf (once again identifying Schulz

and Wyckoff as co-inventors) and began negotiating the Assignment with Motorola.  (Compl.

¶¶ 118-21; Compl. Ex. 17)  *See, e.g.*, *Sound  of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d

910, 919-20 (7th Cir. 2007) (counsel's representation regarding issues plaintiff's claims were

based on showed that plaintiff should have known of its claims, even if counsel did not in fact

recognize them); *see also* Op. Mem. at 14-15 (citing cases).

In Counts XVIII and XX, Memorylink includes a general fraud allegation relating to the

'938 Patent, the so-called "Secret Patent."  The '938 Patent issued and became public on June 3,

2003 – some "secret."  (Compl. Ex. 2)  The Supreme Court has long held that the issuance of a

patent and its recordation in the Patent Office constitutes notice to the world of its existence.

*See, e.g.*, *Sontag Chain Stores Co. v. Nat'l Nut Co. of Cal.*, 310 U.S. 281, 295 (1940); *Wine Ry.*

*Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 393 (1936).  Thus, as of June 3, 2003,

Memorylink was on notice of facts material to Counts XVIII and XX as they related to the '938

Patent, *i.e.*, the contents of the patent, the named inventors, the assignee, and when it was filed.

*Int'l Bus. Machs. Corp. v. Zachariades*, 70 F.3d 1278 (9th Cir. 1995) (issuance of patents put

plaintiff on constructive notice of claims relating to those patents, triggering statute of

limitations); *Wise v. Hubbard*, 769 F.2d 1, 4 (1st Cir. 1985) (same); *see also The Saenger Org.,*

*Inc. v. Nationwide Ins. Licensing Assocs., Inc.*, 119 F.3d 55, 66 (1st Cir. 1997) (statute of limitations for claim based on filing copyright began to run no later than day copyright issued).

### 2.       Memorylink's promissory fraud claim is also time-barred.

Memorylink's promissory fraud claim pertains to Motorola's alleged promise to enter a definitive agreement to develop the Invention.  (Compl. Count IX; Compl. ¶ 219)  Yet Memorylink alleged that on April 30, 2003, Motorola told Memorylink that it was not interested in pursuing the Invention further.  (Compl. ¶ 125)  To defend its promissory fraud claim, Memorylink cites post-2003 allegations relating to Memorylink's efforts to re-ignite a strategic relationship, but ***does not identify any alleged Motorola promises post-April 2003***.  (Resp. at 23 (citing Compl. ¶¶ 135-142); *see, e.g.*, Compl. ¶ 135 ("In that meeting, Huard [Memorylink's CFO] expressed a desire for definitive agreements between the parties to enforce the Known Patent and a desire to move forward in a business relationship with Motorola."); Compl. ¶ 137 ("In March 2006, Huard held a telephone conference with Kowalski and Jorgensen to further discuss the Known Patent and the related strategic business options."))  Memorylink's promissory fraud claim thus accrued before the statutory cut-off date.[3]

---

[3]    Memorylink argues that "even if Motorola's argument could be construed to bar Memorylink's claims on promises to enter into definitive agreements, Memorylink's promissory fraud claim is based on other oral and written promises such as that each party would retain sole rights to its own inventions."  (Resp. at 23)  But the "promise" Memorylink cites comes from the MOUs (*see* Compl. Ex. 3), which Memorylink did not allege were breached.  In any event, the Seventh Circuit does not permit plaintiffs to turn breach of contract claims into promissory fraud through artful pleading.  *See Desnick v. Am. Broadcasting Cos., Inc.*, 44 F.3d 1345 (7th Cir. 1995).

## II.   MEMORYLINK'S OTHER TORT CLAIMS FAIL AS A MATTER OF LAW.

Memorylink's Complaint includes four other tort claims:  (i) breach of fiduciary duty; (ii) negligent misrepresentation; (iii) tortious interference; and (iv) unjust enrichment.  Each of these claims is time-barred and fails to state a claim.

