IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEMORYLINK CORPORATION, | ) | No.    08 C 3301 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | The Honorable William J. Hibbler |
| | ) | |
| v. | ) | |
| | ) | |
| MOTOROLA, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This lawsuit alleges that Motorola defrauded Memorylink out of its intellectual property rights. Motorola denies the allegations and moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Motorola's motion to dismiss is GRANTED in part and DENIED in part.

### I.    Factual Background

The following facts are taken from Memorylink's complaint and corresponding exhibits. In 1996, Peter Strandwitz and Robert Kniskern developed technology that enabled the wireless transmission of real time video. (Compl.¶¶ 11, 15, 20) About a year later, Strandwitz approached Motorola to explore the possibility of entering into a business relationship. (Compl. ¶¶ 11-17) Strandwitz believed that combining his video compression technology with Motorola's radio transmission technology would result in a lucrative business partnership; Motorola agreed. (Compl. ¶ 13) On January 13, 1998, the

parties signed a Memorandum of Understanding outlining the terms of their relationship. (Compl. Ex. 3) The MOU stated that the parties would combine their technologies to develop a preliminary specification, and the resulting model would be "jointly owned." (Compl. Ex. 3) Additionally, the MOU stated that each party was an independent contractor "in all aspects" and there was no fiduciary relationship between the parties. (Compl. Ex. 3) After signing the agreement, Strandwitz and Kniskern incorporated Memorylink; Strandwitz was the CEO and Kniskern was a director. (Compl. ¶ 24)

In February 1998, Memorylink—in "anticipation of filing one or more patent applications"—drafted a document entitled the "Wireless Multimedia Core Technology Overview" that described the goals of the parties regarding their working relationship. (Compl. Ex 4) The Technology Overview stated that a unique market opportunity existed because of "the creation by Motorola, Inc., of the first commercially viable integrated circuitry to provide high speed, digitally formatted data transmission ... and the creation by Memorylink Corp., of a highly integrated, multimedia processor and communication control circuit utilizing a proprietary audio/video data transfer format." (Compl. Ex. 4)

Over the next few months, Memorylink demonstrated several applications of its new technology. (Compl. ¶¶ 29-32) For example, on February 25, 1998, Memorylink modified two Sharp video camcorders so that camera A wirelessly transmitted real-time video footage that was displayed by camera B. (Compl. ¶ 30) Memorylink accomplished this by equipping the camcorders with its video compression technology, which allowed the camcorders to use Motorola's radio technology to transmit the images. (Compl. ¶ 31) According to Memorylink, Motorola was "blown away" and "astonished" by the

2

demonstrations. (Compl. ¶ 32) When the demonstration concluded, Motorola asked Memorylink to leave the modified camcorders with Motorola's engineers; Memorylink complied. (Compl. ¶ 33) The demonstration convinced Motorola that synergies existed between Motorola and Memorylink, and the parties decided to work on a patent application. (Compl. ¶¶ 32, 39)

Strandwitz and Kniskern had very little patent experience, so when Motorola suggested that its legal department should handle the patent application, Memorylink readily agreed. (Compl. ¶ 39) On April 13, 1998, Hugh Dunlop, a Motorola senior patent manger, sent a letter to Strandwitz stating that Motorola had reviewed the Technology Overview in order to identify a "basis for patent applications that might be filed as a result of the design effort between Motorola and Memorylink." (Compl. Ex. 5) Dunlop suggested the parties file a "joint patent application" and included a Patent Filing Agreement for Memorylink to review. (Compl. Ex. 5) Dunlop also stated that it was his understanding that Memorylink worked with Gary Schulz and Jan Wyckoff—two Motorola engineers—to develop the invention underlying the prospective patent:

> It is my understanding from Gary Schulz and Jan Wyckoff that the inventors for these ideas are yourself, Gary, Jan, and Bob Kniskern. Please let me know if you or Bob disagree with this determination of inventership.

(Compl. Ex. 5) Memorylink did not object to Dunlop's characterization of the inventorship. (Memorylink Resp. Br. at 7).

On April 21, 1998, the parties met to discuss potential patent applications. (Compl. ¶ 62) At the meeting, Strandwitz and Kniskern signed an invention disclosure form listing themselves, Schulz and Wyckoff as joint inventors of the soon-to-be patented invention. (Compl. ¶ 63) In June 1998, Kniskern and Strandwitz executed an

Assignment to transfer their rights in the prospective invention and any resulting patents to Memorylink. (Compl. ¶ 69)  Wyckoff and Schulz executed the same document, thus transferring their rights in the prospective invention and resulting patents to Motorola. (Compl. ¶ 69)  The Assignment provided that Memorylink and Motorola would hold "jointly and equally, the entire right, title and interest in" any resulting patents.  On June 22, 1998, Motorola's in-house lawyers finished their preparation of the patent application and filed it with the United States Patent Office as U.S. Patent Application Serial No. 09/102,457 titled "Self Contained Wireless Camera Invention, Wireless Camera System and Method." (Compl. Ex. 9)  The application was granted on February 18, 2003, as U.S. Patent No. 6, 522,352.  (Compl. Ex. 1) (the '352 Patent).

