IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEMORYLINK CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08-cv-3301 |
| | ) | |
| v. | ) | The Honorable William J. Hibbler |
| | ) | United States District Judge |
| MOTOROLA, INC., | ) | |
| | ) | The Honorable Nan R. Nolan |
| Defendant. | ) | United States Magistrate Judge |

**MEMORYLINK'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR RECONSIDERATION
OR, IN THE ALTERNATIVE, LEAVE TO FILE AN AMENDED COMPLAINT**

With due respect for the effort the Court put into its February 23, 2009 Opinion on Motorola's Motion to Dismiss, Memorylink believes that the Court misapplied the relevant law and failed to adhere to the standards on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, the Court failed apply the proper test to determine inventorship, which requires a claim-by-claim analysis and a factual investigation into each alleged inventor's contribution to such claims, under 35 U.S.C. § 256. Further, the Court failed to adhere to the standards on a 12(b)(6) motion by failing to draw inferences in Memorylink's favor and failing to view the pleadings, including the documents attached to the Complaint, in the light most favorable to Memorylink.

As a result of these errors, this Court improperly dismissed Counts I – IV, VII – XII and XV – XX of Memorylink's Complaint, and the Motion to Reconsider should be granted and the Court's decision reversed in its entirety.

**Procedural History**

Memorylink filed its Complaint arising out of Motorola's improper acts surrounding the

1

applications and issuance of U.S. Patents 6,522,352 (the "Known Patent") and 6,573,938 (the "Secret Patent") and theft of Memorylink's proprietary technology. Motorola filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 23, 2009, the Court granted in part and denied in part Motorola's motion to dismiss. The Court granted Memorylink until April 3, 2009 to file this Motion.

**Legal Standard – Motions for Reconsideration**

Motions for reconsideration are designed to correct manifest errors of law or fact or to present newly discovered evidence. *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985). Here, Memorylink believes that there are manifest errors in law and fact in the Court's analysis and decision on Motorola's motion to dismiss, which justify reconsideration. Such errors are more fully set forth below.

**Legal Standard – Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

"The Court will only grant a motion to dismiss if 'it appears beyond doubt that the [complainant] can prove no set of facts in support of his claim which would entitle him to relief.'" *LaSalle Bank Nat'l Assoc v. Paramont Properties*, 588 F.Supp.2d 840, 848 (N.D. Ill. 2008), quoting *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001)). "In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inference from those facts in the plaintiff's favor." *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002).

# ARGUMENT

A. **THE COURT ERRED BY FAILING TO ADHERE TO THE PROPER TEST TO ANALYZE A CLAIM FOR CORRECTION OF INVENTORSHIP.**

In Count I, Memorylink sought to correct the inventors of the Known Patent to reflect that only Strandwitz and Kniskern are the proper inventors. Compl. at ¶¶ 152-156. The Federal Circuit Court of Appeals, which is binding precedent on this Court regarding patent issues, has prescribed the methodology for determining joint inventorship on a patent. Because co-inventors need not make the same type or amount of contribution to the invention, inventorship is determined on a claim-by-claim basis. *Trovan , Ltd. v. Sokymat SA*, 299 F.3d 1292, 1302 (Fed. Cir. 2002); *Ethicon, Inc. v. United States Surgical Corp.,* 135 F. 3d 1456, 1460 (Fed. Cir. 1998). An inventorship analysis begins with a construction of each asserted claim to determine the subject matter of each claim. *Trovan*, 299 F.3d at 1302; *Yeda Research and Dev. Co v. Imclone Sys., Inc.*, 443 F. Supp. 2d 570, 617 (S.D.N.Y. 2006). The second step is to then compare the purported contributions of each alleged co-inventor with the subject matter of the construed claims to determine who are the correct inventors. *Trovan*, 299 F.3d at 1302; *Yeda*, 443 F. Supp. 2d at 617; *Ethicon,* 135 F. 3d at 1462. This is a fact specific inquiry. *See, e.g., Ethicon*, 135 F. 3d at 1461; *Rhone-Poulenc Agro, S.A. v. Monsanto Co.*, 445 F. Supp. 2d 531, 544 (M.D.N.C. 2006).

