IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEMORYLINK CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 08 C 3301 |
| v. ) | |
| ) | The Honorable William J. Hibbler |
| MOTOROLA, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

On February 23, 2009, this court granted Defendant Motorola's Motion to Dismiss as to seventeen of the nineteen counts in Plaintiff Memorylink's complaint, and denied the motion as to Counts V and VI. Memorylink moves for reconsideration of the Court's decision on fifteen of the counts.[1] Memorylink argues that the Court applied the incorrect standard of review on a motion to dismiss under Rule 12(b)(6), conducted the wrong analysis in order to determine the proper inventors of the '352 patent, and ignored facts alleged in the Complaint. For the reasons set forth below, the Court grants Memorylink's motion in part and denies it in part. Additionally, the Court grants Memorylink's alternative request to file an amended complaint.

### BACKGROUND

The following facts are taken from Memorylink's complaint and corresponding exhibits, and are quoted directly from the Court's previous opinion. *See Memorylink Corp. v. Motorola, Inc.*, No. 08 C 3301, 2009 WL 464338, *1-*3 (N.D. Ill. Feb. 23, 2009). In 1996, Peter Strandwitz and Robert Kniskern developed technology that enabled the wireless transmission of real time video. (Compl. ¶¶ 11, 15, 20.) About a year later, Strandwitz approached Motorola to

---

[1] Memorylink does not contest the Court's dismissal of Counts XIII and XIV.

1

explore the possibility of entering into a business relationship. (Compl. ¶¶ 11-17.) Strandwitz believed that combining his video compression technology with Motorola's radio transmission technology would result in a lucrative business partnership; Motorola agreed. (Compl. ¶ 13.) On January 13, 1998, the parties signed a Memorandum of Understanding outlining the terms of their relationship. (Compl. Ex. 3.) The MOU stated that the parties would combine their technologies to develop a preliminary specification, and the resulting model would be "jointly owned." (Compl. Ex. 3.) Additionally, the MOU stated that each party was an independent contractor "in all aspects" and there was no fiduciary relationship between the parties. (Compl. Ex. 3.) After signing the agreement, Strandwitz and Kniskern incorporated Memorylink; Strandwitz was the CEO and Kniskern was a director. (Compl. ¶ 24.)

In February 1998, Memorylink – in "anticipation of filing one or more patent applications" drafted a document entitled the "Wireless Multimedia Core Technology Overview" that described the goals of the parties regarding their working relationship. (Compl. Ex. 4.) The Technology Overview stated that a unique market opportunity existed because of "the creation by Motorola, Inc., of the first commercially viable integrated circuitry to provide high speed, digitally formatted data transmission ... and the creation by Memorylink Corp., of a highly integrated, multimedia processor and communication control circuit utilizing a proprietary audio/video data transfer format." (Compl. Ex. 4.)

Over the next few months, Memorylink demonstrated several applications of its new technology. (Compl. ¶¶ 29-32.) For example, on February 25, 1998, Memorylink modified two Sharp video camcorders so that camera A wirelessly transmitted real-time video footage that was displayed by camera B. (Compl. ¶ 30.) Memorylink accomplished this by equipping the camcorders with its video compression technology, which allowed the camcorders to use

2

Motorola's radio technology to transmit the images. (Compl. ¶ 31.) According to Memorylink, Motorola was "blown away" and "astonished" by the demonstrations. (Compl. ¶ 32.) When the demonstration concluded, Motorola asked Memorylink to leave the modified camcorders with Motorola's engineers; Memorylink complied. (Compl. ¶ 33.) The demonstration convinced Motorola that synergies existed between Motorola and Memorylink, and the parties decided to work on a patent application. (Compl. ¶¶ 32, 39.)

