# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **MEMORYLINK CORPORATION** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 3301 |
| | ) | |
| v. | ) | Magistrate Judge Nan R. Nolan |
| | ) | |
| **MOTOROLA, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| **MEMORYLINK CORPORATION,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09 C 7401 |
| | ) | |
| v. | ) | |
| | ) | |
| **MOTOROLA, INC., JONATHAN P. MEYER, HUGH C. DUNLOP, THOMAS G. BERRY, J. RAY WOOD, and TERRI S. HUGHES,** | ) ) ) ) | Magistrate Judge Nan R. Nolan |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on non-party NovusIP's motion to quash subpoena which claims that the documents sought are protected by the attorney-client privilege and/or attorney work-product doctrine. (Doc. 141). The motion is fully briefed. The court grants in part and denies in part the motion for the reasons stated below.

## BACKGROUND

Plaintiff Memorylink has filed two lawsuits against Defendant Motorola. The original complaint was filed on June 9, 2008 by Memorylink's counsel McDonald Hopkins LLC (the "Infringement Case"). Two patents are at issue in the Infringement Case: U.S. Patent No. 6,522,352 (the '352 Patent) and U.S. Patent No. 6,573,938 (the '938 Patent). The '352 Patent lists Motorola employees Gary Schulz and Jan Wyckoff as joint inventors, along with Memorylink's Peter

Strandwitz and Robert Kniskern. The Infringement Case alleges, among other things, that the Motorola inventors were improperly listed on the '352 Patent to gain control of Memorylink's technology that allows wireless transmission of real-time video, that the joint assignment by Pete Strandwitz and Bob Kniskern to Memorylink and Motorola is void as lacking consideration, and thus the '352 Patent is solely owned by Memorylink and infringed by Motorola. Memorylink also alleges that the '938 Patent, which was filed by Motorola on June 24, 1998, was based on technology that Motorola stole from Memorylink. On November 25, 2009, Memorylink filed a second complaint alleging legal malpractice (the "Malpractice Case"). The Malpractice Case alleges that Defendants Motorola and certain of its in-house lawyers committed legal malpractice by acting as patent counsel for Memorylink and while effectuating a scheme to steal from Memorylink the technology that is embodied in the '352 Patent.

On May 14, 2010, Defendants served a subpoena on NovusIP, LLC (NovusIP) for documents related to the present cases. NovusIP is a single-member Illinois Limited Liability Company whose sole member is Paul E. Schaafsma, attorney for Memorylink in the Malpractice Case (09 C 7401). On June 16, 2010, NovusIP moved to quash the subpoena issued by Defendants on the grounds that the information sought was protected by the attorney-client privilege and/or attorney work product doctrine.

In support of NovusIP's motion to quash, attorney Schaafsma submitted a declaration describing his retention by Memorylink and his investigation into the Memorylink/Motorola relationship. The following facts are taken from Schaafsma's declaration. On or about September 26, 2007, Memorylink retained attorney Schaafsma to help structure, negotiate, and draft a joint patent enforcement agreement with Motorola based on the '352 Patent. Schaafsma Dec., ¶ 3. On September 26, 2007, attorney Schaafsma met with Jon Huard, Memorylink's Chief Executive Officer, at Memorylink's Rolling Meadows office with respect to drafting a Letter of Intent between Memorylink and Motorola. Schaafsma Dec., ¶ 4. On September 26, 2007, attorney Schaafsma

provided to Memorylink a draft Letter of Intent. Schaafsma Dec., ¶ 5. On October 9, 2007, attorney Schaafsma provided to Memorylink a revised draft Letter of Intent. Schaafsma Dec., ¶ 6. On October 12, 2007, attorney Schaafsma provided a further revised draft Letter of Intent. Schaafsma Dec., ¶ 7.

On October 16, 2007, Memorylink sent the Letter of Intent to Motorola, proposing a joint patent enforcement agreement. On October 25, 2007, attorney Schaafsma filed U.S. Patent Application Serial No. 10/351,906. On or about October 31, 2007, Motorola sent to Memorylink a revised Letter of Intent. NovusIP states that the revised Letter of Intent "demanded that Motorola have a royalty-free license to the patent; that Motorola have the right to issue royalty-free licenses to its customers; that the patent be subject to 'pick agreements' with Motorola's competitors under which a competitor could choose to have a royalty-free license to the patent; and that Motorola exercise veto control over any licensing deals." (Doc. 141, at 5). NovusIP says that Motorola's demands in the joint patent enforcement agreement made it clear that it had no intention to reach definitive agreements with Memorylink to jointly exploit the '352 Patent together as partners.

