UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEMORYLINK CORP., a Wisconsin Corporation, | ) ) ) Case No. 08 C 3301 |
| Plaintiff, | ) ) Judge Hibbler ) |
| vs. | ) Magistrate Judge Nolan ) |
| MOTOROLA, INC., a Delaware Corporation, | ) **PORTIONS FILED UNDER SEAL AS** ) **CONFIDENTIAL PURUSANT TO** |
| Defendant. | ) **PROTECTIVE ORDER** |

**MEMORYLINK'S MOTION FOR RULING REGARDING THE ASSERTION
OF ATTORNEY-CLIENT PRIVILEGE AT HUGH DUNLOP'S DEPOSITION**

On March 3-4, 2011, the parties plan to depose former in-house Motorola attorney, Hugh C. Dunlop, in London, England, where Dunlop lives and works. Motorola has informed Memorylink that it will object, assert the attorney-client privilege, and instruct Dunlop not to disclose <u>any</u> communications that Dunlop had with Motorola employees regarding the patents at issue. Memorylink seeks a pre-deposition ruling from this Court on those anticipated, but improper, objections to conserve resources and hopefully avoid the need for a second deposition.

More specifically, Memorylink Corp. moves the Court to rule that at Dunlop's deposition Motorola cannot assert the attorney-client privilege as to communications that occurred between February 16, 1998, and the present, involving Dunlop and Motorola employees relating to:

(1) The patentability of the inventions disclosed in the applications that matured into the patents at issue in this case (the '352 and '938 Patents);

(2) The inventorship of the inventions disclosed in those applications;

(3) The preparation and prosecution of those applications;

(4) The preparation and drafting of the draft Joint Patent Filing Agreement;

(5) The drafting, use ▮▮▮▮ of the Invention Disclosure Form; and

{2581684:3}

(6) The preparation and drafting of the Assignment and Agreement.

Motorola cannot assert the privilege against Memorylink as to those subjects because either (a) a common interest that the parties once shared while being jointly represented by Dunlop and other in-house Motorola attorneys applies or (b) the privilege, to the extent it attached, was waived.

## Introduction

When Motorola offered its in-house legal department to help Peter Strandwitz and Robert Kniskern obtain a patent for their innovation, they assumed Motorola's intentions were good. Now, it is evident that Motorola used its attorneys to execute legal maneuvers designed to take Strandwitz's and Kniskern's ideas. While Motorola, Dunlop, and other Motorola attorneys pretended to share a common interest with Strandwitz and Kniskern, they improperly inserted two Motorola employees as co-inventors of one patent application and as sole inventors on a second secretly-filed application. In reality, Strandwitz and Kniskern are the only real inventors.

Motorola does not want Memorylink to discover what it discussed with its in-house attorneys about the patent applications for Strandwitz's and Kniskern's ideas. But neither Motorola nor Dunlop can shield those centrally relevant communications under the guise of the attorney-client privilege because, at the time, the parties were joint clients of Motorola's in-house lawyers and they shared a common legal interest (*i.e.*, obtaining patents). Therefore, Motorola cannot assert the privilege against Memorylink as to those communications. But, even if a privilege attached at one point, that privilege was waived through voluntary disclosure of the privileged information to non-privileged parties. The Court should order Dunlop to disclose all communications that he had with Motorola employees regarding the patents at issue in this case.

## Statement of Facts

In late 1997, Peter Strandwitz and Robert Kniskern came to Motorola with an innovative idea for wirelessly transmitting real-time video (the "Invention"). (Compl. ¶ 12.) To protect the disclosure of further information relative to the Invention, Strandwitz and Kniskern signed a non-disclosure agreement drafted by Motorola. (*See id.* ¶ 14.) The Invention, prior to being disclosed to Motorola, always included a 5GHz spectrum radio as a component. In January 1998, Motorola drafted a Memorandum of Understanding ("MOU"), which was signed by Motorola, Strandwitz – for his then-employer Plexus Corporation – and Interactive Broadcasting Limited – a company with which Strandwitz had been consulting. (*Id.* ¶ 18.) The MOU acknowledged the parties were working together to "develop[] a preliminary specification for a wireless device and compatible base station in the 5 GHz spectrum for use with home computer that will enable video, audio and control information." (Compl., Ex. 3, Dkt. No. 1-4.)

