**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MEMORYLINK CORPORATION** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 08 C 3301** |
| | ) | |
| **v.** | ) | **Magistrate Judge Nan R. Nolan** |
| | ) | |
| **MOTOROLA, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

The parties dispute whether certain communications between a Motorola in-house attorney and Motorola employees regarding the patents at issue are protected from disclosure to Memorylink by the attorney-client privilege. Memorylink's Motion for Ruling Regarding the Assertion of Attorney-Client Privilege at Hugh Dunlop's Deposition [171, 172] is granted in part and reserved in part as set forth below.

**BACKGROUND**

This case involves Memorylink's allegation that Motorola stole Memorylink's technology that enabled the wireless transmission of real-time video. Memorylink alleges that in late 1997, Peter Strandwitz and Robert Kniskern came to Motorola with an innovative idea for wirelessly transmitting real-time video. Memorylink claims that Motorola and certain Motorola attorneys improperly inserted two Motorola engineers (Gary Shulz and Jan Wyckoff) as co-inventors on one patent application (the '352 Patent) and as sole inventors on a second secretly-filed patent application (the '938 Patent). According to Memorylink, Strandwitz and Kniskern are the only real inventors. The Court assumes familiarity with the remaining facts and the rulings set out in several earlier opinions by the district court in this case (Docs. 59, 89) and a related legal malpractice case filed in this district (Case No. 09 C 7401, Doc. 75) and will repeat facts herein only as necessary for understanding the current motion.

Because neither side submitted affidavits or provided deposition testimony in support of its arguments, the facts relevant to this dispute have been taken from the complaint and various documents attached to the complaint and other briefs filed in the related cases. In late 1997, Strandwitz communicated with employees of Motorola regarding the wireless transmission of video (the "Invention") and a possible relationship with Motorola. Following Strandwitz's initial contact, Plexus Corporation, Strandwitz's employer at the time, and Motorola signed a non-disclosure agreement. Memorylink alleges that on November 12, 1997, Strandwitz, in order to further develop features of his Invention and pursuant to a non-disclosure agreement, discussed the Invention with Kniskern, President of Adapative MicroWare. In January 1998, Motorola drafted a Memorandum of Understanding ("MOU"), which was signed by Motorola, Strandwitz – for his then-employer Plexus Corporation – and Interactive Broadcasting Limited – a company with which Strandwitz had been consulting. The MOU "set[] forth the current intention of the parties relative to the development of a preliminary specification for a wireless device and compatible base station in the 5 GHz spectrum for use with home computers that will enable video, audio and control information." Cmplt., Exh. 3. To this end, the MOU acknowledged that the parties would disclose confidential information to each other and provided that disclosure of confidential information in connection with the MOU would be subject the terms of the existing nondisclosure agreements between the parties. Id. The MOU also stated that the parties are "independent contractors in all aspects of this MOU" and "[n]othing in this MOU will be interpreted to constitute or create a . . . fiduciary relationship between the parties hereto." Id.

On January 20, 1998, Kniskern and Strandwitz demonstrated the application of the Invention to Motorola at its Schaumburg, Illinois offices. On January 28, 1998, Strandwitz founded and incorporated Memorylink to be the corporate entity to own, develop, and commercialize the Invention. Strandwitz became Memorylink's CEO, and Kniskern was later named a Director and became an employee. Prior to filing any patent application, Plexus, Interactive Broadcasting

Limited, and Adaptive Microware assigned any interest they had in the Invention to Memorylink. Also, Plexus and Interactive Broadcasting Limited assigned the MOU to Memorylink.

On February 16, 1998, Strandwitz and Kniskern sent a document describing the Invention called "Wireless Multimedia Core Technology Overview for Patent Review" (the "Patent Overview") to Motorola's Wyckoff and Tom Waltz. Memorylink says that the Patent Overview was intended to be and would become the foundation for patent applications for the Invention. On February 25, 1998, Strandwitz and Kniskern performed another demonstration of the Invention for Motorola using Sharp brand camcorders. Motorola provided Memorylink with a proprietary, prototype stage radio circuit board for use in Sharp brand camcorders. After the second demonstration, Strandwitz and Kniskern left two modified Sharp video camcorders incorporating the Invention with Motorola. Memorylink alleges that Motorola later requested that Strandwitz and Kniskern repeat the demonstration previously made with the Sharp video camcorders using Sony brand video camcorders incorporating the Invention.

Memorylink alleges that subsequent to the two successful demonstrations incorporating the Invention, "Motorola represented to Strandwitz and Kniskern it had a large in-house patent department and an expertise in the filing and prosecution of patent applications and suggested that Motorola prepare and file any patent applications on the Invention." Cmplt., ¶ 39. Motorola denies this allegation of the complaint, but it is undisputed that Motorola's in-house counsel handled the preparation, filing, and prosecution of the patent application which would become the '352 Patent. Strandwitz and Kniskern say they had little experience in the filing and prosecution of patent applications. Strandwitz and presumably Kniskern agreed to have Motorola file any patent applications for the Invention. Cmplt., ¶ 43.

