UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEMORYLINK CORP., a Wisconsin Corporation, | ) Case No. 08 C 3301 ) |
| Plaintiff, | ) Judge Hibbler ) ) Magistrate Judge Nolan |
| vs. | ) ) |
| MOTOROLA, INC., a Delaware Corporation, | ) ) ) |
| Defendant. | ) ) |

**Memorylink's Motion Regarding Applicability Of Attorney-Client
Privilege To Communications Between Motorola And Its In-House Attorneys**

This Court's June 2, 2011 order bars Motorola from asserting the attorney-client privilege with regard to communications with its former in-house attorney Hugh Dunlop about the '352 and '938 patents, their underlying applications, and related issues. (DKT # 216.) The Court based its decision upon Dunlop providing joint legal representation to Motorola, Schulz, Wyckoff, Kniskern, Strandwitz, and Memorylink. (*Id.*) The Court found the joint legal representation began by at least February 16, 1998, but reserved ruling on when it ended. (*Id.*) On July 7, 2011, Motorola moved for reconsideration of the Court's order (DKT # 225), which the Court correctly denied on August 9, 2011 (DKT # 234).

Because the parties continue to have a dispute as to (a) whether the Court's June 2, 2011 Order applies to Motorola in-house attorneys other than Dunlop, and (b) the date on which the joint representation ended, the Court requested briefing on these issues. (*See* DKT # 238.) Memorylink now moves the Court to rule (i) that its June 2 order applies to all Motorola in-house attorneys; and (ii) that the joint legal representation existed from February 16, 1998 to June 9, 2008 – the date on which Memorylink ended the joint relationship by filing suit.

{2924372:2}

Specifically, the Court should enter an order that prohibits Motorola from asserting the attorney-client privilege to withhold the disclosure of any communications with, or documents of, its in-house attorneys between February 16, 1998 and June 9, 2008 with regard to the following topics:

(a) The patentability of the inventions disclosed in the '457 and '408 applications, which are the applications that matured into the '352 and '938 patents, respectively.

(b) The inventorship of the inventions disclosed in the '457 and '408 applications.

(c) The preparation and prosecution of the '457 and '408 applications.

(d) The preparation, drafting, and editing of the unexecuted, draft "Joint Patent Filing Agreement" relating to the '457 application (DKT # 1-7).

(e) The preparation, drafting, use, and amendment of Motorola's invention disclosure forms for the '457 application (DKT # 1-8) and the '408 application.

(f) The preparation and drafting of the "Assignment and Agreement" relating to the '457 application (DKT # 1-9).

## Introduction

The key to Motorola taking Kniskern's and Strandwitz's revolutionary wireless camera inventions was having its in-house lawyers handle the patenting of those inventions. By doing that, Motorola was able to use its lawyers' position and influence to convince Kniskern and Strandwitz to accede to the designating of two Motorola employees as joint inventors on the '352 patent, when neither employee actually earned that designation. Having reaped enormous benefits from that arrangement, Motorola now must accept the necessary consequence of providing joint legal representation: it must disclose what it and its in-house attorneys said to each other while purporting to share a common legal interest with Kniskern, Strandwitz, and their successor in interest: Memorylink.

Desperate to keep Memorylink, the Court, and the jury from learning what it said behind Memorylink's back, Motorola now argues – contrary to fact – that only Hugh Dunlop

represented Kniskern and Strandwitz. But this argument necessarily fails because it is "axiomatic" that having an attorney-client relationship with just one Motorola attorney forms a relationship with Motorola's entire law department. *See Knight v. Guzman*, 684 N.E.2d 152, 154 (Ill. App. 1997). So establishing a relationship with Dunlop necessarily establishes a relationship with Motorola's in-house legal department. That indisputable legal truth is buttressed by the undisputed fact that several other Motorola in-house attorneys, not just Dunlop, communicated with Kniskern and Strandwitz and represented them before the USPTO.

Memorylink therefore is entitled to all of the attorney-client communications that Motorola shared with its in-house attorneys until Memorylink terminated the joint representation on June 9, 2008, and the Court should grant this motion accordingly.

