## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MEMORYLINK CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08-cv-3301 |
| | ) | |
| vs. | ) | The Honorable Samuel Der-Yeghiayan |
| | ) | United States District Judge |
| MOTOROLA SOLUTIONS, INC., AND | ) | |
| MOTOROLA MOBILITY, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## MOTOROLA'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Anne M. Sidrys, P.C. (#6209457)
Nyika O. Strickland (#6275717)
Joel R. Merkin (#6290212)
KIRKLAND & ELLIS LLP (Firm No. 90443)
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

*Attorneys for Defendants Motorola Solutions,
Inc., and Motorola Mobility, Inc.*

May 25, 2012

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................3

I.      FACTUAL HISTORY..................................................................................3

        A.      The Early Motorola/Memorylink Relationship. ....................................3

        B.      Motorola and Memorylink Jointly Developed Technology Using Motorola
                Resources. ........................................................................................4

        C.      Motorola Prepared and Filed the Joint '352 Patent Application............................5

        D.      Memorylink Had Its Own Counsel Advising It As Early As 1998. ......................7

        E.      Memorylink Did Not Pursue Litigation Until It Faced Financial Difficulties.........8

        F.      Motorola's Schulz And Wyckoff Separately Conceived Of The '938 Patent. ........9

II.     PROCEDURAL HISTORY.................................................................................10

        A.      Judge Hibbler's February 23, 2009 Motion To Dismiss Ruling............................10

        B.      Judge Hibbler's October 15, 2009 Reconsideration Opinion. ...............................11

        C.      Memorylink's Complaint Amendments. ................................................................12

        D.      Memorylink's Malpractice Complaint....................................................................13

APPLICABLE LAW ...................................................................................................13

ARGUMENT ...............................................................................................................14

I.      MEMORYLINK'S REMAINING COUNTS REGARDING THE '352 PATENT
        CANNOT SURVIVE SUMMARY JUDGMENT. .........................................................14

        A.      The '352 Assignment Is Valid And Summary Judgment Should Be Granted On
                Counts III and IV. .......................................................................................14

                1.      Memorylink may not challenge the sufficiency of the consideration........14

                2.      The four inventors also received consideration in the form of
                        employment.........................................................................................16

                3.      Motorola provided Strandwitz and Kniskern with "other valuable
                        consideration." ...................................................................................17

i

        a.      Motorola provided Memorylink with patent resources. ...............17

        b.      Motorola afforded Memorylink business resources and opportunities. ..........................................................................18

        c.      Memorylink received technical and engineering support..............18

B.     Summary Judgment Should Be Granted On Count IV Because The Assignment Is Valid.............................................................................................................19

C.     Memorylink's Correction Of Inventorship Claim Is Barred................................19

    1.     Memorylink's inventorship claim is barred by laches. ..............................19

        a.      The presumption of laches applies because Memorylink waited nearly ten years to file its claim. ........................................20

        b.      Memorylink's delay is unreasonable and caused Motorola prejudice.................................................................................23

    2.     Memorylink's inventorship claim is barred by equitable estoppel............26

D.     Summary Judgment Should Be Granted On Count IV For The Additional Reason That Memorylink's Inventorship Claim Fails...........................................28

II.     MEMORYLINK'S REMAINING COUNTS REGARDING THE '938 PATENT CANNOT SURVIVE SUMMARY JUDGMENT. ........................................................29

A.     Summary Judgment Should Be Granted On Count V Because Schulz And Wyckoff Are Proper Inventors Of The '938 Patent.................................................29

    1.     Memorylink cannot show by clear and convincing evidence that Strandwitz and Kniskern should have been named as inventors. ..............30

    2.     Memorylink cannot show that Schulz and Wyckoff are improperly named as inventors................................................................................31

B.     Summary Judgment Should Be Granted On Memorylink's State Law Claims Relating To The '938 Patent. ...............................................................................32

C.     Memorylink's State Law Claims Based On The '938 Patent Fail For Additional, Independent Reasons. .......................................................................32

    1.     Memorylink's conversion claims fail because patents cannot be converted...................................................................................................32

    2.     Memorylink cannot prove the elements of tortious interference...............33

               a.     Memorylink did not have a reasonable expectancy of entering into a business relationship with a third party. ................34

               b.     Motorola did not know of or interfere with Memorylink's business expectancy. ....................................................................35

        3.     Memorylink's breach of fiduciary duty claim fails because the parties were not in a fiduciary relationship. .........................................36

        4.     Memorylink's fraud claims regarding the '938 Patent fail. ......................36

III.    MEMORYLINK'S BREACH OF CONTRACT CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT. ........................................................................38

    A.    Motorola Did Not Breach A Non-Disclosure Agreement. ...................................38

        1.     There is no valid and enforceable NDA contract.......................................38

        2.     Motorola did not breach the NDAs.............................................................38

    B.    Memorylink Cannot Create A Dispute Of Material Fact With Respect To Its Breach Of Memoranda Of Understanding Claim. ..................................................39

        1.     Motorola did not breach the MOUs by properly exercising ownership rights over the '352 and '938 Patents. ......................................................39

        2.     The MOUs did not require the parties to enter definitive agreements.......39

CONCLUSION.................................................................................................................40

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,*
   960 F.2d 1020 (Fed. Cir. 1992) ............................................................ 20, 23, 26, 28

*Adelberg Labs., Inc. v. Miles, Inc.,*
   921 F.2d 1267 (Fed. Cir. 1990) ........................................................................ 20

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.,*
   988 F.2d 1157 (Fed. Cir. 1993) ........................................................................ 20

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,*
   731 F.2d 831 (Fed. Cir. 1984) .......................................................................... 13

*Bennett v. Am. Elec. Power Service Corp.,*
   2001 WL 1136150 (Ohio Ct. App. Sept. 27, 2001) ............................................ 18

*Bower v. Jones,*
   978 F.2d 1004 (7th Cir. 1992) .......................................................................... 37

*Burke v. Lakin Law Firm, PC,*
   2008 WL 64521 (S.D. Ill. Jan. 3, 2008) ............................................................ 38

*Carroll Touch Inc. v. Electro Mech. Sys., Inc.,*
   15 F.3d 1573 (Fed. Cir. 1993) .......................................................................... 16

*Celex Group, Inc. v. Exec. Gallery, Inc.,*
   877 F. Supp. 1114 (N.D. Ill. 1995) ................................................................... 34

*Clearclad Coatings, Inc. v. Xontal Ltd.,*
   1999 WL 652030 (N.D. Ill. Aug. 20, 1999) ....................................................... 36

*Cohabaco Cigar Co. v. U.S. Tobacco Co.,*
   1999 WL 988805 (N.D. Ill. Oct. 22, 1999) ....................................................... 35

*Collins v. Western Digital Tech., Inc.,*
   2011 WL 3849310 (E.D. Tex. Aug. 29, 2011) ................................................... 23

*Deschaine v. Cent. Sys., Inc.,*
   2006 WL 1663731 (S.D. Ill. June 13, 2006) ..................................................... 15

*Desnick v. ABC, Inc.,*
   44 F.3d 1345 (7th Cir. 1995) ............................................................................ 37

*Diamond Scientific Co. v. Ambico, Inc.,*
   848 F.2d 1220 (Fed. Cir. 1988) ........................................................................ 17

*Fid. Nat. Title Ins. Co. of NY v. Westhaven Props. P'ship,*
   898 N.E.2d 1051 (Ill. App. Ct. 2007) ............................................................... 35

*Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*
   2011 WL 2582396 (N.D. Ill. June 27, 2011) ..................................................... 33

*Frugoli v. Fougnies,*
    74 U.S.P.Q.2d 1716 (D. Ariz. 2004) .................................................................. 20, 23, 24, 28

*GLS Dev., Inc. v. Wal-Mart Stores, Inc.,*
    944 F. Supp. 1384 (N.D. Ill. 1996) ................................................................................. 15

*Gordon v. Dolin,*
    434 N.E.2d 341 (Ill. App. Ct. 1982) ............................................................................... 37

*Harvey v. Town of Merrillville,*
    649 F.3d 526 (7th Cir. 2011) .......................................................................................... 38

*Hess v. Advanced Cardiovascular Sys., Inc.,*
    106 F.3d 976 (Fed. Cir. 1997) ....................................................................................... 30

*Hor v. Cho,*
    765 F. Supp. 2d 903 (S.D. Tex. 2011) ...................................................................... 21, 24

*HWB, Inc. v. Braner, Inc.,*
    1994 WL 447530 (N.D. Ill. Aug. 16, 1994) .................................................................. 17

*Immunocept, LLC v. Fulbright & Jaworski, LLP,*
    504 F.3d 1281 (Fed. Cir. 2007) ..................................................................................... 22

*In re Thebus,*
    483 N.E.2d 1258 (Ill. 1998) ........................................................................................... 33

*Indep. Trust Corp. v. Fid. Nat'l Title Ins. Co. of NY,*
    577 F. Supp. 2d 1023 (N.D. Ill. 2008) ........................................................................... 37

*Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.,*
    2004 WL 1149397 (N.D. Ill. May 20, 2004) ................................................................. 37

*Intervisual Commc'ns, Inc. v. Volkert,*
    975 F. Supp. 1092 (N.D. Ill. 1997) ................................................................................ 34

*K.B. Int'l, LLC v. Holmes,*
    2005 WL 1562420 (S.D. Tex. July 1, 2005) .................................................................. 15

*Kalis v. Colgate-Palmolive Co.,*
    827 N.E.2d 1098 (Ill. App. Ct. 2005) ............................................................................. 15

*Katz v. Lear Siegler, Inc.,*
    5 F.3d 1502 (Fed. Cir. 1993) ......................................................................................... 16

*Keller v. Bass Pro Shops,*
    15 F.3d 122 (8th Cir. 1994) ........................................................................................... 18

*Lockwood v. Am. Airlines, Inc.,*
    107 F.3d 1565 (Fed. Cir. 1997) ..................................................................................... 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ....................................................................................................... 13

*McMahon v. Chicago Mercantile Exchange,*
    582 N.E.2d 1313 (Ill. App. Ct. 1991) ............................................................................. 33

*MCV, Inc. v. King-Seeley Thermos Co.,*
  870 F.2d 1568 (Fed. Cir. 1989) ........................................................... 27

*MHL TEK, LLC v. Nissan Motor Co.,*
  655 F.3d 1266 (Fed. Cir. 2011) ........................................................... 15

*Moore v. Broadcom Corp.,*
  2008 WL 425932 (N.D. Cal. Feb. 14, 2008) ......................... 20, 21, 23, 24

*Richmond v. Nat'l Inst. of Certified Estate Planners,*
  2006 WL 2375454 (N.D. Ill. Aug. 15, 2006) ......................................... 33

*Russell v. Jim Russell Supply, Inc.,*
  558 N.E.2d 115 (Ill. App. Ct. 1990) ..................................................... 15

*Sa'Buttar Health & Medical P.C. v. TAP Pharm., Inc.,*
  2004 WL 1510023 (N.D. Ill. July 2, 2004) ........................................... 37

