**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MEMORYLINK CORP., a Wisconsin Corporation, | ) ) | |
| | ) | Case No. 08 C 3301 |
| Plaintiff, | ) | |
| | ) | Judge John J. Tharp, Jr. |
| vs. | ) | |
| | ) | |
| MOTOROLA MOBILITY, INC., and | ) | |
| MOTOROLA SOLUTIONS, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>Memorylink's Opposition To Motorola's Motion For Summary Judgment</u>**

# TABLE OF CONTENTS

Factual Background .................................................................................................1

   I.    Conception ...........................................................................................1

   II.   Strandwitz And Kniskern Show Motorola Their Invention ............................1

   III.  The Sharp And Sony Demonstrations ................................................3

   IV.  Motorola Improperly Takes Ownership Of The Invention ..............................3

   V.   Memorylink Discovers Motorola's Wrongdoing ...............................5

Law and Argument ................................................................................................5

   I.    Summary Judgment Standard ........................................................5

   II.   Genuine Issues on Inventorship Preclude Summary Judgment
       On The Assignment ........................................................................5

       A.   Motorola Has The Burden To Prove The Existence Of Consideration ....6

       B.   Consideration Was An Exchange Of Ownership Rights ........................6

       C.   Genuine Issues Regarding Inventorship Preclude Summary Judgment ..7

       D.   There Is A Genuine Dispute Regarding Inventorship ...........................9

   III.  Motorola Cannot Rely On The Assignment's Recital Of $1 Consideration ..12

       A.   The $1 Is A False Recital Without Meaning Or Effect ........................12

       B.   Motorola's Reliance On The $1 Ignores The "Other" Consideration ...14

       C.   One-Dollar Is Grossly Disproportionate To What Motorola Obtained .15

   IV.  Motorola's Reliance On Parol Evidence Further Precludes Summary
       Judgment........................................................................................16

       A.   The Court Should Ignore Motorola's Parol Evidence ..........................16

       B.   Motorola's Parol Evidence, If Considered, Creates An Issue Of Fact ..17

   III.  Motorola Failed To Satisfy Its Heavy Burden To Benefit From A
       Laches Presumption At The Summary Judgment Stage .................18

       A.   Motorola Failed To Prove A Greater Than Six Year Delay .................18

          1.   Memorylink Sued Within Six Years Of The Claim Arising ........19

{3932546:2}

2.    Motorola Fails To Prove Memorylink Knew Of Its Claim
Prior To June 9, 2002 .................................................................20

a.    That Memorylink Followed Dunlop's Bad Advice
Does Not Prove It Knew That His Advice Was Wrong ......20

b.    Knowing What Individuals Contributed Does
Not Equate To Knowing That Dunlop Was Wrong .............20

c.    That Memorylink Had Other Attorneys Does Not Mean
They Knew Or Should Have Known Dunlop Was Wrong ..22

B.    Motorola's Cases Are Unavailing .........................................................23

C.    Whether The Laches Presumption Applies Is A Fact Issue That
Precludes Summary Judgment, Even If Motorola Had Proven A Six
Year Delay ............................................................................................24

IV.    Even If Motorola Had Dispositively Proven The Laches Presumption,
Summary Judgment On Laches Would Still Be Inappropriate .......................25

A.    There Is A Genuine Issue On The Reasonableness Of Delay ..............25

B.    There Is A Genuine Dispute On Prejudice ...........................................26

1.    There Are Genuine Disputes Regarding Evidentiary Prejudice ...26

2.    There Are Genuine Issues Regarding Economic Prejudice ..........28

C.    Motorola's Unclean Hands Further
Preclude Summary Judgment ...............................................................29

V.    Motorola Also Has Not Shown Summary Judgment On Laches Is Proper
Without The Presumption ...............................................................................29

VI.    Motorola Failed To Show No Issues Of Fact On Its Equitable
Estoppel Defense ............................................................................................30

A.    Motorola Failed To Dispositively Prove Memorylink Knew Of
Its Claim In 1998 .................................................................................30

B.    Motorola Failed To Prove A Lack Of Genuine Dispute On
The Other Two Elements Of Its Equitable Estoppel Defense ..............30

VII.    The Court Should Deny Summary Judgment On Memorylink's
Patent Infringement Claim (Count IV) ...........................................................31

VIII.    The Court Should Deny Summary Judgment On Inventorship Of
The '938 Patent ...............................................................................................31

IX.     Summary Judgment On Conversion Is Not Proper...........................................33

X.      Summary Judgment On Fraud Is Not Proper....................................................35

XI.     Summary Judgment On Promissory Fraud Is Not Proper ..............................36

XII.    Summary Judgment On Breach Of Fiduciary Duty Is Not Proper .................37

XIII.   Summary Judgment On Breach Of The MOU Is Not Proper ........................37

XIV.    Summary Judgment On Breach Of The NDA's Is Not Proper ......................38

XV.     Memorylink Withdraws Its Tortious Interference Claim Regarding The
        '938 Patent ...................................................................................................40

Conclusion ................................................................................................................40

# TABLE OF AUTHORITIES

## **Cases**

*A. Epstein & Sons Int'l, Inc. v. Eppstein Uhen Architects, Inc.*,
   945 N.E.2d 18 (Ill. App. Ct. 2011) ........................................................................17

*Acromed Corp. v. Sofamor Danek Group, Inc.*,
   253 F.3d 1371 ................................................................................................9,19

*Adv. Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*,
   988 F.2d 1157 (Fed. Cir. 1993) ...............................................................19, 24, 25

*Arris Group, Inc. v. British Tele. PLC*,
   639 F.3d 1368 (Fed. Cir. 2011) ..............................................................................6

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
   960 F.2d 1020 (Fed. Cir. 1992) ………….………….............. 19, 24, 25, 29, 30, 31

*Bd. of Ed. v. Am. Bioscience, Inc.*,
   333 F.3d 1330 (Fed. Cir. 2003) ...........................................................................11

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
   131 S. Ct. 2188, 2195 (2011) .................................................................................7

*Burdett v. Miller*,
   957 F.2d 1375 (7th Cir. 1992) ..............................................................................37

*Butler v. Mayer, Brown & Platt*,
   704 N.E.2d 740 (Ill. App. Ct. 1998) .....................................................................23

*Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*,
   15 F.3d 1573 (Fed. Cir. 1993) .......................................................................13, 14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .............................................................................................18

*Clark v. Clark*,
   76 N.E.2d 446 (Ill. 1948) ………………………………………………….......16, 37

*Corrugated Metals, Inc. v. Ind. Comm.*,
   540 N.E.2d 479 (Ill. App. Ct. 1989) .....................................................................39

*DirecTV, Inc. v. Adrian*, No. 03 C 6366,
   2004 WL 1660665 (N.D. Ill. 2004) ......................................................................34

*E.A. Cox Co. v. Road Savers Int'l Corp.*,
648 N.E.2d 271 (Ill App. Ct. 1995) ...................................................39

*Eli Lilly & Co. v. Aradigm Corp.*,
376 F.3d 1352 (Fed. Cir. 2004) .............................................19, 21, 32

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998)......................................................9,11,32

*Ethicon, Inc. v. U.S. Surgical Corp.*,
937 F. Supp. 1015 (D. Conn. 1996) ...........................................21, 30

*Fina Oil & Chemical Co. v. Ewen*,
123 F.3d 1466 (Fed. Cir. 1997) .......................................................32

*Fire 'Em Up, Inc. v. Technocarb Equip.*,
799 F. Supp. 2d 846 (N.D. Ill. 2011) ............................................34

*Frugoli v. Fougnies*,
74 U.S.P.Q.2d 1716, 2004 WL 3372012 (D. Az. 2004) .....................23,24

*Gen'l Elec. Credit Auto Lease, Inc. v. Jankuski*,
532 N.E.2d 361 (Ill. App. Ct. 1988) .............................................36

*Goodman v. Harbor Market, Ltd.*,
663 N.E.2d 13 (Ill. App. Ct. 1995) ...........................................22, 23

*Harbaugh v. Hausman*,
210 Ill.App.3d 715 (1991) .............................................................7,8

*Hassan v. Yusuf*,
944 N.E.2d 895 (Ill. App. Ct. 2011) ............................................35

*Hearing Components, Inc. v. Shure Inc.*,
600 F.3d 1357 (Fed. Cir. 2010) ....................................................28

*Hemstreet v. Computer Entry Sys. Corp.*,
72 F.2d 1290 (Fed. Cir. 1992) ......................................................28

*Hess v. Advanced Cardiovascular Sys., Inc.*,
106 F.3d 976 (Fed. Cir. 1997) .......................................................11

*Hor v. Chu*,
765 F. Supp. 2d 903 (S.D. Tex. 2011) ..........................................24

*Horwitz v. Sonnenschien Nath & Rosenthal LLP,*
  926 N.E.2d 934 (Ill App. Ct. 2010) ...................................................................14

*Household Fin. Servs., Inc. v. Coastal Mortgage Servs., Inc.,*
  152 F.Supp.2d 1015 (N.D.Ill.2001) ..................................................................39

*Integrated Cards, L.L.C. v. McKillip Indus., Inc.,*
  2008 WL 3286981 (N.D. Ill. Aug. 8, 2008) ................................................21, 30

*Janowiak v. Tiesi,*
  932 N.E.2d 569 (Ill. App. Ct. 2010) .................................................................35

*Katz v. Lear Siegler, Inc.,*
  5 F.3d 1502, (Table) (Fed. Cir. 1993)...............................................................13

*Laserage Tech. Corp. v. Laserage Labs., Inc.,*
  972 F.2d 799 (7th Cir. 1992) .............................................................................6

*Levin v. Septodont, Inc.,*
  34 Fed. Appx. 65 (4th Cir. 2002) .....................................................................11

*Loyola Academy v. S & S Roof Maint., Inc.,*
  586 N.E.2d 1211 (Ill. 1992) .............................................................................17

*Marconi Wireless T. Co. of Am. v. U.S.,*
  320 U.S. 1 (1943) .............................................................................................11

*MEEI v. Novartis Ophthalmics, Inc.,*
  199 Fed. Appx. 960 (Fed. Cir. 2006) ...............................................................12

*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,*
  412 F.3d 215 (1st Cir. 2005) ............................................................................16

*Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.,*
  833 F. Supp. 2d 321 (E.D.N.Y. 2011) ..............................................................27

*MHL Tek, LLC v. Nissan Motor Co.,*
  655 F.3d 1266 (Fed. Cir. 2011)........................................................................13

*Mimica v. Area Interstate Trucking, Inc.,*
  250 Ill.App.3d 423 (1993) ...............................................................................15

*Moore v. Broadcom Corp.,*
  2008 WL 425932 (N.D. Cal. Feb. 14, 2008) ....................................................24