### A.   Memorylink's Other Tort Claims Are Time-Barred

Memorylink does not dispute that its fiduciary duty and negligent misrepresentation claims arise from the same alleged representations as its common law fraud claims, or that its unjust enrichment claim arises from Motorola's alleged April 2003 decision to stop pursuing the Invention. (Resp. at 20-21, 25, 29)  Similarly, contrary to its assertion otherwise (Resp. at 26), Memorylink also hinged its tortious interference on its common law fraud allegations.  (Compl. ¶ 248 (claim based on Motorola "fraudulently inducing Memorylink to assign rights in the ['352] Patent."))  All four claims are therefore time-barred for the same reasons set forth in the foregoing chart at page 8.

Memorylink attempts to save its time-barred fiduciary duty and tortious interference claims by asserting, without explanation, that these claims were fraudulently concealed.[4]  Yet fraudulent concealment applies only in rare circumstances and would have required Memorylink to plead ***with particularity*** that (1) Motorola took deliberate actions "above and beyond the wrongdoing upon which the plaintiff's claim is founded" to prevent Memorylink from filing suit within the limitations period; and (2) Memorylink could not have discovered its claim through ordinary diligence before the limitations period expired.  *See Miller v. Gain Financial, Inc.*, 995 F.2d 706, 710 (7th Cir. 1993); *The Cancer Found., Inc.*, 2008 WL 927989, at *8; *see also Greer v. Bank One*, No. 01 C 7352, 2002 WL 1732366, at *2 (N.D. Ill. Jul. 25, 2002) ("The alleged

---

[4]   Memorylink also relies on fraudulent concealment to toll the statute of limitations for Counts III, XI, XVII, and XIX.  (Resp. at 12, 25 n.9, 27 n.10)  Memorylink's argument fails with respect to these counts as well.

acts of concealment must amount to active steps beyond a mere non-disclosure or failure to disclose the alleged initial fraudulent conduct."). Memorylink's Complaint satisfies none of these requirements.

### B.     <u>Memorylink Has Not Alleged A Breach of Fiduciary Duty Claim.</u>

The gist of Memorylink's fiduciary duty claim is that Motorola was its fiduciary because Motorola was a larger company, had patent experience, and was in a stronger market position.[5] (*See* Compl. ¶¶ 4, 39-43; Resp. at 25) But a company cannot become a fiduciary simply by doing business with a smaller company. Indeed, expertise and bargaining power do not give rise to a fiduciary duty; rather, the pleadings must show that the entity exercised significant dominance and control over its smaller counterpart. *See N. Trust Co. v. MS Sec. Servs., Inc.*, No. 05 C 3370, 2006 WL 695668, at *11-12 (N.D. Ill. Mar. 15, 2006) (a fiduciary duty exists only where "the more powerful entity has *substantial control over the affairs* of its counterpart") (emphasis added); *see also* Op. Mem. at 19 (citing cases).

No such allegations are included in Memorylink's complaint. To the contrary, agreements attached to Memorylink's Complaint show that between 1998 and 2003 Motorola and Memorylink repeatedly agreed that they were independent contractors, were not acting as each other's agent, and were not in a fiduciary relationship:

- 1/98 MOU: "**Each of the parties** will act as, and will be, **independent contractors** in all aspects of this MOU. **No party** will act or have **authority to act as an agent for any other party** for any purpose. **Nothing in this MOU will be interpreted to constitute or create** a joint venture, partnership, teaming arrangement or other formal business entity or **fiduciary relationship** between the parties . . . ." (Compl. Ex. 3 at 2 (emphasis added))

---

[5]   Memorylink also suggests that Motorola was its fiduciary because of an attorney-client relationship. (Resp. at 25) As discussed previously, Memorylink only alleged that Motorola was appointed to prosecute the patent, and this argument fails as a matter of law in any event. *See supra* at 3.