Two days after Motorola filed the '352 Patent application, it filed a second patent application titled "Self-Contained Camera Invention and Method for Capturing and Communicating Images via am Modem." (Compl. ¶ 80)  Motorola listed Schulz and Wyckoff as the inventors on the application, but there was no mention of Strandwitz or Kniskern. (Compl. ¶ 81)  Memorylink alleges that the application depicts two video camcorders that bear "unmistakable similarities" to the modified video camcorders Memorylink developed to demonstrate its technology.  Moreover, because Memorylink left the modified camcorders with Motorola, Memorylink contends that Motorola had ample time and opportunity to "steal" the invention. (Compl. ¶¶ 83-84)  Motorola's application was granted on June 3, 2003, as U.S. Patent No. 6, 573, 938. (Compl. Ex. 2) (the '938 Patent).  Memorylink contends it was unaware of this patent filing until November 29, 2007. (Compl. ¶ 85)

In light of these facts, Memorylink alleges that Motorola fraudulently induced it to:

(1) name Motorola's engineers as co-inventors of the '352 Patent; and (2) give Motorola

joint ownership of the '352 Patent.  In Memorylink's own words:

> Motorola made false statements and/or omissions of material fact concerning the
> explanation of the inventorship, the Assignment and the legal effects of joint
> ownership of the patent right.  If an explanation of inventorship, assignment and joint
> ownership was made to Strandwitz and Kniskern, they would not have assigned any
> of their rights in the Invention to Motorola, and they would have objected to the
> addition of the Motorola's employees being added as co-inventors on the patent
> application.

(Compl. ¶ 66)  Memorylink further alleges that "no one from Motorola at any time

advised Strandwitz and Kniskern as to the legal significance of their signatures on the

Assignment—namely that they were giving away a significant portion of their patent

rights to Motorola for free." (Compl. ¶ 71)  Memorylink claims the fraud was

particularly egregious because Motorola made no significant contributions to the

development of the Invention.

Finally, Memorylink claims that Motorola—without Memorylink's knowledge or

consent—used the modified camcorders from Memorylink's demonstrations in order to

"secretly" file a second patent (the '938 Patent), which did not list Memorylink as an

inventor:

> Motorola knew that the application for the Secret Patent would be unpublished
> meaning that it was not publicly available, until after the Secret Patent issued, thus
> making it less likely that Memorylink would discover the Secret Patent or Motorola's
> overall scheme to steal Memorylink's technology or intellectual property rights.

(Compl. ¶ 83)  Thus, Memorylink claims it was cheated out of the opportunity to file its

own version of the '938 Patent.

## II.    Standard of Review

Rule 12(b)(6) permits a defendant to challenge the sufficiency of the plaintiff's complaint; specifically, whether the complaint states a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded allegations in the complaint as true, and draw all reasonable inferences in favor of plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (internal citation omitted). To defeat a Rule 12(b)(6) motion, "the complaint need only contain a short and plain statement of the claim showing that the pleader is entitled to relief." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). Although particularized "fact pleading" is unnecessary, the allegations in the complaint must provide enough information for the defendant to have "fair notice" of the claim and the "grounds upon which it rests." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007). Finally, the allegations in the complaint must suggest a right to relief that rises above the speculative level. *Id.* at 555.

### III.     Analysis

Memorylink's complaint contains 19 counts, which can be divided into four main categories: (1) Fraud; (2) Tort; (3) Intellectual Property; and (4) Contract.

A.     *The Fraud Claims are Untimely*

The essence of this lawsuit is that Motorola fraudulently induced Memorylink to give up its intellectual property rights. In Illinois, the statute of limitations for fraud claims is five years. 735 ILCS 5/13-205; *Horbach v. Kaczmarek*, 288 F.3d 969, 977 (7th Cir. 2002). The statute begins to run when the "wrong was committed, or the time when the fraud was discovered or could have been discovered through due diligence."

6

*Rao v. BP Prods. N. Am., Inc.*, No. 04-C6040, 2006 U.S. Dist. LEXIS 95271, at *25 (N.D. Ill. Feb. 24, 2006). Memorylink's fraud claims regarding the '352 Patent arise out of two events: (1) Memorylink naming Motorola's engineers as co-inventors on the patent application; and (2) Memorylink executing an Assignment that granted Motorola joint ownership of the patent. Both of these events occurred in June 1998. Therefore, Memorylink should have brought its fraud claims no later than June 2003. Memorylink, however, waited to sue Motorola until June 9, 2008. Nevertheless, Memorylink argues its claims are timely because it did not discover the fraud until 2007.

In April 1998, Strandwitz received a letter from a Motorola patent manager (Hugh Dunlop) stating, "It is my understanding ... that the inventors for these ideas are yourself, Gary, Jan, and Bob Kniskern." (Compl. Ex. 5) Memorylink stayed silent, and two months later, Motorola drafted a patent application that listed the two Motorola engineers as co-inventors. (Memorylink Resp. Br. at 7). The letter from Dunlop was the perfect opportunity for Memorylink to express the claims it now advances, *i.e.*, Motorola's engineers were non-contributors and should not be listed as co-inventors of the Patent. Memorylink, however, claims it did not object to the patent application because its agents had no legal background, and it failed to grasp the significance of the term "co-inventor." Thus, Memorylink claims it had no idea that Motorola's request to list two *non-contributing* engineers as co-inventors may have been rooted in fraud.