This Court failed to undertake this requisite claim-by-claim analysis. Instead, the Court assumed, based on (its misinterpretation of the import of) four documents (the "technology Overview," the "April 13 Dunlop Letter," the "Proposed Joint Patent Filing Agreement," and the application for the Known Patent) that "Motorola contributed in *some way* to the development of the [Known] Patent." (*See*, Opinion at 19.) This assumption was improper for three reasons. First, three of the documents (the Technology Overview, April 13, Dunlop Letter, and Proposed

Joint Patent Filing Agreement) were created (as alleged) long before any of the relevant claims that should be used to determine inventorship were drafted. (Compl. at ¶¶27, 44, 61, Exhibits 4, 5.) Therefore, the documents are wholly irrelevant, on a stand-alone basis, to the inventorship analysis. Second, the fourth document, the application itself, is the operative document that requires correction. If reliance solely on this document were sufficient, then there could never be a claim for correction of inventorship as the application would always be dispositive. Third, the Court viewed and read these documents in the light most favorable to Motorola by inferring that mentions of Motorola and its employees in such documents meant that Motorola contributed to the technology claimed in the Known Patent. This is not appropriate on a motion to dismiss. *E.g., Dixon*, 291 F.3d at 486. For example, the Court stated that the Technology Overview contradicted that Memorylink was the "sole creator of the patented technology" as it mentioned Motorola's development of a radio. (Opinion at 18.) But the section that the Court quotes from is, even when read objectively, merely an overview of the potential business opportunity that exists and does not convey in any way or otherwise indicate that Motorola's employees created, "conceived" of, or were otherwise proper patent "inventors" of the technology in the claims in the Known Patent. (Compl. at Exhibit 4.)

The allegations of the Complaint, especially when taken as true and in a light most favorable to Memorylink, sufficiently allege that Strandwitz and Kniskern were the only inventors of the claims in the Known Patent. (*E.g.,* Compl at ¶¶11, 15, 20, 27, 47, 48, 53-55, 64, 78 (alleging that Strandwitz and Kniskern conceived of the ideas contained in the claims of the Known Patent, Strandwitz and Kniskern were the only inventors of the claims in the Known Patent, Motorola's employees provided no inventive contribution to the ideas claimed in the

4

Known Patent, and explaining why Memorylink did not earlier object to the naming of Mr. Schulz and Mr. Wyckoff on the Known Patent).

The Court's grant of Motorola's request to dismiss Count I by relying solely on the four documents rather than employing the fact-based claim-by-claim requisite test for determining inventorship under the allegations and exhibits taken in the proper light (in favor of Memorylink) was error, at the Motion to Dismiss stage of these proceedings. Therefore, Memorylink's Motion for Reconsideration should be granted and the Court should enter an Order denying Motorola's motion to dismiss Count I of the Complaint.

B. **THE COURT ERRED IN VIEWING THE FACTS IN THE LIGHT MOST FAVORABLE TO MOTOROLA IN FINDING THAT THE STATUTE OF LIMITATIONS BARS THE CLAIMS IN COUNTS II, III, VII, VIII, IX, X, XI. XII, XVII, XIX, and XX.**

   i. **The "Fraud" Claims**

As alleged in the Complaint, Motorola's in-house patent counsel were acting as Strandwitz's and Kniskern's attorneys. (*E.g.,* Compl. at ¶¶43, 48.) Strandwitz and Kniskern (and thus Memorylink) relied on Motorola's attorneys to appropriately and properly file the patent application, including properly determining who was or was not an inventor of the ultimate claims asserted and granted in the Known Patent. (*E.g., id.* at ¶54-55.) Nothing in the allegations of the Complaint or attached exhibits asserts or indicates that Memorylink, Strandwitz or Kniskern should have had reason to doubt (until 2007) their attorneys' apparent determination that Schulz and Wyckoff were proper inventors and that the documents Strandwitz and Kniskern signed were proper and appropriate under the circumstances.

Nonetheless, the Court found that Memorylink knew or should have known of Motorola's misdeeds before June 9, 2003 (five years prior to the filing of the Complaint).

(Opinion at 7.) Because this finding was based on a view of the allegations of the complaint and the exhibits in a light most favorable to Motorola, this was error.