Strandwitz and Kniskern had very little patent experience, so when Motorola suggested that its legal department should handle the patent application, Memorylink readily agreed. (Compl. ¶ 39.) On April 13, 1998, Hugh Dunlop, a Motorola senior patent manger, sent a letter to Strandwitz stating that Motorola had reviewed the Technology Overview in order to identify a "basis for patent applications that might be filed as a result of the design effort between Motorola and Memorylink." (Compl. Ex. 5.) Dunlop suggested the parties file a "joint patent application" and included a Patent Filing Agreement for Memorylink to review. (Compl. Ex. 5.) Dunlop also stated that it was his understanding that Memorylink worked with Gary Schulz and Jan Wyckoff – two Motorola engineers – to develop the invention underlying the prospective patent:

> It is my understanding from Gary Schulz and Jan Wyckoff that the inventors for these ideas are yourself, Gary, Jan, and Bob Kniskern. Please let me know if you or Bob disagree with this determination of inventorship.

(Compl. Ex. 5.) Memorylink did not object to Dunlop's characterization of the inventorship. (Compl. ¶¶ 54, 64.)

On April 21, 1998, the parties met to discuss potential patent applications. (Compl. ¶ 62.) At the meeting, Strandwitz and Kniskern signed an invention disclosure form listing themselves, Schulz and Wyckoff as joint inventors of the soon-to-be patented invention. (Compl. ¶ 63.) In June 1998, Kniskern and Strandwitz executed an Assignment to transfer their

3

rights in the prospective invention and any resulting patents to Memorylink. (Compl. ¶ 69.) Wyckoff and Schulz executed the same document, thus transferring their rights in the prospective invention and resulting patents to Motorola. (Compl. ¶ 69.) The Assignment provided that Memorylink and Motorola would hold "jointly and equally, the entire right, title and interest in" any resulting patents. On June 22, 1998, Motorola's in-house lawyers finished their preparation of the patent application and filed it with the United States Patent Office as U.S. Patent Application Serial No. 09/102,457 titled "Self Contained Wireless Camera Invention, Wireless Camera System and Method." (Compl. Ex. 9.) The application was granted on February 18, 2003, as U.S. Patent No. 6,522,352 (the '352 Patent). (Compl. Ex. 1.)

Two days after Motorola filed the '352 Patent application, it filed a second patent application titled "Self-Contained Camera Invention and Method for Capturing and Communicating Images via am Modem." (Compl. ¶ 80.) Motorola listed Schulz and Wyckoff as the inventors on the application, but there was no mention of Strandwitz or Kniskern. (Compl. ¶ 81.) Memorylink alleges that the application depicts two video camcorders that bear "unmistakable similarities" to the modified video camcorders Memorylink developed to demonstrate its technology. Moreover, because Memorylink left the modified camcorders with Motorola, Memorylink contends that Motorola had ample time and opportunity to "steal" the invention. (Compl. ¶¶ 83-84.) Motorola's application was granted on June 3, 2003, as U.S. Patent No. 6,573,938 (the '938 Patent). (Compl. Ex. 2.) Memorylink contends it was unaware of this patent filing until November 29, 2007. (Compl. ¶ 85.)

In light of these facts, Memorylink alleges that Motorola fraudulently induced it to: (1) name Motorola's engineers as co-inventors of the '352 Patent; and (2) give Motorola joint ownership of the '352 Patent. In Memorylink's own words:

4

> Motorola made false statements and/or omissions of material fact concerning the explanation of the inventorship, the Assignment and the legal effects of joint ownership of the patent right. If an explanation of inventorship, assignment and joint ownership was made to Strandwitz and Kniskern, they would not have assigned any of their rights in the Invention to Motorola, and they would have objected to the addition of the Motorola's employees being added as co-inventors on the patent application.

(Compl. ¶ 66.) Memorylink further alleges that "no one from Motorola at any time advised Strandwitz and Kniskern as to the legal significance of their signatures on the Assignment- namely that they were giving away a significant portion of their patent rights to Motorola for free." (Compl. ¶ 71.) Memorylink claims the fraud was particularly egregious because Motorola made no significant contributions to the development of the Invention.

Finally, Memorylink claims that Motorola – without Memorylink's knowledge or consent – used the modified camcorders from Memorylink's demonstrations in order to "secretly" file a second patent (the '938 Patent), which did not list Memorylink as an inventor:

> Motorola knew that the application for the Secret Patent would be unpublished meaning that it was not publicly available, until after the Secret Patent issued, thus making it less likely that Memorylink would discover the Secret Patent or Motorola's overall scheme to steal Memorylink's technology or intellectual property rights.