On November 7, 2007, Memorylink retained attorney Schaafsma to conduct an investigation into the Memorylink/Motorola relationship. Schaafsma Dec., ¶ 8. On that date, attorney Schaafsma met with Jon Huard at Memorylink's Rolling Meadows office with respect to the Memorylink/Motorola relationship. Schaafsma Dec., ¶ 9. On November 14, 2007, attorney Schaafsma again traveled to Memorylink's Rolling Meadows office to review documents related to the Memorylink/Motorola relationship. Schaafsma Dec., ¶ 14. On November 21, 2007, attorney Schaafsma traveled to Memorylink's offices in Neenah, Wisconsin to review further documents and meet with and interview Pete Strandwitz. Schaafsma Dec., ¶ 16. On November 27, 2007, attorney Schaafsma forwarded by email to Jon Huard a document from Memorylink's file titled, "Discussion of Media and Control Data Transport." In this email, attorney Schaafsma asked about the authorship of this document and whether "it supposedly represent[s] Motorola's contribution to the

effort?" Schaafsma Dec., ¶ 17. The next day, John Huard replied to attorney Schaafsma, stating that the Discussion of Media and Control Data Transport document "was submitted by Bob Kniskern (Adaptive Micro-Wave) on behalf of Memorylink." Schaafsma Dec., ¶ 18.

On November 29, 2007, attorney Schaafsma sent an email to Jon Huard with the following comments:

- "After reviewing the technical documentation that was used to draft the patent, it seems clear these guys [Gary Schulz and Jan-Michael Wyckoff of Motorola] contributed nothing."

- "As the Motorola patent attorney damn well knew, who should be listed as an inventor is a legal standard based on technological input and the claims, not a business decision based on the sought after relationship between the parties. Unfortunately, Motorola shoving their employees on as questionable inventors means that a defendant will attack the patent on the basis of improper inventors."

- "This layers on an added level of complexity that I need to think thru."

Schaafsma Dec., ¶ 19. Also on November 29, 2007, attorney Schaafsma performed an inventor database search in the Patent Office web-site, www.uspto.gov, for additional patents under those names. Schaafsma Dec., ¶ 20. As a result of this search, on November 29, 2007, attorney Schaafsma discovered the '938 Patent. Schaafsma Dec., ¶ 21. NovusIP says that the '938 Patent describes one of Memorylink's prototypes which was shown to Motorola under confidentiality restrictions. On November 29, 2007, attorney Schaafsma sent an email to Jon Huard with a PDF of the '938 Patent with the following comment: "Any thoughts on the attached (check out the inventors and the filing date)." Schaafsma Dec., ¶ 22.

Attorney Schaafsma contends that after realizing that Motorola had improperly added the names of Schulz and Wyckoff as inventors of the '352 Patent and discovering the '938 Patent, Memorylink began to anticipate litigation with Motorola. Schaafsma Dec., ¶ 23. NovusIP contends that November 29, 2007 was the first possible date that Memorylink knew or should have known of its malpractice claim against Motorola.

On December 14, 2007, attorney Schaafsma traveled to Memorylink's offices in Neenah, Wisconsin to review further documents, meet with Jon Huard and Pete Strandwitz, and interview Bob Kniskern. Schaafsma Dec., ¶ 24. On December 20, 2007, attorney Schaafsma provided Memorylink with a memorandum detailing legal action available against Motorola. Schaafsma Dec., ¶ 25.

## DISCUSSION

NovusIP contends there are no unprivileged documents responsive to the subpoena. NovusIP explains that the categories of documents in its possession fall into three categories: (1) documents selected and compiled by attorney Schaafsma beginning and during his initial investigation into the Motorola/Memorylink relationship; (2) documents created after litigation became anticipated on November 29, 2007; (3) a single document titled "Complaint" that contains a time-line of the relationship between Motorola and Memorylink. Memorylink has voluntarily waived any attorney-client privilege that may protect confidential communications regarding the initial investigation into the relationship between Memorylink and Motorola. NovusIP contends that the attorney-work product doctrine protects documents prior to and including November 29, 2007 and that the attorney-client privilege and attorney-work product doctrine protect documents after November 29, 2007.