On January 20, 1998, Strandwitz and Kniskern demonstrated the Invention to Motorola. (Compl. ¶ 20.) On January 28, Strandwitz founded and incorporated Memorylink to be the corporate entity to own, develop, and commercialize the Invention. (*Id.* ¶ 24.) Strandwitz became Memorylink's CEO, and Kniskern became a Director and an employee. Ultimately, prior to the filing of any patent application, Plexus, Interactive Broadcasting Limited, and Adaptive Micro-Ware (Kniskern's employer) assigned any interest they had in the Invention to Memorylink.

At Motorola's suggestion, due to it having an in-house legal department, with a large number of registered patent attorneys and agents, and extensive experience prosecuting patents, it was agreed in late-January 1998 that Motorola's in-house patent attorneys would prepare and file any patent applications for the Invention. (*See id.* ¶ 43.) So that Motorola's attorneys could assess the patentability of the Invention and begin a patent application specification, at

Motorola's request, Kniskern provided Motorola with a document describing the Invention called "Wireless Multimedia Core Technology Overview for Patent Review" (the "Patent Overview"). (*See id.* ¶ 27-28, Ex. 4, Dkt. No. 1-5.) Strandwitz and Kniskern sent the Patent Overview to Motorola on February 16, 1998. (*Id.* ¶ 27-28.) That document was intended to be and would become the foundation for patent applications for the Invention. Indeed, the descriptions of the inventions in the patents at issue were based entirely on the Patent Overview's description. (*Id.* ¶ 57.) Motorola assigned Dunlop to prepare and file the applications. (*See id.* ¶ 44.)



While, as Memorylink would later learn, Schulz and Wyckoff had not made an inventive contribution to the Invention, and therefore were not proper co-inventors, Strandwitz and Kniskern did not object to their being named as co-inventors because they trusted Dunlop and other Motorola attorneys and their advice. (*See* Compl. ¶ 48-50.) Moreover, Motorola engineers and management previously had told Strandwitz that Motorola's employees had to be on the patent application as co-inventors. (*Id.* ¶ 49.)

Over the following months, Strandwitz and Kniskern worked with Dunlop and Motorola's employees to prepare the application.

[redacted]

Prior to the filing of the patent application, Strandwitz and Kniskern assigned their rights in the patent to Memorylink.[1] On June 22, 1998, Motorola's in-house attorneys filed U.S. Patent Application No. 09/102,457 ("the '457 application"), which named Kniskern, Strandwitz, Schulz, and Wyckoff as inventors. (Compl. ¶ 75.) The application issued as U.S. Patent No. 6,522,352 ("the '352 patent") on February 18, 2003. (*Id.* ¶ 123.)

Two days after it filed the '457 application, and without telling Memorylink, Motorola filed a separate patent application claiming related technology invented by Kniskern and Strandwitz. The secretly-filed application omitted Kniskern and Strandwitz as inventors, and it falsely named only two Motorola employees as inventors. (*Id.* ¶ 76-79.)

## ARGUMENT

### I. Joint Clients Sharing A "Common Interest" Cannot Assert The Attorney-Client Privilege Against Each Other

#### A. The Privilege Is Construed Narrowly In The Seventh Circuit

The attorney-client privilege protects only confidential communications between an attorney and client for the purpose of obtaining legal advice. *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007). For the privilege to apply, the party asserting the privilege must establish that: (1) legal advice is sought; (2) from a professional legal adviser in his or her capacity as such; (3) the communications relate to that purpose; (4) made in confidence; (5) by the client; (6)

---

[1] Motorola claims that Strandwitz and Kniskern assigned their rights in the patent to Memorylink and Motorola jointly. Memorylink has challenged that position and does not waive any arguments to that effect here. Whether the rights were assigned only to Memorylink or jointly to Memorylink and Motorola, however, is not relevant to this Motion.