Hugh Dunlop, Motorola's in-house attorney and Senior Patent Manager, reviewed the Patent Overview. On April 13, 1998, Dunlop sent a letter to Strandwitz proposing the filing of one or more joint patent applications and taking advantage of Motorola's Intellectual Property Department for preparation and filing of patent applications. Dunlop's letter included a proposed Joint Patent Filing Agreement. On April 21, 1998, Dunlop prepared and witnessed, and Strandwitz, Kniskern, Schulz and Wyckoff signed a Motorola Invention Disclosure Form listing Strandwitz and Kniskern of Memorylink and Schulz and Wyckoff of Motorola as inventors. Memorylink says that Strandwitz and Kniskern did not object to Schulz and Wyckoff being named as co-inventors because they trusted Dunlop and other Motorola attorneys and their advice. Memorylink also alleges that Motorola engineers and management previously had told Strandwitz that Motorola's employees had to be on the patent application as co-inventors.

Strandwitz and Kniskern worked with Dunlop and Motorola's employees to prepare the patent application. On June 11 and 12, 1998, Strandwitz and Kniskern formally appointed Motorola's in-house attorneys as their attorneys to prosecute the patent application when they signed a Patent Application Declaration Combined with Power of Attorney. Prior to the filing of the patent application, Strandwitz and Kniskern assigned their rights in the patent to Memorylink.

On June 22, 1998, Motorola's in-house attorneys filed U.S. Patent Application No. 09/102,457 ("the '457 application"), which named Kniskern, Strandwitz, Schulz, and Wyckoff as inventors. On June 19, 2002, USPTO issued an Office Action on the '457 application. Without notifying Memorylink, one of Motorola's in-house patent attorneys responded to the Office Action on July 9, 2002. The '457 application issued as the '352 Patent on February 18, 2003.

On June 24, 1998, Motorola filed U.S. Patent Application No. 09/103,408 entitled "Self-Contained Camera Device and Method for Capturing and Communicating Images Via a Modem," which resulted in U.S. Patent No. 6,573,938 without Memorylink's knowledge or agreement. Memorylink claims that the '408 application omitted Kniskern and Strandwitz as inventors, and it

falsely named only Motorola employees Schulz and Wyckoff as inventors. Motorola contends that Schulz and Wyckoff are the sole inventors of the '938 Patent.

In the present action, the parties plan to depose former in-house Motorola attorney, Hugh C. Dunlop, in London, England, where Dunlop lives and works. Motorola has informed Memorylink that it will assert the attorney-client privilege and instruct Dunlop not to disclose certain communications Dunlop had with Motorola employees regarding the patents at issue (the '352 and '938 Patents). Memorylink seeks an advance ruling that at Dunlop's deposition, Motorola cannot assert the attorney-client privilege as to communications that occurred between February 16, 1998 and the present involving Dunlop and Motorola employees relating to: (1) the patentability of the inventions disclosed in the applications that resulted in the patents at issue in this case; (2) the inventorship of the inventions disclosed in those applications; (3) the preparation and prosecution of those applications; (4) the preparation and drafting of the draft Joint Patent Filing Agreement; (5) the drafting, use and amendment of the Invention Disclosure Form; and (6) the preparation and drafting of the Assignment and Agreement.

## **DISCUSSION**

Memorylink argues that Motorola cannot assert the attorney-client privilege and prevent Memorylink from discovering what Motorola employees discussed with its in-house attorneys about the patent applications for Strandwitz's and Kniskern's ideas because either (1) a common interest that the parties once shared while being jointly represented by Dunlop and other in-house Motorola attorneys applies or (b) the privilege, to the extent it attached, was waived. Memorylink seeks an order requiring Dunlop to disclose all communications that he had with Motorola employees regarding the patents at issue in this case. Motorola contends, among other arguments, that Memorylink cannot establish the existence of an attorney-client relationship between Memorylink, Strandwitz, and Kniskern and Motorola and its in-house lawyers because the district judge has already considered, examined, and rejected Memorylink's argument that there was an attorney-

client relationship.

## I.     Law of the Case Doctrine

The Court beings the analysis of Motorola's arguments by examining its theory that Judge Hibbler has considered and rejected Memorylink's argument that there was an attorney-client relationship between Memorylink/Strandwitz/Kniskern and Motorola's in-house attorneys. "The law of the case doctrine 'expresses the courts' general refusal to reopen what has previously been decided.'" Bebout v. Norfolk & Western Railway Co., 47 F.3d 876, 879 (7th Cir. 1995). The presumption against reopening issues already decided "reflects interests of consistency, finality, and the conservation of judicial resources, among others." Minch v. City of Chicago, 486 F.3d 294, 301 (7th Cir. 2007). "In situations where a different member of the same court re-examines a prior ruling, 'the law of the case doctrine . . . reflects the rightful expectation of litigants that a change of judges midway through a case will not mean going back to square one." Mendenhall v. Mueller Streamline Co., 419 F.2d 686, 691 (7th Cir. 2005).

Motorola strenuously argues that Memorylink's current motion relies on arguments Judge Hibbler has already twice rejected, in dismissing the fiduciary duty claim in this case and in dismissing the legal malpractice case. On February 23, 2009, the district court granted Motorola's Motion to Dismiss seventeen of the nineteen counts in Memorylink's complaint, including its breach of fiduciary duty claim contained in Count VII. (Doc. 59 at 13-15). Judge Hibbler ruled that Memorylink's breach of fiduciary duty claim, which was premised upon Motorola's failure to dispense legal advice to Memorylink, was barred by the applicable Illinois statute of limitations of five years. Judge Hibbler rejected Memorylink's claim that the statute of limitations was tolled because it was unaware of its legal claims.