## Background Facts

One day after Kniskern and Strandwitz showed Motorola their innovative wireless camera device, Strandwitz wrote to Motorola that "it would make good sense to have Motorola head up the patent investigation" of the device. (DKT # 229-6.) Three weeks later, on February 16, Strandwitz gave Motorola a detailed, 21-page document explaining his and Kniskern's wireless camera invention (the "Overview"). (DKT # 1-5.) On its face, the Overview stated it was "For Patent Review." One of Motorola's in-house attorneys, Hugh Dunlop, reviewed the Overview for patentability, which he confirmed in an April 13, 1998, letter to Strandwitz and Kniskern. (*See* DKT # 1-6, attached as **Ex. A**) Dunlop's letter, on Motorola's "Intellectual Property Department" letterhead, urged Kniskern and Strandwitz to "tak[e] advantage of *this department* for preparation and filing of patent applications." (*Id.* at 2 (emphasis added).)

[redacted]

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████ On June 22, 1998, Motorola in-house attorney Thomas G. Berry filed the '457 application (U.S. Application No. 09/102,457), which matured into the '352 Patent, on behalf of Kniskern, Strandwitz, and two Motorola employees (Gary Schulz and Jan-Michael Wyckoff). (*See* **Ex. C**, attached.) The application included a power of attorney document executed by Kniskern and Strandwitz that gave five specific Motorola attorneys authority to prosecute the application on their behalf: Jonathan P. Meyer, Thomas G. Berry, J. Ray Wood, Terri S. Hughes, and Hugh C. Dunlop. (*See* **Ex. D**, attached.) In prosecuting the '457 application, Motorola in-house attorneys Brian Mancini and Thomas Berry signed and filed documents with the USPTO on behalf of Strandwitz and Kniskern. (*See* **Ex. C and E**, attached, prosecution documents signed by Motorola in-house attorneys.)

Two days after filing the '457 application, without telling Memorylink, Motorola's in-house attorneys filed the '408 application (U.S. Application No. 09/103,408), which matured into the '938 Patent and claimed a wireless camera device that Kniskern and Strandwitz had invented and previously demonstrated to Motorola. Motorola falsely named two of its employees as the only inventors and omitted the true inventors (Strandwitz and Kniskern). Motorola in-house attorneys Terri S. Hughes, Randall S. Vaas, and Lawrence J. Chapa prosecuted the '408 application.

In mid-1999, Dunlop left Motorola, and Brian Mancini became Memorylink's main contact in Motorola's legal department. ████████████████████████████████

████████ Around that same time, in 1999, Memorylink learned that in June 1998 Motorola had secretly shown Sony a Sony-based camera prototype that Kniskern and Strandwitz had built and

4

left with Motorola with the understanding that they would be invited to attend any demonstration to Sony. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Thus, Motorola continued prosecuting the '457 application on Memorylink's behalf through its issuance as the '352 patent on February 18, 2003. The '408 application issued as the '938 patent several months later on June 3, 2003.

In November 2007, Memorylink discovered the '938 patent and its underlying application, and it discovered that Schulz and Wyckoff were not proper inventors on the '352 patent. Based on their decade-long relationship, Memorylink maintained its relationship with Motorola and worked for months to try and resolve issues with Motorola. (*See* Compl. ¶ 151.) On June 9, 2008, however, Memorylink concluded that an amicable resolution with Motorola would not be possible and terminated their relationship by filing this lawsuit.

## Law And Argument

### I. If The Common-Interest Doctrine Applies To Dunlop, It Applies To All Motorola In-House Attorneys

Motorola now argues that the Court's June 2, 2011 order regarding Dunlop should not apply to other Motorola in-house attorneys because, according to Motorola, Strandwitz and Kniskern had no attorney-client relationship with any other Motorola attorney. (*See* DKT # 226 at 14.) Motorola's argument contravenes both law and fact.

As to the law, it is "axiomatic" that a relationship with one attorney of a firm forms a relationship with all other attorneys at that same firm. *Knight v. Guzman*, 684 N.E.2d 152, 154 (Ill. App. 1997) ("It is axiomatic that the employment of a law firm is the employment of all members of that firm unless there is a special understanding otherwise."); *Burton by Burton v.*

5

*Estrada*, 501 N.E.2d 254, 259 (Ill. App. 1986) (same); *see also* Rule 1.10, Ill. R.P.C., Comment [2] (explaining "premise that a firm of lawyers is essentially one lawyer"); N.D. Ill. L.R. 83.51.10 (same). That is true for a traditional law firm or a group of in-house attorneys at a large corporation, such as Motorola. *See* Rule 1.10, Ill. R.P.C., Comment [1] (explaining that "term 'firm' denotes lawyers in a law partnership . . . or lawyers employed in . . . the legal department of a corporation"); N.D. Ill. L.R. 83.51.10 (same).