*Segal v. Ill. Dep't of Ins.,*
  938 N.E.2d 192 (Ill. App. Ct. 2010) ..................................................... 22

*Serdarevic v. Advanced Med. Optics, Inc.,*
  532 F.3d 1352 (Fed. Cir. 2008) ............................................... 19, 23, 24

*Shair v. Qatar Islamic Bank,*
  2009 WL 691249 (N.D. Ill. Mar. 16, 2009) ..................................... 36, 37

*Shamrock Technologies, Inc. v. Medical Sterilization, Inc.,*
  903 F.2d 789 (Fed. Cir. 1990) ............................................................. 17

*Shum v. Intel Corp.,*
  629 F.3d 1360 (Fed. Cir. 2010) ...................................................... 19, 28

*Small v. Sussman,*
  713 N.E.2d 1216 (Ill. App. Ct. 1999) ................................................... 34

*Sompo Japan Ins. Co. of Am., Inc. v. Alliance Transp. Group, LLC,*
  627 F. Supp. 2d 897 (N.D. Ill. 2009) ................................................... 37

*Sound of Music Co. v. Minn. Mining & Mfg. Co.,*
  477 F.3d 910 (7th Cir. 2007) .............................................................. 22

*Stewart & Stevenson Servs., Inc. v. Serv-Tech, Inc.,*
  794 F. Supp. 202 (S.D. Tex. 1992) ...................................................... 27

*Stryker Corp. v. Zimmer, Inc.,*
  741 F. Supp. 509 (D.N.J. 1990) .......................................................... 27

*Thomsen v. Famous Dave's of Am., Inc.,*
  640 F. Supp. 2d 1072 (D. Minn. 2009) ................................................ 18

*United States v. Jenkins & Gilchrist, P.C.,*
  2005 WL 1300768 (N.D. Ill. Mar. 10, 2005) ........................................ 36

*ViChip Corp. v. Lee,*
  438 F. Supp. 2d 1087 (N.D. Cal. 2006) ................................................ 15

*Vill. of S. Elgin v. Waste Mgmt. of Ill., Inc.*,
   810 N.E.2d 658 (Ill. App. Ct. 2004) ...................................................................... 17

*Voyles v. Sandia Mortg. Corp.*,
   751 N.E.2d 1126 (Ill. 2001) ................................................................................. 35

**Statutes**

35 U.S.C. § 116 ........................................................................................................... 21

35 U.S.C. § 262 ................................................................................................... 19, 28

**Other Authorities**

Restatement (Second) of Contracts § 71 .................................................................... 16

**Rules**

Fed. R. Civ P. 56(c) ................................................................................................... 13

# INTRODUCTION

In late 1997 and early 1998, Memorylink's CEO, Peter Strandwitz, and its President, Robert Kniskern, worked with Motorola's[1] engineers Gary Schulz and Jan Wyckoff to design and patent technology related to a wireless camera system. Strandwitz and Kniskern were sophisticated businessmen who each had more than twenty years of "high-tech experience" and headed their own successful technology companies. Based on their experience, Strandwitz and Kniskern recognized that they needed to partner with a company like Motorola that had wireless expertise to have a chance to successfully develop wireless camera technology. Memorylink was aware that Motorola's Radio Research Laboratory specialized in wireless radio technology (a necessary feature of a wireless camera system). Further, Motorola had significant business resources and relationships that were not otherwise available to Strandwitz and Kniskern. Strandwitz and Kniskern were thrilled when Motorola agreed to partner with them to pursue this technology.

In June 1998, after working together for months, the inventors (Motorola's Schulz and Wyckoff, and Memorylink's Strandwitz and Kniskern) signed a sworn declaration that identified all four individuals as co-inventors of the to-be patented technology. They also executed an Assignment whereby each agreed to assign his interest in the patent jointly to Motorola and Memorylink. Kniskern marked up his copy of the Assignment before signing it, and Strandwitz's attorney, Joe Kaufman, notarized Strandwitz's copy of the Assignment. Motorola then filed the patent application for what became the '352 Patent.

---

[1]   On January 4, 2011, Motorola, Inc. spun off its subsidiary Motorola Mobility, Inc. as a wholly-independent company. At the same time, Motorola, Inc. changed its name to Motorola Solutions, Inc. This lawsuit relates to the pre-spin period and, thus, for purposes of this motion the two entities are referred to collectively as "Motorola."

For the next decade, Memorylink never questioned the process that led to the filing of the '352 Patent or the parties' ownership or assignment of that patent. Things changed, however, once Memorylink began facing significant financial difficulties in 2004 and undertook a series of misguided efforts to improve its dire financial situation – including filing this lawsuit in June 2008. In stark contrast to Memorylink's actions over the previous decade, Memorylink's complaint alleges that Motorola's Schulz and Wyckoff were not really co-inventors of the '352 Patent, that the Assignment of patent rights is not valid, and that Motorola's products infringe the '352 Patent. Memorylink also alleges a variety of claims based on the '938 Patent, a distinct patent that was invented solely by Motorola's Schulz and Wyckoff, and which Memorylink's Strandwitz and Kniskern admit they did not invent. At the motion-to-dismiss stage, Judge Hibbler dismissed a number of Memorylink's claims, including those for fraud and breach of fiduciary duty relating to the '352 Patent.

The undisputed facts developed during discovery confirm that summary judgment on the remaining claims should be granted in Motorola's favor as well. Count III, Memorylink's claim that the Assignment was not supported by consideration, is of central importance here. At the motion-to-dismiss stage, Judge Hibbler dismissed Memorylink's claim that the Assignment is invalid due to fraud, and reserved judgment in deciding whether the Assignment was supported by valid consideration. He noted that while courts generally "will not inquire into the sufficiency of the consideration that supports a contract," he could not conclude "at least at the pleadings stage" that Motorola provided valuable consideration. (Ex. 3 at 1-2, Dkt. 99) The record is now clear that valid consideration was provided for the Assignment contract and, thus, Count III fails. This necessarily means that Count IV (Patent Infringement) cannot stand. As Judge Hibbler

2

correctly noted, if the Assignment is valid, then Motorola is a rightful co-owner of the '352 Patent and cannot be liable for infringement of its own patent.

Summary judgment should also be granted in Motorola's favor on Memorylink's other claims. The facts of record show that Memorylink's Strandwitz and Kniskern acknowledged and agreed that the Motorolans were co-inventors of the '352 Patent technology back in 1998, and then Memorylink waited nearly ten years to file this litigation until its financial situation plummeted. Memorylink's correction of inventorship claim for the '352 Patent is thus barred by the doctrines of laches and equitable estoppel. Discovery also has made clear that there is no basis for Memorylink's claims based on the '938 Patent or its contract claims, and that these allegations were simply an attempt to further sensationalize Memorylink's complaint. For the reasons set forth below, this Court should now grant summary judgment in favor of Motorola on all remaining counts.

## BACKGROUND

### I.    FACTUAL HISTORY

#### A.    The Early Motorola/Memorylink Relationship.

In early 1996, Motorola's Radio Research Laboratory began developing 5 GHz wireless radio technology. (Statement of Undisputed Facts (SUF) ¶ 14)  This wireless radio technology was proprietary to Motorola and not commercially available in the 1996-1998 timeframe. (*Id.*) Gary Schulz and Jan Wyckoff were experienced Motorola engineers who worked together at the Radio Research Laboratory to develop this and other technology. (*Id.* ¶¶ 7, 8)

In late 1997, Peter Strandwitz contacted Motorola's Radio Research Laboratory and proposed that the parties jointly develop wireless video technology using Motorola's technology. (SUF ¶ 15)  Strandwitz was then CEO of Plexus Corp. (Plexus), a publicly traded, global engineering design and manufacturing company that had █████████████████████

███████ (*Id.* ¶ 9)  After discussions with Motorola, Strandwitz had phone conversations with Robert Kniskern, who at that time he had not met.  (*Id.* ¶ 18)  Kniskern was the founder and president of Adaptive Micro-Ware, Inc. (Adaptive), a contract-engineering company.  (*Id.* ¶ 13)  Both Strandwitz and Kniskern had ████████████████████ including specific experience ████████████████████████████ (*Id.* ¶ 21; *see also* ¶¶ 17, 19, 20)  And by 1998, Strandwitz and Kniskern had been named as inventors on several patents.  (*Id.* ¶¶ 17, 19)

Strandwitz understood that he needed Motorola's technological contributions to develop wireless video technology and related products, and that Motorola could provide significant resources and business opportunities to Plexus.  (SUF ¶¶ 15, 16)  Accordingly, over the course of late 1997 and early 1998, Strandwitz and members of Motorola's Radio Research Laboratory discussed a relationship to jointly develop wireless video technology.  (*Id.* ¶¶ 15, 16, 22–24)  To further the parties' discussions, in early 1998 Motorola entered into a memorandum of understanding (MOU) with Plexus and Interactive Broadcasting Limited (Interactive), a company with which Strandwitz consulted.  (*Id.* ¶ 26)  The MOU stated that the parties were (1) independent contractors and not fiduciaries; and (2) under no obligation to continue working together unless they could mutually agree upon a "definitive agreement."  (*Id.*)

Shortly thereafter, Strandwitz created Memorylink as a funding entity to continue the parties' joint efforts.  (SUF ¶ 10)  Strandwitz became the Memorylink CEO and Kniskern Memorylink's President and Chief Technology Officer.  (*Id.* ¶¶ 12–13)

## B.  Motorola and Memorylink Jointly Developed Technology Using Motorola Resources.

Following multiple discussions and meetings, on January 20, 1998, Motorola, Strandwitz, and Kniskern decided to demonstrate a precursor wireless video system at Motorola's offices.