*Mueller Brass Co. v. Reading Indus., Inc.,*

352 F. Supp. 1357 (E.D. Pa. 1972) ...................................................................21

*Nat'l Prod. Workers Union Ins. Trust v. Cigna Corp.*,
665 F.3d 897 (7th Cir. 2011) .......................................................................7

*O'Neill v. DeLaney*,
415 N.E.2d 1260 (Ill. App. Ct. 1980) ........................................................15

*PSN Illinois, Inc. v. Ivoclar Vivadent, Inc.*,
398 F. Supp. 2d 902 (N.D. Ill. 2005) ...............................................21, 25, 30

*Pyramid Controls, Inc. v. Siemens Ind. Automations, Inc.*,
176 F.R.D. 269 (N.D. Ill. 1997) ................................................................23

*Rockwell Inter'l Corp. v. SDL, Inc.*,
103 F. Supp. 2d 1192 (N.D. Cal. 2000) .....................................................25

*Serpe v. Williams*,
776 F. Supp. 1285, 1287-88 (N.D. Ill. 1991) ..............................................6

*Sewall v. Walters*,
21 F.3d 411 (Fed. Cir. 1994) ......................................................................9

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
758 F.2d 613 (Fed. Cir. 1985) ....................................................................9

*Srail v. Village of Lisle, Ill.*,
588 F.3d 940 (7th Cir. 2009) ......................................................................5

*Stark v. Advanced Magnetics Inc.*,
29 F.3d 1570 (Fed Cir. 1994) .........................................................19, 25, 26

*Stathis v. Geldermann, Inc.*,
692 N.E.2d 798 (Ill. App. Ct. 1998) ..........................................................34

*Wanlass v. Feders Corp.*,
145 F.3d 1461 (Fed. Cir. 1998) .................................................................26

*Yeda Research & Dev't Co. Ltd. v. Imclone Sys., Inc.*,
443 F. Supp. 2d 570 (S.D.N.Y. 2006) ...................................................29, 32

## Statutes

35 U.S.C. § 256 ...............................................................................................19

**<u>Other Authorities</u>**

E. Allen Farnsworth, Contracts § 2.6 (1999) ............................................................................6

Restatement (Second) of Contracts § 71(1) ............................................................................6

**<u>Rules</u>**

Fed.R.Civ.P. 56(c) ............................................................................................................5

The Court should deny summary judgment because, based on the parties' materially different accounts of what transpired, there are genuine issues of material fact which preclude granting summary judgment.

## Factual Background

### I.     Conception

Peter Strandwitz is the originating force behind the wireless video technology claimed by the '352 patent, now found on most of today's cellphones. In the '90's, Strandwitz was fascinated with online video games, which allowed people from all over the world to play together. Looking for ways to improve the experience, Strandwitz thought about using video to see the other players' reactions to gameplay. Strandwitz built on that original idea and, by June 1997, he had envisioned a handheld camera wirelessly transmitting video to another camera or a monitor. Such a device, Strandwitz thought, would change people's lives. (MLink SOF ¶ 1.)

Bob Kniskern was regarded as a wireless video transmission expert due to, among other things, his success in developing satellite TV. Strandwitz knew that he lacked the video expertise to make his idea a reality. Aware of Kniskern's reputation, Strandwitz considered him an ideal person with whom to collaborate. Strandwitz contacted Kniskern about the idea in August 1997, and Kniskern was eager to help. (MLink SOF ¶ 1.)

Before October 1997, prior to disclosing the details of their idea to Motorola, <u>Strandwitz and Kniskern had firmly conceived of their invention</u>: a handheld camera device (such as a cell phone or camcorder) that transmits and receives video signals by communicating wirelessly with a base station, utilizing video compression/decompression circuitry and control features to optimize bandwidth usage (the "Invention"). (MLink SOF ¶ 1.)

### II.    Strandwitz And Kniskern Show Motorola Their Invention



. (MLink SOF ¶ 5.) Strandwitz and Kniskern went to Motorola first, around December 18, 1997, to interview Motorola as a potential supplier. (*Id.* ¶ 6.) During the meeting, Strandwitz and Kniskern explained their Invention in very general terms as they did not have a confidentiality agreement in place, and told Motorola that they needed a radio board. (*Id.* ¶ 7.) ███████████████

███████████████. (*Id.* ¶ 8.)

Kniskern built the demonstration device by installing the circuitry and other components in a child's Tasmanian Devil lunchbox. (MLink SOF ¶ 12.) ███████████████

███████████████, Motorola did not assist in the design or construction of the lunchbox demonstration device. (*Id.*)

Prior to their demonstration or sharing any specifics about their Invention, Kniskern and Strandwitz, on behalf of Plexus and Adaptive (as Memorylink did not yet exist), entered into confidentiality agreements with Motorola, including a December 26, 1997 non-disclosure agreement signed by Kniskern and a January 13, 1998 Memorandum of Understanding ("MOU") signed by Strandwitz. (MLink SOF ¶ 13-14, Resp. to Moto. SOF ¶ 26.)

Subsequently, on January 20, 1998, Kniskern and Strandwitz demonstrated the Invention to Motorola. (MLink SOF. ¶ 14, citing MLink Ex. G.) Memorylink's presentation was an overwhelming success: the lunchbox camera wirelessly transmitted real time video that was displayed on a television set and computer. (*Id.* ¶ 16.) Motorola's engineers were impressed and excited by what they had seen. (*Id.*) ███████████████

███████████████

██████████████████████████████████████████████

████████████████████████ (*Id.*)

Concurrent with building the demonstration device, Kniskern began documenting the specifics of the Invention, which ultimately resulted in a comprehensive technological- and diagram-rich document titled "Wireless Multimedia Core Technology Overview for Patent Review" dated February 15, 1998 (the "Overview"). (*Id.* ¶ 9.) Kniskern created the Overview, with drafting help from others at Adaptive, based entirely on what he and Strandwitz had discussed and designed. (*Id.* ¶ 11.) No one from Motorola had any input to the Overview. (*Id.*)

## III.     The Sharp And Sony Demonstrations

After the successful demonstration, Motorola wanted Memorylink to conduct a second demonstration. (MLink SOF ¶ 18.) On February 25, 1998, Kniskern and Strandwitz successfully demonstrated their Invention using two Sharp brand video camcorders that were modified to wirelessly transmit video to each other ████████████████████████████

████████ (*Id.* ¶ 18-20.) Motorola was again impressed. (*Id.* ¶ 21.)

Subsequently, Motorola urged Memorylink to repeat the demonstration of their Invention using Sony brand video camcorders. (MLink SOF ¶ 22.) Motorola promised Memorylink, through statements to Strandwitz, that any demonstration to Sony would be done with Memorylink's approval and with Memorylink in attendance. (*Id.* ¶ 26, 51.) In May 1998, Memorylink again successfully demonstrated the Invention to Motorola using two modified Sony video camcorders. (*Id.* ¶ 49.) At Motorola's request, Memorylink left the Sony camcorders with Motorola. (*Id.* ¶ 50.) In late June 1998, Motorola broke its promises by showing Sony the camcorders without Memorylink. (*Id.* ¶ 52.)

## IV.     Motorola Improperly Takes Ownership Of The Invention

Because Motorola had experienced in-house patent lawyers, Motorola and Memorylink agreed to have Motorola's attorneys prepare and file a patent application for the Invention. (MLink SOF ¶ 25.) Motorola in-house attorney, Hugh C. Dunlop, prepared the application, which he based on Kniskern's "Overview." (*Id.* ¶ 27.) Motorola's in-house attorneys jointly represented Motorola, Memorylink, Kniskern, and Strandwitz from at least February 16, 1998, until June 3, 2003. (*Id.* ¶ 26.) Dunlop, a U.K. attorney with no U.S. patent law training, incorrectly told his clients – Kniskern and Strandwitz – that two Motorola employees – Gary Schulz and Jan Wyckoff – were proper co-inventors. Kniskern, Strandwitz, and Memorylink believed and relied upon Dunlop's determination and advice. (*Id.* ¶ 28, 29.) In reality, Schulz and Wyckoff were not proper co-inventors. (Resp. to Moto. SOF ¶ 5, 40.)

Relying upon the advice of Dunlop, their attorney, on June 11 and 12, 1998, Kniskern and Strandwitz signed an assignment (the "Assignment") that purported to give Memorylink and Motorola joint ownership of the Invention. (MLink SOF ¶ 35.) Under the Assignment, Kniskern and Strandwitz assigned their ownership in the Invention to Motorola and Memorylink. In return, Schulz and Wyckoff were to assign their purported ownership to Motorola and Memorylink. (Resp. to Moto. SOF ¶ 67-70.) Kniskern and Strandwitz executed the Assignment because, based on Dunlop's advice, they mistakenly believed that Schulz and Wyckoff were properly named as co-inventors and that they had to share ownership with Schulz and Wyckoff (and ultimately Motorola). (MLink SOF ¶ 45.) Had Kniskern and Strandwitz known the truth – that they were the exclusive inventors of the Invention – they would not have signed the Assignment. (*Id.*)

On June 22, 1998, Motorola's in-house patent attorneys filed U.S. Patent Application No. 09/102,457 titled, "Self Contained Wireless Camera Invention, Wireless Camera System and Method" ("the '352 application"), which eventually issued as the '352 patent. The application named Strandwitz, Kniskern, Schulz, and Wyckoff as the "inventors."

Just two days after filing the '352 application, on the same day Motorola showed the Memorylink camcorder to Sony, Motorola, without informing Strandwitz or Kniskern, filed U.S. Patent Application No. 09/103,408 titled, "Self-Contained Camera Invention and Method for Capturing and Communicating Images via a Modem" ("the '938 application"), which matured into the '938 patent. (MLink SOF ¶ 53.) The '938 patent depicts video camcorders bearing unmistakable similarities to the modified Sharp and Sony camcorders. (*Id.* ¶ 54.) Motorola falsely named only Schulz and Wyckoff as the purported "inventors" of the '938 patent, omitting Strandwitz and Kniskern. (*Id.* ¶ 55.)

## V.    **Memorylink Discovers Motorola's Wrongdoing**

Around November 29, 2007, Memorylink learned, for the first time, from a different (and un-conflicted) patent attorney, Paul Schaafsma, of the existence of the '938 patent and that Schulz and Wyckoff were not co-inventors of the '352 patent. (MLink SOF ¶ 56-57.) Within months of those discoveries, after attempting to reach a resolution with Motorola, Memorylink sued to correct inventorship and obtain other relief.

## Law and Argument

## I.    **Summary Judgment Standard**

Summary judgment is not proper unless, after drawing all justifiable inferences in the non-movant's favor, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When deciding whether a genuine issue of material fact exists, the Court views the evidence in the non-movant's favor, and it resolves all doubts, construes all facts, and draws all reasonable inferences in the non-movant's favor. *Srail v. Village of Lisle, Ill.*, 588 F.3d 940, 948 (7th Cir. 2009).