- 8/01 MOU: "**Each of the parties** will act as, and will be, **independent contractors** in all aspects of this MOU.  **No party** will act or have **authority to act as an agent for the other party** for any purpose . . . ."  (Compl. Ex. 13 at 2 (emphasis added); *see also* Compl. Ex. 14 at 1-2)

- 1/03 MOU: "**Each of the parties** will act as, and will be, **independent contractors** in all aspects of this MOU.  **No party** will act or have **authority to act as an agent for the other party** for any purpose . . . ."  (Compl. Ex. 16 at 1 (emphasis added))

Memorylink's inclusion of these documents with its Complaint precludes any claim that Motorola was somehow its fiduciary.  *Pentech Pharm., Inc. v. Par Pharm., Inc.*, No. 04 C 3149, 2007 WL 3223696, at *7-8 (N.D. Ill. Oct. 25, 2007) (companies were not fiduciaries when agreements specifically stated that they were independent contractors); *see also Centers v. Centennial Mortgage, Inc.,* 398 F.3d 930, 933 (7th Cir. 2005) (language in documents attached to a complaint supersedes any contrary allegations).

### C.     Memorylink Has Not Stated A Negligent Misrepresentation Claim.

Memorylink admits that its negligent misrepresentation claim can proceed only if Motorola was in the business of supplying information.  (Resp. at 20)  To save this claim, Memorylink argues that in connection with its business Motorola supplied legal information. (*Id.*)  However, Illinois law does not permit a negligent misrepresentation suit against one who provides information in the ***course of*** a business transaction; rather, providing information must be the entity's ***primary*** business.[6]  *See First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 218 Ill. 2d 326, 338-41, 843 N.E.2d 327, 334-35 (2006) (negligent misrepresentation not available to those who supply information "ancillary" to another transaction); s*ee also Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F. Supp. 2d 897, 912 (N.D. Ill. 2006) (same).  As

---

[6]     Memorylink's citation of *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1565 (7th Cir. 1987) is inapposite, since that case involved a suit against the plaintiff's retained law firm, where providing legal services was its primary business.

Memorylink alleged, Motorola was a technology developer (Compl. ¶ 12), not an information supplier.

### D.  <u>Memorylink Has Not Pled A Tortious Interference Claim.</u>

Because Memorylink's tortious interference claim is based on fraud (*see supra* at 11), it must be pled with specificity under Rule 9(b) and thus fails as a matter of law. *See Borsellino*, 477 F.3d at 507.

Memorylink's tortious interference claim fails for several other reasons.  First, Memorylink has not alleged that a "clearly identifiable group" of "third parties actually contemplated entering into a business relationship with the plaintiff."  *See Solaia Tech., LLC v. Specialty Publ'g. Co.*, 357 Ill. App. 3d 1, 15, 826 N.E.2d 1208, 1219 (2005), *rev'd in part on other grounds*, 221 Ill. 2d 558, 852 N.E.2d 825 (2006).  Conceding as much, Memorylink argues that "it had an expectancy of entering into licensing agreements with third parties, such as cellular phone manufacturers."  (Resp. at 26 (citing Compl. ¶¶ 90, 141))  But the paragraphs cited say nothing of the sort and, in any event, do not satisfy Memorylink's pleading requirement.  *See Parkway Bank & Trust Co. v. City of Darien*, 43 Ill. App. 3d 400, 403, 234, 357 N.E.2d 211, 214-15 (1976) (dismissing tortious interference claim where plaintiff failed to allege "any clearly identifiable group of third parties contemplating prospective contractual arrangements with the plaintiff").

Second, Memorylink has not pled that Motorola took actions by which it intended to interfere with Memorylink's business relationships with third parties.  *See Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 989 (N.D. Ill. 2006); *Cohabaco Cigar Co. v. U.S. Tobacco Co.*, No. 98 C 1580, 1999 WL 988805, at *13 (N.D. Ill. Oct. 22, 1999). Memorylink's response that Motorola entered into certain licensing or pick agreements with third parties (Resp. at 26) is not sufficient, especially since Memorylink does not allege that

Motorola knew of any relationships that Memorylink had, or intended to have, with such third parties.