Memorylink makes a similar claim regarding its decision to sign the Assignment. Memorylink contends that because it was unaware of its legal rights, it had no idea that the Assignment would grant Motorola joint ownership in the patent. Memorylink asserts that once it had a better understanding of the law, it realized the Assignment was a

fraudulent attempt to gain ownership of the Patent. Therefore, Memorylink argues that its complaint is timely because the statute of limitations should not start running until it knew enough law to realize that Motorola was engaged in fraud.

Memorylink is correct in claiming that courts sometimes toll the statute of limitations until a plaintiff learns he has been the victim of fraud. But, where the purported fraud is apparent to the naked eye or discoverable through reasonable diligence, the plaintiff is bound by the normal five-year statute of limitations. For example, in *Rao*, a gas station owner sued employees of BP Amoco for fraud. *Rao*, 2006 U.S. Dist. LEXIS 95271, at *3. Rao alleged that the defendants pressured him into performing personal favors by threatening to increase his rent or terminate his lease. *Id.* at *26. The defendants, however, asserted that the fraud claims were untimely because Rao waited more than five years to bring suit. *Id.* at * 24. In response Rao argued that his complaint was timely because he did not learn of the fraud until more than five years had elapsed. *Id.* at 25-26.

The court began its analysis by noting that Illinois has a "discovery rule," which "keeps a claim from accruing until the plaintiff knows, or through reasonable diligence, should have known of the injury." *Id.* at 26. But, the discovery rule did not excuse Rao's lateness. The court reasoned that if Rao had exerted a little effort, he would have discovered his fraud claims much earlier:

> If Rao had acted with reasonable diligence, he would have become aware of the alleged fraud immediately. Rao claims he was told, for example, that BP could increase his rent and terminate his lease at any time it wished. Rao could easily have ascertained whether these assertions were true by consulting the relevant documents or seeking legal advice.

*Id.* at 28. Thus, the court dismissed Rao's fraud claims as untimely.

The Seventh Circuit analyzed a similar argument in *Horbach v. Kaczmarek*, 288 F.3d 969, 971 (7th Cir. 2002). In *Horbach*, the plaintiff ordered a tire pyrolysis system from the defendants. An agent for the plaintiff visited the defendant's warehouse after the manufacturing was supposed to be completed. Instead of seeing a finished product, however, the agent saw parts and equipment scattered around the floor. *Id.* at 5. More than five years later, the plaintiff sued for fraud, and the defendant moved to dismiss on the grounds that the suit was untimely. The plaintiff countered by arguing that the statute of limitations should be tolled because he did not learn of the fraud right away. *Id.* at 11. Specifically, the plaintiff asserted that, "the pyrolysis equipment was highly complex and that the [plaintiff] lacked technical knowledge and skill to asses the quality of that equipment himself." *Id.*

The Seventh Circuit rejected the plaintiff's argument because the discovery rule does not toll the statute of limitations where the fraud is discoverable through ordinary diligence:

> Although Horbach makes much of the complexity of the pyrolysis system, his own lack of expertise, and the need for testing ... the complaint makes clear that the [defendant's] purported fraud was readily apparent to the naked, non-expert eye. When [the plaintiff's agent] visited the Portland facility, he found no pyrolysis system at all, but only scattered components ... thus the complexity of the machinery did nothing to cloak [the defendant's] purported fraud.

*Id.* at 22. Accordingly, the court upheld the district court's dismissal of the plaintiff's fraud claims.

Here, as in *Horbach* and *Rao*, the discovery rule cannot revive Memorylink's claims. Memorylink says it was duped into believing that Motorola's engineers were required to be named as co-inventors. Moreover, Memorylink claims it had no idea that Motorola's demands may have been fraudulent. The notion that Memorylink had no

suspicions of fraud seem highly suspect given Memorylink's dogged insistence that
Motorola's engineers contributed nothing to the patent. In this case, Motorola's
purported fraud would be relatively easy to unearth. An individual does not need a law
degree to understand that those who contribute nothing to an invention are not "required"
to be listed as "co-inventors." Indeed, the United States Patent and Trademark Office's
website unambiguously states: "According to the law, *only the inventor* may apply for a
patent ... If two or more persons make an invention jointly, they apply for a patent as joint
inventors. A person who makes only a financial contribution is not a joint inventor and
cannot be joined in the application as an inventor." United States Patent and Trademark
Office, http://www.uspto.gov/web/offices/pac/doc/general/index.html#patent (last
accessed Feb. 20, 2009). These concepts are not difficult to understand.

The same logic can be applied to the issues regarding the Assignment.
Memorylink contends that Strandwitz and Kniskern were unaware that they were giving
up some of their ownership rights when they signed the Assignment. The Court is hard
pressed to understand how this can be true given that the Assignment is relatively clear.
Specifically, the Assignment states the parties, "hereby also sell, assign and transfer unto
the said Motorola, Inc., and Memorylink Corp., *jointly and equally, the entire right, title
and interest in and to said invention* ..." (Compl. Ex. 8) (emphasis added). Motorola's
name is not buried in the fine print, nor is the language difficult to understand. If
Memorylink had doubts about the Assignment, they should have either refused to sign it
or consulted a lawyer.