The Court relied on two bases to dismiss the "fraud" claims: (a) that Memorylink failed to object to the April 13 Dunlop Letter; and (b) that the alleged fraud was "apparent to the naked eye." (Opinion at 8 - 12.) Neither of these bases is sufficient.

As the Court notes, the April 13 Dunlop Letter lists Strandwitz and Kniskern as well as Motorola's Schulz and Wyckoff as inventors and asks Strandwitz and Kniskern to object if that is incorrect. (Opinion at 3.) But, as alleged in the Complaint, Strandwitz and Kniskern did not object because they trusted Mr. Dunlop and Motorola's other in-house counsel, who were acting as their attorneys as well, to do a proper investigation. (*E.g.,* Compl. at ¶¶48, 54-55.) Moreover, the first two paragraphs of the April 13 Dunlop Letter indicate that the patents referred to are "a result of the design effort between Motorola and Memorylink." (Compl. at Ex 5.) Requiring Strandwitz and Kniskern to object would require Strandwitz and Kniskern, who are not patent attorneys, to perform an inventorship analysis under the patent law based on claims that were <u>not even drafted at the time</u>, and which counsel had stated were the result of joint efforts. Given this, the failure to object is not a basis to dismiss the Complaint.

The Court also found that the alleged fraud "was apparent to the naked eye." (Opinion at 8.) The Court notes that it is "not difficult to understand" that "those who contribute nothing to an invention are not 'required' to be listed as 'co-inventors.'" (Opinion at 10.) While that may be true enough as a concept, it is the application of that concept to facts that is difficult. Determining whether someone is or is not a proper co-inventor, as noted above, is a complex process based on the patent law and specific facts. Strandwitz and Kniskern (two laypeople) certainly could not have accomplished this determination on their own and therefore, as alleged

in the Complaint, relied on their attorneys at Motorola. (Compl. at ¶¶54-55.) Indeed, neither this Court in its opinion, nor Motorola in its briefs, cites to any authority supporting the concept that nonlawyers are required, especially when represented by patent counsel, to question their counsel's determination of inventorship and re-perform, on their own, the legal analysis necessary to determine inventorship. Moreover, nothing in the Complaint asserts, and no reasonable inference can be drawn, that prior to June 9, 2003 Memorylink, Strandwitz or Kniskern even had access to the necessary information held by Motorola to make such a determination. Simply put, the interpretation of patent claims and determination of inventorship is hardly something that is discernible to lay people or inventors or that should have been done by Strandwitz or Kniskern or Memorylink in light of the determination by their patent counsel, who had indicated to them that the filed patents related to the joint efforts between the parties. (Compl. at Ex. 5.)

The Court next pointed to the Assignment asserting that it is clear on its face that Motorola and Memorylink were obtaining joint ownership. (Opinion at 10.) While those words are present in the Assignment, it is the true meaning of those words that is not readily apparent. Under the patent law, a joint assignment without any other agreement as to the licensing, use or assertion of the patent, results in each party being able to do what it wishes with respect to the patent (including licensing it to the other party's competitors) without the permission, knowledge, or even remuneration to the other joint owner. 35 U.S.C. §262. The Assignment does not make this important point regarding patent assignments clear. (Compl at Ex 8.) And Strandwitz and Kniskern, two laypeople, should have been told by their attorneys that they were relying upon – Motorola – to provide that information. They were not and, consequently, the fraud was not apparent based on the terms of the Assignment.

7

Indeed, all of the documents signed by Strandwitz and Kniskern were signed under, and in reliance on, the advice of their counsel – Motorola. (*E.g.,* Compl. at ¶¶63-64, 69, 71, 72, Ex 1.) Thus, Standwitz and Kniskern's signature on those documents cannot support a finding that they or Memorylink knew or should have known of the fraud.