(Compl. ¶ 83.) Thus, Memorylink claims it was cheated out of the opportunity to file its own version of the '938 Patent.

### *DISCUSSION*

### I. Standard of review

In a case such as this, where the movant presents no newly discovered evidence, the Court will grant a motion for reconsideration only if it made a "manifest error of law or fact" in issuing its original decision. *Hicks v. Midwest Transit, Inc.*, 531 F.3d 467, 474 (7th Cir. 2008). A "manifest error" means an error of apprehension, not of reasoning, *Bank of Waunakee v.*

*Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990), and can be summarized as the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997).

## II. Analysis

### A. Correction of the inventors on the '352 patent

In Count I of its complaint, Memorylink sought to correct the inventors of the '352 Patent to reflect that only Strandwitz and Kniskern are the proper inventors. Memorylink argues that the Court committed two major errors in dismissing this count. First, Memorylink contends that the Court failed to conduct a proper, claim-by-claim analysis of the patent before dismissing the count. Second, Memorylink claims the Court's reliance on certain documents was improper.

Memorylink cites *Trovan, Limited v. Sokymat SA, Irori*, 299 F.3d 1292, 1302 (Fed. Cir. 2002), for the proposition that inventorship must be determined through a two-step claim-by-claim analysis whereby the court first construes each asserted claim to determine its subject matter and then compares the purported contributions of each alleged co-inventor with the subject matter of the construed claims. *Trovan* does indeed set this process forth as the proper analysis for courts to undertake in order to determine inventorship. However, *Trovan* also states that the reason courts should rely on this claim-by-claim analysis is to account for the fact that "co-inventors need not 'make a contribution to the subject matter of every claim of the patent.'" *Id.* (quoting 35 U.S.C. § 116). "A contribution to one claim is enough." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). Given this principle underlying the claim-by-claim analysis, the Court recognized that the unique circumstances of this case might allow for dismissal without such a precise examination of the facts. *Memorylink*, 2009 WL 464338, at

6

*10. As the Court noted in its previous opinion, Memorylink's complaint and attachments indicate that Motorola gave Strandwitz, Kniskern, and Memorylink the opportunity to object to the inventors listed on the patent, and they declined. *Id.* As a result, the Court concluded that Memorylink pleaded itself out of court, eliminating the need to conduct any claim-by-claim analysis. *Id.* The Court did not inspect each claim of the patent to determine whether Schulz and Wyckoff contributed to the subject matter of those claims because Memorylink had in effect already conceded that to be the case. *Id.*

Memorylink's second argument regarding Count I is that the Court improperly relied on certain attachments to its Complaint in order to come to the conclusion that it did in fact plead itself out of Court. Memorylink points out that the first three documents relied upon by the Court were drafted before the claims in the patent. The last document includes the claims, but is the application for the patent. Memorylink argues that by taking the application itself into account, the Court partially nullified the purpose of the statute allowing correction of inventorship because it essentially presumed the application to be true.

The Court recognizes that it is possible that the subject matter of the '352 Patent may vary from what was covered by the first three documents reviewed by the Court, wherein Memorylink acknowledged the contributions of Motorola and its employees. Thus, viewing these documents in the light most favorable to Memorylink, they do not support a conclusion that Memorylink has conceded the inventorship of the '352 Patent to be correct as a matter of law. The patent application does not support this conclusion either. First, the Court cannot determine from the pleadings whether Memorylink ever reviewed or approved the application itself. Second, the statute providing for correction of inventorship, 35 U.S.C. § 256, allows for correction in the case of mistake. Thus, even if Memorylink did approve the application, it may

7

proceed on the theory that it did so in error. For these reasons, the Court cannot conclude that Memorylink pleaded itself out of court. The Court therefore grants Memorylink's motion as to Count I of the Complaint, and reverses its previous decision to dismiss that count.