Rule 45 of the Federal Rules of Civil Procedure governs the issuance of subpoenas and provides that the court must "must quash or modify a subpoena" that "requires the disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii). Because Memorylink's legal malpractice claim arises under Illinois law, the issue of attorney-client privilege is governed by Illinois law. Fed. R. Evid. 501. Under Illinois law, "[t]he purpose of the attorney-client privilege is to encourage and promote full and frank consultation between the client and legal advisor by removing the fear of compelled disclosure of information." Consolidation Coal Co. v. Bucyrus-Erie Co., 432 N.E.2d 250, 256 (Ill. S.Ct. 1982). In defining the

attorney-client privilege, the Illinois Supreme Court "has stated that where legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by himself or the legal adviser, except the protection be waived." Fischel & Kahn, Ltd v. van Straaten Gallery, Inc., 727 N.E.2d 240, 243 (Ill. S.Ct. 2000).

Federal law governs the scope and application of the work product doctrine. Under Rule 26(b)(3), "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). An assertion of work-product privilege may be overcome upon a showing of "substantial need" and "undue hardship." Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii). "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

Finally, the protections afforded by the attorney client privilege and work product doctrine can be waived. Lama v. Preskill, 818 N.E.2d 443, 448 (Ill. App. 2004); United States v. Nobles, 422 U.S. 225, 239 (1975) (recognizing that "[t]he privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived."). "At issue" waiver occurs "where a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential communications." Lama, 818 N.E.2d at 448 (quoting Pyramid Controls, Inc. v. Siemens Industrial Automations, Inc., 176 F.R.D. 269, 272 (N.D. Ill. 1997)).

**A. Documents and Information Created or Obtained Pre-November 30, 2007**

With regard to the attorney-client privilege, Memorylink has voluntarily waived any privilege to attorney communications prior to and including November 29, 2007, when it allegedly uncovered

that "the Motorola 'inventors' had in fact contributed nothing to the ['352] Patent and had filed the ['938] Patent." (Doc. 141, at 13). Memorylink contends that "the concerted investigation needed to uncover the nefarious actions of Motorola plays an important role in understanding the depths to which Motorola traveled to effect[uate] its scheme." (Doc. 141, at 1).

As to attorney work product materials, NovusIP asserts that Memorylink first began to anticipate litigation with Motorola on November 29, 2007. NovusIP contends, however, that pre-November 30, 2007 documents can be withheld on the basis of the work product doctrine because "[t]he selection and compilation of documents by counsel is an essential part of an attorney's legal strategy and is thus entitled to heightened protection as opinion work product." (Doc. 141, ¶ 37). The court agrees with Motorola that NovusIP's argument makes no sense given its assertion that Memorylink first anticipated litigation on November 29, 2007. By definition, the work product doctrine does not apply unless the document was created in "anticipation of litigation." <u>Binks Mfg. Co. v. National Preso Industries, Inc.</u>, 709 F.2d 1109, 1118 (1983) (stating "[i]t is axiomatic that in order to invoke the protection of the work product privilege, one must show that the materials sought to be protected were prepared "in anticipation of litigation . . . ."). Thus, the documents attorney Schaafsma collected prior to November 30, 2007 were not obtained because of the prospect of litigation and are not protected by the work product doctrine.

As a practical matter, however, NovusIP does not have the ability to actually produce documents that attorney Schaafsma copied and retained pre-November 30, 2007. Attorney Schaafsma's Declaration states that at this time, he has no recollection of which documents he may have copied before November 29, 2007 and which were copied after November 29, 2007. (Doc. 141, Exh. B at ¶ 15). Attorney Schaafsma further states that "the vast majority of documents that [he] choose to copy and retain occurred after the 29 November 2007 date because the work transitioned from an investigation to discover the particulars of the Memorylink/Motorola relationship to anticipation of possible litigation." <u>Id</u>. Motorola will not be prejudiced in its ability to

investigate and defend Memorylink's claims if it is not able to discover from NovusIP the documents attorney Schaafsma obtained from Memorylink prior to November 30, 2007. Motorola can obtain documents that attorney Schaafsma gathered from Memorylink prior to November 30, 2007 directly from Memorylink.