{2581684:2}　　　　　　　　　　　　　　　　5

are at his or her instance permanently protected; (7) from disclosure by himself or by the legal adviser; (8) except the protection be waived. *U.S. v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983).

"Because the privilege is in derogation of the search for truth, it is construed narrowly." *Jenkins*, 487 F.3d at 490, quoting, *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). Thus, in the Seventh Circuit, the privilege is "strictly confined within the narrowest possible limits." *Lawless*, 709 F.2d at 487; *accord In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000); *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) ("the scope of the attorney-client privilege is narrowly drawn in the Seventh Circuit").

B. **Jointly Represented Parties Sharing A Common Interest Cannot Assert The Privilege Against Each Other**

When an attorney represents two or more parties regarding a common interest, the parties are joint clients and cannot assert the privilege against each other. *FDIC v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000); *In re United States*, 590 F.3d 1305, 1310 (Fed. Cir. 2009); *Simpson v. Motorists Mut. Ins. Co.*, 494 F.2d 850, 855 (7th Cir. 1974). Thus, each jointly represented party is entitled to know what the attorney and the other party discussed outside its presence on matters relating to the shared interest. *See Ogden*, 202 F.3d at 463-64; *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 226 (1st Cir. 2005) ("*MEEI II*"). The common interest forbids concealment from each other. *In re Ducane Gas Grills, Inc.*, 320 B.R. 312, 323 (Bankr. D.S.C. 2004), quoting 8 Wigmore, Evidence § 2312 (McNaughten rev. 1961).

C. **Parties Jointly Seeking A Patent Share A Common Interest**

Parties jointly preparing a patent share a common legal interest in obtaining the greatest protection and in exploiting the patents. *See UC Regents*, 101 F.3d at 1389. So where, as here, parties jointly prepare a patent, they cannot assert the attorney-client privilege against each other with regard to their patenting efforts. *Hillerich & Bradsby Co. v. MacKay*, 26 F. Supp. 2d 124,

125 (D.D.C. 1998); *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 167 F. Supp. 2d 108,125-26 (D. Mass. 2001) ("*MEEI I*"), *aff'd in part and rev'd in part by MEEI II*, 412 F.3d at 228.

In *MacKay*, for example, Hillerics & Bradsby Co. ("H&B") and inventor Jack MacKay worked together to patent an aluminum bat design with the help of H&B's attorney, Harvey Jacobson. *MacKay*, 26 F. Supp. 2d at 125. The relationship soured and litigation began. When MacKay sought to discover communications between H&B and Jacobson, H&B asserted the attorney-client privilege. The court held that H&B could not assert the privilege against MacKay because they previously had shared a common interest to patent the bat design:

> Typically, parties jointly developing a patent with an attorney have a "common legal interest" in obtaining the greatest protection and in exploiting the patents. The parties thereby develop a "community of interest," which establishes a joint attorney-client relationship among them and the attorney. In this respect, when a community of interest exists, courts have viewed those represented as "joint clients" for the purpose of privilege.
>
> . . .
>
> [Because] both Jack MacKay and H&B had a common legal interest in the development of the aluminum bat patent application . . . the MacKays have entitlement to the sought after information in Mr. Jacobson's files relating to that representation and the patent application for the aluminum bat.

*MacKay*, 26 F. Supp. 2d at 126-128 (citations omitted). Therefore, the court correctly ordered Jacobson to disclose the attorney-client communications. *Id.*

## II.     *MEEI I* Is A Precedential Blueprint That Should Guide This Court's Decision

In a case with strikingly similar facts, the United States District Court for the District of Massachusetts overruled privilege objections by applying the "common interest" doctrine in a patent dispute. *MEEI I*, 167 F. Supp. 2d at 124-25. There, employees of MEEI, QLT, and MGH collaborated to develop new eye treatments. In March 1994, QLT offered the services of its outside patent counsel, Dr. Kate Murashige, of Morrison & Foerster. *Id.* at 110-11. On March 3,