Memorylink moved for reconsideration of the district court's dismissal of fifteen of the seventeen counts, including the dismissal of the breach of fiduciary duty claim. Memorylink argued on reconsideration that the five year statute of limitations for breach of fiduciary duty was tolled under the discovery rule because Memorylink relied on its counsel at Motorola to provide appropriate legal advice. In the district court's opinion on reconsideration, Judge Hibbler stated that "[v]irtually all of Memorylink's arguments with regard to the '352 Patent are based on its claim that Motorola was serving as its legal counsel." (Doc. 89 at 8). Judge Hibbler noted that the Complaint alleged that Motorola served as Memorylink's legal counsel. Id. Judge Hibbler stated: "However, Memorylink's complaint does not support this claim." Id. Judge Hibbler held that taking Memorylink's allegations of an attorney-client relationship as true, "the Complaint indicates that Memorylink decided to appoint Motorola as counsel subsequent to its acknowledgment of Motorola's contribution to the invention in question." Id. The district court determined that it therefore did not error in holding that the applicable statute of limitations had run on many of Memorylink's claims with regard to the '352 Patent. Id. Judge Hibbler affirmed his prior rejection of Memorylink's tolling argument because "Memorylink was aware of the alleged injuries before it may have regarded Motorola as its legal counsel." Id. Judge Hibbler also noted that Memorylink's agreement in the January 1998 Memorandum of Understanding (MOU) that "[n]othing in the MOU will be interpreted to constitute or create a . . . fiduciary relationship between the parties hereto" undermined Memorylink's claim that Motorola was its legal representative. Id.

In his opinion dismissing the legal malpractice case, Judge Hibbler explained what he meant when he previously stated that Memorylink's complaint does not support its claim that Motorola was serving as its legal counsel. (Doc. 75 at 5). Judge Hibbler stated that as part of the decision dealing with Memorylink's motion for reconsideration, he rejected Memorylink's arguments that Motorola's role as legal counsel to Memorylink delayed Memorylink's ability to discover its injury (for purposes of tolling the relevant statute of limitations) because it was simply deferring to the

advice of counsel. Id. Judge Hibbler explained: "The Court noted that Memorylink's complaint did not support that claim because, while the complaint might be read to allege the existence of an attorney-client relationship between the companies, Memorylink's decision to establish that relationship post-dated its acknowledgment that Motorola's engineers were joint inventors." Id. Judge Hibbler held that the discovery rule did not toll the statute of limitations with respect to the '352 Patent because he believed that "Memorylink plead itself out of court by alleging that it appointed Motorola's attorneys to prosecute the patent subsequent to its discovery of the injurious facts." Id.

The parties in this case have consented to final handling of any discovery motion by the Magistrate Judge. (Docs. 142, 143). Judge Hibbler's rulings do not preclude Memorylink's effort to establish an attorney-client relationship with Motorola's in-house attorneys under the law of the case doctrine. Judge Hibbler did not rule that no attorney-client relationship existed between Memorylink/Strandwitz/Kniskern and Motorola's in-house counsel. In fact, Judge Hibbler believed that Memorylink's complaint alleged an attorney-client relationship existed between Memorylink and Motorola's in-house attorneys. (Doc. 89 at 8). Judge Hibbler's statements concerning the attorney-client relationship can also not be considered in isolation. His statements were made in the context of ruling on a motion to dismiss and request for reconsideration of that ruling and related solely to whether the statute of limitations barred certain claims regarding the '352 Patent. On a motion to dismiss, the district court's decisions could not rest on any conclusion about the merits of a Memorylink allegation regarding the existence of an attorney-client relationship. Gilbert v. Illinois State Bd. of Educ., 591 F.3d 896, 903 (7th Cir. 2010) (explaining law of the case doctrine does not come into play when the first judge never decided the precise issue that is before the second judge). The district court was required to accept as true the facts alleged in Memorylink's complaint. Having applied the legal standards controlling a motion to dismiss, the district court determined only that certain of Memorylink's claims regarding the '352 Patent were barred based

on the applicable statutes of limitations because the discovery rule did not apply.

With regard to the discovery rule, the district court rejected Memorylink's claim that it was not aware that it was not receiving guidance from Motorola at the time it signed the April 21, 1998 invention disclosure form, the June 11/12, 1998 Assignment, and the June 22, 1998 '352 patent application because it relied on Motorola as its counsel to provide appropriate advice, believing that "the Complaint indicates that Memorylink decided to appoint Motorola as counsel subsequent to its acknowledgment of Motorola's contribution to the invention in question." (Doc. 89 at 8) (citing Cmplt. ¶¶ 48, 71). The district court found that Memorylink had "acknowledged the contributions of Motorola and its employees" in the February 1998 Patent Overview, by failing to object to the April 13, 1998 Dunlop letter, and in the Joint Patent Filing Agreement. (Doc. 59 at 18-19; doc. 89 at 7). The district court believed that the allegations in paragraphs 48 and 71 of the complaint indicated that the alleged attorney-client relationship formed "subsequent" to the April 13, 1998 letter from Hugh Dunlop. Id.