Thus, in *MEEI* – a case similar to the present – the First Circuit held that MEEI had an attorney-client relationship with the entire firm of Morrison & Foerster, LLP, not just the attorney at that firm with whom MEEI primarily had dealt. *See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 226 (1st Cir. 2005) ("We agree . . . that QLT and MEEI were joint clients of Morrison & Foerster"). Therefore, the common-interest doctrine necessarily applies to all Motorola in-house attorneys to the same extent it applies to Dunlop.

But separate from that, based on the undisputed facts, Kniskern and Strandwitz would reasonably believe they were represented by Motorola's legal department at large, not just Dunlop. That is because five different attorneys in Motorola's legal department represented Kniskern and Strandwitz before the USPTO, and Memorylink communicated with attorneys other than Dunlop, such as Brian Mancini. (*See* **Ex. C**, **D**, **E and F**.) Also, when Strandwitz and Kniskern discussed Motorola handling the patent preparation and prosecution, they spoke of "Motorola" generally, and did not request any specific attorney. (*See* DKT # 229-6, stating "it would make good sense to have *Motorola* head up the patent investigation" (emphasis added).) And when Dunlop offered legal representation, he offered the services of Motorola's legal "department" not his services alone. (*See* DKT # 1-6 at 2.)

[Redacted content]

Thus, as this Court previously stated, the "current record supports a finding that it was reasonable for Memorylink to conclude that *Motorola's in-house attorneys* were acting as its attorney in preparing and prosecuting the patent application that resulting in the '352 patent" (*See* DKT # 216 at 13 (emphasis added).) That Court should reaffirm that now.

## II.     Motorola's Joint Representation Lasted Until Memorylink Filed Suit
### A.     Memorylink Terminated Motorola's Joint Representation By Suing

The remaining issue is when the joint representation by Motorola's in-house attorneys terminated. A "joint attorney-client relationship remains intact until it is expressly terminated or until circumstances arise that readily imply to all the joint clients that the relationship is over." *MEEI*, 412 F.3d at 226. Further, "[u]ntil an event affirmatively terminates the joint-client relationship of parties relying on the same attorney for [patent] prosecution, or otherwise 'readily impl[ies]' that the relationship is over, as a matter of law, the joint relationship endures. Behind the scenes machinations adverse to the joint client are not necessarily determinative." *Id.*

Because the parties agree no one expressly ended the attorney-client relationship, the question is when did the circumstances "readily imply" that the relationship was over. (*See* DKT # 216 at 21.) That occurred on June 9, 2008: when Memorylink filed suit upon realizing that it would be unable to amicably resolve its inventorship dispute with Motorola and therefore would be unable to continue the common interest of obtaining and exploiting patents.

### B. Hiring Banner & Witcoff Did Not End Motorola's Legal Representation

Motorola has argued that the joint representation terminated in 1998 when Memorylink retained the Banner & Witcoff firm ("B&W"). But Memorylink hiring additional counsel (through whom Motorola was told to communicate) did not terminate Memorylink's existing relationship with Motorola's legal department. *See MEEI*, 167 F. Supp. 2d 108, 119 (D. Mass. 2001) (finding that MEEI's relationship with Morrison & Foerster was not terminated by attorney-client relationship with different attorney); *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1388 (Fed. Cir. 1996); 37 CFR § 10.40 (stating that a patent "practitioner shall not withdraw from employment until the practitioner has taken reasonable steps to avoid foreseeable prejudice to the rights of the client, including giving due notice to his or her client"); *see also* June 2 Order, DKT # 216 at 21.

To the contrary, after Memorylink retained B&W, Motorola's in-house attorneys continued to prosecute the '457 application on Memorylink's behalf through issuance as the '352 patent on February 18, 2003. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Indeed, to this day, Motorola's in-house attorneys remain the attorneys of record for Strandwitz and Kniskern before the USPTO on the '352 patent as no revocation or withdrawal has been filed. *See* 37 CFR § 1.36(a), (b) (requiring revocation or withdrawal of attorney).