4

(SUF ¶¶ 22–25, 28, 29, 71) Motorola played a significant role in this demonstration – providing technical support for the wireless technology and prototype 5 GHz radio boards developed by Motorola. (*Id.* ¶¶ 24, 30–32, 73, 74, 78, 79) During that demonstration, Schulz, Wyckoff, and other members of Motorola's Radio Research Laboratory observed that the parties' system worked only intermittently and suffered video clarity problems. (*Id.* ¶ 32) Over the course of the next six months, Schulz and Wyckoff designed advanced radio and control mechanisms to solve these problems. (*Id.* ¶¶ 33–40, 73–81) This included participating in meetings with Strandwitz, Kniskern, and members of each party's staff to discuss the joint development efforts. (*Id.*) On February 25, 1998, Strandwitz, Kniskern, and the Motorola engineers demonstrated another wireless video system at Motorola's offices – this time using a Sharp camcorder that Motorola reconstructed to affix a Motorola radio board, a Memorylink video compression board, and a Motorola designed and developed control board that interfaced between the wireless radio and video compression technology. (*Id.* ¶¶ 35, 37) Schulz and Wyckoff's control feedback mechanism was implemented on the Motorola control board. (*Id.* ¶ 36)

Strandwitz did not mince words in describing the significance of Motorola's contributions, admitting ██████████████████████████████████████████ ██████████████████████████████████████ (SUF ¶¶ 15, 73, 77) Strandwitz acknowledged that ████████████████████████████████████████████ ████████████████████ (*Id.*)

## C.      Motorola Prepared and Filed the Joint '352 Patent Application.

Early on Strandwitz understood the importance of patenting the parties' joint technology. (SUF ¶ 22 (10/31/97 Strandwitz Ltr. to Motorola: "What can be done to protect the intellectual property of the product?"); *see also* SUF ¶¶ 42–44) Throughout January 1998, Strandwitz proposed that Motorola and Memorylink jointly file and own a patent based on their

development efforts. (*Id.* ¶¶ 42–44) At the same time, Strandwitz pushed Motorola to "head up the patent investigation" for what would become the '352 Patent. (*Id.* ¶ 42) A few months later, Motorola's legal department investigated patent protection for the parties' combined wireless video technology. (*Id.* ¶¶ 45, 47, 60) Strandwitz and Kniskern were "excited" that Motorola agreed to pursue a joint patent because this signified a business relationship between Memorylink and Motorola. (*Id.* ¶ 50)

On April 13, 1998, Hugh Dunlop, a Motorola attorney, sent Strandwitz a letter regarding the joint patent application. (SUF ¶¶ 45, 47) Dunlop's letter stated, "It is my understanding from Gary Schulz and Jan Wyckoff that the inventors for these ideas are yourself, Gary, Jan, and Bob Kniskern. Please let me know if you or Bob disagree with this determination of inventorship." (*Id.* ¶ 47) Strandwitz and Kniskern reviewed the letter, but neither informed Dunlop or anyone else at Motorola that they disagreed that the four individuals were proper inventors. (*Id.* ¶ 48)

Strandwitz and Kniskern confirmed at least three more times before the patent application was filed that Schulz and Wyckoff were joint inventors of what became the '352 Patent. (SUF ¶¶ 51–54, 56, 58) On April 21, 1998, Strandwitz and Kniskern signed and agreed to an invention disclosure form that included all four individuals as joint inventors. (*Id.* ¶¶ 51, 52) Two months later, on June 11-12, 1998, Kniskern and Strandwitz read and signed a patent application declaration, agreeing under oath that Strandwitz, Kniskern, Schulz, and Wyckoff were joint inventors of the patent. (*Id.* ¶ 58) The four individuals affirmed that they "reviewed and under[stood] the contents of the above-identified specification, including the claims," which confirmed that the application was correct and ready for filing. (*Id.*)

Around that same time, on June 11, 12, and 22, 1998, the Motorola and Memorylink inventors executed a two-page patent assignment agreement. (SUF ¶¶ 56, 57) The four

individual inventors assigned their rights to the patent entitled "Self-Contained Wireless Camera Device, Wireless Camera System and Method" (*i.e.*, the '352 Patent) jointly to Motorola and Memorylink. (*Id.*) Importantly, Strandwitz had proposed (and agreed) back in early 1998 that the inventors assign their patent rights jointly to Motorola and Memorylink. (*Id.* ¶¶ 42–44) Moreover, Strandwitz and Kniskern did not simply accept the Assignment as written; rather, the Memorylink inventors reviewed and marked up the draft assignment agreement that was provided to them several months before it was executed. (*Id.* ¶¶ 53, 54 (Kniskern's copy of the Assignment includes ██████████████████████████))

On June 22, 1998, Motorola's legal department filed U.S. Patent Application No. 09/102,457, entitled "Self-Contained Wireless Camera Device, Wireless Camera System and Method" with the United States Patent and Trademark Office (USPTO). (SUF ¶¶ 5, 60, 68, 69) Motorola's legal department prosecuted the patent application before the USPTO, and the patent issued on February 18, 2003 as U.S. Patent No. 6,522,352 (the '352 Patent). (*Id.* ¶¶ 5, 70)

### D. Memorylink Had Its Own Counsel Advising It As Early As 1998.

Strandwitz and Kniskern had their own counsel on board beginning in 1998. (SUF ¶¶ 90–92) Joe Kaufman was the General Counsel of Strandwitz' company, Plexus, from 1998 to 2006, and was copied on communications/agreements in 1998 relating to the '352 Patent and Assignment. (*Id.* ¶¶ 90, 91, 56) Kaufman also performed work for Memorylink, both as part of his work for Plexus and independently as Memorylink's attorney. (*Id.* ¶ 91; *see also* ¶¶ 55, 56)

By at least December 11, 1998, Memorylink retained the intellectual property law firm of Banner & Witcoff (Banner) to serve as its patent counsel. (SUF ¶ 93) Banner is a well-known intellectual property law firm that has specialized in patent prosecution since the 1920s. (*Id.*) Banner was engaged to provide Memorylink with ████████████████████████████████

███████████████████████████████████████ – which then consisted only of the '352 Patent. (*Id.*)

In early 1999, just six months after the '352 Patent was filed and Assignment executed, Memorylink instructed its patent counsel Banner as its ██████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████ (SUF ¶ 94)  Continuing throughout the 2000s, Banner examined the '352 Patent – including filing divisional and continuation patent applications to the '352 Patent. (*Id.* ¶¶ 93–101, 103–05)  In those patent applications, Banner continued to list Motorola's Schulz and Wyckoff as joint inventors of the '352 Patent divisional and continuation applications it filed. (*Id.* ¶¶ 99, 103)  In connection with its representation of Memorylink, Banner specifically focused on, and made inquires about the '352 Patent, including the very '352 Patent Assignment that Memorylink now alleges is invalid. (*Id.* ¶¶ 93–101, 103–05)

## E.    Memorylink Did Not Pursue Litigation Until It Faced Financial Difficulties.

After Motorola filed the '352 Patent, Memorylink continued and expanded its relationship with Motorola to include relationships with Motorola's Global Software and Commercial, Government & Industrial Solutions units. (SUF ¶¶ 80–85)  Memorylink also sought funding from existing and new investors based on its "alliance" and relationship with Motorola. (*Id.* ¶ 82)  During this time, Memorylink did not voice any concern to Motorola regarding the inventorship of the '352 Patent or Motorola's co-ownership of the patent.

Everything changed in 2004 when Memorylink began facing financial difficulties. (SUF ¶ 106 (███████████████████████████████████████████████████);
*id.* ¶ 107 (████████████████████████████████████████); *id.*
(███████████████████████████))  Faced with financial hardship, Memorylink saw the '352 Patent as an opportunity to leverage funding from Motorola. (*Id.* ¶¶ 108–09)  Memorylink

worked closely with Banner and ultimately proposed in 2006 that ███████████████ ██████████████████████████████████████████████ but Motorola would not pay Memorylink the money it demanded. (*Id.*)

Memorylink's next approach was to leverage the '352 Patent against third parties. (SUF ¶ 111)  In March 2006, Memorylink ███████████████████████████████████ ████████████████████████████████████████████████████████ (*Id.* ¶ 110)  Memorylink recognized, however, that it would be difficult to extract money from third parties on its own while Motorola was a joint inventor and joint owner of the patent. (*Id.* ¶ 111) Memorylink tried to form a joint venture with Motorola to pursue its fundraising tactics, but, again, Motorola declined to participate. (*Id.* ¶ 112)

At this point, Memorylink turned to more-aggressive strategies against Motorola. (SUF ¶¶ 110, 113, 115)  Memorylink hired an attorney, Paul Schaafsma, Esq., in September 2007 to conduct an "investigation." (*Id.* ¶ 113)  Schaafsma reviewed a number of documents in Memorylink's files – documents that had been in Memorylink's possession for nearly ten years – and created a lawsuit to remove Motorola from the patent. (*Id.* ¶¶ 113, 114)  Memorylink filed this lawsuit on June 9, 2008. (*Id.* ¶ 1)

### F.    Motorola's Schulz And Wyckoff Separately Conceived Of The '938 Patent.

Memorylink separately pursues claims relating to the '938 Patent, which it labels as the "Secret Patent" – a curious misnomer considering the patent was publicly available by 2003, five years before Memorylink brought this suit. (SUF ¶ 6; *see* Compl. ¶ 5)  In 1998, Motorola's Schulz and Wyckoff separately conceived of a distinct product concept where a removable modem could be placed in the storage module (*i.e.*, tape slot) of a standard camcorder (which became the '938 Patent). (*Id.* ¶¶ 117, 118)  Strandwitz and Kniskern had nothing to do with the invention of the '938 Patent and, accordingly, are not named as inventors on it. (*Id.* ¶¶ 118–21)

On June 24, 1998, Motorola filed U.S. Patent Application No. 09/103,408, entitled "Self-Contained Camera Device and Method for Capturing and Communicating Images Via a Modem" with the USPTO.  (SUF ¶¶ 6, 116)  This patent later issued as U.S. Patent No. 6,573,938 (the '938 Patent) on June 3, 2003, and lists Schulz and Wyckoff as co-inventors.  (*Id.* ¶ 6)

## II.    PROCEDURAL HISTORY

In June 2008, Memorylink filed its initial, nineteen-count complaint against Motorola. (Dkt. 1)  Memorylink alleged that in 1998 Motorola defrauded Memorylink of its intellectual property rights to the '352 and '938 Patents, and claimed various state law causes of action.  (*Id.*)

### A.    Judge Hibbler's February 23, 2009 Motion To Dismiss Ruling.

In February 2009, Judge Hibbler dismissed seventeen of Memorylink's nineteen claims. (Ex. 1, Dkt. 59)  Judge Hibbler dismissed Memorylink's fraud claims (Counts II, III, VIII, IX, XII, XVIII, and XX) in their entirety as untimely under Illinois's five year statute of limitations. (*Id.* at 6-11)  In addition, with respect to the fraud claims relating to the '352 Patent, Judge Hibbler explained:

> The notion that Memorylink had no suspicions of fraud seem highly suspect given Memorylink's dogged insistence that Motorola's engineers contributed nothing to the patent.  In this case, Motorola's purported fraud would be relatively easy to unearth.  ***An individual does not need a law degree to understand that those who contribute nothing to an invention are not "required" to be listed as "co-inventors."*** (*Id.* at 9-10, emphasis added)

Judge Hibbler similarly dismissed Memorylink's tort-based claims (Counts VII, X, XI, XVII, and XIX) in their entirety under the five-year statute of limitations.  (*Id.* at 12-16)  With respect to the breach of fiduciary duty claim relating to the '352 Patent, Judge Hibbler explained, "Memorylink was aware of its injury – not receiving guidance on the substance of legal documents – as soon as the injuries occurred.  Memorylink has always known the facts necessary to make out its claim, therefore the Court will not excuse Memorylink from its tardiness."  (*Id.* at 15)