## II.    **Genuine Issues On Inventorship Preclude Summary Judgment On The Assignment**

In order for the Assignment to be valid, consideration must pass between the parties to the Assignment. The face of the Assignment shows that the purported consideration was Motorola's employees granting Memorylink a share in their ownership of the '352 patent in exchange for Strandwitz and Kniskern granting Motorola a share in their ownership. Genuine issues of material fact exist as to whether the Motorolans are co-inventors, possessing them with something to convey (*i.e.*, consideration). Thus, the consideration question turns on inventorship. The Court, therefore, should address the Assignment's validity only after deciding inventorship at an evidentiary hearing where the contested material facts can be ruled upon.

A. **Motorola Has The Burden To Prove The Existence Of Consideration**

Motorola has the burden of proof to establish the Assignment's validity, which includes the burden to prove the existence of consideration. *Serpe v. Williams*, 776 F. Supp. 1285, 1287-88 (N.D. Ill. 1991) (requiring proponent of contract to prove consideration). That Memorylink challenged the validity of the Assignment in a declaratory judgment claim does not relieve Motorola of its burden. *See Arris Group, Inc. v. British Tele. PLC*, 639 F.3d 1368, 1380 (Fed. Cir. 2011) ("While a declaratory *plaintiff* indeed has the burden of 'demonstrating [that] an actual case or controversy' exists, that burden does not extend to showing that the defendant holds meritorious positions on the issues in controversy.") (citations omitted).

B. **Consideration Was An Exchange Of Ownership Rights**

Consideration is the bargained-for exchange by the parties, as contemplated by them at the time of contract. E. Allen Farnsworth, Contracts § 2.6 (1999); *see also* Restatement (Second) of Contracts § 71(1) ("To constitute consideration, a performance or a return promise must be bargained for."). The Court determines what the parties intended as consideration as it decides all questions of contract interpretation: based on the objective manifestations of the parties. *See Laserage Tech. Corp. v. Laserage Labs., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992). "In interpreting

a contract under Illinois law, the paramount objective is to give effect to the intent of the parties as expressed by the terms of the agreement." *Id.* (quotations omitted).

The Assignment shows that the contemplated and bargained-for exchange was each purported inventor granting their respective ownership rights to Motorola and Memorylink jointly. The Motorolans conveyed an undivided share in their ownership to Memorylink (to share with Motorola) and, in return, Strandwitz and Kniskern were to convey an undivided share in their purported ownership to Motorola (to share with Memorylink). The four individuals' apparent ownership derived from their status as named co-inventors. *See Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 131 S. Ct. 2188, 2195 (2011) ("rights in an invention belong to the inventor"). Thus, as Motorola agrees, Schulz and Wyckoff being co-inventors was the purported consideration for the Assignment. (MLink SOF ¶ 44.)

### C. <u>Genuine Issues Regarding Inventorship Preclude Summary Judgment</u>

A contract lacking consideration is unenforceable. *See Nat'l Prod. Workers Union Ins. Trust v. Cigna Corp.*, 665 F.3d 897, 901 (7th Cir. 2011). If inventorship is incorrect, Memorylink received no consideration as Schulz and Wyckoff had nothing to convey to Memorylink and consideration flowed only to Motorola. So the genuine dispute of material facts as to inventorship precludes summary judgment on Count III.

Also, if inventorship is incorrect, Strandwitz's and Kniskern's mistaken belief that Schulz and Wyckoff had ownership rights to give as consideration is the very type of mistake that invalidates a contract. Under Illinois law, a contract is invalid when a party enters into it in reliance on his mistaken belief as to his antecedent rights. *Harbaugh v. Hausman*, 569 N.E. 2d 523, 528 (Ill. App. Ct. 1991). In *Harbaugh*, Rice signed a contract that obligated his estate to convey stocks to Harbaugh at a set price upon Rice's death. The trial court, on a motion for summary judgment, upheld the contract over the objection of Rice's estate. The Court, however,

reversed because the evidence showed Rice may have signed the contract based on his mistaken belief that a prior contract required him to sell the stock to Harbaugh at the contracted price. In reality, the prior contract was invalid for lack of consideration. Holding that the contract was voidable as based on Rice's mistaken belief as to his antecedent rights, the Court ruled that Harbaugh was not entitled to summary judgment. *Id.*

Similar to Rice, Kniskern and Strandwitz signed the Assignment based on a mistaken belief as to their antecedent rights. Relying on their attorney's advice, they each believed the Motorolans were properly named as co-inventors. Like Rice, who believed he had to sell the stocks at the contracted price, Kniskern and Strandwitz believed they would have joint ownership with Motorola (based on its employees' co-inventor status) regardless of whether they signed the Assignment. (MLink SOF ¶ 45.) Like Rice, Kniskern and Strandwitz never would have signed the Assignment if they knew that the Motorolans were not co-inventors; that they, therefore, received no consideration in return for granting ownership rights to Motorola; and that they could have otherwise enjoyed exclusive ownership of the resulting patent. (*Id.*)

Motorola may argue that Kniskern's and Strandwitz's mistake was one of law, and therefore cannot invalidate the Assignment. The Court in *Harbaugh*, however, held that a mistake of law can invalidate a contract and that, regardless, a mistake about one's antecedent legal rights is different from the "pure" type of legal mistake that may sometimes fail to invalidate a contract, such as a mistake about the legal effect of the challenged contract. Here, it is Kniskern's and Strandwitz's misunderstanding about their *antecedent* legal rights, regardless of their understanding of the legal effect of the Assignment itself that invalidates the contract.

Motorola also may argue that mutuality of mistake among the contracting parties is required to invalidate the Assignment. *Harbaugh*, however, did not require a "mutual" mistake to invalidate. In addition, Motorola has doggedly insisted, for years, that inventorship is correct. So

if inventorship is determined to be incorrect then Motorola either mistakenly believed it was correct or willfully committed a fraud. Either way, Memorylink would be entitled to relief. Based on the genuine dispute regarding inventorship of the '352 patent, the Court should deny summary judgment on the validity of the Assignment.

### D. There Is A Genuine Dispute Regarding Inventorship

Genuine issues of material fact exist regarding inventorship of the '352 patent, which Motorola admits by not seeking judgment on the merits of Memorylink's inventorship claim. "Because conception is the touchstone of inventorship, each joint inventor must generally contribute to the conception of the invention." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). Conception "is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Id.* "An idea is sufficiently 'definite and permanent' when 'only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation'." *Id.* (citation omitted). One "does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention." *Id.*

An inventor "may use the services, ideas and aid of others in the process of perfecting his invention without losing his right to a patent." *See Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985) (quotations omitted). Even designing a component of the invention, per the request of the true inventor, which is more than merely *supplying* a component (as Motorola has done), is not inventing as a matter of law. *Acromed Corp. v. Sofamor Danek Group, Inc.*, 253 F.3d 1371, 1380 (Fed. Cir. 2001) (machinist, who improved the quality of a device by designing and installing a plate was not an inventor); *Sewall v. Walters*, 21 F.3d 411, 416 (Fed. Cir. 1994) (computer-chip designer was not an inventor because, at the time

the inventor communicated the idea to the chip designer, the inventor's concept was fully capable of being implemented by a designer of ordinary skill).

Here, there are genuine issues of material fact regarding whether Motorola's employees are co-inventors for at least three separate reasons. First, Motorola's assistance occurred *after* Strandwitz's and Kniskern's conception. Specifically, Motorola's only assistance in the lunchbox demonstration ███████████████████████████████████████████████████████████ ████████████████████████. (MLink SOF ¶ 15, 34.) But before even disclosing their Invention to Motorola,[1] and before meeting Motorola's purported co-inventors, Kniskern had conceived of incorporating a radio element that would transmit and receive video signals into the Invention. (*Id.* ¶ 2-4.) Indeed, Wyckoff testified that Kniskern and Strandwitz told Motorola that their Invention needed a radio board to run. (*Id.*) This is further corroborated by Kniskern's Overview, which includes radio elements in the figures and the description of the Invention. (*Id.*)

In fact, the Overview proves that Kniskern and Strandwitz alone conceived of the Invention. The Overview provides a detailed description of the Invention, and the drawings in the '352 patent are the same as (or substantially similar to) those in the Overview. (*Id.* ¶ 9-11, 27.) Kniskern created the Overview without any input from Motorola, which Motorola's Hugh Dunlop admitted in 1998. (*Id.* ¶ 11.)

Second, regardless of timing, ████████████████████████████████████████ ████████████████████████ is not the type of inventive contribution which rises to the level of a co-inventor; ████████████████████████████████████████████████████ ████████ (MLink SOF ¶ 5, 8, 15.) Motorola did no more than <u>assist</u> Kniskern and Strandwitz by supplying an operable radio board, which could have been supplied by anyone having ordinary skill in radio technology. (*Id.* ¶ 5, 15.) Such assistance does not equate to co-inventorship. *See*

---

[1] Motorola's statement that Strandwitz talked to Kniskern "[a]fter discussions with Motorola" is simply untrue. Strandwitz called Kniskern months before contacting Motorola (MLink SOF ¶ 3.)

*Ethicon*, 135 F.3d at 1460 ("One who simply provides the inventor with well-known principles or explains the state of the art without ever having 'a firm and definite idea' of the claimed combination as a whole does not qualify as a joint inventor."); *see also Bd. of Ed. v. Am. Bioscience, Inc.*, 333 F.3d 1330, 1338 (Fed. Cir. 2003) ("One does not qualify as a joint inventor merely by assisting the actual inventor.").

Also, that a "radio transmitter" and "radio receiver" appear in the claims of the '352 patent does not make Motorola's employees co-inventors. A co-inventor must have contributed to the aspects of the invention that made it patentable. *Levin v. Septodont, Inc.*, 34 Fed. Appx. 65, 72-73 (4th Cir. 2002). As "many elements of an invention described in a patent claim will be neither novel nor non-obvious," "a person does not qualify as an inventor simply because his contributions to an invention appear in the claims of the patent" *See Id. at* 72-73. In *Levin*, the Court of Appeals reversed and held that Dr. Kilday was not a co-inventor of a mouthwash patent because, although he suggested adding ingredients that appear in the claims, using those ingredients in mouthwash was neither new nor novel. Similarly, in *Hess*, although tubing suggested by an engineer appeared in the claims of a catheter patent, the Federal Circuit held he was not an inventor because he was "doing nothing more than explaining to the inventors what the then state of the art was and <u>supplying a product</u> to them for use in their invention." *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 981 (Fed. Cir. 1997) (emphasis added).

Here, using radio transceivers to send and receive video signals was neither new nor non-obvious. (MLink SOF ¶ 4.) Indeed, Nikola Tesla conceived of using radio circuitry to wirelessly transmit signals over a century ago. *See generally Marconi Wireless v. U.S.*, 320 U.S. 1 (1943) (describing Tesla's radio patents). Thus, Motorola's supply of an old generic radio board does not make its employees co-inventors. Similarly, the suppliers of other existing components appearing in the claims, such as the display screen and camera, are not co-inventors.