### E. Memorylink Has Not Stated An Unjust Enrichment Claim.

Memorylink does not dispute that its unjust enrichment claim cannot stand if Memorylink and Motorola were in a contractual relationship. *See Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.,* 517 F.3d 476, 487 (7th Cir. 2008). Instead, Memorylink argues (without support) that it did not have a contractual relationship with Motorola. (Resp. at 29) This argument is incredible, since Memorylink attached four MOUs and the Assignment to its Complaint and never alleged, as it argues now, that the MOUs were not valid and binding.

### III. MEMORYLINK'S CLAIM THAT MOTOROLA BREACHED NDAs IS LEGALLY FLAWED.

### A. Memorylink's Claim That Motorola Breached The NDAs Is Time-Barred.

Memorylink acknowledges that the only alleged breach of a non-disclosure agreement was Motorola's purported demonstration to Sony in late June 1998. (Resp. at 24) Memorylink's attempt to save this claim by arguing that the ten-year statute of limitations applies fails since the claim was expressly based on fraud. (*See* Compl. ¶ 88 (describing demonstration of technology to Sony as part of Motorola's "scheme to steal Memorylink's technology"); Compl. ¶ 219 ("Motorola made false promises of future actions to Memorylink . . . with the intent to deceive Memorylink into continuing to share information with Motorola and to allow Motorola to use the Invention for demonstrations with its potential customers.")) The five-year statute of limitations for fraud applies, and Count VI is time-barred. *See, e.g.*, *Armstrong v. Guigler*, 174 Ill. 2d 281, 286-87, 673 N.E.2d 290, 293 (1996) (applicable statute of limitations is determined by "look[ing] behind the plaintiff's allegations to discover the true character of plaintiffs' cause of action").

**B.      Memorylink Has Not Pled Its NDA Claim Properly.**

Memorylink's claim for breach of the non-disclosure agreements further fails because Memorylink has not pled the terms or legal effect of the agreement it claims was breached, and implicitly concedes (Resp. at 24 n.7) that it did not allege its own performance, an essential element of its claim.  *See Burke v. Lakin Law Firm, PC*, No. 07-cv-0076, 2008 WL 64521, *2 (S.D. Ill. Jan. 3, 2008).

**IV.      MEMORYLINK'S ASSIGNMENT AND PATENT INFRINGEMENT CLAIMS ARE LEGALLY INSUFFICIENT.**

**A.      Memorylink's Assignment Claims Should Be Dismissed.**

It is critical to Memorylink's lawsuit – and especially to its patent infringement claim – that the Assignment transferring ownership of the '352 Patent from the co-inventors to Memorylink and Motorola be found invalid.  That is because, as an assignee of the patent, Motorola cannot be liable for infringement.  *Schering Corp. v. Zeneca, Inc.*, 104 F.3d 341, 344 (Fed. Cir. 1997).  Yet Memorylink has not stated a claim that the Assignment is invalid.

**1.      There was consideration for the Assignment.**

In Count III, Memorylink seeks to void the Assignment for lack of consideration.  This claim fails for three independent reasons.

*First*, Memorylink does not dispute that under Illinois law, ***any*** benefit whatsoever is sufficient consideration, and a decline in the perceived value of one's consideration does not render an agreement void.  (Op. Mem. at 15-16)  The Assignment provided Memorylink with (1) equal rights to Motorola on the '352 Patent; and (2) the right to license the patent to others and to assert it against others.[7]  (Compl. ¶ 69; Compl. Exs. 6, 8; Resp. at 27)  Given that Memorylink

---

[7]      Memorylink neither alleged in the Complaint that it had these rights prior to the June 1998 Assignment, nor did it allege that ***Strandwitz and Kniskern*** assigned to Memorylink any of their rights to the '352 Patent before the June 1998 Assignment.