Memorylink claims Motorola contributed nothing to the Invention. If this is true,
then Memorylink should have been aware of the potential fraud because the Assignment

clearly states that it will grant joint ownership of the Invention to Motorola. Where the purported fraud is readily apparent to the naked eye—in this case, executing a document that plainly states the signer is giving away certain rights—the Court will not toll the statute of limitations due to the plaintiff's ignorance of the law. *See, e.g., Draper v. Pickus*, No. 04-C8150, 2007 U.S. DIST LEXIS 18200, at *18-19 (N.D. Ill. Mar. 15, 2007) (noting that the court will not toll the statute of limitations where a plaintiff "had some evidence of an injury more than five years before bringing suit, and a reasonable person in the plaintiff's position would have inquired into the possibility that the defendants had engaged in actionable conduct …");*Goldstandt v. Bear Stearns & Co.*, 522 F.2d 1265, 1269 (7th Cir. 1975) (dismissing a complaint as untimely despite the plaintiff's ignorance of the law because, "it is well established that a plaintiff may not merely rely upon his own unawareness of the facts or law to toll the statute.").

Strandwitz and Kniskern decided to rely on their own wits as opposed to consulting a lawyer. More than five years after the fact, they realized this may have been a mistake. Memorylink asks rhetorically why it would agree to such one-sided terms unless there was an element of fraud involved. The Court is unsure, but every poor business decision is not the result of fraud. Perhaps Memorylink acquiesced to Motorola's demands not because they were unaware of potential fraud, but because they wanted to keep Motorola—with all its financial resources, laboratory space and distribution partners—happy. In any event, the counts of the complaint sounding in fraud and arising out of Motorola's conduct regarding the '352 Patent and the Assignment (Counts II, III, VIII, IX, XII XVIII, and XX) are dismissed as untimely.[123]

---

[1] Count III claims that the Assignment is void for lack of consideration, in other words, Memorylink was duped into executing the Assignment and got nothing in return. Memorylink alleges that Count III is a

B.    *The Negligent Misrepresentation Claim is Untimely*

In Illinois, the statute of limitations for negligent misrepresentation is five years. *Brown v. New York Life Ins. Co.,* No. 06-C3339, 2008 U.S. Dist. LEXIS 2942, at *6 (N.D. Ill. Jan. 15, 2008). The statute begins running when the plaintiff knew or reasonably should have known of his cause of action. *Bachman v. Bear, Stearns & Co,* 57 F. Supp. 2d 556, 559 (N.D. Ill. 1999). Once again, because Memorylink was aware of the facts necessary to bring its claim and the alleged misrepresentation—the claim that non-contributing engineers *must* be listed as co-inventors—was not actively concealed, the Court will not toll the statute of limitations. *See, e.g., Entertainment, Inc., v. City of Northlake,* No. 03-C-692, 2003 U.S. Dist. LEXIS 23285, at *17 (N.D. Ill. Dec. 29, 2003) ("Yet where, as here, plaintiffs were aware of the facts necessary to make a claim, a lack of comprehension of the legal significance of those facts—or perhaps more aptly, a lack

---

breach of contract claim, and thus, is subject to the 10-year statute of limitations. The Court, however, finds that Count III is simply a different version of Memorylink's common law fraud claim, and thus, is governed by the five-year statue of limitation. *See, e.g., Pavlik v. Kornhaber,* 326 Ill. App. 3d 731, 747-48, 761 N.E.2d 175, 189 (2001) (finding that the applicable statute of limitations is determined by the nature of alleged injury, not the title of plaintiff's claim.); *Armstrong v. Guigler,* 174 Ill. 2d 281, 286, 673 N.E.2d 290, 293, 220 Ill. Dec. 378 (1996) (holding that the written contract in the case was incidental to the plaintiff's cause of action and applying the five-year statute of limitations rather than the 10-year statute of limitations for written contracts.); *Sabath v. Mansfield,* 60 Ill. App. 3d 1008, 15, 18 Ill. Dec. 8, 377 N.E.2d 161 (1978) ("[a] suit for fraud committed in the breach of a written contract is governed by the five year statute [of limitations] …").

[2] Count XII is for tortuous interference with a prospective economic advantage. Specifically, Memorylink alleges that it had an exclusive right to the financial benefit bestowed by the '352 Patent, and it was "fraudulently induced" into signing away its intellectual property rights. Because Count XII relies on the same allegations as the fraud claims—and tortuous interference is also subject to a five-year statute of limitations—this claim is also time barred for the reasons discussed in part A. *E&J Gallo Winery v. Morand Bros. Beverage Co.,* 247 F. Supp. 2d 979, 987 (N.D. Ill. 2003).

[3] Count IX is for "Promissory Fraud" and alleges that Motorola made "false promises of future actions to Memorylink" including "promises of entering into definitive agreements" regarding future collaborations. Memorylink also alleges that on April 30, 2003, Motorola told Memorylink that it was no longer interested in Memorylink's wireless technology and was ceasing all development efforts. (Compl. ¶ 125) Accordingly, Memorylink was aware that Motorola had broken its alleged promises when it received this letter. For Count IX to have been timely, this claim should have been brought before the end of April 2008.

of diligence in seeking a lawyer's opinion—will not delay the running of the limitations clock."). Count X is dismissed.