Motorola's legal representation of Strandwitz and Kniskern as well as the aforementioned complex and non-apparent nature of the true facts distinguishes this case from *Horbach* and *Rao* relied on by the Court. In *Horbach v. Kaczmarek*, the defendant represented that a product was complete and ready for testing, but the plaintiff's representative who inspected the product saw that it was not complete and instead was in pieces. No special knowledge was required to see the plain error of the representation. 288 F.3d 969, 977 (7th Cir. 2002). In *Rao v. BP Prods. N. Am., Inc.*, the plain terms of the plaintiff's contract clearly stated that the defendant had no right to take the threatened actions. 2006 U.S. Dist. LEXIS 95271[1]. Here, no such clear sources of information were available other than through Memorylink's attorneys – Motorola.

The Court further erred by (a) holding Memorylink's filing of the Complaint against it and (b) making assumptions about Memorylink's motivations. On page 10 of the Opinion, the Court supports its dismissal of the fraud claims stating that "[t]he notion that Memorylink had no suspicions of fraud seem highly suspect given Memorylink's dogged insistence that Motorola's engineers contributed nothing to the patent." In essence, the Court is inferring, against Memorylink (and contrary to the requirements of a 12(b)(6) motion) that Memorylink's strong assertion of its claims in 2008 make it likely that Memorylink knew of the fraud in 1998 or at least before June 9, 2003. Not only is such an assumption irrational, it is improper at this stage of the proceedings. If this assumption were correct, every complaint relying on the discovery rule would be subject to dismissal because the mere assertion of the otherwise timely claim

---

[1] For the Court's convenience, a copy of this unpublished opinion is attached hereto as Exhibit A.

would create an inference that would bar the claim based on the statute of limitations. Moreover, on page 11, the court opines that "[p]erhaps Memorylink acquiesced to Motorola's demands not because they were unaware of potential fraud, but because they wanted to keep Motorola – with all its financial resources, laboratory space and distribution partners – happy." Absolutely nothing in the Complaint supports such an inference, especially against Memorylink (the non-movant on a 12(b)(6) motion).

Therefore, the "fraud" claims (Counts II,[2] VIII, IX,[3] X, XII, XVIII and XX) should be reinstated.

**ii.  Fiduciary Duty**

In dismissing Memorylink's claim for breach of fiduciary duty on the basis of the five year statute of limitations, the Court relies on the assertion that Memorylink signed five documents without the assistance of legal counsel. (Opinion at 13-14.) But that is incorrect. As alleged in the Complaint, three of the documents cited by the Court – the April 4, 1998 invention disclosure form, the June 11/12, 1998 Assignment, and the June 22, 1998 application for the Known Patent – were signed while Strandwitz and Kniskern were represented by, and relying on, their patent counsel – Motorola. (Compl. at ¶¶63-64, 69, 71, 72.)[4] Indeed, given that Strandwitz and Kniskern were represented by Motorola's in-house patent attorneys, and still are, Illinois law

---

[2] Count III is addressed below.

[3] In dismissing Count IX for Promissory Fraud, the Court relied on an April 30, 2003 discovery date – the date Motorola "told Memorylink that it was no longer interested in Memorylink's wireless technology and was ceasing all business developments." (Opinion at n. 3.) But the allegations of the Complaint, viewed in the light most favorable to Memorylink, show that this should not have put Memorylink on notice of any claim. Prior to April 30, Motorola had indicated it was giving the Known Patent to Memorylink in whole. (Compl. at ¶¶120-21, Exhibit 17.) These actions are not consistent with indicating that Motorola had previously lied to Memorylink, but rather are consistent with the thought that Motorola had merely made a business decision to not go forward in this area. Fraud need not be assumed at that point.

[4] Memorylink does not claim that Motorola breached its fiduciary duty to Memorylink in connection with Memorylink executing the two Memoranda of Understanding cited by the Court.

holds that the statute of limitations is tolled during the continuing representation. *See, DeLuna v. Burciaga*, 223 Ill.2d 49, 857 N.E.2d 229, (2006).

Notwithstanding the foregoing, the Court further found that the discovery rule could not help Memorylink as it was aware that it was not receiving guidance from Motorola at the time it signed the documents. (Opinion at 15.) But that infers against Memorylink that it was aware that it should have received such advice from Motorola. Memorylink, through Strandwitz and Kniskern, relied on their counsel at Motorola to provide appropriate advice. Surely this Court does not expect that laypersons should be able to immediately know when legal advice that should have been given was not given.