### B. Statutes of limitations

Memorylink next takes issue with the Court's decision to dismiss many of its claims on the grounds that the applicable statutes of limitations had run. Virtually all of Memorylink's arguments with regard to the '352 Patent are based on its claim that Motorola was serving as its legal counsel. However, Memorylink's complaint does not support this claim. Memorylink did allege that Motorola served as Memorylink's counsel at various points in the Complaint. (Compl. ¶¶ 48, 71.) However, taking these allegations as true, the Complaint indicates that Memorylink decided to appoint Motorola as counsel subsequent to its acknowledgement of Motorola's contribution to the invention in question. (*Id.*) Moreover, Memorylink's agreement not to enter into any sort of fiduciary relationship undermines its claim that Motorola was its legal representative. (Compl. Ex. 3.) Thus, the Court did not commit manifest error by finding that Memorylink was aware of the alleged injuries before it may have regarded Motorola as its legal counsel.

However, one of Memorylink's claims regarding the '352 Patent that the Court previously dismissed as untimely is not based on Motorola's alleged role as Memorylink's counsel. In Count III of its complaint, Memorylink claims that the Assignment is void for lack of consideration. The Court treated this as a fraud claim, understanding it as a claim that Memorylink was "duped into executing the Assignment and got nothing in return." *Memorylink*, 2009 WL 464338, at *6 fn.1. In fact, Count III sounds in contract law, despite the fact that it sits within the context of a complaint that frequently alleges that Motorola defrauded Memorylink.

The Count does not rest on a theory that Memorylink executed the Assignment as a result of the fraud of Motorola. Instead, it simply questions whether the Assignment contained proper consideration. Because the statute of limitations for contract claims in Illinois has not yet run, the Court grants Memorylink's motion as to Count III. However, the Court denies Memorylink's motion for reconsideration as to the Court's dismissal of Counts II, VII-XII, and XVII-XX insofar as they are based on the '352 Patent.

As to the '938 Patent, Memorylink argues that the Court improperly found that the date ran as soon as the patent issued publicly. The Court held that the issuance of the patent put Memorylink on constructive notice of its claims, thereby triggering the statutes of limitations. However, the Federal Circuit has rejected this approach. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1161-62 (Fed. Cir. 1993). Although the court in *Advanced Cardiovascular Systems* was addressing a defense of laches, rather than a statute of limitations, there does not appear to be any reason to treat them differently in this instance. The statutes actually began to run when Memorylink had a duty to inquire into whether Motorola was filing an application for the '938 Patent. The Court cannot determine when that was based on the pleadings alone. Thus, the Court grants Memorylink's motion for reconsideration as to the Court's dismissal of Counts VII-XII and XVII-XX insofar as they are based on the '938 Patent.

### C. Patent infringement

Given that the Court has granted Memorylink's motion as to Count III, Memorylink may be able to show that the Assignment of rights to Motorola was invalid. The Court previously denied Memorylink's claim for patent infringement on the theory that a joint owner of a patent (such as Motorola) cannot be liable for infringement. *See* 35 U.S.C. § 262. If Memorylink

9

succeeds on Count III, its claim for patent infringement may also be viable. Thus, the Court grants Memorylink's motion as to Count IV.

### D. Unjust enrichment

The Court is not moved by Memorylink's argument for reconsideration of the dismissal of its unjust enrichment claim. Memorylink argues that the Court's determination that the MOUs at issue did create some relevant legal obligations was improper because "even Motorola asserted that Motorola had no obligations under the Memoranda." Even if this was Motorola's position, the Court independently determined the meaning of the MOUs based on their express language. *Memorylink*, 2009 WL 464338, at *13. Thus, the Court denies Memorylink's motion as to Count XV. The Court grants Memorylink leave to file an amended complaint with a count alleging breach of contract in order to take this ruling into account.

## CONCLUSION

For the reasons above, the Court GRANTS Memorylink's motion in part and DENIES it in part. In sum, Counts I, III, IV, V, and VI of Memorylink's complaint remain as originally drafted. Counts VII-XII and XVII-XX remain insofar as they are based on the '938 Patent. In addition, the Court GRANTS Memorylink leave to file an amended complaint in order to include a count alleging breach of contract.

IT IS SO ORDERED.

10/15/09
Dated

Hon. William J. Hibbler
United States District Court

10