**B.     Documents and Information Created or Obtained Post-November 29, 2007**

Motorola does not dispute that the documents attorney Schaafsma created or obtained after November 29, 2007 relating to the investigation of the relationship between Motorola and Memorylink qualify as privileged under the attorney-client and/or work-product privileges but argues that those privileges are waived. Motorola argues that Memorylink has put the timeliness and investigation of its claims at issue by asserting the discovery rule in response to Motorola's statute of limitations defense. Motorola concludes that Memorylink has waived any attorney-client privilege or work product protection regarding investigation into the relationship between Memorylink and Motorola, including privileged communications after November 29, 2007. Memorylink asserts that its waiver is limited in time to documents created on or before November 29, 2007, which is allegedly the first possible date Memorylink knew or should have known of its claim against Motorola. Memorylink has agreed to produce responsive documents on or before November 29, 2007.

The statue of limitations for legal malpractice is two years. 735 ILCS 5/13-214.3(b). A plaintiff may sue a lawyer for injuries no more than two years after date on which it "knew or reasonably should have known of the injury for which damages are sought." Id. Memorylink filed its Malpractice Case on November 25, 2009. The cut-off date for the statute of limitations is November 25, 2007. In its malpractice complaint, Memorylink alleges that "[n]o earlier than 27 November 2007, as part of an external investigation as to the relationship with Motorola, Memorylink discovered that Gary Schultz and Jan-Michael Wyckoff were not proper inventors on the ['352] Patent under patent law." (Doc. 1, at 14). Memorylink further alleges that "[n]o earlier

than 29 November 2007, as part of an external investigation as to the relationship with Motorola, Memorylink first discovered the existence of the ['938] Patent." (Doc. 1, at 14). In its motion to dismiss, Motorola argued, among other things, that Memorylink's malpractice cause of action is barred by the two-year statute of limitations. (Doc. 21, at 6-9). Memorylink responded that the statute of limitations was tolled under the discovery rule because Memorylink did not become aware that Schultz and Wyckoff were not co-inventors until at least November 27, 2007. (Doc. 24, at 8-9).

Court decisions in this area support Memorylink's position regarding the time scope of any "at issue" waiver. In Lama, the plaintiff filed a medical malpractice action against her surgeon on May 15, 2001, more than two years after the March 23, 1999 surgery that allegedly caused her injury. Lama, 818 N.E.2d at 445. In her complaint, plaintiff alleged that the negligence occurred during the March 23, 1999 surgery but that she first became aware that her injuries were wrongfully caused on June 28, 1999, a point in time well within the two-year limitations period. Id. Three days after the surgery plaintiff requested her medical records. Id. at 446. On March 27, 1999, four days after the surgery and while plaintiff was still hospitalized, plaintiff's husband met with attorney Terrence Carden on plaintiff's behalf. Id. The defendant argued that by invoking the discovery rule to toll the limitations period, plaintiff placed at issue the matter of when she discovered her injury and waived the attorney-client privilege as to attorney Carden's documents. The Illinois appellate court noted that the attorney client privilege can be expressly or impliedly waived. The Lama court stated:

> The privilege may be impliedly waived when the client asserts claims or defenses that put his or her communications with the legal advisor at issue in the litigation. In other words, an implied waiver occurs "where a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential communications." This type of waiver is referred to as an "at issue" waiver.

Id. at 448. The appellate court held that the defendant was entitled to documents pertaining to the March 27, 1999 meeting between attorney Carden and plaintiff's husband, as they could show

when plaintiff learned of her injury. Id. at 449.