1994, MEEI sent Murashige a letter marked "Confidential" that explained MEEI's eye treatment ideas. *Id.* at 118. A few days later, on March 8, Murashige sent a letter to MEEI that confirmed QLT would support the patent application and that Morrison & Foerster would prepare the patent application. Murashige filed the application on March 14, 1994. Several weeks later the MEEI inventors appointed Murashige to act as their attorney before the USPTO. *Id.*

The next year, Murashige filed a continuation-in-part ("CIP") of the original application that named researchers from all three entities – MEEI, QLT, and MGH – as inventors. MEEI, however, thought it should be the sole inventor. MEEI sued QLT to correct inventorship of the patent that issued from the CIP application. When MEEI requested written communications between QLT and Morrison & Foerster relating to the patentability, inventorship, preparation, and prosecution of the two applications, QLT asserted the attorney-client privilege. *Id.* at 111-13.

The trial court adopted the discovery master's recommendation and rejected QLT's arguments. The court held that Morrison & Foerster had jointly represented MEEI and QLT in developing patents for the new eye treatments. The attorney-client relationship with MEEI began on March 3, 1994, when MEEI sent a confidential letter describing the invention to Morrison & Foerster. *Id.* at 118. The letter did not formally request legal advice. However, because it was provided by MEEI in confidence and because QLT's lawyer used it to give legal advice regarding patentability, an attorney-client relationship had formed. Because QLT and MEEI were joint clients which shared a common interest, the Court ordered QLT to disclose all communications it had with its attorney during the period of joint representation. *Id.* at 127-28.

The First Circuit affirmed that portion of the trial court's judgment. In rejecting QLT's arguments, the appellate court stated:

> The rules of discovery therefore do not insulate from discovery the communications of a duplicitous party who feigns common interest while scheming otherwise with a shared, trusted, advisor.

*MEEI II*, 412 F.3d at 226. As explained below, for the very same reasons, this Court should overrule Motorola's asserted position and allow Memorylink to discover what Motorola and its in-house attorneys were discussing while they feigned a common interest with Memorylink.

### III. Motorola Cannot Assert The Privilege Against Memorylink

#### A. Memorylink Was A Joint Client Of Motorola's Attorneys

"The preparation and prosecution of patent applications for others constitutes the practice of law." *Sperry v. Florida*, 373 U.S. 379, 383 (1963).

Here, there can be no doubt that an attorney-client relationship formed between Motorola's attorneys and Strandwitz and Kniskern by at least February 16, 1998. That is the date when Strandwitz, Kniskern, Motorola, and its in-house lawyers began to work together towards a patent application for the invention. On that date, Kniskern provided Motorola with his confidential Patent Overview, which described the Invention. That confidential Patent Overview marked the start of the attorney-client relationship. Similar to the March 3rd letter that MEEI provided to QLT's attorneys, Kniskern provided his document in confidence, at Motorola's request, to be used by Motorola's lawyers as the starting point for the patent application's specification and for the lawyers to analyze patentability. *See MEEI I*, 167 F. Supp. 2d at 118.





Once Kniskern and Strandwitz assigned their inventor rights to Memorylink, (whether solely to Memorylink or jointly to Memorylink and Motorola), Motorola's in-house attorneys joint representation continued but with Memorylink instead of the individuals.

B.     <u>Memorylink And Motorola Shared A Common Legal Interest</u>

Subsequent to the filing, like any parties jointly prosecuting a patent, Memorylink and Motorola shared a common interest. *See UC Regents*, 101 F.3d at 1389. Specifically, they shared a common legal interest in developing, obtaining, and exploiting broad patents claiming the video technology. Because they shared that common legal interest while being jointly represented, Memorylink is entitled to know what communications occurred between Motorola and the in-house attorneys that it shared with Memorylink during the period of joint representation regarding matters of common interest. *See MEEI I*, 167 F. Supp. 2d at 124-26; *MacKay*, 26 F. Supp. 2d at 126-128.