With all due respect, the district court was mistaken about the allegations in paragraphs 48 and 71 of the complaint. Although the complaint could have been clearer, the allegations in paragraphs 48 and 71 of the complaint relied on by district court "merely referenced Memorylink's appointing Dunlop, through a power of attorney designation under 37 CFR § 1.32, as the attorney to represent it before the USPTO." (Doc. 171 at 12). So understood, this language in Memorylink's complaint says nothing about when the alleged attorney-client relationship was established. In fact, the parties agree that a power of attorney alone does not give rise to an attorney-client relationship. (Doc. 171 at 12; doc. 173 at 8). Post-motion to dismiss briefing has brought the issue of when an attorney-client relationship formed into sharper focus. It is now clear that Memorylink's position is that Strandwitz and Kniskern formed an attorney-client relationship with Dunlop and Motorola attorneys by at least February 16, 1998, when they provided a written description of the invention to Motorola. The district court simply misunderstood Memorylink's position and rested its decisions

on the mistaken belief that Memorylink was alleging that an attorney-client relationship formed between Motorola's in-house attorneys and Strandwitz and Kniskern subsequent to the April 13 Dunlop Letter. Because the district court's decisions did not accurately represent Memorylink's claim, this Court believes the law of the case doctrine does not prevent Memorylink from seeking to establish that an attorney-client relationship formed by at least February 16, 1998. U.S. v. Noble, 299 F.3d 907, 910 (7th Cir. 2002) (revisiting an earlier ruling by same panel because earlier ruling was based on a mistake about a witness's testimony); Bebout v. Norfolk & W. Ry. Co., 47 F.3d 876, 879 (7th Cir. 1995) (reversing a decision on subsequent appeal because the court based its prior decision on mistaken facts).

## II.     Privilege Issues

Memorylink argues that Motorola's in-house attorneys jointly represented Memorylink/Strandwitz/Kniskern and Motorola and they had a common legal interest in developing, obtaining, and exploiting broad patents claiming the wireless video technology. Memorylink further contends that because the parties shared a common legal interest while being jointly represented, Memorylink is entitled to discover what communications occurred between Motorola and the in-house attorneys that it shared with Memorylink during the period of joint representation regarding matters of common interest. Motorola maintains that Memorylink's argument fails for several reasons including that Memorylink cannot establish a joint attorney-client relationship.

### A.     Choice of Law

Initially, the Court must decided what law applies on the privilege issue. Rule 501 of the Federal Rules of Evidence governs the applicability of privileges in federal courts. Federal common law applies in cases based upon a federal cause of action even where the complaint alleges a pendent state law claim. Memorial Hospital for McHenry County v. Shadur, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981); see also Northwestern Memorial Hospital v. Ashcroft, 362 F.3d 923, 925 (7th Cir. 2004) (confirming that Illinois privilege law does not govern in federal-question suits). Although the

remaining counts of the complaint include supplemental state law claims for fraud, contract, and tort claims, the principal claims in this case are patent-related and brought pursuant to 35 U.S.C. § 256 for correction of inventorship of the '352 Patent, '938 Patent, the '906 Application (a divisional patent application from the '352 Patent), and the '687 Application (a continuation patent application from the '352 Patent) and 35 U.S.C. §§ 271 and 281 for infringement of the '352 Patent. Thus, federal common law governs the privilege determination here.

The next question is whether Seventh Circuit law or Federal Circuit law controls. This case involves patent law for which the Federal Circuit holds appellate jurisdiction, but the Federal Circuit applies regional circuit law to procedural issues not unique to patent law. In re Regents of the Univ. of Cal., 101 F.3d 1386, 1390 n.2 (Fed. Cir. 1996). Questions of privilege and waiver are generally governed by regional circuit law. GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1272 (Fed. Cir. 2001) (waiver); In re Pioneer Hi-Bred Int'l Inc., 238 F.3d 1370, 1374 (Fed. Cir. 2001) (privilege); Regents, 101 F.3d at 1390 n.2 (common interest doctrine); Dorf & Stanton Comm., Inc. v. Molson Breweries, 100 F.3d 919, 922-23 (Fed. Cir. 1996) (waiver). Nonetheless, the Federal Circuit has held that its "own law applies to the issue of whether the attorney-client privilege applies to an invention record prepared and submitted to house counsel relating to a litigated patent." In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 803 (Fed. Cir. 2000). Federal Circuit law also governs issues of privilege and discoverability arising from the assertion of the advice-of-counsel defense in patent litigation. In re EchoStar, 448 F.3d 1294, 1298 (Fed. Cir. 2006 (stating "questions of privilege and discoverability that arise from the assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law.").