### C. Bumps In The Motorola-Memorylink Relationship Did Not Terminate The Joint Legal Representation

Motorola may argue that the joint legal representation ended ███████████████ ███████████████████████████████████████ (b) in August 2003, when Motorola did not agree to assign ownership of the '352 patent or the '457 application to

8

Memorylink; or (c) in November 2007, when Memorylink discovered that Motorola had secretly applied for and obtained the '938 patent and discovered that Motorola's employees were not true inventors of the '352 patent. Those occurrences, however, did not terminate the legal relationship because, upon each occurrence, Memorylink still thought Motorola shared a common interest in obtaining patent protection for the wireless video technology, and therefore Memorylink continued its working relationship with Motorola. (*See* Compl. ¶ 132-44, 151.) Memorylink did not conclude that the parties' differences were irreconcilable until June 2008, when it filed suit. Only then did the circumstances "readily imply" that the relationship was over.

In *MEEI*, the First Circuit confirmed that no business relationship is perfect, that disagreements between business partners naturally occur, and that such disputes do not terminate joint legal representation unless the parties' differences are irreconcilable. In that case, the parties disputed inventorship as early as December 1994, yet the Court correctly held that the joint legal relationship did not terminate until four years later, on October 1, 1998, when it was clear the parties' interests had diverged. *See MEEI*, 167 F. Supp. 2d at 111 (explaining when inventorship dispute began); *MEEI*, 412 F.3d at 228 (affirming that relationship did not terminate until 1998).

Here, for the same reasons, any tension between Motorola and Memorylink prior to June 2008 regarding business issues did not terminate the legal representation. ███████████████████████████████████████████████ did not terminate the parties' shared interest in obtaining patents because the parties continued to work together. (*See* Compl. ¶ 97-111, 116-17.) Thus, Motorola's in-house attorneys continued to prosecute the application underlying the '352 patent for four more years through issuance on behalf of Motorola and Memorylink. Nor did Motorola's 2003 disagreement with assigning ownership in the '352 patent terminate the joint interest. To the contrary, retaining ownership in the '352 patent confirmed that Motorola

9

still shared a common interest in owning, developing, and exploiting the '352 patent. If Motorola had assigned its ownership to Memorylink, then it could argue the common interest ended.

Also, while Memorylink first discovered the inventorship issue in November 2007 that did not "readily imply" the relationship was over because, like MEEI, Memorylink was hopeful that it could resolve the issues with Motorola. *See* Compl. ¶ 151; *MEEI*, 412 F.3d at 227 (affirming that "MEEI's conflicting interest was only conditional" on QLT not living up to its promises). In any event, Motorola cannot possibly show that the circumstances "readily implied" that the relationship ended prior to November 2007 because, despite some business setbacks Memorylink had no reason to think their interests as to obtaining relevant patents, had diverged so far that the relationship was over. *See FDIC v. Ogden Corp.*, 202 F.3d 454, 463 (1st Cir. 2000) ("A joint attorney-client relationship remains intact until it is expressly terminated or until circumstances arise that readily imply *to all the joint clients* that the relationship is over.") (emphasis in original). So, at a minimum, the Court should order that the joint legal relationship endured until at least November 2007.

## Conclusion

For the foregoing reasons, the Court should grant this motion and order that Motorola cannot assert the attorney-client privilege to withhold the disclosure of any communication that it (or any of its attorneys) had with any Motorola in-house attorney between February 16, 1998 and June 9, 2008 with regard to the '352 and '938 patents, their underlying applications, and related matters.

MEMORYLINK CORP.,

By:   /s/ Peter T. Berk
       One of its Attorneys

**ATTORNEYS FOR PLAINTIFF**
Michael J. Femal  (#0792012)
Richard Kessler  (#6183140)
Peter Berk  (#6242515)
McDonald Hopkins LLC
300 N. LaSalle Street
Suite 2100
Chicago, IL 60654
312.280.0111 (phone)
312.280.8232 (Fax)

# CERTIFICATE OF SERVICE

I, Peter T. Berk, an attorney, hereby certify that on September 23, 2011, I electronically filed **Memorylink's Motion Regarding Applicability Of Attorney-Client Privilege To Communications Between Motorola And Its In-House Attorneys** with the Clerk of the Court using the Electronic Case Filing System and in compliance with the General Order on Electronic Case Filing, Section III(B)(1). Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system. An unredacted copy of the foregoing was served on all counsel of via email.

/s/Peter T. Berk