Judge Hibbler also initially dismissed Memorylink's claims that the Assignment was invalid for fraud and lack of consideration (Counts II and III). Judge Hibbler was "hard pressed to understand" how Strandwitz and Kniskern were unaware that they were assigning their patent rights "given that the assignment is relatively clear . . . Motorola's name is not buried in fine print, nor is the language difficult to understand." (Ex. 1 at 10) Because Judge Hibbler held the Assignment was valid, he dismissed Memorylink's patent infringement claim for the '352 Patent, noting that Memorylink could not maintain a claim for patent infringement against a joint owner of the patent. (*Id.* at 16) Judge Hibbler also dismissed Memorylink's inventorship claim for the '352 Patent, noting that "Memorylink's complaint and the attached exhibits make clear that Motorola contributed in *some way* to the development of the '352 Patent." (*Id.* at 19)

**B.      Judge Hibbler's October 15, 2009 Reconsideration Opinion.**

On April 3, 2009, Memorylink moved for reconsideration of the dismissal order. (Dkt. 71-73) In ruling on Memorylink's motion, Judge Hibbler affirmed the dismissal of Memorylink's fraud and tort claims that were based on the '352 Patent, including Count II that the Assignment was invalid for fraud. (Ex. 2 at 8-9, Dkt. 89) Judge Hibbler then determined that three of the dismissed claims relating to the '352 Patent (Counts I, III, and IV) could not be dismissed based on the pleadings alone and that certain of Memorylink's claims should remain only insofar as they are based on the '938 Patent (Counts VII-XII and XVII-XX). (*Id.* at 5-10)

Judge Hibbler's Reconsideration Opinion narrowed the issues remaining in this case. With respect to Memorylink's Assignment claim, Judge Hibbler noted that the only remaining issue was "whether the Assignment contained proper consideration." (Ex. 2 at 9) And regarding '352 inventorship, Judge Hibbler explained that he could not "conclude that Memorylink pleaded itself out of court" based on the pleadings alone, but that "Memorylink's complaint and

11

attachments indicate that Motorola gave Strandwitz, Kniskern, and Memorylink the opportunity to object to the inventors listed on the patent, and they declined." (*Id.* at 7)

## C. Memorylink's Complaint Amendments.

In late 2009, Memorylink made several amendments to its complaint, including an additional count for breach of contract. (Dkt. 90, 101) Following Motorola's renewed motion for judgment on the pleadings (Dkt. 107), on April 7, 2010 Judge Hibbler dismissed several additional counts that were barred by his earlier motion-to-dismiss rulings. (Ex. 4, Dkt. 116)

The table below reflects (with a ✓) the remaining claims by patent:

| Count | Claim | '352 Patent | '938 Patent |
|---|---|---|---|
| I & V | Correction of Inventorship | ✓ | ✓ |
| II | Assignment of '352 Patent is Invalid due to Fraud | Dismissed | N/A |
| III | Assignment of '352 Patent is Void for Lack of Consideration | ✓ | N/A |
| IV | Infringement of '352 Patent | ✓ | N/A |
| VI | Breach of Non-Disclosure Agreements | ✓* | |
| VII | Breach of Fiduciary Duty | Dismissed | ✓ |
| VIII | Common Law Fraud | Dismissed | ✓ |
| IX | Promissory Fraud | Dismissed | Dismissed |
| X | Negligent Misrepresentation | Dismissed | Dismissed |
| XI | Conversion | Dismissed | ✓ |
| XII | Tortious Interference | Dismissed | ✓ |
| XIII-XV | Various claims | Dismissed | N/A |
| XVII-XX | Replead as Counts XXIII-XXVI | Dismissed | Dismissed |
| XXI | Breach of Contract | ✓* | |
| XXII | Promissory Fraud (Replead from Count IX) | N/A | ✓ |
| XXIII | Conversion of '938 Patent (In the Alternative) | N/A | ✓ |
| XXIV | Common Law Fraud regarding '938 Patent (In the Alternative) | N/A | ✓ |
| XXV | Conversion of '938 Patent (In the Alternative) | N/A | ✓ |
| XXVI | Common Law Fraud regarding '938 Patent (In the Alternative) | N/A | ✓ |

* Counts VI and XXI are not patent-specific

12

**D. Memorylink's Malpractice Complaint.**

After Judge Hibbler issued his dismissal orders, Memorylink filed a separate new case alleging legal malpractice against Motorola and several of its current and former employees, in this district but before a different judge, based on almost identical allegations. (09-cv-7401, Dkt. 1) Despite Memorylink's opposition, that lawsuit was transferred back to Judge Hibbler and was dismissed with prejudice. (Ex. 5 at 4-11, 09-cv-7401, Dkt. 75) Memorylink appealed the dismissal of the Malpractice Complaint to the Court of Appeals of the Federal Circuit. (09-cv-7401, Dkt. 82) On appeal, the Federal Circuit affirmed this Court's ruling in its entirety and denied Memorylink's request for panel rehearing and rehearing en banc. (09-cv-7401, Dkt. 90)

## APPLICABLE LAW

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1569 (Fed. Cir. 1997). To successfully oppose this motion, Memorylink must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where as here there are no genuine disputed facts, summary judgment is warranted. *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).

## ARGUMENT

## I. MEMORYLINK'S REMAINING COUNTS REGARDING THE '352 PATENT CANNOT SURVIVE SUMMARY JUDGMENT.

There are only three claims remaining that relate solely to the '352 Patent. For several

independent reasons, none of these claims survives summary judgment.

| Count | Claim | Independent Bases for Summary Judgment |
|-------|-------|----------------------------------------|
| III | Assignment Void for Lack of Consideration | - Assignment is supported by valid consideration |
| I | Correction of Inventorship for '352 Patent | - Inventorship claim is barred by laches<br>- Inventorship claim is barred by equitable estoppel |
| IV | Patent Infringement re '352 Patent | - Motorola is a co-owner because the Assignment is valid<br>- Motorola is a co-owner because inventorship is correct |

### A. The '352 Assignment Is Valid And Summary Judgment Should Be Granted On Counts III and IV.

As Judge Hibbler stated, if the '352 Patent Assignment is supported by valid

consideration, then the Assignment is valid and Count III and Count IV (infringement) cannot

stand. (Ex. 2 at 9 (only open question is "whether the Assignment contained proper

consideration"); *id* at 9-10 (if Assignment is valid then Motorola cannot be liable for

infringement)) Judge Hibbler noted that while courts generally "will not inquire into the

sufficiency of the consideration that supports a contract," he could not conclude "at least at the

pleadings stage" that Motorola provided valuable consideration. (Ex. 3 at 1-2) Discovery has

confirmed that the Assignment was supported by valid consideration.

### 1. Memorylink may not challenge the sufficiency of the consideration.

The '352 Patent Assignment is less than two pages long. In that agreement, the four

inventors each ***acknowledge*** that ***for consideration of one dollar and other good and valuable***

***consideration*** he sold, assigned, and transferred jointly and equally rights, title, and interest in

the invention to Motorola and Memorylink. (SUF ¶¶ 56, 57) Memorylink's Strandwitz and

Kniskern signed the Assignment on June 11-12, 1998. (*Id.* ¶ 56) Strandwitz' counsel, Joe Kaufman, witnessed and notarized Strandwitz' signature. (*Id.*) Ten years later, Memorylink may not challenge the sufficiency of the consideration supporting the Assignment. *See, e.g., Kalis v. Colgate-Palmolive Co.*, 827 N.E.2d 1098, 1101 (Ill. App. Ct. 2005) ("[O]ur research has revealed no precedent from Illinois or a sister state in which a contract was held to be invalid because the consideration offered by a party has declined in perceived value to the other party."); *Russell v. Jim Russell Supply, Inc.*, 558 N.E.2d 115, 120 (Ill. App. Ct. 1990) (adequacy of consideration determined at time contract entered); *see also ViChip Corp. v. Lee*, 438 F. Supp. 2d 1087, 1096 (N.D. Cal. 2006) (express acknowledgement that assignee received "good and valuable consideration" demonstrates sufficient consideration); *K.B. Int'l, LLC v. Holmes*, 2005 WL 1562420, at *2 (S.D. Tex. July 1, 2005) (unpublished) (where assignee acknowledged receipt of good and valuable consideration, he may not later question what he acknowledged).

Similarly, this Court should not second guess whether the agreed-upon consideration was adequate. *See, e.g., Deschaine v. Cent. Sys., Inc.*, 2006 WL 1663731, at *4 (S.D. Ill. June 13, 2006) (unpublished) ("[Defendant], a sophisticated party, signed a contract that stated it was acting 'pursuant to adequate and sufficient consideration.' The Court will not second guess the reasoned determination of a sophisticated party."); *GLS Dev., Inc. v. Wal-Mart Stores, Inc.*, 944 F. Supp. 1384, 1395 (N.D. Ill. 1996) ("[T]he informed decision by a party exchanging a promise for a promise that what it is receiving is worth what it is giving may not later be second-guessed by that party, nor may the party ask a court to engage in such *post hoc* revisionism."). The Federal Circuit has recognized the validity of assignments with similar consideration in multiple cases. *See, e.g., MHL TEK, LLC v. Nissan Motor Co.*, 655 F.3d 1266, 1271 (Fed. Cir. 2011) ("For the sum of One Dollar . . . and other good and valuable consideration . . ."); *Carroll Touch*

*Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1580-81 (Fed. Cir. 1993) ("for and in consideration of One Dollar ($1.00) to us in hand paid and other valuable considerations"); *Katz v. Lear Siegler, Inc.*, 5 F.3d 1502 (Fed. Cir. 1993) ("for a recited consideration of one dollar and 'other and good and valuable consideration' . . ."). To question the sufficiency of consideration in the Assignment in this case would cast a cloud over literally thousands of the assignments recorded with the Patent and Trademark Office (PTO).

Further, Memorylink's delayed challenge to the validity of the consideration is not credible given that Strandwitz, Kniskern, and Memorylink had each agreed to and proposed the very same consideration in other assignment agreements. (SUF ¶ 55) ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████ *(Id.)*

And, in 2003, Memorylink's patent counsel, Banner, drafted and provided Motorola with a proposed assignment that was to give Motorola "Ten Dollars ($10.00) and other good and valuable consideration" in exchange for its assignment of all rights in the '352 Patent to Memorylink. *(Id.* ¶ 100) In fact, it was Strandwitz who first proposed that the inventors assign their rights jointly to Motorola and Memorylink. *(Id.* ¶¶ 42–44) In addition, Strandwitz and Kniskern did not just take the assignment agreement at face value, but they reviewed and marked up a draft of the agreement. *(Id.* ¶¶ 53, 54)

For these reasons alone, the Assignment is supported by valid consideration and summary judgment should be granted.

## 2. The four inventors also received consideration in the form of employment.

The law is clear that a party to a contract (*i.e.*, Strandwitz and Kniskern) may receive consideration from any other party to the contract. *See* Restatement (Second) of Contracts § 71,

*Comment e* ("It matters not from whom the consideration moves or to whom it goes.");

Restatement (Second) of Contracts § 71(4) ("The performance or return promise may be given to

the promisor or to some other person. It may be given by the promisee or by some other

person."); *see also Vill. of S. Elgin v. Waste Mgmt. of Ill., Inc.*, 810 N.E.2d 658, 669 (Ill. App. Ct.