11

Third, the radio board that Motorola supplied is not part of the claimed invention, so supplying it cannot make Motorola's two employees co-inventors. None of the claims of the '352 patent are directed to Motorola's 5 GHz radio board, its design, or its functionality. (Resp. to Moto. SOF ¶ 15.) And contemporaneous Motorola documents show that Motorola understood that its specific radio board was not part of, but separate from, the Invention. For example, the MOU made clear that Motorola would retain exclusive rights to its 5 GHz radio system even if it is incorporated into a jointly developed product. (MLink SOF ¶ 28-29.) ██████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████ By its own deliberate efforts, Motorola ensured that its radio developments were not part of what was claimed by the '352 patent. Thus, Motorola cannot now claim that supplying its radio board makes it a co-inventor.

Based on the foregoing, a trier of fact could reasonably conclude that Motorola's assistance had no inventive consequence and did not make its employees co-inventors of the '352 patent. *See MEEI v. Novartis Ophthalmics, Inc.*, 199 Fed. Appx. 960, 964 (Fed. Cir. 2006) (reversing summary judgment on inventorship where there were genuine issues of material fact regarding an individual's contribution and the significance thereof). Only after the trier of fact has weighed the evidence to decide inventorship can the validity of the Assignment be decided.

### III. <u>Motorola Cannot Rely On The Assignment's Recital Of $1 Consideration</u>

#### A. <u>The $1 Is A False Recital Without Meaning Or Effect</u>

Ignoring the true consideration – reciprocal grants of joint ownership – Motorola argues that Memorylink cannot challenge that the $1 recited by the Assignment is valid consideration. (Moto. Mem. 15.) Motorola, however, has not met its burden to show the "sum of One Dollar,"

which would have been split among the four individuals, giving them each a quarter, is the true consideration for the Assignment. Instead, the evidence shows that the $1 recital was included as boilerplate language in every assignment that the drafter, Motorola's Hugh Dunlop, drafted, not because it was the bargained-for exchange. (MLink SOF ¶ 37.) It, therefore, is a false recital of consideration that has no effect. *See* Restatement (Second) of Contracts § 71(1), cmt. b ("a mere pretense of bargain does not suffice, as where there is a false recital of consideration or where the purported consideration is merely nominal"). Indeed, consistent with Dunlop's testimony, Strandwitz and Kniskern testified they neither requested (nor did Motorola offer) a dollar as consideration. (MLink SOF ¶ 36, 37.) Also, that none of the four assignors ever received or asked for a share of the $1 confirms that no one considered $1 to be the consideration. (*Id.*)

Motorola's reliance on three Federal Circuit cases to argue that Court will uphold an assignment "for the sum of one dollar . . . and other good and valuable consideration" is misplaced. In *MHL*, the parties disputed whether certain patents fell within a "carve-out" provision of an assignment. *MHL Tek, LLC v. Nissan Motor Co.*, 655 F.3d 1266 (Fed. Cir. 2011). While a prior assignment had a "$1 and other" recital, no one challenged – and the court did not address – the validity of that prior assignment. The court in *Katz* expressly refused to decide the consideration question and left it for remand. *Katz v. Lear Siegler, Inc.*, 5 F.3d 1502, at *5 (Table) (Fed. Cir. 1993). And in *Carroll*, the "other" consideration was the assignor's employment. *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1580-81 (Fed. Cir. 1993). Here, there is no underlying employment agreement requiring Strandwitz and Kniskern to assign their rights, and Motorola offers no evidence that anyone contemplated continued employment as the "other" consideration. (*See infra* pp. 24-25.)

Motorola's argument that invalidating this Assignment would cast a "cloud" over thousands of assignments recorded with the USPTO is unsupported by any evidence and baseless

fear mongering. Most patent assignments result from underlying agreements, such as asset purchase agreements. Those assignments, therefore, are enforceable regardless of whether the $1 is upheld as consideration because the real consideration for those assignments lies in the underlying agreements. *See Carroll Touch*, 15 F.3d at 1580-81. Also, Motorola's reliance on █████ ████████████████████████████████████████████████ is immaterial because Motorola does not offer any evidence of what the parties to that transaction contemplated ███████████ ███████████████████████████████████████████████████████████.

### B.     Motorola's Reliance On The $1 Ignores The "Other" Consideration

Motorola's blind reliance on the $1 recital also ignores the recital's use of the conjunction "and" in describing consideration as "One Dollar ... <u>and</u> other good and valuable consideration." Again, the four corners of the Assignment show that the "other" (and real) consideration is reciprocal grants of ownership by the two sets of purported inventors. Because Schulz and Wyckoff had no ownership to grant, the Assignment is invalid for lack of consideration as the consideration was purported to be $1 (not paid) "and" grants of ownership (MLink SOF ¶ 36, 44; Resp. to Moto. SOF ¶ 67-70.). Moreover, because the putative ownership interests that Schulz and Wyckoff were to convey formed the essential purpose of the Assignment, the non-existence of their ownership interest would result in a substantial non-performance if the Assignment were upheld. Thus, rescission of the Assignment would be proper even if the Assignment were valid, which it is not. *See Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 926 N.E.2d 934, 974 (Ill App. Ct. 2010) ("[S]ubstantial nonperformance or breach of contract warrants rescission where the matter, in respect to which the failure of performance occurs, is of such a nature and of such importance that the contract would not have been made without it.").

While Motorola offers extrinsic evidence as to what it contends is the "other" consideration, at a minimum, the question of what constitutes the "other" consideration is

genuinely disputed. Thus, the Court should deny summary judgment even if it finds the $1 recited by the Assignment is part of the true consideration because it would be a question of fact what forms the rest of the consideration.

### C.     One-Dollar Is Grossly Disproportionate To What Motorola Obtained

Also, even if the $1 were the true consideration, genuine issues regarding inventorship would still preclude summary judgment. In Illinois, a contract is invalid when consideration, despite existing, is "grossly inadequate" combined with "circumstances of unfairness." *Mimica v. Area Interstate Trucking, Inc.*, 620 N.E.2d 1328, 1334-1335 (Ill. App. Ct. 1993) (affirming order invalidating patent assignment); *see also O'Neill v. DeLaney*, 415 N.E.2d 1260, 1262 (Ill. App. Ct. 1980) (affirming order invalidating a contract that purported to sell a painting worth at least $100,000 for $10 and "other good and valuable consideration").

As to consideration, Motorola received literally millions of dollars worth of patent rights. (MLink SOF ¶ 38.) By receiving joint ownership of the '352 patent, Motorola received unrestricted rights to incorporate Kniskern and Strandwitz's Invention into Motorola cell phones, including the immensely popular RAZR phones, and to outperform its competition (*e.g.*, LG, Nokia, Blackberry) by offering phones with a superior ability to seamlessly receive and transmit videos wirelessly. (*Id.* ¶ 61.) ██████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████ This value grossly and disproportionately exceeds nominal 25 cent payments to Strandwitz and Kniskern.

Given the large disproportion in consideration, only slight "circumstances of unfairness" are needed to invalidate the contract under *Mimica,* 620 N.E.2d 1328 at 1335. Viewing the evidence in a light most favorable to Memorylink, it has shown the unfairness was more than slight. Again, because Memorylink has presented genuine issues of material fact regarding

inventorship, the Court must presume inventorship is incorrect. Given that, and considering the immense temptation that Motorola had to obtain Strandwitz's and Kniskern's patent rights, a reasonable fact finder could decide that Motorola took undue advantage by using its in-house lawyers to jointly represent everyone, gain their trust, and then falsely advise that Motorolans were co-inventors and had to be named on the patent application.[2]

Moreover, because there was a fiduciary relationship between Motorola and Strandwitz, Kniskern, and Memorylink, (*see infra* p. 37) and because Motorola profited from the transaction, the law presumes that Motorola asserted undue influence. *See Clark v. Clark*, 76 N.E.2d 446, 450 (Ill. 1948) ("When the existence of a fiduciary relationship has been established there exists a rebuttable presumption that any transaction between the parties by which the dominant party has profited, is fraudulent."). Motorola also had superior bargaining power over Kniskern, Strandwitz, and Memorylink, which further contributes to the circumstances of unfairness. (MLink SOF ¶ 46-47.) So even if $1 was part of the consideration, the grossly disproportionate consideration with elements of unfairness precludes the granting of summary judgment.

## IV.  Motorola's Reliance On Parol Evidence Further Precludes Summary Judgment

### A.  The Court Should Ignore Motorola's Parol Evidence

Aware that no consideration exists, Motorola tries to backfill consideration into the Assignment by arguing that every alleged benefit that Memorylink may have enjoyed is consideration. According to Motorola, that consideration included Motorola prosecuting the patent application underlying the '352 patent, allegedly providing "business resource and opportunities," and providing "technical and engineering support." (Moto Mem. 17-19.)

---

[2] *Cf. Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 233 (1st Cir. 2005) (reversing summary judgment where fact finder could decide that defendant QLT unjustly enriched itself where its attorney, who also was patent counsel to plaintiff MEEI, "spearheaded the effort to convince MEEI" to change a patent application to include QLT employees as co-inventors, which put QLT in the "uniquely lucrative position" of being able to "commercially exploit" the invention without MEEI).

The Court should disregard these alleged benefits for at least two reasons. First, because Motorola has not established, let alone argued, that the Assignment is ambiguous, the Court should not consider the parol evidence that Motorola offers regarding the intended consideration. *See A. Epstein & Sons Int'l, Inc. v. Eppstein Uhen Architects, Inc.*, 945 N.E.2d 18, 24 (Ill. App. Ct. 2011). "Where the terms of a contract are clear and unambiguous, the parties' intent must be derived solely from the document." *Id.* Second, Motorola does not offer *any* evidence that the parties contemplated that the benefits it alleges would form the consideration for the Assignment. Motorola's failure to causally link the alleged benefits to the Assignment renders the evidence immaterial and, consequently, fatal to Motorola's argument.

### B.   <u>Motorola's Parol Evidence, If Considered, Creates An Issue Of Fact</u>

If the Court were to consider Motorola's parol evidence, summary judgment would still be inappropriate because Memorylink has offered contrary evidence. When a contract is ambiguous and conflicting extrinsic evidence of intent is offered, questions of fact preclude summary judgment. *See Loyola Academy v. S & S Roof Maint., Inc.*, 586 N.E.2d 1211, 1215 (Ill. 1992) ("In cases involving contracts, there is a disputed fact precluding summary judgment when the material writing contains an ambiguity which requires admission of extrinsic evidence."). Strandwitz and Kniskern both testified that the alleged benefits cited by Motorola were *not* offered, accepted, contemplated, or even discussed as the consideration for the Assignment. (MLink SOF ¶ 39-43.) Other evidence also shows that the alleged benefits are not consideration.