16

had ***no rights*** to the patent before the assignment, those rights clearly constitute benefits to Memorylink. That Memorylink now thinks it should have received more consideration does not render the Assignment invalid. (*See* Op. Mem. at 15-16)

*Second*, Memorylink argues that Strandwitz and Kniskern received no benefit. But this argument is irrelevant – Strandwitz and Kniskern are not parties and Memorylink lacks standing to assert their claims. Memorylink argues that it can challenge the consideration received by the individuals because Strandwitz's and Kniskern's *former companies* assigned their rights to Memorylink, and because Strandwitz and Kniskern were employees of Memorylink. (Resp. at 9-11 (citing Compl. ¶¶ 24, 25)) That argument makes no sense and, in any event, Memorylink has not pled that Strandwitz and Kniskern assigned Memorylink their rights before the Assignment.[8]

*Third*, Count III is premised on the common law fraud allegations (Compl. ¶¶ 46-47, 72-73; Resp. at 2), and is barred by the five-year statute of limitations. *See Borsellino*, 477 F.3d at 507; *Armstrong*, 174 Ill. 2d at 290-91, 673 N.E.2d at 295.

## 2. Memorylink has not pled that it was fraudulently induced into signing the Assignment.

Memorylink admits that Count II is based on the same allegations as its common law fraud claims. (Resp. at 10) Those claims suffer from four independently fatal deficiencies, so Count II likewise fails as a matter of law. *See supra* at 2-10.

## B. Memorylink's Patent Infringement Claim Must Be Dismissed.

As discussed above, Memorylink's attempt to invalidate the Assignment giving Motorola rights to the '352 Patent fails as a matter of law. With the Assignment in place, Memorylink cannot allege that Motorola is liable for infringement. 35 U.S.C. § 262 ("[E]ach of the joint

---

[8] Obviously Memorylink cannot rely on the June 1998 Assignment itself for the argument that Strandwitz and Kniskern assigned their rights to Memorylink, given that Memorylink seeks to invalidate the Assignment.

owners of a patent may make, use, offer to sell, or sell the patented invention within the United States . . . without the consent of and without accounting to the other owners."); *Schering*, 104 F.3d at 344 (same).

Even assuming *arguendo* that Memorylink's fraud claims survived and the Assignment was determined to be invalid, Memorylink does not have standing to sue for infringement – Memorylink's Complaint does not allege that Strandwitz and Kniskern assigned their rights to Memorylink, or have an obligation to do so in the future.[9]  *See supra* at 17.

## V.     MEMORYLINK HAS FAILED TO STATE CORRECTION OF INVENTORSHIP AND CONVERSION CLAIMS.

### A.     Memorylink's Claim To Correct The Inventorship Of The '352 Patent Fails.

Memorylink spends six pages of its Response trying to fabricate a factual dispute regarding inventorship of the '352 Patent.  But the Complaint Exhibits plainly refute each of Memorylink's arguments.

*First*, as discussed above, in April 1998, Memorylink did not object to Motorola's Schulz or Wyckoff being listed as inventors to the patent when asked to consider it.  And the authority Memorylink relies on to support its position that it could not have been expected to understand the legal standard for inventorship does nothing to help it.  (Resp. at 7)  Indeed, in *Stern v. Trs. of Columbia Univ.*, 434 F.3d 1375 (Fed. Cir. 2006), the only issue regarding inventorship was whether one of the alleged co-inventors *understood the technology* behind the claimed invention. *Id.* at 1378.

---

[9]     The cases cited by Memorylink do not support its standing argument.  (Resp. at 13)  In both *J & J Mfg. Inc. v. Logan*, 24 F. Supp. 2d 692, 700 (E.D. Tex. 1998), and *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580 (Fed. Cir. 1991), standing was premised on the plaintiff's position as an "equitable title holder."  But to be an equitable title holder, the plaintiff had to *allege* that the inventors assigned all rights to them. *See J & J Mfg., Inc*, 24 F. Supp. 2d at 694 ("[the inventors] assigned all rights of ownership . . . to J & J" (citing the complaint)).