C.    *The Breach of Fiduciary Duty Claim is Untimely*

Memorylink and Motorola signed a Memorandum of Understanding stating: "Nothing in this MOU will be interpreted to constitute or create a joint venture, partnership ... or fiduciary relationship between the parties ..." (Compl. Ex. 3). Nevertheless, Memorylink alleges that by virtue of Motorola's size, resources and patent experience, Motorola had a fiduciary duty to ensure that Memorylink understood the patent application process. For example, Memorylink contends it was entitled to receive a legal explanation from Motorola regarding the effect of the Assignment, the meaning of the joint patent agreement and "who qualifies as an inventor" under the patent laws. (Compl. ¶ 199) Memorylink argues that, "If an explanation of inventorship, assignment and joint ownership was made to Strandwitz and Kniskern, they would not have assigned any of their rights in the Invention to Motorola, and they would have objected to the addition of the Motorola's employees being added as co-inventors on the patent application." (Compl. ¶ 66) Thus, Memorylink claims Motorola breached its fiduciary duty because "no one from Motorola at any time advised Strandwitz and Kniskern as to the legal significance of their signatures on the Assignment" or of the legal significance of the inclusion of Motorola's engineers on the patent application. (Compl. ¶ 74) This argument suffers from the same fatal shortcoming as the claims discussed *supra*; lateness.

Memorylink executed the following documents without the assistance of legal counsel:[4]

---

[4] Memorylink was receiving legal advice from the law firm Banner & Witcoff by at least January 2003. (Compl. Ex. 17)

| Date | Legal Instrument |
|---|---|
| January 13, 1997 | First Memorandum of Understanding (Compl. Ex. 3) |
| April 4, 1998 | Invention disclosure form listing Strandwitz, Kniskern, Wyckoff and Schulz as co-inventors (Compl. ¶ 63) |
| June 11, 12, 1998 | The Assignment (Compl. ¶ 69) |
| June 22, 1998 | The '352 Patent Application (Compl. ¶ 75) |
| August 27, 2001 | Second Memorandum of Understanding (Compl. Ex. 13) |

Under Illinois law, the statute of limitations on breach of fiduciary duty claims is five years. 735 ILCS 5/13-205. Memorylink filed this complaint on June 9, 2008. Looking at the chart, it appears that Memorylink's claims should have been brought well before 2008. Once again, Memorylink argues that the statute of limitations should be tolled because it was unaware of its legal claims. Once again, this argument is unconvincing. In fact, Judge Kocoras recently considered—and rejected—a similar claim.

In *Walker,* the plaintiff sued the administrators of her trust for breach of fiduciary duty. *Walker v. Northern Trust Co.,* No. 06 C-4901, 2008 U.S. Dist. LEXIS 4363, *13 (N.D. Ill. Jan. 22, 2008). Although the plaintiff waited more than five years to bring her suit, she claimed that her complaint was timely because "she was not aware of the legal injuries alleged in her complaint at the time they occurred." *Id.* at *15. The court, however, rejected this argument because the plaintiff had access to all the documents, and thus, had adequate time to discover her injuries:

> [the plaintiff] had access to the Trust Instrument as well as quarterly information
> about the size of the trust and its financial activity. Moreover, each time that the
> Advisory Committee denied a distribution request, they did so in writing and

> often gave reasons for their decisions ... Nothing more was required to alert [the plaintiff] to the possibility that the Advisory Committee members may not have been acting out of concern for her best interest.

*Id.* at *15-16. Accordingly, the plaintiff was bound by the five-year statute of limitations.

Here, the breach of fiduciary duty claim is premised upon Motorola's failure to dispense legal advice to Memorylink. The failure to advise, however, would have been apparent whenever Memorylink signed an agreement with Motorola. Thus, Memorylink knew that "no one from Motorola, at any time, advised Strandwitz and Kniskern as to the legal significance of their signatures on the Assignment" as early as 1998. The same is true for the documents Memorylink signed regarding the patent application process. Simply put, Memorylink was aware of its injury—not receiving guidance on the substance of the legal documents—as soon as the injuries occurred. Memorylink has always known the facts necessary to make out its claim, therefore, the Court will not excuse Memorylink from its tardiness. Count VII is dismissed.

D.    *The Conversion Claims are Untimely*

Memorylink alleges that its intellectual property was converted when Motorola filed the '352 and '938 Patents.[5] (Compl. ¶¶ 75, 80, 241) The statute of limitations on conversions claims is five years, and the statute begins to run on the date of the conversion. 735 ILCS 5/13/205; *See, e.g., Nelson v. Sotheby's Inc.*, 115 Supp. 2d 925, 929 (N.D. Ill. 2000). Here, Motorola applied for the '352 Patent on June 22, 1998, and the patent issued on February 18, 2003. Memorylink was well aware that Motorola was filing this patent. Indeed, Memorylink signed an Assignment granting Motorola joint

---

[5] The elements of conversion are "(1) defendant's unauthorized and wrongful assumption of control, dominion or ownership over plaintiff's personal property; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) plaintiff's demand for possession of the property." *Nelson v. Sotheby's Inc.*, 115 F. Supp. 2d 925, 929 n. 2 (N.D. Ill. 2000)

ownership. The Court cannot accept Memorylink's argument that the filing of the '352 Patent was somehow "fraudulently concealed."