Moreover, the Court characterizes Memorylink's breach of fiduciary duty claim as only "premised upon Motorola's failure to dispense legal advice to Memorylink." (Opinion at 15.) This is wrong. As alleged in the Complaint, the breach of fiduciary duty claim also addresses, among other wrongful acts, Motorola (a) "exploiting Memorylink's confidential information for its own purposes" such as in the "other Eyes" product (Compl. at ¶¶150, 199), (b) filing the Secret Patent without informing Memorylink (Compl. at ¶199), and (c) profiting from Memorylink's technology (through pick agreements and sale of devices covered by the patent and devices using technology invented by Memroylink) (Compl. at ¶¶144, 199.) Thus, the fiduciary duty claim should not have been dismissed.

### iii. Conversion

This Court also dismissed the claim for conversion of the Known and Secret Patents based on the statute of limitations. (Opinion at 15 - 16.) While the accrual date for conversion actions generally begins on the date of conversion (Opinion at 15), that date can be tolled by fraudulent concealment. *Cf. Haddad's of Illinois, Inc. v. Credit Union 1 Credit Union*, 286

10

{1709017:7}

Ill.App.3d 1069, 1073, 678 N.E.2d 322 (4th Dist. 1997) (noting that conversion claim for negotiable instruments can be tolled by fraudulent concealment).

Here, as alleged in the Complaint, Motorola, including its in-house patent attorneys that were acting as Strandwitz's and Kniskern's counsel (Compl. at ¶¶43, 48), fraudulently concealed Schulz's and Wyckoff's lack of inventive contribution to the Known Patent. Under such circumstances, the conversion claim did not accrue until Schulz and Wyckoff's lack of inventive contribution was discovered in 2007.

With respect to the Secret Patent, the Court improperly relied on the June 3, 2003 issuance date for the Secret Patent as the date when Memorylink knew the conversion had occurred as such published patents are open to the public. This is contrary to law. In *Advanced Cardiovascular v. SciMed Life Systems, Inc.,* an alleged co-inventor not named on the relevant patent sought to have the Court add him as an inventor. 988 F.2d 1157, 1159-60 (Fed. Cir. 1993) The plaintiff moved to dismiss on the grounds of laches claiming that the publication of the patent put the alleged co-inventor on notice of his claim and he delayed in filing his suit. The district court agreed and dismissed the alleged co-inventor's claim. The appellate court reversed, holding that "[T]he district court erred, as a matter of law, in measuring [the plaintiff's] delay from the date of issuance of the patent, in the absence of proof that [the plaintiff] knew or should have known that the patent had issued." 988 F.2d at 1168; *see also Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1576 (Fed. Cir. 1994) (denying summary judgment on defendant's claim of laches where plaintiff was aware of the patent, noting that, due to relationship of trust between the parties, plaintiff could rely on defendant's representation that he was not an inventor). Nothing in the Complaint suggests that Memorylink knew (or had reason to review the tens of thousands of patents issued on or before June 3, 2003 to determine if) a

11

patent on its technology was issued to Motorola, especially given that Motorola's attorneys, who represented Strandwitz and Kniskern, also filed and prosecuted the Secret Patent. Thus, the mere fact that the Secret Patent was issued on June 3, 2003, does not establish that Memorylink had constructive knowledge of the patent since that time.

    iv.    **Lack of Consideration For The Assignment**

For the reasons stated above, even if viewed as a fraud claim (Opinion at 7-8., this claim is not barred by the five year statute of limitations as, based on the allegations of the Complaint and attached exhibits, Memorylink had no reason to know of Motorola's fraud.

But that analysis is error in any event as this claim is not a fraud claim. Memorylink's claim to declare the Assignment void for lack of consideration has nothing to do with fraud. Memorylink's claim is that Motorola provided nothing of value in return for the Assignment. (Compl. at ¶¶73, 170.) Whether Motorola committed fraud or disclosed the truth about inventorship is irrelevant to this claim, which focuses on what, if anything, Memorylink actually received in exchange for the Assignment. Given that, the ten-year limitation for actions on written contracts applies. 735 ILCS 5/13-206. Memorylink's claim was brought within 10 years of the execution of the Assignment.