The Lama court relied on Pyramid Controls to support its holding. In Pyramid Controls, the issue was the one-year limitations period of the Illinois Franchise Disclosure Act and the district court held that the plaintiff had waived the attorney-client privilege and work product protection for confidential communications and work-product materials for the period prior to May 14, 1996, one-year prior to the filing of the complaint. Pyramid Controls, 176 F.R.D. at 274-75. A more recent case cited by Motorola, Kordek v. United Agri Prods., 2007 WL 1118435 (N.D. Ill. Apr. 16, 2007), also supports Memorylink's limited waiver argument. In Kordek, the magistrate judge denied the motion to quash the subpoena directed to plaintiff's counsel where the two-year statue of limitations discovery rule was at issue and the defendant only sought documents regarding counsel's consultations with the plaintiff between November 2003 and March 14, 2004, exactly two years prior to the date plaintiff filed his complaint.[1]

Lama, Pyramid Controls, and Kordek are analogous cases concerning the scope of waiver where a plaintiff has raised the discovery rule to defeat the statute of limitations. None of these cases found "at issue" waiver after the statute of limitations deadline, and the court adopts their reasoning. Here, Memorylink has raised the issue of whether it knew or should have known that Schultz and Wyckoff were not co-inventors prior to November 25, 2007, the cut-off date for the limitations period. Memorylink has alleged that it was not aware that Schultz and Wyckoff were not co-inventors until November 27, 2009, during an external investigation by attorney Schaafsma. Memorylink has also alleged that it first discovered the existence of the '938 Patent on November 29, 2007. The court concludes that Memorylink has waived the attorney-client privilege for all

---

[1] The other case Motorola relies on, Grochocinski v. Mayer Brown Rowe & Maw LLP, 251 F.R.D. 316 (N.D. Ill. 2008), is not persuasive here. Grochocinski did not involve "at issue" waiver based on a plaintiff's invocation of the discovery rule. Rather, the district court put the documents "at issue" in Grochocinski. As Memorylink notes, the magistrate judge "emphasize[d] that this is a narrow holding applicable only to the unique circumstances of this case." Id. at 325.

attorney-client communications on the same subject matter as the investigation of the relationship between Motorola and Memorylink, and the "at issue" waiver extends to communications and documents before November 25, 2007, two years prior to the date Memorylink filed its Malpractice Case.

Motorola relatedly argues that Memorylink should not be able to selectively divulge privileged communications occurring before November 30, 2007 while withholding later privileged communications on the same topic. Motorola says the waiver applies broadly to the subject matter of the communications for which the privilege has been waived. Motorola concludes that regardless of when the communications occurred, Memorylink has waived any attorney-client privilege and work product protection regarding "the subject matter of the investigation" and "the investigation into the relationship between Memorylink and Motorola."

The two cases cited by Motorola to support its broad subject matter waiver argument do not compel a different result here. Both Beck Systems, Inc. v. Managesoft Corp., 2006 WL 2037356 (N.D. Ill. July 14, 2006) and Beneficial Franchise Co., Inc. v. Bank One, N.A., 205 F.R.D. 212 (N.D. Ill. 2001), are federal patent cases involving the scope of waiver resulting from the advice of counsel defense to a claim of willful infringement. In Beck, Magistrate Judge Schenkier considered the extent to which reliance on advice of counsel to defend a claim of willful infringement waives the attorney-client privilege or work-product protection for other documents on the same subject matter in light of the Federal Circuit's decision in In Re EchoStar Communications Corp., 448 F.3d 1294 (Fed. Cir. 2006). Beck argued that the EchoStar opinion broadened the scope of waiver beyond that which Magistrate Judge Schenkier recognized in Beneficial. In Beck, Magistrate Judge Schenkier found no difference between EchoStar and Beneficial concerning the extension of waiver to attorney-client and work-product materials generated after litigation begins. Beck, 2006 WL 2037356, at *5. EchoStar held that if there is an allegation of ongoing willful infringement, waiver extends to advice and work product given after litigation began, if it is communicated to the client.

EchoStar, 448 F.3d at 1304, n.4; Beck, 2006 WL 2037356, at *5. The Beck court also held EchoStar did not disturb Beneficial's extension of waiver to trial counsel in a case involving claims of ongoing infringement. Beck, 2006 WL 2037356, at *5.

EchoStar, Beck, and Beneficial, were decided before the Federal Circuit issued its *en banc* decision in In re Seagate, 497 F.3d 1360, 1373 (Fed. Cir. 2007), where the court "clarifi[ied] the scope of the waiver" when an accused patent infringer asserts an advice of counsel defense to a charge of willful infringement and "conclude[d] that the significantly different functions of trial counsel and opinion counsel advise against extending waiver to trial counsel." The Federal Circuit found that the "fundamental difference" between advice prepared by litigation counsel for trial and the advice of opinion counsel regarding noninfringement or invalidity "does not present the classic 'sword and shield' concerns typically mandating broad subject matter waiver." Id. at 1373. The Court held that "fairness counsels against disclosing trial counsel's communications on an entire subject matter in response to an accused infringer's reliance on opinion counsel's opinion to refute a willfulness allegation." Id. The Federal Circuit also recognized that wilfulness claims generally depend on the accused infringer's prelitigation conduct, and therefore, communications of trial counsel have little, if any, relevance warranting their disclosure. Id. at 1374.