That Motorola and Dunlop began their dealings with Strandwitz and Kniskern is immaterial. That is because Memorylink, which was founded soon after Strandwitz and Kniskern approached Motorola, now owns Strandwitz's and Kniskern's inventor rights. Thus, the common interest the individuals shared with Dunlop passed to Memorylink. *See Simpson v. Motorists Mut. Ins. Co.*, 494 F.2d 850, 855 (7th Cir. 1974) (insurer could not assert attorney-client privilege against its insured's assignee because attorney had jointly represented insurer and insured and joint interest had passed to assignee); *Catino v. Travelers Ins. Co.*, 136 F.R.D. 534, (D. Mass. 1991) (same). Memorylink, therefore, is entitled to discover communications Dunlop had as part of the joint representation and common interest from the start, as Strandwitz and Kniskern do.

Because the common interest concerned obtaining patents for the wireless video technology, Motorola cannot assert the privilege as to the '457 application and the '408 application because they both claim related wireless video technology that the parties shared a common interest in developing and obtaining a patent. Similarly, Motorola cannot assert the privilege as to the Joint Patent Filing Agreement, Invention Disclosure Sheet ███

████████ and Assignment and Agreement forms prepared by Motorola because they also relate to the common interest of obtaining patents for wireless video technology.

### C.     The Court's Rule 12(b)(6) Order Is Inapposite

Lastly, the Court's prior decision that Memorylink had not sufficiently *alleged* that an attorney-client relationship existed between it and Motorola's in-house attorneys on or before April 13, 1998, does not affect the analysis here. In that prior decision, the Court interpreted Memorylink's allegation that it "subsequently appointed Motorola's in-house patent attorneys as their attorneys to prosecute the Known Patent Application," to mean that "Memorylink decided to appoint Motorola as counsel subsequent to its acknowledgement of Motorola's contribution to the invention in question." Mem. and Op. dated Oct. 15, 2009, Dkt No. 89 at 8.

That allegation merely referenced Memorylink's appointing Dunlop, through a power of attorney designation under 37 CFR § 1.32, as the attorney to represent it before the USPTO. An attorney-client relationship, however, does not hinge on that power of attorney appointment. *See Sun Studs, Inc. v. Applied Theory Assocs.*, 772 F.2d 1557, 1568 (Fed. Cir. 1985) ("a power of attorney does not ipso facto create an attorney-client relationship"). Indeed, an attorney-client relationship almost always forms prior to the formal appointment. *See, e.g., MEEI I*, 167 F. Supp. 2d at 118 (finding relationship formed weeks before appointment). ████████████████████████████████████████████████████████████████████████████

Moreover, to the extent Motorola argues that the Court previously decided no attorney-client relationship existed between Motorola and Memorylink as of April 13, 1998, such a decision would have no bearing here. The decision reads that "*Memorylink* decided to appoint Motorola as counsel subsequent to . . . April 13, 1998." The evidence shows that Strandwitz and

{2581684:2}                                             12

Kniskern had established an attorney-client relationship with Motorola's in-house lawyers ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ when Kniskern provided Motorola with his Patent Overview. That attorney-client relationship passed to Memorylink sometime "subsequent to April 13," when Strandwitz and Kniskern assigned their patent ownership to Memorylink. Thus, Memorylink's position coincides with the allegations in its complaint and even with the Court's prior reading of the complaint, which Memorylink disputes.

Further, the Court's prior decision was based purely on the pleadings. Such a decision does not operate as law of the case. *See Koulouris v. Chalmers*, 779 F. Supp. 99, 101 (N.D. Ill. 1991) (holding interlocutory orders are not bound by law of the case); *Ferrari Fin. Servs. v. IIA, LLC*, No. 10 C 1200, 2010 WL 2836686, at *1 (N.D. Ill. July 19, 2010) (reconsideration is proper where "court has misunderstood a party" or where "significant new facts have been discovered").[2] That interlocutory ruling focused on whether the allegations stated a claim or not, and therefore cannot bind the parties in a discovery motion when clear facts, admitted in Dunlop's letter, prove that there was an attorney-client relationship prior to the appointment date.

## IV. Even If Privileged, Motorola Waived The Privilege

Even if Dunlop's discussions with Motorola's employees regarding patentability, the Invention Disclosure Form, the drafting of the patent applications, inventorship and prosecution strategy were privileged at one time, that privilege was waived by revealing the privileged information to third-parties. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

---

[2] Copies of all non-published cases are attached hereto in alphabetical order as Ex. E.