The issue of whether Memorylink/Strandwitz/Kniskern and Motorola were joint clients of Motorola's in-house attorney is similar to the issue in Regents. In Regents, the Federal Circuit applied the regional circuit privilege law (in that case the Seventh Circuit) to the question of whether communications between the owner of a patent, the exclusive licensee of the patent, and the

exclusive licensee's patent attorney were protected from disclosure under the joint attorney-client privilege doctrine against an accused infringer.   See also  Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1346 (Fed. Cir. 2005) (applying Seventh Circuit law with respect to question of whether attorney-client privileged protected invention disclosure in patent infringement action); Spalding, 203 F.3d at 804 (distinguishing Regents by explaining that "any patent involved [in Regents] was irrelevant to the question of privilege.").   Accordingly, the Court concludes that Seventh Circuit law applies to the parties' dispute regarding the existence of a joint client relationship and related privilege issues which do not involve substantive patent law.   In any event, neither side has shown that Federal Circuit law would provide a different result.

### B.      Joint Client Relationship

The common interest doctrine is a form of attorney-client privilege for joint legal matters. 625 Milwaukee, LLC v. Switch & Data Facilities Co., 2008 WL 582564, at *2 (E.D. Wis. Feb. 29, 2008); Simpson v. Motorists Mutual Ins. Co., 494 F.2d 850, 855 (7th Cir. 1974)(stating "where the same attorney represents two parties having a common interest, and each party communicates with the attorney, the communications are privileged from disclosure at the instance of a third person."). The term "common interest" has been used to describe the "joint client" or "co-client" privilege, "'which applies when multiple clients hire the same counsel to represent them on a matter of common interest,'" and the "community-of-interest" privilege, "which occurs when clients with separate attorneys share otherwise privileged information for purposes of a common and coordinated claim or defense." 625 Milwaukee, 2008 WL 582564 at *2 (citing Teleglobe USA Inc. v. BCE Inc., 493 F.3d 345, 359 (3d Cir. 2007)).   The issue in the present case is the joint client or co-client privilege.

The attorney-client privilege does not attach absent an attorney-client relationship, and the parties vigorously contest whether Memorylink/Strandwitz/Kniskern were ever represented by Motorola's in-house attorneys. Memorylink contends that Motorola's in-house attorneys represented both Memorylink/Strandwitz/Kniskern and Motorola in a joint effort to obtain patents claiming the wireless video technology. The fact that Memorylink/Strandwitz/Kniskern did not pay any legal fees to Motorola's in-house counsel and did not execute a formal contract of engagement is not dispositive. Westinghouse Elec. Corp. v. Kerr-McGee Corp., 580 F.2d 1311, 1317 (7th Cir. 1978). Rather, "[t]he professional relationship for purposes of the privilege for attorney-client communications 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." Id. at 1319; United States v. Keplinger, 776 F.2d 678, 701 (7th Cir. 1997) (holding potential client's subjective belief must be "minimally reasonable."). "'The deciding factor is what the prospective client thought when he made the disclosure, not what the lawyer thought.'" Westinghouse, 580 F.2d at 1317, n.14. In assessing whether an implied attorney-client relationship formed, courts should consider "the nature of the work performed and the circumstances under which confidential information is divulged." Id. at 1320.

The current record supports a finding that it was reasonable for Memorylink to conclude that Motorola's in-house attorneys were acting as its attorney in preparing and prosecuting the patent application that resulted in the '352 Patent. The relationship began on February 16, 1998 when at Motorola's request, Strandwitz and Kniskern sent the Patent Overview document marked "Confidential" to Wyckoff and Waltz for "patent review" pursuant to the nondisclosure agreements and MOU. The Patent Overview describes aspects of the Invention and states: "[t]his document describes the development path for a core technology which will enable a unique set of applications for transmitting and receiving high quality digital video/audio signals over a wireless medium in a home or office environment. " (Cmplt, Exh. 4 at 4). A request for legal advice is implied in

Strandwitz's and Kniskern's confidential submission to Motorola. Spalding, 203 F.3d at 806 (stating "[it] is not necessary to expressly request confidential legal assistance when the request is implied."). Memorylink explains that the Patent Overview was "prepared in anticipation of filing one or more patent applications covering various embodiments of the Invention." (Cmplt at ¶ 27). The Patent Overview states that "[i]t is expected that this document will serve as the genesis for early review of this innovative, dedicated purpose component platform, and its resultant patent opportunities." (Doc. 1, Exh. 4 at 4); Spalding, 203 F.3d at 806 (holding invention record constitutes a privileged communication because it "was prepared and submitted primarily for the purpose of obtaining legal advice on patentability and legal services in preparing a patent applications.").

Thereafter, Memorylink/Strandwitz/Kniskern received legal advice and legal services on patent matters from Hugh Dunlop, Motorola's in-house attorney, and there was an arrangement that Motorola's patent department would prepare, file, and prosecute the patent application on the Invention. On April 13, 1998, Dunlop sent a letter to Strandwitz confirming that he had reviewed the Patent Overview "from the point of view of identifying a basis for patent applications that might be filed as a result of the design effort between Motorola and Memorylink or its associated companies." Cmplt., Exh. 5. Attorney Dunlop noted that he had conducted a prior art search. Dunlop opined that the Invention might be patentable, discussed inventorship, provided advice regarding potentially relevant prior art, proposed that Motorola and Memorylink enter into an agreement under which one or more joint patent applications were filed, and offered Motorola's intellectual property department for preparation and filing of patent applications. Id.