2004). Here each of the assignors, including Strandwitz and Kniskern, received legally valid

consideration in various forms, including in the form of continued employment from their

respective employers. *See, e.g., Shamrock Technologies, Inc. v. Medical Sterilization, Inc.*, 903

F.2d 789, 794 (Fed. Cir. 1990) (employment valid consideration for assignment); *Diamond*

*Scientific Co. v. Ambico, Inc.*, 848 F.2d 1220, 1225 (Fed. Cir. 1988) (salary and other

employment benefits constitute valuable consideration); *HWB, Inc. v. Braner, Inc.*, 1994 WL

447530 (N.D. Ill. Aug. 16, 1994) (unpublished). For this additional reason, the consideration is

valid and Count III cannot stand.

### 3. Motorola provided Strandwitz and Kniskern with "other valuable consideration."

There is yet a third independent basis for finding adequate consideration: Motorola also

provided Strandwitz and Kniskern with "other valuable consideration," including patent

resources, business resources and opportunities, and technical and engineering support.

### a. Motorola provided Memorylink with patent resources.

Beginning in 1998, Motorola paid all PTO fees associated with the '352 Patent, including

the filing fee on June 22, 1998, and incurred all costs associated with the preparation and

prosecution of the '352 Patent application. (SUF ¶¶ 60, 68–70) Specifically, Motorola's Hugh

Dunlop drafted the '352 Patent specification and claims, researched prior art, and corresponded

with the inventors regarding the technology. (*Id.* ¶¶ 45, 47, 53, 60) Strandwitz and Kniskern did

not pay Motorola for providing these resources. (*Id.* ¶¶ 68–70) The efforts and expenses

associated with prosecution of a patent have been found to constitute valid consideration. *See, e.g., Bennett v. Am. Elec. Power Service Corp.*, 2001 WL 1136150, at *4 (Ohio Ct. App. Sept. 27, 2001) (unpublished); *Thomsen v. Famous Dave's of Am., Inc.*, 640 F. Supp. 2d 1072, 1080 (D. Minn. 2009).

### b. Motorola afforded Memorylink business resources and opportunities.

Strandwitz and Kniskern received resources and potential business expectancy as further consideration. *See, e.g., Keller v. Bass Pro Shops*, 15 F.3d 122, 123 (8th Cir. 1994) (patent assignment supported by consideration due to potential for assignor to make future business purchases). Specifically, Motorola gave Strandwitz and Kniskern the opportunity to seek funding from Motorola and other third parties based on their association with Motorola. (SUF ¶¶ 16, 50, 82) Strandwitz told Kniskern that he wanted to "depend on [Motorola] for funding purposes and representations with his investors." (*Id.* ¶ 72) Kniskern also testified that Motorola's "stature in the industry," both as a "technology supplier" and "someone that also took products into the market," made Motorola a highly desirable partner. (*Id.* (Motorola was "certainly known in the industry")) In addition, by assigning their rights to Motorola, Memorylink's technologists gained the opportunity to work with other Motorola business units. (*Id.* ¶¶ 83–85)

### c. Memorylink received technical and engineering support.

Motorola also provided Strandwitz and Kniskern with technical and engineering expertise. For instance, Motorola developed and gave Strandwitz and Kniskern the following technology in connection with the parties' joint development throughout 1998:

- Motorola's proprietary 5 GHz radio technology for use with the jointly developed systems (SUF ¶ 73);

- Prototype Motorola 5 GHz radio boards and Motorola control logic boards for use with Memorylink video compression boards (SUF ¶ 74);

- Modified radio and control logic software code for use with the jointly developed systems (SUF ¶ 75);

- Bandwidth management protocols to balance the traffic load in a network with multiple wireless devices operating within range of one another based on Motorola's proprietary multipoint protocol (SUF ¶ 76); and

- Antenna selection protocols for use with Motorola's proprietary 5 GHz radio technology and the video compression technology (SUF ¶ 77).

Motorola also supplied laboratory and demonstration space and supported demonstrations of technology based on the parties' technology. (SUF ¶¶ 71, 78–81)

\*   \*   \*

Ten years later, not only is Memorylink barred from challenging the sufficiency of the consideration, but the evidence supporting a finding of consideration is overwhelming and not subject to dispute. As a result, summary judgment should be granted on Count III.

**B.    Summary Judgment Should Be Granted On Count IV Because The Assignment Is Valid.**

As Judge Hibbler noted, "[i]t is axiomatic that a joint owner of a patent cannot be liable for infringement." (Ex. 1 at 16 (citing 35 U.S.C. § 262, which authorizes each joint owner to use the patented invention "without the consent of and without accounting to the other owners.")) Motorola cannot infringe its own patent, and Count IV thus cannot survive. *See* 35 U.S.C. § 262; *Shum v. Intel Corp.*, 629 F.3d 1360, 1369 (Fed. Cir. 2010) ("As a co-owner, Intel acquired and retains the right to make, use, license, offer to sell, or sell the inventions covered by the patents, with or without Shum's consent.") (citing 35 U.S.C. § 262).

**C.    Memorylink's Correction Of Inventorship Claim Is Barred.**

**1.    Memorylink's inventorship claim is barred by laches.**

Laches bars a correction of inventorship claim where there is "(1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice to the defendant as a result of the delay." *Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1385 (Fed. Cir. 2008)

19

(affirming summary judgment that the plaintiff's correction of inventorship claim was barred by laches); *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993). A *rebuttable presumption* of laches applies where a plaintiff delays filing suit for *more than six years* after knowledge of the facts underlying its claim. In that case, the plaintiff's delay is presumed both unreasonable and prejudicial to the defendant. *Adelberg Labs., Inc. v. Miles, Inc.*, 921 F.2d 1267, 1270 (Fed. Cir. 1990); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc). Here, Memorylink delayed filing suit for nearly ten years after it knew the facts underlying its inventorship claim. Thus, laches is presumed and summary judgment warranted.

### a. The presumption of laches applies because Memorylink waited nearly ten years to file its claim.

The laches clock starts when a plaintiff knows of the facts underlying its claim, or would reasonably be expected to inquire about the claim's subject matter. *Advanced Cardiovascular*, 988 F.2d at 1162. In inventorship cases, courts have started the laches clock on the patent filing date, if the plaintiff knew of the facts underlying its claim at that time. For example, in *Moore v. Broadcom Corp.*, the court granted summary judgment against the plaintiff's inventorship claim brought eight years after the defendant filed its patent application (and four years after the patent issued). 2008 WL 425932, at *5 (N.D. Cal. Feb. 14, 2008) (unpublished). The court explained that the plaintiff knew of the facts of its inventorship claim at the time the patent was filed because the *defendant provided the plaintiff with the patent application that did not list the plaintiff as an inventor*. *Id.* at *4. In so ruling, the court rejected the plaintiff's argument that the laches clock could not start until patent issuance, noting that the plaintiff could have sought correction of inventorship at the PTO before the patent issued. *Id.*; *see also Frugoli v. Fougnies*, 74 U.S.P.Q.2d 1716, 1719 (D. Ariz. 2004) (unpublished) (starting the laches clock for an

inventorship claim from the date the patent was filed); *Hor v. Cho*, 765 F. Supp. 2d 903, 916

(S.D. Tex. 2011) (adopting *Moore* and noting that "in addition to petitioning to correct

inventorship pursuant to 35 U.S.C. § 116, an alleged joint inventor may also file a competing

patent application and seek to secure inventorship through an interference proceeding").

  As in *Moore*, the laches clock here starts on the date the '352 Patent application was filed

– June 22, 1998.  The overwhelming, undisputed evidence demonstrates that Memorylink was

then aware of the facts underlying its inventorship claim, for example:

- April 13, 1998     Motorola sent a letter to Strandwitz stating that all four individuals (including the two Motorolans) were identified as inventors of the patent and asking if Strandwitz disagreed.  (SUF ¶ 47)  Strandwitz and Kniskern reviewed the letter and did not voice any objection to the Motorolans being listed as co-inventors.  (*Id.* ¶ 48)

- April 21, 1998     Strandwitz and Kniskern signed an invention disclosure form listing the four individuals as joint inventors.  (SUF ¶¶ 51, 52)

- June 11-12, 1998    Strandwitz and Kniskern signed the Assignment, which assigned the '352 Patent rights from the four inventors to Motorola and Memorylink.  (SUF ¶ 56)

- June 11-12, 1998    Strandwitz and Kniskern signed under oath a patent declaration, listing the four individuals as joint inventors.  (SUF ¶ 58)

- June 22, 1998     '352 Patent listing all four inventors is filed. (SUF ¶ 60)

Memorylink and its counsel also received copies of the patent application documents and

assignment multiple times after the patent was filed.  (SUF ¶¶ 61, 97, 98)

  Not only did Strandwitz and Kniskern know that all four individuals were being listed as

inventors on the patent application – which alone is enough to start the laches clock – but,

incredibly, Strandwitz further testified that *at the time the patent was filed* (in June 1998) he

believed the Motorola employees had not contributed to the invention:

Q. So at the time that you signed this document on June 12, 1998, it was your belief that Gary Schulz and Jan Wyckoff did not contribute to the invention of the '352 Patent?

A. They didn't contribute to the invention, as – as manifested in the '352 Patent.

Q. Did you talk to anyone about any concerns you had with signing this declaration?

A. No. (SUF ¶ 59)

Indeed, Strandwitz testified that he held this belief throughout the *entire* patent application process. (*Id.* ¶ 49)

Strandwitz and Kniskern's knowledge is especially significant considering that they were sophisticated parties, describing themselves as an ██████████████████████████
███████████████████████████████████████████████████████████
██████████ (SUF ¶¶ 9, 12, 13, 17, 19–21) They both had been named on patents prior to June 1998 and used their sophistication and experience during the patent application process. (*Id.* ¶¶ 17, 19, 48, 54 (Kniskern marked up draft Assignment listing the four inventors)) And, as if this were not enough, Memorylink was represented by counsel from 1998 onward (including by patent attorneys at Banner), who reviewed the '352 Patent file, which lists the two Motorolans as inventors on the first page of the patent. (*Id.* ¶¶ 91–104) *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1287 (Fed. Cir. 2007) (knowledge or notice to an attorney is imputed to the client); *Segal v. Ill. Dep't of Ins.*, 938 N.E.2d 192, 196 (Ill. App. Ct. 2010) ("it is well settled that . . . knowledge of an attorney is knowledge of, or imputed to the client, notwithstanding whether the attorney has actually communicated such knowledge to the client").[2]

---

[2] *See Sound of Music Co. v. Minn. Mining & Mfg. Co.*, 477 F.3d 910, 918-20 (7th Cir. 2007) (when the plaintiff is aware of facts that may give rise to a claim and consults an attorney, a case can be time barred even when the attorney does not recognize that a viable claim exists).