Motorola's argument that patent prosecution legal services is consideration is disingenuous because it has consistently argued in this litigation that it did not provide any legal services to Memorylink. (Dkt. 173 at 7) ("Memorylink did not have an attorney-client relationship with Motorola or its in-house attorneys . . . ."). In reality, the parties agreed to have Motorola handle the prosecution because – ██████████████████ – it was better equipped and

experienced to handle it. (MLink SOF ¶ 25.) Also, Strandwitz and Kniskern had agreed to let Motorola prosecute the patent months before the Assignment was even discussed, so it could not have been contemplated as consideration for the Assignment. (*Id.* ¶ 25-26, 35.)

The evidence shows that any engineering and business support promised or provided by Motorola was provided under the pre-existing MOU and, therefore, was not contemplated or discussed as the consideration for the Assignment. (MLink SOF ¶ 40-41.) Lastly, Motorola's argument that Strandwitz and Kniskern received "valid consideration" in the form of "continued employment" with Memorylink fails because Motorola offers no evidence that Memorylink promised Strandwitz or Kniskern continued employment in return for them assigning their ownership. Instead, Strandwitz and Kniskern testified that Memorylink never made any offer of continued employment in return for their assignment, and none of the parties discussed – let alone contemplated – continued employment. (*Id.* ¶ 43.) Indeed, an offer of continued employment would be senseless because Strandwitz <u>and Kniskern had ownership interests in Memorylink,</u> neither received a salary or pay from Memorylink and neither believed they were employed by Memorylink. The Court should deny summary judgment to Motorola on Memorylink's claim to invalidate the Assignment.

## III.	Motorola Failed To Satisfy Its Heavy Burden To Benefit From A Laches Presumption At The Summary Judgment Stage

Motorola does not seek summary judgment on Memorylink's claim to correct inventorship of the '352 patent (Claim I) on the merits, but rather rests on its laches and equitable estoppel defenses. But Motorola cannot trigger the laches presumption on summary judgment because it has not proven an absence of a genuine dispute on whether the presumption exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

### A.	Motorola Failed To Prove A Greater Than Six Year Delay

To trigger the rebuttable laches presumption, Motorola must prove Memorylink "had actual notice of the *claim* or would have reasonably been expected to inquire about the subject matter" more than six years before filing suit. *Adv. Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993) (emphasis added). Motorola fails to do so for two separate reasons: (i) Memorylink sued within six years of having an inventorship claim, which did not accrue until the '352 patent issued on February 18, 2003; and (ii) Motorola fails to prove that Memorylink knew inventorship was incorrect more than six years before it filed suit.

### 1.    <u>Memorylink Sued Within Six Years Of The Claim Arising</u>

An inventorship "claim" under 35 U.S.C. § 256 does not arise until the patent issues. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1356 n.1 (Fed. Cir. 2004) ("[S]ection 256 creates a cause of action in the district courts only to modify inventorship on issued patents."); *cf. Aukerman*, 960 F.2d at 1032 (for patent infringement claim, the laches period "does not begin prior to issuance of the patent"); *Stark v. Advanced Magnetics Inc.*, 29 F.3d 1570, 1576 (Fed Cir. 1994) ("the general rule is that the laches period does not accrue until each patent issues").

Memorylink's inventorship claim accrued, at the earliest, when the '352 patent issued on February 18, 2003. As Memorylink sued on June 9, 2008, within six years of the issue date, there can be no laches presumption. The district court opinions cited by Motorola that began the laches clock before issuance are incorrectly decided, contrary to controlling Federal Circuit precedent, and not binding on this Court. Also, Motorola's new argument that Memorylink's inventorship claim accrued before the '352 patent issued directly contradicts its prior position. In its successful motion to dismiss Memorylink's inventorship claims on other pending patent applications, Motorola contended that an inventorship claim "applies to only ***issued*** patents." (Dkt. 23 at 23-24.) This Court agreed with Motorola and dismissed Memorylink's inventorship claims on unissued patents. (Dtk. 59 at 21-22)

2. **Motorola Fails To Prove**
   **Memorylink Knew Of Its Claim Before June 9, 2002**

Even if Memorylink could somehow have had an inventorship claim against Motorola before the patent issued, Motorola's motion still fails. To carry its initial evidentiary burden on laches, Motorola must prove that Memorylink knew or should have known of its inventorship claim more than six years before it filed suit on June 9, 2008; that is, before June 9, 2002. Motorola, however, offers no evidence that Kniskern, Strandwitz, or Memorylink knew that inventorship on the '352 patent was incorrect prior to Schaafsma's 2007 discovery.

a. *That Memorylink Followed Dunlop's Bad Advice*
   *Does Not Prove It Knew That His Advice Was Wrong*

Motorola cites an April 13, 1998 letter from Hugh Dunlop to Strandwitz, in which Dunlop opines that "the inventors for these ideas are yourself [referring to Strandwitz], Gary [Schulz], Jan [Wyckoff], and Bob Kniskern." (Moto. Mem. 21.) But rather than showing that Memorylink thought inventorship was incorrect in 1998, Dunlop's letter is the reason Memorylink and its inventors did <u>not</u> know inventorship was incorrect in 1998: they trusted Dunlop. (MLink SOF ¶ 30, 35.) Similarly, that Strandwitz and Kniskern later signed legal documents drafted by Motorola's in-house attorneys (while those lawyers jointly represented Motorola and Memorylink and its inventors) that acknowledged Wyckoff and Schulz as co-inventors is, again, evidence that Kniskern and Strandwitz believed inventorship was correct, relied on their counsel's advice, and were ignorant of an inventorship claim. (*Id.* ¶ 26, 30.)

b. *Knowing What Individuals Contributed Does*
   *Not Equate To Knowing That Dunlop Was Wrong*

Motorola next argues that Memorylink knew or should have known of its claim because Kniskern and Strandwitz knew what each named inventor had or had not contributed to the wireless device. But knowing what Motorola did or did not "contribute" does not equate to knowing that Dunlop's inventorship determination was incorrect. The laches clock only begins

to run when the existence of a claim is apparent to the plaintiff. *See PSN Illinois, Inc. v. Ivoclar Vivadent, Inc.*, 398 F. Supp. 2d 902, 910 (N.D. Ill. 2005). In denying summary judgment on laches, this Court has held that knowing about sales of an accused product does not equate to knowledge of an infringement claim – and therefore will not start the laches clock – where it is not apparent that the product infringes. *See PSN Illinois,* 398 F. Supp. 2d at 910; *Integrated Cards, L.L.C. v. McKillip Indus., Inc.*, 2008 WL 3286981, at *2 (N.D. Ill. Aug. 8, 2008).

In the same way, knowing what people did or did not contribute, does not equate to knowledge of an inventorship claim because inventorship is not readily apparent to a lay person. *See Mueller Brass Co. v. Reading Indus., Inc.*, 352 F. Supp. 1357, 1372 (E.D. Pa. 1972) (noting that joint inventorship is "one of the muddiest concepts in the muddy metaphysics of the patent law") "The boundaries of joint inventorship are unclear even to legal experts." *Ethicon, Inc. v. U.S. Surgical Corp.*, 937 F. Supp. 1015, 1037 (D. Conn. 1996); *accord Eli Lilly*, 376 F.3d at 1359 (the line between inventor and non-inventor can be "a difficult one to draw.").

For that reason, Motorola's argument that Strandwitz should have known inventorship was wrong in 1998 because he knew then that Schulz and Wyckoff "didn't contribute to the invention" is meritless. Strandwitz testified that although he did not think Motorola contributed to the patent, "that doesn't mean that I know what inventors are on a patent." (MLink SOF ¶ 30.) Strandwitz and Kniskern both explained that the "inventorship" concept was foreign to them, and that they always trusted their patent attorney to decide inventorship. (*Id.*) Also, Strandwitz, during a meeting with Motorola, was told "if [Motorola] is going to file this, we need a couple Motorola people on the -- on the patent." (*Id.* ¶ 31.)

Also, Motorola misconstrues this "contribution" testimony. Neither Strandwitz nor Kniskern testified that Motorola contributed *nothing*, but instead acknowledged that Motorola gave them radio boards. (MLink SOF ¶ 8, 17.) Although that contribution does not make the

21

Motorolans co-inventors, neither Strandwitz nor Kniskern had the legal acumen to know that truth, and so it was more than reasonable for them to rely on their attorney's determination. *Goodman*, v. *Harbor Market, Ltd.*, 663 N.E.2d 13, 18 (Ill. App. Ct. 1995) (a "client is presumed unable to discern any misapplication of legal expertise"). Noticeably, Motorola does not cite a single case where a court held a plaintiff should have known its attorney's inventorship determination was wrong because the plaintiff knew who contributed what to the invention. In sum, Strandwitz and Kniskern knowing what Motorola did or did not contribute to the Invention does not equate to knowing their lawyer, Dunlop, was wrong.

c.    *That Memorylink Had Other Attorneys Does Not Mean*
<u>*They Knew Or Should Have Known Dunlop Was Wrong*</u>

Motorola also argues that knowledge of Memorylink's inventorship claim should be "imputed" to Memorylink because it was represented by other attorneys in 1998 and beyond. That Memorylink had other attorneys, however, is immaterial because – as this Court previously ruled – Motorola's in-house attorneys continued to handle the prosecution of the '352 patent application for Memorylink. (Dkt. 266 at 5 ("Memorylink did not hire Banner to prosecute the ['352] application," and thus Motorola continued to prosecute the '352 application for Memorylink after it retained Banner). Memorylink's other attorneys had different responsibilities. For example, Memorylink retained Banner & Witcoff in December 1998, months <u>after</u> the '352 application was filed, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ (MLink SOF ¶ 48.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ (MLink SOF ¶ 48, 58; Resp. to Moto. SOF. ¶ 99, 103.) And while attorney Joe Kaufman represented Plexus in 1997 and 1998, he was not Memorylink's lawyer and he had no

experience or knowledge of patent law. Even Dunlop admitted that Kaufman was not equipped to make inventorship judgments. (Resp. to Moto. SOF ¶ 90.)

Although Banner filed children applications of the '352 application in 2003 and 2008, Motorola offers no evidence that it was unreasonable for Banner to rely on Dunlop's prior determination listing Schulz and Wyckoff as co-inventors. (Resp. to Moto. SOF ¶ 99, 103.) An attorney is not required, nor expected, to redo a prior attorneys' work as such a requirement would result in "an expensive and impractical duplication." *See Goodman*, 663 N.E.2d at 18; *Butler v. Mayer, Brown & Platt*, 704 N.E.2d 740, 744-45 (Ill. App. Ct. 1998).

Strandwitz and Kniskern never told any attorney what each named inventor, including the Motorolans, had or had not contributed to the Invention until Schaafsma asked in 2007. (MLink SOF ¶ 58.) And Motorola has no evidence that Memorylink gave its other attorneys facts needed for those attorneys to make an inventorship determination. Thus, those attorneys could have not have had any knowledge about inventorship to impute to Memorylink. *See Pyramid Controls, Inc. v. Siemens Ind. Automations, Inc.*, 176 F.R.D. 269, 274-75 (N.D. Ill. 1997) (court will impute knowledge to client only if attorneys are given the relevant underlying facts).