*Second*, Memorylink's outside patent counsel included Motorola's two employees as inventors when filing its own joint patent applications in 2003 and 2007. Contrary to Memorylink's false and unsupported statements (Resp. at 8), it is an elementary principle of patent law that divisional and continuation applications are not required to name the same inventors as the parent application. Under 37 C.F.R. § 1.63(d), an applicant may either (i) file a newly executed inventor oath or declaration, or (ii) file a copy of a previously executed inventor oath or declaration "accompanied by a statement requesting the deletion of the name or names of the person or persons who are not inventors."[10]

*Finally*, Memorylink's argument – that it is irrelevant that Motorola conceived and developed the integrated circuitry needed to transmit data in the 5GHz range (Resp. at 3) – completely ignores the claim language in the '352 Patent (attached to the Complaint) that is specifically directed to this novel radio transmitter/receiver control circuitry, multi-camera communication, and shared use of a common radio channel. (Compl. Ex. 1 at Col. 14-18, Claims 1, 5, 8, 10, 14, 18, 21 and 23) Indeed, the Technology Overview *written by Memorylink* (Compl. ¶ 27) unmistakably states that these contributions by Motorola were a "key development" of the invention. (Compl. Ex. 4 at 1 (Motorola's "creation . . . of the first commercially viable integrated circuitry to provide high speed, digitally formatted data transmission at this new frequency"))

---

[10] *See also* MPEP § 201.06(c) ("The filing of a continuation or divisional application by all or by fewer than all of the inventors named in a prior application without a newly executed oath or declaration *is permitted*. Applicant has the option of filing: (A) a newly executed oath or declaration signed by the inventors for the continuation or divisional application; or (B) a copy of the oath or declaration filed in the prior application *accompanied by a statement* from applicant, applicant's representative or other authorized party *requesting the deletion of the names of the person or persons who are not inventors* in the continuation or divisional application.") (emphasis added). The Manual of Patent Examining Procedure (MPEP) is a reference for examiners and practitioners based on the patent laws (35 USC) and patent rules (37 CFR).

**B.**      **Memorylink's Claim To Correct The Inventorship Of The '938 Patent Fails.**

Memorylink's argument that Motorola failed to dispute the Complaint allegations

regarding the '938 Patent misses the mark.  (Resp. at 9)  Motorola filed a Motion to Dismiss, not

an Answer, so it was not obligated to dispute Memorylink's factual allegations.[11]  Regardless,

even assuming the truth of that Complaint allegation, Memorylink lacks standing to seek to

correct the inventorship of the '938 Patent, because it failed to plead that Strandwitz and

Kniskern assigned their alleged rights to Memorylink or, alternatively, failed to include

Strandwitz and Kniskern as plaintiffs.  *See supra* at 17.

**C.**      **Memorylink's Claims To Correct The Inventorship Of The Pending Patent Applications Are Not Legally Cognizable.**

Despite crystal clear law contradicting Memorylink's position that a district court can

modify the inventorship of a *pending* patent application, it is well-settled that only the Patent and

Trademark Office – not a district court – can do so.  *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d

1352, 1357 n.1 (Fed. Cir. 2004) (35 U.S.C. § 256 "creates a cause of action in the district courts

***only*** to modify inventorship on ***issued*** patents"; 35 U.S.C. § 116 "plainly does not create a cause

of action in the district courts to modify inventorship on ***pending*** patent applications") (emphasis

added).  In *Display Research Labs., Inc. v. Telegen Corp.*, 133 F. Supp. 2d 1170 (N.D. Cal.

2001), a district court considered this exact issue and dismissed the count under 12(b)(6) for

failure to state a claim, holding it could not modify the inventorship of a pending application.  *Id.*

at 1174.  The case cited by Memorylink, *Medigene AG v. Loyola Univ. of Chicago*, No. 98-cv-

2026, 2001 WL 1636425 (N.D. Ill. Dec. 19, 2001), is not to the contrary.  In *Medigene*, the court

expressly stated that Loyola was "not seeking to correct anything pending in the Patent Office,"

---

[11]    Notably, the allegations regarding the so-called "Secret Patent" are entirely false.  The claimed subject matter of the '938 Patent is directed to a camcorder configured to receive a removable modem in its tape slot – a high-level novelty that Schulz and Wyckoff independently conceived of without any interaction or discussion with, or contribution from, Strandwitz, Kniskern, or anyone at Memorylink.

but was requesting "a ***declaration*** that someone ***not*** named in the issued patent or the pending application is ***not*** a co-inventor." *Id*. at *5 (emphasis added).