Memorylink claims that in 1998, it had no idea Motorola was filing the "secret" '938 Patent. Even if this is true, Motorola's application was granted on June 3, 2003. Patents are considered matters of public record. 37 C.F.R. 1.11(a) ("The specification, drawings, and all papers relating to the file of: A published application; a patent; or a statutory invention registration *are open to inspection by the public* …") (emphasis added). This complaint was filed on June 9, 2008, and was thus untimely. To be sure, dismissal via statute of limitations may seem harsh, but Memorylink was not required to engage in a mad dash to the courthouse. Memorylink had five *years* in order to compose a short and plain statement of its allegations. It chose, however, to remain silent and has thus waived its opportunity to present its claims. Counts XI, XVII, XIX are dismissed.

E.    *Memorylink Cannot Establish Patent Infringement*

Motorola is a joint owner of the '352 Patent by virtue of the Assignment. It is axiomatic that a joint owner of a patent cannot be liable for infringement. 35 U.S.C. § 262 (authorizing each joint owner to use the patented invention "without the consent of … the other owners"). Therefore, Memorylink's complaint fails to state a claim for patent infringement. Count IV is dismissed.

F.    *Memorylink's Complaint and Exhibits Contradict its Claim that it is the Sole Inventor of the '352 Patent*

In Count I of the complaint, Memorylink seeks to "correct" the inventorship of the '352 Patent. Memorylink alleges that Strandwitz and Kniskern were the sole developers of the Invention, and therefore, Motorola's engineers should not be listed as co-inventors. Motorola counters by arguing that the allegations in the pleadings—

16

including the attached exhibits—so thoroughly contradict Memorylink's claims that Memorylink has pleaded itself out of court. The Court agrees.

Most complaints are attacked for the failure to plead an essential element of a claim. But every now and then, a complaint comes under fire for pleading *too much*. A plaintiff can plead himself out of court by alleging facts in his complaint which, if accepted as true, would preclude recovery. For example, in *McCready v. Ebay, Inc.*, the plaintiff alleged that eBay violated the Fair Debt Collections Practices Act by suspending his account. 453 F.3d 882, 885 (7th Cir. 2006). The FDCPA only applies to debt collectors, so the court's initial analysis centered on whether eBay qualified as a debt collector under the Act. The FDCPA defines debt collectors as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly ..." *Id.* at 888. After reviewing McCready's complaint, the Seventh Circuit concluded that he had pleaded himself out of court because the facts alleged in the pleadings demonstrated that eBay was not a debt collector under the FDCPA:

> McCready admits that eBay's principal purpose is not to collect debts ... What matters is not which prong of the FDCPA applies, but McCready's allegation that eBay suspended his account until he "resolve" or "rectify" the fraud complaints outstanding against him.

> To be a "debt collector" under the FDCPA entails engaging in some affirmative conduct with regard to collecting a debt. McCready's allegations make clear that eBay has remained passive and, at most, refused to act until he resolves controversies with people independent of eBay, without threatening to take collection action against McCready should he not satisfy his customers. In no way can this be construed as an effort by eBay to "collect" a debt.

*Id.* at 888-889. Thus, the complaint was dismissed.

The reasoning in *McCready* is consistent with the Seventh Circuit's earlier decision in *Thomas v. Farley*, 31 F.3d 557 (7th Cir. 1994). In *Thomas*, an inmate accused a prison official of inflicting cruel and unusual punishment by not letting him attend his mother's funeral. *Id.* 558. The inmate brought suit under 42 U.S.C. §1983, and alleged that a secretary inadvertently misplaced the authorization forms, thus the guards were unable to confirm that he had received permission to leave the prison. *Id.*

First, the court noted that the Federal Rules of Civil Procedure do not require a plaintiff to draft a complaint with particularity. *Id.* But, the court noted that "if a plaintiff does plead particulars, and they show that he has no claim, then he is out of luck—he has pleaded himself out of court." *Id.* The facts in the inmate's complaint—specifically the allegation that the secretary mistakenly misplaced the authorization forms—were tantamount to a charge of negligence. Negligence, however, is not actionable in a §1983 claim for cruel and unusual punishment. Thus, the plaintiff had pleaded himself out of court, and the complaint was dismissed. *Id.*

Here, as in *McCready* and *Thomas*, the facts in Memorylink's complaint show that it cannot establish a claim. The reason is simple: Memorylink's complaint includes a number of exhibits that contradict its assertion that it was the sole creator of the patented technology. For example:

- Memorylink's Technology Overview described the goals of the parties regarding their working relationship. The documents states that groundbreaking developments in wireless video transmission technology are possible because Motorola developed "the first commercially viable integrated circuitry to provide high speed, digitally formatted data transmission ..." and Memorylink created "a highly integrated, multimedia processor and communication control circuit utilizing a proprietary audio/video data transfer format." (Compl. Ex. 4 at 1)

- An April 1998 letter from Motorola patent manager Hugh Dunlop stated that he understood Strandwitz and Kniskern had jointly developed the subject of the '352

Patent with Motorola employees Schulz and Wyckoff. Dunlop asked Strandwitz to "please let me know if you or [Kniskern] disagree with this determination of the inventorship." (Compl. ¶ 46; Ex. 5 at 1) Memorylink offered no objections.