    v.    **The Secret Patent**

Even if granting dismissal of Counts VII, VIII, IX, X, XI, XII, XVII, XVIII, XIX and XX on statute of limitations grounds was proper on the bases cited by the Court, each of the Counts should still survive with respect to the Secret Patent. The allegations of the Complaint make clear that Memorylink had absolutely no idea that the Secret Patent was filed, prosecuted or issued. (*E.g.,* Compl. at ¶¶83, 85, 112, 114, 134, 139.) Given that, regardless of what Memorylink may have known and when with respect to the Known Patent, such knowledge did

12

{1709017:7}

not cause, and should not have caused, Memorylink to investigate and discover the existence of the Secret Patent. Therefore, if not reinstated in their entirety, the dismissed claims should be reinstated with respect to the Secret Patent.

C. **THE COURT ERRED IN DISMISSING MEMORYLINK'S CLAIM FOR PATENT INFRINGEMENT.**

The Court also dismissed Memorylink's claim for patent infringement against Motorola on the grounds that Motorola, by virtue of the Assignment, is a joint owner of the Known Patent. (Opinion at 16.) This was error. Memorylink's allegations support a claim that the Assignment is invalid for at least two independent and equally sufficient reasons in fraud and lack of consideration and seeks appropriate equitable relief. (Compl. at Counts II and III.) In such a situation, a concurrent claim for patent infringement against the wrongful co-owner is proper. *See J & J Mfg., Inc. v. Logan*, 24 F. Supp. 2d 692, 700 (E.D. Tex. 1998) (denying dismissal of infringement claim where plaintiff – a non-owner at the time of the suit –also sought equitable relief to obtain full title to the patent at issue in the same case), *citing Arachnid, Inc. v. Merit Industries, Inc.,* 939 F.2d 1574 (Fed. Cir. 1991)

D. **THE COURT ERRED IN DISMISSING MEMORYLINK'S CLAIM FOR UNJUST ENRICHMENT**

The Court dismissed Memorylink's claim for unjust enrichment based on the existence of the Memoranda of Understanding. (Opinion at 24.) But even Motorola asserted that Motorola had no obligations under the Memoranda. (Memorandum In Support Of Motorola, Inc.'s Motion to Dismiss at 5, 8, 9, 11, 18; *see also* Memorylink's Response In Opposition to Motorola's Motion To Dismiss at 29 (arguing that the fraud associated with the Memoranda invalidates them).) Despite this, the Court inferred that the Memoranda of Understanding were valid contracts and dismissed the unjust enrichment claim. This was incorrect.

13

If the Court denies reconsideration on this point, Memorylink requests leave to amend its Complaint to add a claim for breach of contract based on the Memoranda of Understanding.

## **CONCLUSION**

For the above stated reasons, Memorylink respectfully requests that this Court grant Memorylink's Motion for Reconsideration of the February 23, 2009 Order and reinstate Counts I – IV, VII – XII and XV – XX previously dismissed in Memorylink's Complaint. In the alternative, or in addition as appropriate, Memorylink asks this Court to grant Memorylink leave to amend its complaint within 10 days of the Court's decision on this Motion for Reconsideration.

Dated: April 3, 2009

                                            MEMORYLINK CORPORATION

                                  By: /s/ Michael J. Femal
                                        One of its Attorneys

**ATTORNEYS FOR PLAINTIFFS**
McDONALD HOPKINS LLC
Michael J. Femal—Attorney No. 0792012
Richard N. Kessler—Attorney No. 06183140
Peter T. Berk—Attorney No. 624215
640 N. LaSalle, Suite 590
Chicago, IL 60654
312-280-0111

## CERTIFICATE OF SERVICE

I, Michael J. Femal, an attorney, hereby certify that on April 3, 2009, I electronically filed **MEMORYLINK'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE LEAVE TO FILE AN AMENDED COMPLAINT**, with the clerk of the Court using the Electronic Case Filing system which will send notification of such filing to the interested parties listed below:

Anne M. Sidrys
Mark J. Nomellini
Kirkland & Ellis LLP (Chicago)
200 East Randolph Drive
Suite 6100
Chicago , IL 60601
(312) 861-2000
Email: mnomellini@kirkland.com


/s/Michael J. Femal