Similarly, Memorylink's communications with attorney Schaafsma after November 29, 2007 have not become the subject of waiver simply by reason of its assertion of the discovery rule. Motorola's statute of limitations defense depends on what Memorylink knew or should have known prior to November 25, 2007, two years prior to the date Memorylink filed its complaint. For that reason, Memorylink must disclose pre-November 25, 2007 communications pertaining to the investigation. Memorylink intends to rely on attorney Schaafsma's pre-November 30, 2007 investigation into the relationship between Motorola and Memorylink to defeat the statute of limitations defense. Memorylink has thus agreed to voluntarily disclose any privileged communications on or before November 29, 2007. Memorylink's invocation of the discovery rule

to avoid the applicable statute of limitations is based on its pre-November 30, 2007 investigation, not on any investigation conducted after November 29, 2007. Memorylink's pre-November 30, 2007 investigation is relevant to its claim that it did not learn that Motorola's inventors were improper and that Motorola had filed the '938 Patent until attorney Schaafsma discovered the matters but any post-November 29, 2007 investigation into Memorylink's claims is not relevant to its reliance on the discovery rule. Because the timeliness of Memorylink's Malpractice Case depends on its pre-November 30, 2007 knowledge, the court finds that communications with its counsel after November 29, 2007 have little relevance to any claim or defense. Moreover, expanding the scope of Memorylink's waiver to include every privilege communication with attorney Schaafsma related to "the subject matter of the investigation" and "the investigation into the relationship between Memorylink and Motorola" would be fundamentally unfair. Such a broad subject matter "at issue" waiver would essentially wipe out Memorylink's privilege with regard to every communication it had with attorney Schaafsma over the last almost three year period.

C.     **Document Entitled "Complaint"**

The only document attorney Schaafsma has found on his computer related to his initial investigation of the Memorylink/Motorola relationship was created on November 26, 2007. Schaafsma Dec., ¶ 11.[2] This document is currently titled "Complaint" and it contains a time-line of the relationship between Memorylink and Motorola. Schaafsma Dec., ¶ 11. The "Complaint" document was last modified on December 4, 2007 and it contains information that was not known to attorney Schaafsma until on or after November 29, 2007. Schaafsma Dec., ¶ 12. Attorney Schaafsma explains that this document also became the basis for a memorandum he provided to Memorylink on December 20, 2007 which detailed legal action available against Motorola.

---

[2] In his Declaration, attorney Schaafsma states that "[i]t has long been [his] practice to either not take written notes or in the rare instances where [he] take[s] written notes to transcribe them into a working Word document." Schaafsma Dec., ¶ 10.

Schaafsma Dec., ¶ 13.

NovusIP contends that the "Complaint" document contains attorney Schaafsma's "intimate opinion work-product." (Doc. 65, at 11). With regard to opinion work product, Rule 26(b)(3)(B) requires the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney . . . *concerning the litigation*." Fed. R. Civ. P. 26(b)(3)(B) (emphasis added). The pre-November 30, 2007 versions of the document currently titled "Complaint" do not fit this description. The "Complaint" document was created on November 26, 2007, which was three days before Memorylink says it first anticipated litigation with Motorola. The pre-November 30, 2007 versions of the "Complaint" document were thus not prepared in anticipation of litigation or concerning the litigation and are not protected work product. The current record does not indicate whether any pre-November 30, 2007 versions of the "Complaint" document exist in hard copy and/or electronic format. In response to Motorola's subpoena, NovusIP is ordered to produce any pre-November 30, 2007 versions of the "Complaint" document to the extent possible.

## CONCLUSION

For these reasons, NovusIP"s motion to quash subpoena is granted in part and denied in part.

**E N T E R:**

*[signature: Nan R. Nolan]*

**Nan R. Nolan
United States Magistrate Judge**

Dated: **August 6, 2010**