Case: 1:08-cv-03301 Document #: 172 Filed: 01/31/11 Page 14 of 17 PageID #:2329

████████████████████████████████████████ *E.g.*, *Flagstar Bank v. Freestar Bank*, 2009 WL 270965, *5 (N.D. Ill. Aug. 25, 2009) ("Generally, intentional disclosure of a privileged document to a third party waives the privilege."); *Mass Eng'rd Design v. Egotron, Inc.*, 2008 WL 744705, *1 (E.D. Tex. March 19, 2008) ("When a party waives privilege as to a particular communication, the waiver applies to all other communications relating to the same subject matter."); *Bd. Of Trs. of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*, 237 F.R.D. 618, 625 (N.D. Cal. 2006) (waiver of privilege extends to all communications on the same subject matter). ██████████ ████████████████████████████████████████ *E.g., Flagstar*, 2009 WL 270965 at *5-6 (letter revealing legal advice transmitted to third party prior to litigation waived privilege as to that document and documents on the same subject matter); *Mass Eng'rd*, 2008 WL 744705 at *2 (privilege waived as to subject matter revealed in declaration submitted to USPTO); *Stanford*, 237 F.R.D. at *11 (submission to USPTO for correction of inventorship revealing attorney-client communications on inventorship waived privilege as to all communications on inventorship from the first contact with the inventors until the grant of the relevant petition). ██████████ ████████████████████████████████████████

### IV. Dunlop Testifying About Claim Construction Or Inventorship Waives Privilege

Memorylink expects that Motorola will use Dunlop's testimony to support its arguments on claim construction of the patents at issue as well as on the issue of inventorship. To the extent Motorola insists on asserting the attorney-client privilege over the drafting of the patents, inventorship of the patents, and the prosecution, Motorola should be precluded from utilizing

Dunlop's testimony on those issues. If, however, Motorola intends to use Dunlop's testimony in those areas, Motorola will thereby have waived the attorney-client privilege. *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1099 (7th Cir.1987) (offering an attorney's testimony to a specific communication results in waiver of the attorney-client privilege as to other communications on the same subject matter); *see also Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 532 (N.D.Ill.2003) ("the general rule is that voluntary disclosure of privileged communications waives the privilege as to all other communications dealing with the same subject matter."). Thus, Dunlop should be required to disclose attorney-client communications as to those two issues, regardless of how the Court otherwise resolves this motion, if Motorola will not agree that it will not use Dunlop's testimony on those issues.

## Conclusion

For the foregoing reasons, the Court should grant this Motion and preclude Motorola from asserting the attorney-client privilege against Memorylink for communications between February 16, 1998, and the present between Motorola employees and Dunlop relating to:

(1) The patentability of the inventions disclosed in the applications that matured into the patents at issue in this case (the '352 Patent and the '938 Patent);

(2) The inventorship of the inventions disclosed in those applications;

(3) The preparation and prosecution of those applications;

(4) The preparation and drafting of the draft Joint Patent Filing Agreement, dated April 7, 1998;

(5) The drafting, use ████████ of the Invention Disclosure Form; and

(6) The preparation and drafting of the Assignment and Agreement.

Dated: January 28, 2011                MEMORYLINK CORPORATION

                                       By:    /s/ Peter T. Berk
                                              One of its Attorneys

McDONALD HOPKINS LLC
Michael J. Femal
Richard N. Kessler
Peter T. Berk
300 N. LaSalle, Suite 2100
Chicago, IL 60654
(312) 280-0111

{2581684:2}                 16

**Certificate Of Service**

I hereby certify that on January 31, 2011, a copy of the foregoing **Memorylink's Motion for Ruling Regarding the Assertion of Attorney-Client Privilege at Hugh Dunlop's Deposition (redacted)**, was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system. An unredacted copy of **Memorylink's Motion for Ruling Regarding the Assertion of Attorney-Client Privilege at Hugh Dunlop's Deposition** was served on all counsel of via messenger and email on January 28, 2011.

    s/ Peter Berk
*Counsel for Memorylink Corp.*