Dunlop's subsequent actions and statements support the existence of an attorney-client relationship. On May 28, 1998, Dunlop sent Strandwitz, Kniskern, Schulz and Wyckoff a letter enclosing a draft patent application directed to the Invention to review, asking for "comments or approval." (Doc. 171, Exh. C). The letter states in bold print, that it "includes counseling advice and is subject to ATTORNEY-CLIENT PRIVILEGE." Id. The letter contains Dunlop's opinion regarding

potential prior art and suggested ways to overcome the prior art.  Id.  On June 10, 1998, Dunlop sent a second draft application to Kniskern only, which Dunlop again labeled in bold as containing "counseling advice" subject to the "ATTORNEY-CLIENT PRIVILEGE."  (Doc. 171, Exh. D).  On June 11 and 12, 1998, Kniskern and Strandwitz gave Motorola's in-house attorneys a power of attorney to act on their behalf in the Patent and Trademark Office ("PTO") with regard to the '457 application.  Motorola prepared all of the documents related to the patent filing on behalf of Memorylink and Motorola.  On June 22, 1998, Motorola's in-house patent attorneys filed the '457 patent application, which eventually issued as the '352 Patent.

The Court is unpersuaded by Motorola's suggestion that the language in the January 1998 MOU disclaiming the formation of a fiduciary relationship prevents the later formation of an attorney-client relationship between Motorola's in-house counsel and Memorylink/Strandwitz/Kniskern.  The MOU addresses the relationship between Motorola, through its Multimedia Group, Plexus Corp., and Interactive Broadcasting.  The provision cited by Motorola serves to disclaim a fiduciary relationship arising from Motorola Inc., Multimedia Group, Plexus Corp., and Interactive Broadcasting's development activities under the MOU.  It can be argued that the absence of language referring to Motorola's intellectual property department or its in-house patent counsel demonstrates an intent not to negate the formation of an attorney-client relationship between Motorola's in-house counsel and Memorylink/Strandwitz/Kniskern.  Even if the language in the MOU can be read to disclaim an attorney-client relationship between Motorola's in-house counsel and Memorylink/Strandwitz/Kniskern, the MOU did not foreclose the parties from later altering the nature of their relationship.  Motorola has also cited no authority indicating that an attorney can effectively disclaim an attorney-client relationship if the attorney proceeds to then provide legal advice and services.

-15-

In order for the communications between Memorylink/Strandwitz/Kniskern, Motorola, and Motorola's in-house attorneys to be protected by the attorney-client privilege, Memorylink/Strandwitz/Kniskern and Motorola as clients "must share a common legal interest, or have a community of interest, with respect to the subject of the communications." In re Regents, 101 F.3d at 1390. "[T]he nature of the interest [must] be identical, not similar, and be legal, not solely commercial." Id. In the patent context, numerous courts have held that the shared interest of parties in obtaining the greatest patent protection for an invention satisfies the common legal interest requirement. See Beasley v. Avery Dennison Corp., 2006 WL 2854396, at *4 (W.D. Tex. Oct. 4, 2006); Massachusetts Eye and Ear Infirmary (MEEI) v. QLT Phototherapeutics, Inc., 167 F.Supp.2d 108, 125 (D. Mass. 2001) (holding plaintiff and defendant "shared a common legal interest in the preparation and prosecution of the '473 application, namely a strong and valid patent with which QLT could support its commercial activities and MEEI could support its royalty income."); Hillerich & Bradsby Co. v. MacKay, 26 F.Supp.2d 124, 127 (D.D.C. 1998) (holding parties had a common legal interest in the development of the aluminum bat patent application); Baxter Travenol Laboratories, Inc. v. Abbott Laboratories, 1987 WL 12919, at *1 (N.D. Ill. June 19, 1987) (stating that a "community of legal interests may arise between parties jointly developing patents; they have a common legal interest in developing the patents to obtain greatest protection and in exploiting the patents."). Under these principles, the Court finds that Memorylink/Strandwitz/Kniskern shared a common legal interest with Motorola in obtaining broad patent protection for wireless video technology.

Motorola argues that Memorylink and Motorola did not share a common legal interest in obtaining broad patent protection for wireless video technology because "the parties' alleged common interest arises from a business relationship." (Doc. 173 at 11). Even if Memorylink and Motorola's relationship arose from a common business interest in exploiting the Invention, that does not prevent the common interest doctrine from applying to an overlapping shared legal goal of

obtaining patent protection for the Invention. <u>Dexia Credit Local v. Rogan</u>, 231 F.R.D. 287, 294 (N.D. Ill. 2005) (noting that "as is typically the case in the business world, the implementation of that common business interest required legal advice."). The common interest doctrine is also not limited to a common litigation interest as Motorola suggests. (Doc. 173 at 11). Although the common interest doctrine "originally developed in criminal cases, as a 'joint-defense privilege,' where two or more co-defendants are frequently represented by a single attorney," "the Seventh Circuit permits both potential parties and parties who are not otherwise joined in litigation to assert the 'common legal interest' privilege, even where it is not anticipated that the party will be sued in the future." <u>The Pampered Chef v. Alexanian</u>, 737 F.Supp.2d 958, 965 (N.D. Ill. 2010). As the Seventh Circuit has explained,

> [T]he common interest doctrine does not contract the attorney-client privilege. Thus, communications need not be made in anticipation of litigation to fall within the common interest doctrine. Applying the common interest doctrine to the full range of communications otherwise protected by the attorney-client privilege encourages parties with a shared legal interest to seek legal 'assistance in order to meet legal requirements and plan their conduct' accordingly.