Based on this undisputed evidence, there is no question that Memorylink, Strandwitz, and Kniskern knew that Motorola's Schulz and Wyckoff were identified as co-inventors of the '352 Patent by the time it was filed in June 1998. Memorylink nonetheless waited ten years to file its claim. Accordingly, the presumption of laches applies and bars Memorylink's inventorship claim. *See, e.g., Frugoli*, 74 U.S.P.Q.2d at 1719 (summary judgment after a seven year delay); *Moore*, 2008 WL 425932, at *4 (summary judgment after an eight year delay); *Collins v. Western Digital Tech., Inc.*, 2011 WL 3849310, at *5-6 (E.D. Tex. Aug. 29, 2011) (unpublished) (summary judgment after a thirteen year delay).

> **b.     Memorylink's delay is unreasonable and caused Motorola prejudice.**

Because the presumption of laches attaches, Motorola need not produce any evidence that Memorylink's delay was unreasonable or that Motorola suffered economic or evidentiary prejudice as a result of the delay. *See Serdarevic*, 532 F.3d at 1359 ("Once the presumption of laches attaches, [the party asserting laches] can remain 'utterly mute' on the issue of prejudice and nonetheless prevail[]."); *Aukerman*, 960 F.2d at 1037 ("[A] prima facie defense of laches is made out upon proof by the [defendant] that the [plaintiff] delayed filing suit for six years after actual or constructive knowledge of the defendant's acts of alleged infringement."). But, in any event, Memorylink cannot show that a ten-year delay was reasonable or that Motorola was not prejudiced by the delay.

> **i.     Memorylink's ten-year delay was not justified.**

Memorylink is no doubt concerned that its claims are time-barred and, thus, attempts in its complaint to somehow rationalize its delay to file suit. In short, Memorylink claims that it waited to file suit until after its attorney Paul Schaafsma "discovered" the legal significance of

the '352 Patent inventorship in November 2007. (*See, e.g.,* NovusIP Motion to Quash at 6-7, Dkt. 141; Compl. ¶ 148; Dkt 35 at 1, 3) This, if true, still does not excuse Memorylink's delay.

Memorylink's "knowledge of the *facts*, not knowledge of the law, is the critical question." *See Moore*, 2008 WL 425932, at *5 n.2 (emphasis added); *Frugoli*, 74 U.S.P.Q.2d at 1721-22 (rejecting the plaintiff's excuse that he was naïve as to his patent rights). As discussed above, Memorylink knew the *facts* underlying its inventorship claim in 1998 – well before Schaafsma conducted his alleged investigation. In fact, all of the documents that Schaafsma reviewed as part of his 2007 "investigation" were documents that Memorylink already had in its possession for years. (SUF ¶¶ 113, 114)

Moreover, a plaintiff cannot claim its delay is excused where, as here, it is represented by counsel during the delay period. *See, e.g., Serdarevic*, 532 F.3d at 1360 (summary judgment where the plaintiff was represented by counsel during its delay); *Hor*, 765 F. Supp. 2d at 919-20 (same). Memorylink was represented by sophisticated patent counsel during the time it delayed filing suit. (SUF ¶ 91–105; Ex. 77 at ML 20037 (Memorylink listing its counsel re '352 Patent as Joseph Kaufman, Quarles & Brady, and Banner & Witcoff)) And, it is undisputed that by early 1999, Banner & Witcoff was advising Memorylink on the '352 Patent and Memorylink's relationship with Motorola. (SUF ¶¶ 93–97 (Memorylink retained Banner to advise on its patent portfolio, which consisted of only the '352 Patent application); *id.* ¶ 95 (Banner to "[d]etermine the identities and contributions of various technologists to Memorylink's technologies"); *id.* ¶ 105) Moreover, in 2003 and 2008, Banner filed the '352 Patent divisional and continuation applications with the PTO, and continued, under oath, to list the two Motorolans as co-inventors.[3] (*Id.* ¶¶ 99, 103)

---

[3] Memorylink's counsel, Schaafsma, also filed a '352 continuation application in 2007, and listed Strandwitz, Kniskern, Schulz, and Wyckoff as inventors. (SUF ¶ 102)

### ii. Memorylink's ten-year delay prejudiced Motorola.

A defendant can establish material prejudice by showing *either* evidentiary *or* economic prejudice. *Aukerman*, 960 F.2d at 1033. Even putting aside the presumption of prejudice that applies in this case (after Memorylink's ten year delay), it is obvious that Motorola has suffered severe evidentiary and economic prejudice.

Evidentiary prejudice arises where the defendant cannot "present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events." *Aukerman*, 960 F.2d at 1033. Because this lawsuit was filed ten years after the relevant events occurred, documents are missing, memories have faded, and key witnesses have left Motorola. Indeed, when one of Motorola's two inventors was deposed in 2011, he could not remember specifics of what happened nearly fifteen years earlier, in the 1997 and 1998 time frame. (SUF ¶ 64 ("And it's been 15 years, I think. I just don't recall as specific details as you're asking for."); *id.* ("Again, it's 25 years. Specifics – or 15 years. Specifics, I don't remember all the details.")) In addition, Motorola was able to locate only a few of Wyckoff's documents from the relevant period, especially given that he left Motorola years before the lawsuit was filed. (*Id.* ¶¶ 65–66) Memorylink's own counsel even argued that there were document gaps in connection with Memorylink's discovery requests. (*Id.* ¶ 66 (Memorylink's counsel noting that key players (including Wyckoff) have very few documents))

Memorylink's two inventors also had trouble recalling certain events from 1997 and 1998. For instance, Kniskern testified that he had discussions with Schulz and Wyckoff in 1997 and 1998, but could not recall the details or timing of certain of those communications. (SUF ¶ 63) Strandwitz similarly testified that by the time of his deposition in 2011, his memory of what occurred in 1998 was not as good as it was "way back then." (*Id.* ¶ 62) Strandwitz even forgot the circumstances of his meeting with Motorola in March 1998, where he alleges that he

was told that two Motorola employees needed to be named on the '352 Patent. (*Id.*) Nor could Strandwitz remember who at Memorylink put together provisions that were sent to Motorola that stated that Memorylink and Motorola would jointly own any resulting patents. (*Id.*)

In short, because of Memorylink's delay, Motorola is inhibited in its ability to fairly and fully defend against Memorylink's inventorship claim.[4] *See Aukerman*, 960 F.2d at 1033; *Frugoli*, 74 U.S.P.Q.2d at 1721 (granting summary judgment and noting that "[r]ecalling events from [9-10 years ago] would be difficult for any percipient witness"); *Serdarevic*, 532 F.3d at 1360 (applying laches where there was "cumulative and inherent prejudice from the dimming memories of all participants, including [the plaintiff] herself").

### 2.    Memorylink's inventorship claim is barred by equitable estoppel.

Equitable estoppel bars a plaintiff from recovering where: (1) the plaintiff communicates something in a misleading way, either by words, conduct, or silence; (2) the defendant relies on that communication; and (3) the defendant would suffer material prejudice if the plaintiff's claim proceeds. *Aukerman*, 960 F.2d at 1041. All three elements are satisfied here, as Memorylink affirmatively misled Motorola into believing that it would not pursue a correction of inventorship claim for nearly ten years, and Motorola is now prejudiced by its reliance on Memorylink's representations.

Memorylink engaged in misleading conduct when it affirmatively represented to Motorola that the Motorolans were co-inventors of the '352 Patent and then delayed filing its inventorship claim for nearly ten years. *See MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d

---

[4]    Moreover, while Motorola would not need to show both economic and evidentiary prejudice if the presumption of laches was overcome, Motorola did suffer material economic prejudice as a result of Memorylink's delay. In addition to providing patent resources in 1998, Motorola continued to pay the maintenance fees for the '352 Patent throughout the 2000s – well after Memorylink should have brought suit. (SUF ¶ 69) *See, e.g., Pressure Systems Intern. Inc. v. Airgo IP*, 2010 WL 3430859, at *4 (S.D. Tex. Aug. 31, 2010) (finding economic prejudice where the defendant expended time and money applying for the patent).

1568, 1572 (Fed. Cir. 1989) (overruled on other grounds); *see also Stewart & Stevenson Servs., Inc. v. Serv-Tech, Inc.*, 794 F. Supp. 202, 205 (S.D. Tex. 1992) (unreasonable delay may be evidence of misleading conduct). As discussed above, Strandwitz and Kniskern represented to Motorola on four occasions between April 1998 and June 1998 (including two times under oath) that Motorola's Schulz and Wyckoff were properly named as inventors of the '352 Patent. (*Supra*, Section I.C.1.a) Strandwitz made these representations to Motorola even though he testified that he "firmly believed" that the Motorolans did not contribute to the patent. (SUF ¶¶ 49, 59) Memorylink ratified this position in 2003 onward when it filed divisional and continuation applications that continued to list the Motorolans as inventors. (*Id.* ¶¶ 99, 102) And Memorylink continued to treat Motorola as a joint inventor in 2005 and 2006 when it discussed possible business approaches with Motorola. (*Id.* ¶¶ 108–12)

Memorylink's conduct is especially troubling, considering that it purposely waited to file suit until it was no longer reaping financial benefits from its relationship with Motorola. Memorylink gained substantial benefits from Motorola in the late 1990s and early 2000s: it received patent resources, business resources and opportunities, and technical and engineering support. (*Supra*, Section I.A.3) It also sought investments from third parties based on its relationship with Motorola. (*Id.*) It was only when Memorylink's financial situation began to decline that it became "commercially and economically worthwhile" for Memorylink to pursue this litigation. This constitutes nothing short of misleading conduct. *Stryker Corp. v. Zimmer, Inc.*, 741 F. Supp. 509, 514 (D.N.J. 1990) ("A patentee who . . . does nothing over a period of years other than mislead [the defendant] to believe that there was and is no problem, lying in wait until . . . 'it has become commercially and economically worthwhile' to do something, has engaged in affirmatively misleading silence of the worst order."); *Frugoli*, 74 U.S.P.Q.2d at

1723 (equitable estoppel where the plaintiff learned of the patent in 1994 but remained silent until 2002 when it filed suit "after a substantial payment by a very interested third party").

The undisputed evidence also shows that the second and third prongs of equitable estoppel are met. As described above, Motorola substantially relied on Memorylink's silence when it agreed to handle the patent application and prosecution processes for the '352 Patent. In addition, Motorola would not have provided Memorylink with business resources and technical and engineering support if it knew that Memorylink would bring this litigation ten years later. And, for the same reasons as explained for laches (*supra*, Section I.C.1.b.2), Memorylink's delay has caused Motorola to suffer material evidentiary and economic prejudice, as witnesses' memories have faded and documents are no longer available. *Aukerman*, 960 F.2d at 1043; *Frugoli*, 74 U.S.P.Q.2d at 1724 ("This element, identical to the 'prejudice' element of laches, may be established by showing a change of economic position or loss of evidence."). Memorylink should not be permitted to proceed with its claim after misleading Motorola for nearly ten years.