B.    **Motorola's Cases Are Unavailing**

Defendants in the cases Motorola cites proved that plaintiff knew or should have known that inventorship was incorrect more than six years before suing. Unlike Memorylink, who relied on Dunlop, none of those plaintiffs had an attorney advising them that inventorship was correct.

In *Frugoli*, laches was decided by bench trial, not by summary judgment. *Frugoli v. Fougnies*, 74 U.S.P.Q.2d 1716, 2004 WL 3372012 (D. Az. 2004). There, more than six years before suing, the plaintiff, Frugoli, knew that defendants had applied for a patent without naming him, and he knew, at that time, that he had an inventorship claim because, based on his counsel's advice, he refused to assign his rights to the invention when defendants asked. *Id.* at 1719-21.

Moreover, Frugoli only asserted his inventorship claim when Verizon, which defendants had sued for infringement, offered to pay him to file an inventorship claim and to license the patent to Verizon if Frugoli succeeded. *Id.* at 1720. Such manipulation and "opportunism" drove the court's decision, and Motorola has not shown such manipulation here. *See id.* at 1722.

In *Hor*, plaintiff Hor angrily objected to a patent attorney's determination that she was not a co-inventor in 1987, but waited 20 years to sue. *Hor v. Chu*, 765 F. Supp. 2d 903 (S.D. Tex. 2011). Laches barred the other plaintiff's claim as she had a duty to inquire with others about her inventorship claim based on her participation in two patent interference proceedings in which she understood inventorship was disputed. Here, Strandwitz and Kniskern had no duty to further inquire because Dunlop told them inventorship was correct.

In *Moore*, plaintiff knew that a patent application to his invention had been filed in 1997, which named his colleague Beard as the sole inventor. *Moore*, No. C06-05647 MJJ, 2008 WL 425932 (N.D. Cal. Feb. 14, 2008). Moore and Beard purposely omitted Moore as a co-inventor as part of a scheme to buy back the patent from Beard's employer after the patent issued. Moore only sued when his and Beard's scheme failed. The court applied laches because Moore's delay "resulted from his own scheme." *Id.* at *6. Here, Motorola has not proven that Memorylink delayed as part of a scheme, let alone dispositively proven it.

### C. Whether The Laches Presumption Applies Is A Fact Issue That Precludes Summary Judgment, Even If Motorola Had Proven A Six Year Delay

Assuming, *arguendo*, Motorola had proven Memorylink knew or should have known of its claim before June 9, 2002, the Court should still deny summary judgment because Motorola failed to show an absence of a genuine dispute on that factual issue. Because laches is a "factual issue," a genuine issue dispute on when plaintiff knew or should have known of its claim precludes summary judgment. *Aukerman*, 960 F.2d at 1038; *see Adv. Cardiovascular*, 988 F.2d

at 1162-63 ("Whether and when [plaintiff] had information sufficient to place upon him a duty of inquiry is a material question of fact."); *see also PSN Illinois*, 398 F. Supp. 2d at 910 (denying summary judgment on laches presumption).

Material facts exist to dispute that Memorylink knew or should have known of its inventorship claim prior to June 9, 2002, including: (i) that Strandwitz and Kniskern trusted and believed Dunlop, when he advised them that Schulz and Wyckoff were co-inventors; (ii) that Memorylink did not learn that Schulz and Wyckoff were not co-inventors until Schaafsma's investigation in late 2007, and it had no reason to question Dunlop's advice before that; and (iii) the other evidence cited above in Section III.A.2. (MLink SOF. ¶ 30, 56.) Based on this evidence, the Court should deny summary judgment on the laches presumption.

## IV. Even If Motorola Had Dispositively Proven The Laches Presumption, Summary Judgment On Laches Would Still Be Inappropriate

Even if Motorola established the laches presumption, Memorylink can overcome that rebuttable presumption by raising a genuine issue on either the reasonableness of delay *or* prejudice to defendant, both of which are "fact element[s]." *Aukerman*, 960 F.2d at 1038. Memorylink's "evidence need only be sufficient to raise a genuine issue," and need not be "persuasive." *Id.*; *see also Rockwell Int'l Corp. v. SDL, Inc.*, 103 F. Supp. 2d 1192, 1196 (N.D. Cal. 2000) ("Such evidence need not be persuasive, since the burden of persuasion remains with the defendant at all times.").

### A. There Is A Genuine Issue On The Reasonableness Of Delay

"The reasonableness of the behavior of the person against whom laches is asserted depends on the facts of the particular case." *Adv. Cardiovascular*, 988 F.2d at 1162. Thus, whether delay was reasonable is a fact issue that often precludes summary judgment. *See, e.g.*, *Aukerman*, 960 F.2d at 1039 (reversing summary judgment on laches.). For example, in *Stark*,

the Federal Circuit reversed the district court's dismissal of an inventorship claim as untimely because "[w]hether [plaintiff] was deliberately misled by persons he had reason to trust, and whether he behaved reasonably in failing to seek prompt verification and diligent correction, are questions of fact." *Stark*, 29 F.3d at 1576.

Here, at a minimum, whether Memorylink was deliberately misled by Motorola, whether Memorylink behaved reasonably in trusting its attorney Dunlop, and whether Memorylink should have sought an outside redetermination of inventorship are questions of fact that rebut any presumption of laches and preclude summary judgment. (*See* MLink SOF ¶ 30, 56.) The Court must also reject Motorola's speculation that ████████████████████████ ████████████████████████████████████. (Moto. Mem. 9); *see Wanlass*, 145 F.3d at 1466-67 (reversing district court for drawing state of mind inferences against plaintiff on summary judgment). Instead, the Court must presume true that Strandwitz and Kniskern delayed because they trusted and believed Dunlop's inventorship determination, believed that Motorola was dealing with Memorylink in good faith, and did not know inventorship was wrong until Schaafsma's 2007 discovery. (MLink SOF ¶ 58.) ████████ ████████████████████████████████████████████ ████████████████████████████. (Resp. to Moto. SOF ¶ 107.)

## B.     There Is A Genuine Dispute On Prejudice

### 1.     There Are Genuine Disputes Regarding Evidentiary Prejudice

Motorola asserts that "documents are missing, memories have faded, and key witnesses have left Motorola" (Moto. Mem. 25) in support of its claim of evidentiary prejudice. But the facts are in dispute. As far as missing documents, much of the contemporaneous documentary evidence remains today, such as (without limitation) Kniskern's Overview, letters from Hugh Dunlop, ████████████████████████, the Assignment, the prosecution history of the

'352 and '938 patents, memorandums of understanding, various relevant e-mails and documents, and so on. (Resp. to Moto. SOF ¶ 62.) Further, Motorola does not identify a single missing document, but instead relies on its small production of certain categories of documents, such as "engineering notebooks." Motorola presents no evidence that its small productions were due to the passage of time. Rather, the documents never existed. ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

With respect to faded memories, Motorola's two purported inventors had no trouble recalling many of the details regarding, among other things, what they contend they contributed to the invention claimed by the '352 patent, Memorylink's lunchbox, Sharp, and Sony demonstrations, working with Kniskern ███████████      ████████████████████

███████████, and interactions with Memorylink. (Resp. to Moto SOF ¶66) Further, evidentiary prejudice must be more than mere fading memories because they are "undoubtedly an inevitable part of complex litigation." *Metso Minerals, Inc. v. Powerscreen Int'l Distribution Ltd.*, No. 833 F. Supp. 2d 321, 330 (E.D.N.Y. 2011).

Motorola also complains that "key witnesses have left Motorola." But the only witnesses that left Motorola – Wyckoff, Schulz, and Dunlop – testified for Motorola and prepared for their deposition testimony with Motorola's attorneys. (Moto. Mem. 25.) Schulz is even "consulting" to Motorola on this case for an undisclosed sum of money. (*See* Dkt. 280.) Motorola does not show how these witnesses' departures have prejudiced its defense. (Resp. to Moto. SOF ¶ 66.)

Lastly, rather than a paucity of evidence, discovery has produced over 30,000 documents and the parties have deposed over 13 witnesses. (Resp. to Moto. SOF ¶ 62.) Indeed, Motorola thinks it has so much evidence to support its defense that it filed 123 statements of undisputed fact, and relied on 108 exhibits and the depositions of 12 witnesses. Thus, genuine issues of material fact regarding evidentiary prejudice to Motorola preclude summary judgment.

## 2. There Are Genuine Issues Regarding Economic Prejudice

Separately, Memorylink raises genuine issues regarding whether Motorola suffered any economic prejudice. Economic prejudice must be material and the expenditures must be significant, such as to alter the defendant's economic position. *See*, *e.g.*, *Hearing Components, Inc. v. Shure Inc.*, 600 F.3d 1357, 1376 (Fed. Cir. 2010). The only economic prejudice claimed by Motorola, tellingly relegated to a footnote, is that it "provid[ed] patent resources in 1998, [and] continued to pay the maintenance fees for the '352 Patent throughout the 2000s – well after Memorylink should have brought suit." (Moto. Mem. 26 n.4.) Memorylink rebuts that claim with evidence that: (i) Motorola would have prosecuted and maintained the patent, and still incurred the cost it claims as prejudice, even if Memorylink had sued earlier; and (ii) Motorola incurred only nominal costs to prosecute and maintain the '352 patent.

As to causality, Motorola paid a $2,480 maintenance fee on the '352 patent in July 2012, two years *after* Memorylink sued, which means Motorola would have paid to prosecute and maintain the '352 patent even if Memorylink had sued earlier. (MLink SOF ¶ 64.) That raises a genuine issue of whether the alleged patent costs would have been avoided by an earlier suit. *See Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992) (requiring a "nexus" between the delay and the defendant's expenditures). As to the costs themselves, Motorola used its own in-house attorneys to prosecute the patent so there was no extra cost to Motorola. And Motorola paid only $4,116 in Patent Office fees before Memorylink filed suit.

(MLink SOF. ¶ 63.) Given that Motorola made over $29 billion in annual revenue during this time period, whether the small costs incurred to prosecute and maintain the patent are sufficient economic prejudice to entirely bar Memorylink's claim is a question for the jury. (*Id.* ¶ 46.)

### C.    Motorola's Unclean Hands Further Preclude Summary Judgment

Not only has Memorylink raised genuine issues of fact on prejudice and delay, but it also presents genuine issues as to whether Motorola acted inequitably. "Even if unable to overcome the presumption, a patentee may be able to preclude application of the laches defense with proof that the accused infringer was itself guilty of misdeeds towards the patentee. This flows from the maxim, 'He who seeks equity must do equity.'" *Aukerman* at 1038; *see Yeda Research & Dev. Co. v. Imclone Sys. Inc.*, 443 F. Supp. 2d 570, 629-30 (S.D.N.Y. 2006) ("Because we find that defendants' hands are unclean, *i.e.*, they are responsible for plaintiff not finding out about their patent applications, the laches defense is unavailable to defendants.").