### D. Memorylink's Conversion Claims Should Be Dismissed.

#### 1. Memorylink's conversion claims are time-barred.

Memorylink alleged that its intellectual property was converted when Motorola filed the '352 and '938 Patents. (Compl. ¶¶ 75, 80, 241) Memorylink does not dispute that the five-year statute of limitations for conversion runs on the date of the alleged conversion; thus the claims became time-barred on June 22 and 24, 2003, respectively.[12]

#### 2. Memorylink has not stated a conversion claim.

Memorylink does not dispute that, if its fraud claims fail, then its conversion claims fail with it. But even if Memorylink's fraud claims survive, the conversion claims must be dismissed. If the Assignment is invalid, then the '352 Patent rights belong to Strandwitz and Kniskern personally, and Memorylink could not allege that it has "a right to the property." *Cirrincione v. Johnson*, 184 Ill. 2d 109, 114, 703 N.E.2d 67, 70 (1998).

In addition, Memorylink misstates Motorola's position regarding whether claims for conversion of intangible property are recognized by leaving out key language from Motorola's Opening Memorandum: "Illinois law does not recognize conversion claims relating to intangible property like a patent, *unless that tangible property is 'merged into a tangible document' that is 'easily convertible into tangible assets, not dissimilar to currency.'*" (Op. Mem. at 24-25; *see Film & Tape Works, Inc. v. Junetwenty Films, Inc.*, 368 Ill. App. 3d 462, 475-76, 856 N.E.2d 612, 624 (2006))

---

[12] As explained above, Memorylink has not alleged and cannot show fraudulent concealment. *See supra* at 11-12. Furthermore, even if the discovery rule applies, Memorylink had knowledge of the relevant facts regarding the '352 Patent no later than June 22, 1998, and, as a matter of law, Memorylink had knowledge of the relevant facts regarding the '938 Patent when it issued on June 3, 2003, barring this claim on June 3, 2008 before Memorylink filed the Complaint. *See supra* at 9-10.

Memorylink nonetheless argues that its "rights are merged into the patents and the Assignment" because Motorola (i) had Memorylink sign the Assignment, and (ii) listed the employees on the patents, thus creating "tangible documents in which the patent rights were merged." (Resp. at 29) But Memorylink does not explain, or cite to any authority that explains, how this creates tangible property. In *Richmond v. Nat'l Inst. of Certified Estate Planners*, No. 06 C 1032, 2006 WL 2375454 (N.D. Ill. Aug. 15, 2006), the court considered a similar issue and held that a trademark is not "tangible" because it "exists solely because a federal statute memorialized an idea and thereby transformed it into intellectual property protected by federal law." *Id*. at *7. A U.S. patent also exists solely for this reason, and does not exist independently, like a house, satellite signal, or customer list. *Id*. As the court found in *Richmond*, Memorylink's claim of conversion essentially restates its infringement claim. And Memorylink has not pled – and cannot plead – that as a joint owner it was "entirely deprived" of the property.

## CONCLUSION

For the foregoing reasons as well as those set forth in its opening brief, Motorola respectfully requests that the Court dismiss Memorylink's claims with prejudice.

Dated:  October 27, 2008                    Respectfully submitted,


                                    /s/ Anne McClain Sidrys
                                    Anne McClain Sidrys (6209457)
                                    Mark J. Nomellini (6243579)
                                    Nyika O. Strickland (6275717)
                                    KIRKLAND & ELLIS LLP (Firm No. 90443)
                                    200 East Randolph Drive
                                    Chicago, IL 60601
                                    (312) 861-2000

                                    *Attorneys for Defendant Motorola, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Anne M. Sidrys, hereby certify that on October 27, 2008, I caused a copy of the

foregoing, REPLY MEMORANDUM IN SUPPORT OF MOTOROLA INC.'s MOTION TO

DISMISS to be served via the court's CM/ECF System.

/s/ Anne McClain Sidrys
Anne McClain Sidrys (6209457)
KIRKLAND & ELLIS LLP (Firm No. 90443)
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

*Attorney for Defendant Motorola, Inc.*