- In May 1998, the parties finalized the Patent agreement, which stated that the parties were "in the process of defining a specification … in which a ***Motorola*** design of a 5GHz radio will be incorporated." (Compl. Ex. 6 at 1) (emphasis added)

- On June 22, 1998, Motorola filed the patent application for what eventually issued as the '352 Patent. The patent application listed Kniskern, Schulz, Strandwitz, and Wyckoff as inventors. (Compl. ¶ ¶75, 76; Compl. Ex. 9)

Memorylink's complaint and the attached exhibits make clear that Motorola contributed in *some way* to the development of the '352 Patent. Perhaps Memorylink made the lion's share of the contributions, but the law only requires "that joint inventors make some contribution to the final inventive thought." *Lert v. A.C. Neilsen Co.*, No. 92-C2216, 1994 U.S. Dist. LEXIS 12963, at *11 (N.D. Ill. Sept. 13, 1994). Indeed, 35 U.S.C. § 116 expressly states that an individual can be a joint inventor even though "(1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent."

If Motorola really contributed nothing to the patent, then it seems to the Court that Memorylink would have offered some type of objection to the patent application; especially because the application must be *submitted under oath*. 35 U.S.C. § 115. The Court finds that in light of the attached exhibits to the complaint, Memorylink has pleaded itself out of court. Count I is dismissed.

G.  *Memorylink's Complaint States a Claim to Correct the Inventorship of the '938 Patent*

Memorylink argues the '938 Patent was based on the technology that was invented by Memorylink and stolen by Motorola. Specifically, Memorylink alleges that the patent application depicts two video camcorders that bear "unmistakable similarities" to the modified video camcorders Memorylink developed to demonstrate its technology. Moreover, because Memorylink left the modified camcorders with Motorola, Memorylink contends that Motorola had ample time and opportunity to "steal" the invention. Motorola argues that Memorylink does not have standing to bring this claim. According to Motorola, if the Court determines that Strandwitz and Kniskern are the true inventors of the patent, then the ownership rights will vest in Strandwitz and Kniskern, not Memorylink. Thus, Motorola claims that even if the Court decides in Memorylink's favor, the decision would not redress their injury. The Court disagrees.

The Complaint alleges that Strandwitz and Kniskern were employees of Memorylink and had agreed to assign all their patent rights to Memorylink. It stands to reason that if Motorola had included Strandwitz and Kniskern on the '938 Patent application, the inventors would have been contractually obligated to assign their patent rights to Memorylink. In fact, this very sequence occurred with respect to the '352 Patent, and Memorylink argues that it would occur again. This scenario rises above "mere speculation" and passes the threshold to survive a motion to dismiss. The motion to dismiss Count V is denied.

H.    *Memorylink can not Maintain an Action for Correction of the Pending Patent Applications*

Counts XIII and XIV allege that two of Motorola's pending patent applications erroneously list Wyckoff and Schulz as the sole inventors, when in fact, Strandwitz and Kniskern are the true inventors. Motorola argues that "the statute that governs the

20

correction of inventorship applies only to *issued* patents, so this clam cannot stand."
(Mot. to Dismiss at 23) (emphasis in original). Motorola is partially correct. 35 U.S.C. §
256 does in fact only apply to issued patent. But, Congress has also provided an avenue
to correct *pending* patent applications. Indeed, 35 U.S.C. § 116, states that, "Whenever
through error a person is named in an ***application*** for patent as the inventor, or through
error an inventor is not named in an application…the Director may permit the application
to be amended accordingly …" (emphasis added) Thus, the real question is whether
district courts have jurisdiction to adjudicate cases seeking to correct a pending patent
application. The answer is no.

Whenever a court engages in statutory interpretation, the starting point must be
the text of the statute. Here, the language of 35 U.S.C. § 116 states that the "Director" of
the U.S. Patent office may permit patent applications to be amended. There is no
mention of the district courts. This omission is critical because in 35 U.S.C. § 256
Congress expressly bestowed the district courts with jurisdiction to order corrections of
issued patents: "the ***court*** before which such matter is called in question may order
correction of the patent." (emphasis added) Thus, Congress provided district courts with
explicit textual authority to hear cases involving issued patents. When it came to drafting
35 U.S.C. §116, however, Congress removed the word "Courts" and replaced it with
"Director." Accordingly, the Court concludes that it has no authority to order the
correction of a pending patent application. *See, e.g., Eli Lilly & Co. v. Aradigm Corp.*,
376 F.3d 1352, 1356 n. 1 ("The text of section 116, however, only grants the Director of
the Patent and Trademark Office the authority to take certain actions and plainly does not

create a cause of action in the district courts to modify inventorship on pending patent applications."). Counts XIII and XIV are dismissed.

I.    *Memorylink has Stated a Claim for Breach of the Non-Disclosure Agreements*

Count VI alleges that Motorola violated the terms of its non-disclosure agreement with Memorylink. Motorola does not dispute that the parties had a non-disclosure agreement but argues that the claim should be dismissed because Memorylink failed to: (1) attach the actual contract; (2) allege the parties' obligations under the contracts; (3) allege how Motorola breached the contract; or (4) state how the alleged breach harmed Memorylink. Motorola's arguments, however, ignore the allegations of the complaint.