<u>United States v. BDO Seidman, LLP</u>, 492 F.3d 806, 816 (7th Cir. 2007); <u>see also</u> <u>In re Regents</u>, 101 F.3d at 1390 (rejecting argument that communications between patent owner and exclusive licensee's patent attorney were not covered by the joint client privilege where the communications were not made in anticipation of litigation because "[i]t is well established that the attorney-client privilege is not limited to actions taken and advice obtained in the shadow of litigation.").

The cases cited by Motorola do not suggest a contrary result regarding the formation of an attorney-client relationship between Memorylink/Strandwitz/Kniskern and Motorola's in-house counsel. Motorola cites <u>Sun Studs, Inc. v. Applied Theory Assocs., Inc.</u>, 772 F.2d 1557, 1568 (Fed. Cir. 1985), for the proposition that a "power of attorney does not *ipso facto* create an attorney-client relationship." In <u>Sun Studs</u>, "the Federal Circuit held that an inventor under an obligation to assign his or her right in a patent application to a particular company does not *ipso facto* develop an attorney-client relationship with the company's patent counsel, who prepares and prosecutes the

patent application, even though the inventor gave the company's patent counsel the power of attorney to act on his or her behalf in the PTO." MEEI, 167 F.Supp.2d at 120. The power of attorney appointment in Sun Studs was given to comply with the PTO rules requirement that the actual inventor, not the corporation or assignee, apply for the patent. See 37 C.F.R. § 1.41. The Federal Circuit "noted that the inventor's obligation to assign his or her patent rights to a company includes an obligation to assist the company in obtaining those rights, and the inventor's power of attorney to the company's patent counsel is given on behalf of the company, not the inventor." MEEI, 167 F.Supp.2d at 120.

In contrast, Strandwitz and Kniskern were not obligated to assign their invention rights to Motorola; they were not contractually obligated to appoint Motorola's in-house attorney as their counsel; and they did not appoint Motorola in-house attorneys as their attorneys to merely comply with the PTO rules. Moreover, Memorylink does not contend that power of attorney in the PTO alone created an attorney-client relationship. Rather, the submission of confidential information regarding the Invention to Motorola for the purpose of obtaining legal advice and services in preparing a patent application was the beginning of the attorney-client relationship between Memorylink/Strandwitz/Kniskern and Motorola's in-house counsel. Dunlop provided legal advice and services to Memorylink/Strandwitz/Kniskern by counseling them regarding the content of the patent application, prior art and ways of overcoming it, inventorship, and patentability.

In Univ. of West Virginia Bd. of Trs. v. VanVoorhies, 278 F.3d 1288 (Fed. Cir. 2002) and Synergy Tech. & Design Inc. v. Terry, 2007 WL 1288464 (N.D. Cal. May 2, 2007), which Motorola cites, the filing and prosecution of patent applications in the individual inventors' names by the university's and corporation's lawyers did not create an attorney-client relationship between the inventors and the university's and corporation's lawyers because the listing of the individual inventors was required by the PTO's filing rules. In each case, the attorney did not provide any legal advice or legal service for the named inventors. Here, Dunlop provided legal advice and

services to Memorylink/Strandwitz/Kniskern and developed an attorney-client relationship with Memorylink/Strandwitz/Kniskern based on more than merely prosecuting a patent application in the name of the inventor to comply with PTO filing rules.

Motorola also relies on <u>Pain Prevention Lab, Inc. v. Elec Waveform Labs, Inc.</u>, 657 F.Supp. 1486, 1497 (N.D. Ill. 1987). <u>Pain Prevention</u> held that it was unreasonable for the defendant to believe that the plaintiff's attorney "was acting as its attorney solely on the basis of his work in preparing the patent application." <u>Id</u>. at 1497. The district court found that the plaintiff never independently sought any legal advice from the attorney because"[c]ommunicating technical information to an attorney primarily to enable the attorney to prepare a patent application does not in itself call for the attorney to render any legal advice." <u>Id</u>. Contrary to <u>Pain Prevention</u>, the Federal Circuit subsequently held that the attorney-client privilege applies to communications between an inventor and his patent attorney because "requests for legal advice on patentability or for legal services in preparing a patent application necessarily require the evaluation of technical information such as prior art." <u>Spalding</u>, 203 F.3d at 806. The Federal Circuit noted that several district court opinions had "held that technical information communicated to an attorney, and documents relating to the prosecution of patent applications are non-privileged, based on the rationale that the attorney is acting as a mere 'conduit' between his client and the Patent and Trademark Office." <u>Id</u>. at 806, n.3. The <u>Spalding</u> court held that the "better rule" was the one it articulated in that case.