**D.      Summary Judgment Should Be Granted On Count IV For The Additional Reason That Memorylink's Inventorship Claim Fails.**

If this Court grants summary judgment in favor of Motorola for the inventorship claim *or* the assignment claim, then it should also grant summary judgment with respect to Memorylink's patent infringement claim (Count IV). As discussed above, the Assignment is supported by valid consideration (*supra* Section I.A), meaning that Motorola is a joint owner of the '352 Patent. *See* 35 U.S.C. § 262; *Shum,* 629 F.3d at 1369 ("As a co-owner, Intel acquired and retains the right to make, use, license, offer to sell, or sell the inventions covered by the patents, with or without Shum's consent.") (citing 35 U.S.C. § 262). In addition, Memorylink infringement claim independently fails because Motorola's Schulz and Wyckoff were properly named as

inventors of the '352 Patent, and they assigned their patent rights to Motorola. Again, as a joint

owner, Motorola cannot be liable for infringement. Thus, summary judgment should be granted

on Count IV for this second, independent reason.

## II. MEMORYLINK'S REMAINING COUNTS REGARDING THE '938 PATENT CANNOT SURVIVE SUMMARY JUDGMENT.

Memorylink's claims based on the '938 Patent are founded entirely on baseless

allegations that Strandwitz and Kniskern are the *sole* inventors of the technology claimed in the

'938 Patent. Not only are they not the sole inventors, but Kniskern and Strandwitz are not even

joint inventors of the '938 Patented technology. As set forth below, this Court should grant

summary judgment on each of these claims.

| Counts | Claim | '352 Patent Claim | Independent Bases for Summary Judgment for the '938 Patent Claim |
|---|---|---|---|
| V | Correction of Inventorship of '938 Patent | N/A see Count I | - **Inventorship is correct**<br>- No showing that Strandwitz and Kniskern are inventors<br>- No showing that Schulz and Wyckoff are not inventors |
| VII | Breach of Fiduciary Duty | Dismissed | - **No breach because inventorship is correct**<br>- No fiduciary relationship |
| VIII, XXIV, XXVI | Common Law Fraud (In the Alternative) | Dismissed | - **No fraud because inventorship is correct**<br>- No false statements<br>- No fraudulent intent<br>- No evidence of alternative conditions |
| XI, XXIII, XXV | Conversion | Dismissed | - **No conversion because inventorship is correct**<br>- Patent cannot be converted |
| XII | Tortious Interference | Dismissed | - **No interference because inventorship is correct**<br>- No business opportunity<br>- No purposeful interference |
| XXII | Promissory Fraud | Dismissed as Count IX | - **No fraud because inventorship is correct**<br>- No misrepresentation of fact<br>- No fraudulent intent |

### A. Summary Judgment Should Be Granted On Count V Because Schulz And Wyckoff Are Proper Inventors Of The '938 Patent.

To succeed on Count V, Memorylink must establish by clear and convincing evidence

that Strandwitz and Kniskern should have been listed as inventors of the '938 Patent, and that

Motorola's Schulz and Wyckoff are improperly named as inventors on the '938 Patent. *See Hess*

*v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997) (party challenging inventorship has heavy burden to prove by clear and convincing evidence that inventors of patent were improperly named). Memorylink cannot meet its heavy burden.

> **1.    Memorylink cannot show by clear and convincing evidence that Strandwitz and Kniskern should have been named as inventors.**

Discovery has shown that Strandwitz and Kniskern had nothing to do with the conception of the technology underlying the '938 Patent – which is communication of images via a removable modem. The title of the '938 Patent is "Self-Contained Camera Device and Method for Capturing and Communicating Images Via a ***Modem***," and the concept of "communicating images via a modem" is expressed in every claim of the patent. (SUF ¶¶ 6, 116) Moreover, the "Detailed Description" in the '938 Patent refers to a removable modem in several places when describing the "present invention." (*Id.*) Strandwitz and Kniskern admitted that they did not conceive of this claimed subject matter. (*Id.* ¶¶ 119–21)

Strandwitz testified that he does not remember discussing a "modem" or even using the term "modem" in relation to any camera ideas he had during the time period in which the '938 Patent was filed. (SUF ¶ 119 ("I don't remember talking about a modem"; "I didn't throw the word modem around"; "I didn't use the word modem")) Strandwitz had absolutely no recollection of using a modem in relation to the '938 Patent:

> Q. And you don't recall coming up with the idea of making a modem in the shape of a tape drive to fit into a tape slot?
>
> A. Specifically to do – to do that? Not – since I don't recall modem, talking about a modem, I wouldn't say that I would think of – be able to say I thought of coming up with a modem to fit into a drive like that, since I didn't recall using the word modem in that application. (SUF ¶ 119)

Indeed, when asked about the use of the modem, Strandwitz drew a "blank":

> A. That's a word I didn't employ relative to transmitting wireless from the device in – over the network. So any time you use modem in – in those questions, I have to look a little blank, I guess. (SUF ¶ 119)

Strandwitz further testified that he did not know why one would use a modem in the way described in the '938 Patent, and that he does not even consider it to be an invention. (SUF ¶120 ("I don't know why you would do that with a modem"), *id.* (not understanding why a removable modem was needed in 1997-98))

Kniskern likewise testified that he did not contribute to the conception of the subject matter of the '938 Patent:

> Q: [D]id you conceive in the 1997 to 1998 time frame of a wireless camcorder with a removable modem that can be placed in the storage module of the camcorder?
>
> A: I thought I said before no.

(SUF ¶ 121 (Q: "Did you have discussions with anyone in the 1997, 1998 time frame of the concept of a removable modem that can be inserted into a camera's tape slot?" A: "No.")) Therefore, by Strandwitz and Kniskern's own account, they did not conceive of the '938 Patent. Accordingly, they are not inventors of the '938 Patent, and summary judgment should be granted on Count V.

### 2. Memorylink cannot show that Schulz and Wyckoff are improperly named as inventors.

Because Strandwitz and Kniskern are not inventors of the '938 Patent, Memorylink's claim fails and this Court need not examine whether Motorola's Schulz and Wyckoff were proper inventors of the patent. But, in any event, the evidence establishes that Schulz and Wyckoff contributed to the conception of the subject matter claimed in the '938 Patent.

Schulz memorialized in an engineering notebook his and Wyckoff's discussions and conceptions of the technology that became the '938 Patent. (SUF ¶ 117) Specifically, in March and April 1998, respectively, Schulz sketched a block diagram of the inner components of the modem of the '938 Patent, along with a camcorder embodiment showing the modem to be inserted into the tape drive mechanism of the camcorder. (*Id.*) These sketches from Schulz's engineering notebook were included among Motorola invention disclosure forms that led to the '938 Patent application. (*Id.*)

Moreover, Schulz and Wyckoff extensively testified that they alone conceived of the technology of the '938 Patent. (SUF ¶ 118) For this additional reason, summary judgment on Count V is warranted.

### B. Summary Judgment Should Be Granted On Memorylink's State Law Claims Relating To The '938 Patent.

Memorylink's state law claims relating to the '938 Patent hinge on Memorylink being an owner of the '938 Patent. (*See, e.g.*, Count VII (breach of fiduciary duty relating to '938 Patent); Count VIII (fraud re '938 Patent)) Because, as stated in Section II.A above, Schulz and Wyckoff are the sole inventors of the '938 Patent, Memorylink's '938 claims cannot stand and summary judgment should be granted on Counts VII, VIII, XI, XII, XXII, and XXIII-XXVI.

### C. Memorylink's State Law Claims Based On The '938 Patent Fail For Additional, Independent Reasons.

Summary judgment should also be granted on Counts VII, VIII, XI, XII, XXII, and XXIII-XXVI for the additional reasons set forth below.

#### 1. Memorylink's conversion claims fail because patents cannot be converted.

In its motion to dismiss, Motorola explained that Memorylink's conversion claims were not actionable under Illinois law. (Dkt. 23 at 24-25) "An action for conversion lies only for

personal property which is *tangible*, or at least represented by or connected with something tangible." *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1998) (emphasis added). Motorola relied on *Richmond v. Nat'l Inst. of Certified Estate Planners*, 2006 WL 2375454, at *6-7 (N.D. Ill. Aug. 15, 2006) (unpublished), which held that a trademark was not tangible property and could not be the subject of a conversion claim.

Since that time, another district court in this Circuit issued a decision that is directly on point to this case – holding that a ***patent*** cannot form the basis of a conversion claim. In *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, Judge Norgle held that a patent is not the type of tangible representative property that supports a common law conversion claim:

> Here, the patent itself cannot be the subject of conversion. It is the federally derived rights from the issued patent, *i.e.*, the authority to make, use, offer to sell, or sell the patented technology, which [the plaintiff] argues were converted. These rights, however, are the subject of [the plaintiff's] patent infringement claims improperly and redundantly cloaked as a conversion claim.

2011 WL 2582396, at *4 (N.D. Ill. June 27, 2011) (unpublished) (internal citations omitted). This Court should follow and hold that Memorylink's conversion claims (Counts XI, XXIII and XXV) for the '938 Patent fail as a matter of law.

### 2.    Memorylink cannot prove the elements of tortious interference.

To establish tortious interference, a plaintiff must demonstrate that: (1) it had a reasonable expectancy of entering into a business relationship; (2) the defendant knew of this expectancy; (3) the defendant intentionally interfered with and prevented the realization of the expectancy; and (4) the defendant's interference actually damaged the plaintiff. *McMahon v. Chicago Mercantile Exchange*, 582 N.E.2d 1313, 1322 (Ill. App. Ct. 1991); *Small v. Sussman*,

713 N.E.2d 1216, 1223 (Ill. App. Ct. 1999). Memorylink cannot prove any of these elements with regard to the '938 Patent.[5]

      **a.**    **Memorylink did not have a reasonable expectancy of entering into a business relationship with a third party.**

Memorylink cannot prove it had a reasonable expectancy of entering into a business relationship with any third party regarding the '938 Patent. "[A] claim for tortious interference with prospective economic advantage . . . requires the plaintiff to specifically identify third parties who actually contemplated entering into a business relationship with [it.]" *Intervisual Commc'ns, Inc. v. Volkert*, 975 F. Supp. 1092, 1103 (N.D. Ill. 1997) (emphasis added). There are no facts establishing that any third party actually *contemplated* entering a business relationship with Memorylink for the '938 Patent technology. To the contrary, Memorylink's former CEO Jon Huard testified that he did not



(SUF ¶ 122)

(*Id.*)

Memorylink cannot overcome this fundamental problem by claiming it generally "would have had a plethora of business opportunities with a plethora of different third parties had Motorola not done what they did." (Schaafsma Dep., 359:18-360:5) As one court aptly noted, "[w]e are aware of no authority indicating that the Illinois courts construe the expression 'valid business expectancy' to encompass all *possible* relationships with *potential* customers regardless of whether such customers even ever contemplated a relationship with the plaintiff." *Celex Group, Inc. v. Exec. Gallery, Inc.*, 877 F. Supp. 1114, 1125 n.19 (N.D. Ill. 1995). Because there

---

[5]    The Court already dismissed Memorylink's claim for tortious interference with prospective economic advantage (Count XII) with respect to the '352 Patent. (Ex. 1 at 11; Ex. 2 at 9)

is no question of fact regarding Memorylink's reasonable expectancy with respect to any specific third party, its tortious interference claim must fail.