Given the valuable rights that Motorola obtained by foisting its employees as co-inventors on the '352 patent, the fact finder could reasonably infer that Motorola knew inventorship was incorrect, but told Kniskern and Strandwitz otherwise to obtain unrestricted rights to their invention. Further evidence of Motorola's unclean hands includes it surreptitiously filing the '938 application and getting Memorylink to develop technology for Motorola by promising to develop products with Memorylink, but never following through on that promise. (MLink SOF ¶ 57-60.) Memorylink, therefore, has presented a genuine issue of whether Motorola had unclean hands, which separately bars summary judgment.

### V.    Motorola Also Has Not Shown Summary Judgment On Laches Is Proper Without The Presumption

Having failed to establish the presumption of laches, Motorola can only benefit from the laches defense at this stage by dispositively proving that: (i) Memorylink's delay was

unreasonable and inexcusable; *and* (ii) that Motorola suffered prejudice because of the delay. *Aukerman*, 960 F.2d at 1028. But because Motorola has not argued – let alone proven – that the six months from when Memorylink learned of its claim in 2007 was unreasonable and inexcusable or that it caused prejudice, it cannot obtain summary judgment. *See PSN Illinois*, 298 F. Supp. 2d at 910 (counting laches period from date plaintiff says it learned of claim).

## VI. Motorola Failed To Show No Issues Of Fact On Its Equitable Estoppel Defense

### A. Motorola Failed To Dispositively Prove Memorylink Knew Of A Claim In 1998

For equitable estoppel to apply, Motorola must prove that Memorylink knew inventorship was wrong, but did something to mislead Motorola into thinking Memorylink would not assert an inventorship claim. *See Ethicon,* 937 F. Supp. at 1039. When, as here, there is a genuine issue of material fact regarding when plaintiff discovered its claim, summary judgment on equitable estoppel should be denied. *See, e.g.*, *Integrated Cards*, 2008 WL 3286981, at *6.

As shown above, Motorola failed to show a lack of a genuine issue of material fact that Memorylink knew or should have known inventorship was incorrect in 1998. And Motorola's argument that Memorylink engaged in "misleading conduct" ███████████████████ ████████████████ (Moto. Mem. 27), while factually refuted by Memorylink, draws a state-of-mind inference against Memorylink, which is improper at this stage. Lastly, Motorola's entire equitable estoppel argument is based its assumption that Memorylink knew of its claim in 1998. Based on the genuine dispute regarding that assumption, the Court should deny summary judgment on equitable estoppel.

### B. Motorola Failed To Prove A Lack Of Genuine Dispute On The Other Two Elements Of Its Equitable Estoppel Defense

The Court also should deny summary judgment on equitable estoppel because Motorola failed to show it "substantially relied" on Memorylink's conduct and that it would be "materially

prejudiced" if Memorylink proceeds, and it failed to show a lack of genuine dispute on those two

issues. *See Aukerman*, 960 F.2d at 1042-43 (denying summary judgment on equitable estoppel).

Motorola says it "substantially relied on Memorylink's silence when it agreed to handle the

patent application and prosecution processes for the '352 Patent." (Moto. Mem. 28.) But,

Memorylink presented evidence that Motorola would have prosecuted and maintained the '352

patent even if Memorylink had sued earlier. (MLink SOF ¶ 64.) Further, the costs of prosecuting

and maintaining the patent were so small that it is genuinely disputed whether expending those

small costs are "substantial" reliance that "materially prejudice" Motorola. (*Id.* ¶ 63.)

Also, Motorola's reliance on the alleged "evidentiary and economic prejudice" it argued

in its laches section does not dispositively prove substantial reliance and material prejudice for

the same reasons it fails to carry Motorola's laches defense. Lastly, Motorola's argument that it

would not have provided "business resources and technical and engineering support" if it knew

Memorylink would later challenge inventorship is too vague to prove, beyond dispute, that it

substantially relied to its material prejudice. Motorola offers no evidence of how much time or

out-of-pocket expense it incurred in providing this alleged "support." Accordingly, the Court

should deny Motorola's motion for summary judgment on equitable estoppel.

**VII.    The Court Should Deny Summary Judgment
          On Memorylink's Patent Infringement Claim (Count IV)**

Motorola argues that summary judgment on Memorylink's patent infringement claim

(Count IV) is proper if the Court grants summary judgment to Motorola on: (i) the validity of the

Assignment; or (ii) inventorship of the '352 patent. But because the Court should deny summary

judgment on both of those claims, the Court should deny summary judgment on Memorylink's

patent infringement claim as well.

**VIII.   The Court Should Deny Summary Judgment On Inventorship Of The '938 Patent**

The "critical question" in determining inventorship is who "conceived" of the subject matter of the claims at issue. *Ethicon*, 135 F.3d at 1460. While the ultimate question of inventorship is a legal question, "it is premised on underlying questions of fact." *Eli Lilly & Co.*, 376 F.3d at 1362. Based on the factual nature of the inquiry, summary judgment on inventorship is improper when, as here, the parties genuinely dispute who conceived of the invention. *See, e.g., Yeda*, 2005 WL 2923545, at *5-6 (denying summary judgment); *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1474 (Fed. Cir. 1997) (reversing summary judgment based on factual disputes on contribution and conception). Memorylink's evidence establishes genuine issues of material fact on this issue.

The '938 patent claims a standard camcorder that is converted to allow it to transmit and receive video signals by replacing the storage media (e.g., a VCR tape) with a transmission device that transmits signals "to the outside world." ('938 patent, col. 1, ll. 54-62.) Kniskern and Strandwitz testified that they conceived of converting a standard camcorder into a wireless video transmitting and receiving device as part of their Invention by at least October 1997 and before disclosing their Invention to Motorola. (MLink SOF ¶ 3.) They even reduced their invention to practice when they modified two existing Sharp camcorders ███████████████████████ ████████████████████████████████████████████████████. (*Id.* ¶ 19-20.) Kniskern and Strandwitz disclosed this invention to Motorola when they demonstrated the modified Sharp camcorders to Motorola on February 25, 1998. (*Id.*) Motorola then took that idea and secretly applied for a patent to the technology.

Kniskern's and Strandwitz's testimony is corroborated in several ways. First, the Overview, which Kniskern drafted contemporaneously with the Invention, shows figures of standard camcorders wirelessly transmitting signals to monitors and public or private networks. (MLink SOF ¶ 27.) Wyckoff, one of the alleged inventors, testified that he never thought of

using a camcorder to wirelessly transmit and receive video prior to Memorylink's demonstrations to Motorola. (*Id.* ¶ 3.) Also, the Sharp camcorder built by Kniskern and Strandwitz exists today and corroborates their story. (*Id.* ¶ 19.) Photos of that camcorder show that Kniskern and Strandwitz had replaced the recording medium with wireless modules. (*Id.*) Again, those Sharp cameras are the very invention claimed by the '938 patent. (*Id.* ¶ 57.)

According to Motorola, Strandwitz and Kniskern could not be inventors on the '938 patent because both testified that they did not think of inserting a modem into a tape slot on a camcorder. Motorola's relies too heavily on the word "modem." That Motorola inserted the word "modem" into the patent application to Kniskern's and Strandwitz's invention does not mean they did not think of converting standard camcorders to allow them to transmit and receive signals. To the contrary, at the same deposition that Motorola cites, Kniskern explained that, in 1997, he conceived of and contemplated transmitting video from the camcorder without making any destructive alterations to the camcorder itself (*i.e.*, fitting the transmitter within the body of any existing camcorder), which is the essence of what the '938 patent claims. (MLink SOF ¶ 54.) Moreover, because Motorola secretly filed the patent application, Kniskern and Strandwitz had no choice about the words Motorola chose to put in the patent application.

Viewing the evidence in a light most favorable to Memorylink, a reasonable trier of fact could conclude that it was Strandwitz and Kniskern – and not Schulz and Wyckoff – who conceived of converting a standard camcorder to allow it to transmit and receive video, and that Motorola took that idea after hearing about Memorylink's wireless video invention, seeing Memorylink's Sharp presentation, and studying the modified Sharp devices that Memorylink agreed to leave with Motorola. Thus, summary judgment is inappropriate.

## IX.    <u>Summary Judgment On Conversion Is Not Proper</u>

Motorola seeks summary judgment on Memorylink's conversion claim by arguing that, as a matter of law, "a patent cannot form the basis of a conversion claim." (Moto. Mem. 33, citing *Fire 'Em Up, Inc. v. Technocarb Equip.*, 799 F. Supp. 2d 846, 851-52 (N.D. Ill. 2011).) There, however, is no *per se* rule that taking a proprietary invention of another and then incorporating it into a patent can never support a conversion claim. To the contrary, in Illinois, "parties may recover for conversion of intangible assets." *Stathis v. Geldermann, Inc.*, 692 N.E.2d 798, 807 (Ill. App. Ct. 1998); *see also DirecTV, Inc. v. Adrian*, No. 03 C 6366, 2004 WL 1660665, at *3-4 (N.D. Ill. 2004). Even if Illinois law did not recognize conversion of intangible assets, it would still recognize Memorylink's claim because the patent rights are merged into tangible documents: the patents themselves.

To recover for conversion, Memorylink need only show it had an absolute right to immediate possession of certain property, that it made a demand for possession, and that Motorola wrongfully assumed control or dominion over the property. *DirecTV*, 2004 WL 1660665, at *3. By showing that Kniskern and Strandwitz are the true inventors of the inventions claimed by the '938 patent, Memorylink establishes its absolute right to immediate possession of those patents and the technology they claim. And no one questions that Memorylink has demanded return of the '938 patent. Lastly, Memorylink has shown that Motorola wrongfully assumed control over the '938 patent by asserting exclusive ownership over it and thereby exercising dominion in a manner inconsistent with Memorylink's ownership rights. Motorola has precluded Memorylink from suing anyone for infringing the '938 patent, from licensing the patent, or from practicing the patent itself. The *Fire 'Em Up* case Motorola cites is distinguishable because there, unlike here, the party asserting conversion actually had ownership and possession of the patent. 799 F. Supp. 2d at 852. As Motorola has not shown it is entitled to judgment as a matter of law on conversion, the Court should deny summary judgment.

X.     **Summary Judgment On Fraud Is Not Proper**

Motorola argues that Memorylink cannot "satisfy any of the elements of common law fraud." (Moto. Mem. 37.) Motorola is mistaken. The elements of a fraud claim are: (i) false statement or omission of material fact by the defendant; (ii) known or believed to be false or omitted by the defendant; (iii) intent to induce plaintiff to act; (iv) action by the plaintiff in reliance on the truth of the statements; and (v) damage. *See Hassan v. Yusuf*, 944 N.E.2d 895, 910 (Ill. App. Ct. 2011). In addition, to prove fraud by omission of a material fact, plaintiff must prove the "existence of a special or fiduciary relationship, which would raise a duty to speak." *Janowiak v. Tiesi*, 932 N.E.2d 569, 579 (Ill. App. Ct. 2010).