First, a party in federal court is not required to attach the operative contract to the complaint. *See, e.g., Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 962 (N.D. Ill. 2002) (stating that, "federal courts, unlike Illinois state courts, do not require that critical documents be attached to the complaint."); *Mt. Hawley Ins. Co. v. Guardsmark, Inc.*, No. 01-C5088, 2001 U.S. Dist. LEXIS 9196, 2001 WL 766874 (N.D. Ill. July 5, 2001) (denying a motion to dismiss premised on the grounds that the plaintiff had not attached the contract to the pleadings). It bears repeating, a plaintiff does not need to, "plead particular legal theories or particular facts in order to state a claim. All that is required is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 1999). Here, Memorylink has alleged that it signed a non-disclosure agreement with Motorola and Motorola breached that agreement by disclosing Memorylink's technology to third parties. Specifically, Memorylink alleges

that Motorola allowed the Sony Corporation (and possibly others during various trade shows) to examine Memorylink's modified camcorders, and that Motorola eventually used the modified camcorders to file the '938 Patent, and possibly other patents.

Thus, Motorola knows exactly which incident allegedly caused the breach of the agreement, to whom Motorola allegedly disclosed the confidential information, and the nature of the alleged harm, *i.e.*, a third parties had access to Memorylink's groundbreaking technology and may have used that technology for their own gains. Memorylink—without the benefit of discovery—cannot be asked to provide specific details regarding the meeting between Motorola and another corporation. The Court finds that Motorola has more than enough information to put it on notice of Memorylink's claim.[6] The motion to dismiss Count VI is denied.

J.      *Memorylink can not Maintain an Action for Unjust Enrichment*

To succeed on a claim of unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience." *Firemen's Annuity & Ben. Fund v. Municipal Employees', Officers', & Officials' Annuity & Ben. Fund.*, 219 Ill. App. 3d 707, 712, 579 N.E.2d 1003, 162 Ill. Dec. 189 (Ill. App. 1st Dist. 1991) Count XV alleges that Motorola has been unjustly enriched by retaining Memorylink's "intellectual and confidential proprietary information." Motorola argues that this claim should be dismissed because the quasi-

---

[6] Motorola also argues that this claim is untimely because it is really a fraud claim and thus subject to the five-year statute of limitations. This is a stretch. In fact, Motorola's motion to dismiss includes a chart outlining Memorylink's claims and the grounds for dismissal. (Appendix A to the Motion to Dismiss) On the chart, there is a heading for "Type of Claim" and Motorola lists the Breach of Non-Disclosure Agreement claim under the "Contract" category. There can be no dispute; Count VI is premised on a breach of contract and is therefore subject to the 10-year statute of limitations.

contract theory of unjust enrichment is unavailable where the parties have a contractual relationship. *See, e.g., Keck Garrett & Assocs., Inc., v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008) ("Illinois law does not permit a party to recover on a theory of quasi-contract when an actual contract governs the parties' relations on that issue."). Therefore, Motorola argues that because the parties agreed to an Assignment and a Memorandum of Understanding, Memorylink cannot recover for unjust enrichment.

Motorola's argument hits the mark. Memorylink and Motorola entered into four separate MOUs. In fact, Memorylink attached these agreements to its complaint. (Compl. Ex. 4, 13, 14, 16). Each of these agreements governs "the intentions of the parties relative to a strategic business relationship between them." (Compl. Ex. 16). In response, Memorylink claims that because "it has not alleged that the MOUs were binding," there was no valid contract. The language of the MOUs, however, tells a different story. Paragraph 7 of the MOU states, "This MOU sets forth the current intent of the parties … but in no way gives rise to any legal obligations *except under paragraphs 3, 4, 5, 6, and 7*." (Compl. Ex. 16) The aforementioned paragraphs govern the disclosure of confidential information, the costs associated with development, the independent contractor status of the parties, and the freedom of each party to "retain all rights to its own concepts and technology." Moreover, paragraph 8 states, "This MOU will be governed and interpreted in accordance with the domestic laws of the State of New York." Thus, it seems to the Court that the parties intended the MOU to have some legal effect.

Here, the parties entered into multiple contracts regarding their obligations toward each other while they developed new technology. Because these MOUs were signed,

enforceable contracts regarding the subject matter at issue, there can be no recovery for unjust enrichment. *See, e.g., Moore's Maint. & Installation, Inc. v. Hub Group Distrib. Servs.*, No. 04-C4891, 2006 U.S. Dist. LEXIS 68692, at *13 (N.D. Ill. Sept. 6, 2006) ("Because the plaintiff's unjust enrichment claim for the 11 completed installations is a subject matter covered by the Service Agreement, a separate unjust enrichment claim is not permissible."); *Allied Vision Group, Inc. v. RLI Prof'l Techs., Inc.*, 916 F. Supp. 778, 780-81 (N.D. Ill. 1996) (holding that "because a specific contract [governed] the relationship between Allied and RLI, the court concludes that the doctrine of unjust enrichment has no application in this case.") (internal quotations omitted). Count XV is dismissed.

## IV.   Conclusion

In sum, the only remaining counts of Memorylink's complaint are Count V (Correction of Inventorship of the '938 Patent) and Count VI (Breach of the Non-Disclosure Agreement). For the reasons set forth in the preceding analysis, the motion to dismiss is GRANTED in part and DENIED in part.


IT IS SO ORDERED.

_2/23/09_
Dated

_Wm. J. Hibbler_
The Honorable William J. Hibbler
United States District Court