### C.     Adverse Litigation Exception

"The great caveat of the joint-client privilege is that it only protects communications from compelled disclosure to parties outside the joint representation." <u>In re Teleglobe Communications Corp.</u>, 493 F.3d at 366. "When former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable." <u>Id</u>. (<u>citing</u> Restatement (Third) of the Law Governing Lawyers § 75(2)). The rationale for this rule is the

presumed intent of the parties that there is no confidentiality between co-clients and the lawyer's fiduciary obligation of candor to both parties. Id.

Motorola argues that Memorylink is not entitled to discover Dunlop's internal Motorola communications that deal with the patents at issue because Motorola has an independent privilege with its lawyers and Motorola has not waived any protection over those communications. The Restatement has rejected Motorola's view. The adverse litigation exception applies "whether or not the co-client's communication had been disclosed to the other during the co-client representation, unless they had otherwise agreed." Restatement (Third) of the Law Governing Lawyers § 75 cmt. d; see also MEEI v. QLT, 412 F.3d 215, 228 (1st Cir. 2005). In the absence of some reason to believe that the Seventh Circuit would not follow the Restatement position, the Court rejects Motorola's argument.

The parties also disagree on the privileged status of internal Motorola communications regarding the '938 Patent. Motorola argues that Memorylink has no basis to claim that it is entitled to discover any internal Motorola communications regarding the '938 Patent. Motorola says that Memorylink has not alleged any attorney-client relationship regarding that patent, and Memorylink's attempt to assert legal malpractice over the filing of that patent was dismissed by Judge Hibbler. Memorylink responds that because the '938 Patent claims technology that relates to the parties' common legal interest in obtaining patent protection for wireless video technology, it is entitled to discover all communications that Motorola and its in-house attorneys exchanged regarding any and all efforts to patent the wireless video technology (not just those relating to the '352 Patent).

The Court agrees with Memorylink. The adverse-litigation exception to the co-client privilege applies to all communications of either co-client that otherwise qualify as privileged and that "relate[] to matters of common interest." Restatement (Third) of the Law Governing Lawyers § 75(2). The '352 Patent and the '938 Patent cover related wireless video technology. Because the parties shared a common legal interest in obtaining patents for this wireless video technology,

Motorola may not invoke the attorney-client privilege with respect to communications relating to the '938 Patent.

### D. Duration of the Joint Representation

The parties dispute the duration of any joint representation of Memorylink/Strandwitz/Kniskern and Motorola by Motorola's in-house counsel. "A joint attorney-client relationship remains intact until it is expressly terminated or until circumstances arise that readily imply to *all the joint clients* that the relationship is over." MEEI, 412 F.3d at 226. Further, "[u]ntil an event affirmatively terminates the joint-client relationship of parties relying on the same attorney for [patent] prosecution, or otherwise 'readily impl[ies]' that the relationship is over, as a matter of law, the joint relationship endures. Behind the scenes machinations adverse to the joint client are not necessarily determinative." Id.

The parties here did not formally terminate the joint attorney-client relationship, and neither side has adequately addressed the issue of an implicit termination. Motorola argues that any joint representation ended in 1998 when Memorylink appointed different counsel to handle its affairs. (Doc. 173 at 5-6). The Court is not convinced that the existence of additional patent counsel for Memorylink alone establishes that no attorney-client relationship continued between Memorylink and Motorola's in-house counsel during the same time period. See MEEI, 167 F.Supp.2d at 119 (finding that plaintiff's attorney-client relationship with second attorney did not terminate plaintiff's attorney-client relationship with first attorney on the preparation and prosecution of the patent application filed by the first attorney); see also Regents, 101 F.3d 1388; 37 C.F.R. § 10.40 (stating that before the PTO a patent "practitioner shall not withdraw from employment until the practitioner has taken reasonable steps to avoid foreseeable prejudice to the rights of the client, including giving due notice to his or her client.").

According to Memorylink, its attorney-client relationship with Motorola's in-house attorneys continues to the present.  In its complaint, however, Memorylink alleges that in November 2007, it discovered that Shulz and Wyckoff were not proper inventors on the '352 Patent and first discovered the existence of the '938 Patent.  Cmplt at ¶¶ 148, 149.  Memorylink further alleges that in December 2007, it learned that Motorola's Other Eyes miniaturized camera product concept incorporated an application of the Invention and other proprietary Memorylink technology.  Id. at ¶ 150.  Memorylink says that "[i]n 2008 after discovering the problem with the inventorship on the ['352] Patent and then discovering the ['938] Patent and Motorola's Other Eyes miniaturized camera product concept, Memorylink made attempts to reach a fair resolution with Motorola concerning the ['352] Patent and its divisional patent applications, as well as the ['938] Patent, with no success." Id. at ¶ 151.  Memorylink has not explained why a divergence of the parties' common interest did not occur by at least December 2007 when it had learned of the inventorship problem and discovered the ['939] Patent and Motorola's Other Eyes miniaturized camera concept.  Because the existing briefing is inadequate to decide when the attorney-client relationship between Memorylink/Strandwitz/Kniskern and Motorola's in-house counsel terminated, the Court reserves this issue pending more thorough briefing of the issue by the parties and possible further development of the evidentiary record.

## CONCLUSION

For these reasons, Memorylink's motion is granted in part and reserved in part.

E N T E R:

_____
**Nan R. Nolan**
**United States Magistrate Judge**

**Dated:  June 2, 2011**