### b. Motorola did not know of or interfere with Memorylink's business expectancy.

Memorylink cannot establish the second or third elements of its tortious interference claim. As an initial matter, Memorylink cannot establish that Motorola knew of a specific business expectancy. Memorylink ████████████████████████████████████ ████████████████████████████████ (SUF ¶ 123)

Moreover, Memorylink cannot establish interference towards a third party. To establish interference, the plaintiff must demonstrate that the defendant performed an affirmative action towards a third party, and that the action was "purposeful" or "intentional." *See Cohabaco Cigar Co. v. U.S. Tobacco Co.*, 1999 WL 988805, at \*13-14 (N.D. Ill. Oct. 22, 1999) (unpublished); *Fid. Nat. Title Ins. Co. of NY v. Westhaven Props. P'ship*, 898 N.E.2d 1051, 1067-68 (Ill. App. Ct. 2007). There is no such evidence here. Again, Memorylink's CEO testified that ███████ ██████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ (SUF ¶ 123) In sum, Memorylink's Count XII cannot survive summary judgment.[6] *See, e.g., Fidelity*, 898 N.E.2d at 1068 (affirming summary judgment where there was "simply no evidence in the record to suggest that [the defendant] acted improperly or with the aim of injuring [the plaintiff's] expectancy"); *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1133-34 (Ill. 2001).

---

[6] Memorylink likewise cannot establish the fourth element of a tortious interference claim – that it was damaged by Motorola's alleged interference. Memorylink instead relies solely on speculation as to the effect of the alleged interference.

### 3. Memorylink's breach of fiduciary duty claim fails because the parties were not in a fiduciary relationship.

Memorylink's fiduciary duty claim relating to the '938 Patent (Count VII) cannot stand since, as discussed above, Memorylink's employees were not inventors and Memorylink has no ownership interest in the patent. That is, Motorola did not have a fiduciary duty to third party Memorylink with regards to the '938 Patent.

In addition, the contract regarding the parties' '352 Patent technology expressly rejects any notion of a fiduciary relationship:

> Nothing in this MOU will be interpreted to constitute or create a joint venture, partnership, teaming arrangement or other formal business entity or fiduciary relationship between the parties . . . . (SUF ¶ 26; *see also* ¶ 27)

That understanding was confirmed in later MOUs between the parties. (SUF ¶¶ 86, 87; *See* Ex. 2 at 8 (J. Hibbler) (noting with respect to the '352 Patent that the parties' agreement that they were in a fiduciary relationship undermines Memorylink's claim that Motorola was its fiduciary); *see also United States v. Jenkins & Gilchrist, P.C.*, 2005 WL 1300768, at *2 (N.D. Ill. Mar. 10, 2005) (unpublished) (no attorney-client or fiduciary relationship where the parties' confidentiality agreement disavowed an agency or fiduciary relationship); *Clearclad Coatings, Inc. v. Xontal Ltd.*, 1999 WL 652030, at *13 (N.D. Ill. Aug. 20, 1999) (unpublished) (similar).

### 4. Memorylink's fraud claims regarding the '938 Patent fail.

A plaintiff asserting common law fraud must establish: (1) a false statement of material fact, (2) known or believed to be false by the party making it, (3) intent to induce the other party to act, (4) action by the other party in reliance on the truth of the statement, and (5) resulting damage. *Shair v. Qatar Islamic Bank*, 2009 WL 691249, at *5 (N.D. Ill. Mar. 16, 2009) (unpublished). Promissory fraud requires the plaintiff to prove an additional element – that the defendant undertook *a scheme to defraud* the plaintiff. *Id.* Both promissory and common law

fraud place "a heavy responsibility ... upon the party asserting the fraud," and promissory fraud is known to be a "disfavored cause of action in Illinois." *Gordon v. Dolin*, 434 N.E.2d 341, 345 (Ill. App. Ct. 1982); *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992) ("fraud is easy to allege and difficult to prove or disprove").

Memorylink cannot satisfy any of the elements of common law fraud or promissory fraud. Among other things, Memorylink cannot establish that Motorola made a statement of present *fact*, that Motorola intended to defraud Memorylink, that Memorylink relied on Motorola's alleged statements, or that Motorola intended Memorylink to act in response to its alleged statements. *See, e.g., Indep. Trust Corp. v. Fid. Nat'l Title Ins. Co. of NY*, 577 F. Supp. 2d 1023, 1038-39 (N.D. Ill. 2008) (no fraud where the plaintiff did not rely on the defendant's statements and the defendant made no misrepresentations of material fact); *Sompo Japan Ins. Co. of Am., Inc. v. Alliance Transp. Group, LLC*, 627 F. Supp. 2d 897, 901-02 (N.D. Ill. 2009) (no fraud where no intent to deceive); *Sa'Buttar Health & Medical P.C. v. TAP Pharm., Inc.*, 2004 WL 1510023, at *4 (N.D. Ill. July 2, 2004) (unpublished) (no fraudulent intent where the defendant initially complied with its promise). Nor is there evidence that Motorola engaged in some "elaborate artifice of fraud" or other "particularly egregious" deception at the time the promise was made, as is required to establish a scheme to defraud. *See Desnick v. ABC, Inc.*, 44 F.3d 1345, 1354-55 (7th Cir. 1995); *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 2004 WL 1149397, at *17 (N.D. Ill. May 20, 2004) (unpublished) (no promissory fraud where the plaintiff's representations were not false); *Shair*, 2009 WL 691249, at *6 (no promissory fraud where defendants did fulfill some of their promises to plaintiff). There is no basis for Memorylink to avoid summary judgment on Counts VIII, XXII, XXIV, and XXVI.

## III. MEMORYLINK'S BREACH OF CONTRACT CLAIMS CANNOT SURVIVE SUMMARY JUDGMENT.

### A. Motorola Did Not Breach A Non-Disclosure Agreement.

#### 1. There is no valid and enforceable NDA contract.

Memorylink's breach of the Non-Disclosure Agreements (NDAs) claim (Count VI) fails because Memorylink has not identified a valid non-disclosure agreement. *See, e.g., Burke v. Lakin Law Firm, PC*, 2008 WL 64521, *2 (S.D. Ill. Jan. 3, 2008) (unpublished). Motorola is aware of only two NDAs – but neither binds the parties' actions. The first NDA was entered between Motorola and *Adaptive* in late 1997 and specifically states that it cannot be assigned without the other party's written consent. (SUF ¶ 25) There is no evidence that Adaptive assigned its interest in the NDA to Memorylink or that Motorola provided written consent for such an assignment. (*Id.*) The second NDA was allegedly prepared in 1998, but Memorylink has not presented a signed and executed NDA agreement.

#### 2. Motorola did not breach the NDAs.

Memorylink's breach of contract claim also fails because it is supported by nothing more than bare allegations that Motorola breached the NDA by disclosing confidential information to Sony in June 1998. (Compl. ¶¶ 187–92) That is not enough to survive summary judgment. *See Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011) ("Perhaps most troubling is the [plaintiffs'] reliance on allegations made in their complaint as 'evidence' to support their claims on summary judgment.").

In any event, the evidence undermines Memorylink's conclusory allegations. Motorola's June 1998 Sony meeting was mostly unrelated to the parties' technology. Indeed, ███

███████████████████████████████████████████████

███████████████████████████████████████████████

38

██████████ (SUF ¶ 41)  Participants at the meeting confirmed that Motorola did not disclose any confidential information to Sony, but only discussed high level concepts.  (*Id.*)  There is simply no evidence supporting Memorylink's Count VI.

### B.  Memorylink Cannot Create A Dispute Of Material Fact With Respect To Its Breach Of Memoranda Of Understanding Claim.

Memorylink likewise cannot establish that Motorola breached the parties' memoranda of understanding (MOUs) (Count XXI).  According to Memorylink, the MOUs provided that each party would retain the rights to its own technology, yet Motorola claimed joint ownership of the '352 Patent and sole ownership of the '938 Patent.  (Compl. ¶¶ 309, 319-20)  Elsewhere in its complaint, Memorylink alleges that Motorola failed to enter into definitive agreements as required by the MOUs.  (*Id.* ¶ 362) Memorylink cannot prove that Motorola breached the MOUs.

#### 1.  Motorola did not breach the MOUs by properly exercising ownership rights over the '352 and '938 Patents.

As an initial matter, Memorylink cannot meet its burden of proving that Motorola breached the parties' MOUs by exercising ownership rights over the patents.  As discussed above, Schulz and Wyckoff were properly named as inventors of the '352 and '938 Patents.  And irrespective of the '352 Patent inventorship, Strandwitz and Kniskern assigned their rights in the '352 Patent to Motorola.  Motorola could not have breached the MOUs by simply exercising rights to technology *that it owned*.

#### 2.  The MOUs did not require the parties to enter definitive agreements.

Nor did Motorola breach the parties' MOUs when it decided not to enter into definitive agreements with Memorylink.  (*See* Compl. ¶ 362)  The MOUs are replete with language indicating that the parties' relationship (including their decision to enter into future agreements) was entirely contingent.  For instance, the MOUs entered in August 2001 and January 2003 state:

> *In the event the parties decide to pursue the possibility of further collaboration*, they will negotiate, in good faith, terms and conditions of one or more definitive agreements ... (SUF ¶¶ 86, 87)

The MOUs contemplated only that Motorola and Memorylink would cooperate and work together to explore a joint relationship. And this is precisely what Motorola did. Indeed, to date, Memorylink continues to tout its relationship with Motorola on its website and in investment memoranda. (SUF ¶ 82) Motorola did not breach its agreements with Memorylink, and accordingly summary judgment should be granted on Count XXI.

## CONCLUSION

For the foregoing reasons, Motorola respectfully requests that the Court grants its motion for summary judgment.

Dated: May 25, 2012

Respectfully submitted,

/s/ Anne M. Sidrys
Anne M. Sidrys, P.C. (#6209457)
Nyika O. Strickland (#6275717)
Joel R. Merkin (#6290212)
KIRKLAND & ELLIS LLP (Firm No. 90443)
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

*Attorneys for Defendants Motorola Solutions, Inc., and Motorola Mobility, Inc.*

## CERTIFICATE OF SERVICE

I, Anne McClain Sidrys, hereby certify that on May 25, 2012, I caused a copy of the

foregoing, MOTOROLA'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR

SUMMARY JUDGMENT, to be served on all counsel of record via the Court's CM/ECF

System:

/s/ Anne M. Sidrys
Anne M. Sidrys, P.C. (#6209457)
KIRKLAND & ELLIS LLP (Firm No. 90443)
300 North LaSalle
Chicago, IL 60654
(312) 862-2000

*Attorney for Defendants Motorola Solutions,
Inc., and Motorola Mobility, Inc.*