The fiduciary relationship between the parties (*see infra* p. 37) required Motorola to disclose to Memorylink that it was going to apply for, and eventually did apply for, a patent to the camera device that Memorylink invented and disclosed to Motorola. Based on Motorola having experienced in-house attorneys and the evidence that Motorolans were not inventors of the '938 patent, it is reasonable to infer that Motorola knew that its people were not inventors of the '938 patent. In light of the valuable patent rights that Motorola obtained by naming its own people as inventors and hiding the application from Memorylink, one could reasonably conclude that Motorola concealed the application underlying the '938 patent to induce Memorylink to continue sharing inventive ideas and technology with Motorola.

Kniskern and Strandwitz also established Memorylink's reliance on Motorola's concealment by testifying that, because they did not know about the '938 application, Memorylink did not suspect any wrongdoing by Motorola. (MLink SOF ¶ 58.) Consequently, Memorylink continued to share ideas with Motorola and did not hire independent counsel to investigate Motorola's patent-related activities with regard to Memorylink's Invention. (*Id.* ¶ 58-60.) Lastly, Memorylink has been damaged because it has been deprived of exclusive ownership

rights to the '938 patent, which (among other things) deprived it of licensing fees it would have earned from third-parties that have incorporated that technology into their products.

## XI.     Summary Judgment On Promissory Fraud Is Not Proper

Motorola cannot meet its burden to show an absence of a genuine dispute on Memorylink's promissory fraud claim. "'Promissory fraud' is a form of fraud based upon a false representation of intent concerning future conduct, *e.g.*, a promise to perform a contract when there is actually no intent to perform the contract," with an additional "'scheme' to defraud" element. *Gen'l Elec. Credit Auto Lease, Inc. v. Jankuski*, 532 N.E.2d 361, 363-64 (Ill. App. Ct. 1988). The existence of a scheme is a question for the trier of fact, and is established when a defendant uses false promises to deceive plaintiff into giving defendant something of value. *Id.*

Motorola represented that it would work with Memorylink to jointly develop the MotoLink Board and products incorporating that board and Memorylink's video technology. (MLink SOF ¶ 59.) Memorylink relied on Motorola's promises to its detriment by disclosing to Motorola ███████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ████████████████████████. (*Id.* ¶ 60.) Memorylink further relied on Motorola's promises to its detriment by halting development ██████████████████████ and by trusting the Sony presentation in Motorola's hands. (*Id.*)

A reasonable juror could find that Motorola made its promises without any intent to honor them as part of a scheme to take Memorylink's breakthrough technology and its patent rights to the invention claimed by the '938 patent. Also, a reasonable fact finder could decide, viewing the evidence in Memorylink's favor, that Motorola made the false promises with the intent to induce Memorylink to abandon its ████████████████████, which would have competed with Motorola. As was the case with respect to its fraud claim, Memorylink therefore

has been damaged because it has been deprived of exclusive ownership rights to the '938 patent. Additionally, Memorylink lost out on opportunities to develop its own 5GHz system and to demonstrate its Invention to Sony. (MLink SOF ¶ 52, 60.)

## XII.   Summary Judgment On Breach Of Fiduciary Duty Is Not Proper

Motorola's claim that Memorylink cannot prove a fiduciary duty is mistaken. "A fiduciary relationship exists as a matter of law between parties who sustain the position toward each other of attorney and client, principal and agent, guardian and ward, and the like." *Clark v. Clark*, 76 N.E.2d 446, 449 (Ill. 1948). Also, a fiduciary duty exists when, "one person has reposed trust and confidence in another who thereby gains influence and superiority over the other". *Burdett v. Miller,* 957 F.2d 1375, 1381 (7th Cir. 1992). Motorola had a fiduciary duty based on the attorney-client relationship between Memorylink and Motorola's in-house attorneys. (MLink SOF ¶ 26.) Separately, a fiduciary duty exits because Memorylink trusted, had confidence in, and (based on that trust and confidence) shared confidential information with Motorola. (*Id.* ¶ 7, 13-14, 21, 23, 30-31, 35, 59.) Also, as this Court previously ruled, the MOU does not preclude the fiduciary attorney-client relationship that arose between the parties. (Dkt. 216 at 15.) The Court should deny summary judgment on the fiduciary duty claim.

## XIII.   Summary Judgment On Breach Of The MOU Is Not Proper

Motorola seeks summary judgment on Memorylink's Count XXI by arguing that: (i) "Motorola could not have breached the MOUs by simply exercising rights to technology that it owned"; and (ii) the MOU "did not require the parties to enter into definitive agreements." (Moto. Mem. 39.) As to Motorola's first argument, the MOU states that "[e]ach party will retain all rights to its own concepts and technology." Because there are genuine issues of whether Motorola's Schulz and Wyckoff are true inventors of the '938 and '352 patent, there is a genuine dispute of whether Motorola breached the MOU by not allowing Memorylink to "retain all rights

*to its own* concepts and technology." The Court should deny summary judgment on that basis alone. Motorola's second argument is a red herring because Memorylink does not contend the MOU requires the parties to enter into definitive agreements, nor does it contend that Motorola breached the MOU by not entering definitive agreements.

Also, Motorola breached the confidentiality provision of the MOU. Motorola ignores that the MOU incorporated the prior 1997 NDA, and thereby prohibits Motorola from disclosing confidential information disclosed by Kniskern and Strandwitz. Thus, Motorola separately breached the MOU when it disclosed Memorylink's confidential Sony demonstration to Sony. (*See* MLink SOF ¶ 22-24, 49-52.) Even if, as Motorola incorrectly contends, it had part ownership of the technology incorporated into the Sony demonstration, that would not permit it to disclose the technology to others or excuse it from complying with the MOU's confidentiality provisions. Regardless, as explained above, there are genuine issues regarding whether Motorola had any ownership rights, and therefore. summary judgment is inappropriate.

**XIV.** **Summary Judgment On Breach Of The NDA's Is Not Proper**

Motorola seeks summary judgment on Memorylink's claim for breach of the Non-Disclosure Agreements ("NDAs") by arguing that: (i) Memorylink is not a party to the 1997 NDA; and (ii) Motorola has not disclosed any confidential information. The Court should reject both arguments. The MOU between the parties incorporated the 1997 NDA. (MLink SOF ¶ 13-14.) So the fact that the 1997 NDA was between Motorola and Adaptive is of no import. Through the MOU, Motorola agreed, in writing, that the NDA would continue to govern the parties' relationship. Although the MOU is between Motorola, Plexus, and Interactive Broadcasting, and required written consent to any assignment, the parties ratified, by their conduct, an assignment of that MOU to Memorylink once Memorylink formed to consolidate the interests in the Invention of Plexus, Interactive Broadcasting, Adaptive, Kniskern, and

Strandwitz. (MLink SOF ¶ 17); *Corrugated Metals, Inc. v. Ind. Comm.*, 540 N.E.2d 479, 484 (Ill.

App. Ct. 1989) ("A modification of a contract may be ratified by acquiescence in a course of

conduct consistent with the existence of that modification . . . ."); *see also Household Fin. Servs.,*

*Inc. v. Coastal Mort. Servs., Inc.,* 152 F.Supp.2d 1015, 1022 (N.D.Ill.2001) (oral modifications

allowed "even when the contract precludes oral modifications").

For example, Motorola claims to have provided "Memorylink with access to Motorola's

proprietary 5 GHz radio technology." (Moto. SOF ¶ 73-75.) Motorola would not have provided

Memorylink with allegedly "proprietary" information, or allowed Memorylink to keep the

Motorola radio boards, unless it understood that the MOU prevented Memorylink from

disclosing the technology. Indeed, while arguing it did not breach the MOU, Motorola does not

contend that Memorylink is not a party to the MOU, but rather admits that it is one of "the

parties' MOUs," which "contemplated" that "Motorola and Memorylink would cooperate and

work together." (Moto. Mem. 39-40.) Furthermore, in a draft agreement, Dunlop acknowledged

that Memorylink replaced its predecessors in interest as the party to the MOU when he stated the

"parties [referring to Motorola and Memorylink] have executed a letter of intent," referring to the

MOU. (MLink SOF ¶ 17.)  If Motorola argues in its reply that it is not bound to Memorylink

under the MOU, that would present a dispute of fact. *See E.A. Cox Co. v. Road Savers Int'l*

*Corp.*, 648 N.E.2d 271, 278 (Ill App. Ct. 1995) (reversing summary judgment because whether

contract was modified through waiver of a refund provision is issue of fact); *Household Fin.*, 152

F. Supp. 2d at 1022 (denying summary judgment because "[w]hether the terms of a written

contract are modified by acts or conduct is a question of fact for the trier of fact").

Lastly, while Motorola admits to meeting with Sony in June 1998, ███████████

████████████████████████████████████████████████████████

████████ (Moto. Mem. 39.) The Court, however, should not accept these self-serving denials.

Rather, at summary judgment, the Court must view the evidence in Memorylink's favor. A reasonable fact finder could find that ████████████████████████████████ ████████████████████████ to a company like Sony would materially breach the MOU because it disclosed to Sony that using handheld camera devices to wirelessly transmit and receive video signals was a possibility, at a time when such technology was mostly unknown. Moreover, given that Motorola conducted the Sony demonstration without Memorylink, despite promising to include Memorylink, a reasonable fact finder could conclude that Motorola did, in fact, ██████████████████████████████████ (MLink SOF ¶ 22-24, 49-52.) Such a conclusion would be especially reasonable based on Motorola's other bad conduct, such as secretly applying for the '938 patent and using its in-house attorney to falsely insert Motorola's people as co-inventors of the '352 patent.

## XV.   Memorylink Withdraws Its Tortious Interference Claim Regarding The '938 Patent

This Court's prior dismissal order significantly truncated Memorylink's tortious interference claim by limiting it to Motorola's actions regarding the '938 patent. Memorylink, however, has been unable to obtain enough evidence to support the claim so confined. Memorylink reserves its right to reassert this claim if additional evidence is discovered, as well as to appeal that limitation and/or any dismissal of this claim.

## CONCLUSION

For the foregoing reasons, Motorola's motion for summary judgment should be denied.

MEMORYLINK CORP.,

By:   /s/Peter T. Berk
One of its Attorneys

**ATTORNEYS FOR PLAINTIFF**
Richard Kessler  (#6183140)
Peter T. Berk  (#6242515)
McDonald Hopkins LLC
300 N. LaSalle Street - Suite 2100
Chicago, IL 60654
312.280.0111 (phone)/312.280.8232 (Fax)